# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                            CASE NO. 8:19-cr-33-T-36CPT

v.

JACK R. DOVE, III,

     Defendant.

_____/

## <u>DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC. 135)</u>

Defendant, Jack R. Dove, III, through his undersigned counsel, hereby files his factual and legal objections to the Magistrate Judge's Report and Recommendation (Doc. 135), (hereinafter "R&R"), on *Defendant [Jack R. Dove, III's] Motion for a Hearing Pursuant to Franks v. Delaware[1]*. (Doc. 83). The defendant will address relevant Fourth Amendment and *Franks* law and then address the R&R's factual findings and legal a conclusions regarding the contents of the affidavit concerning statements made in reckless disregard for the truth and material omissions from the affidavit. The Defendant requested an evidentiary hearing, pursuant to *Franks* wherein the statements made with reckless disregard for the truth and willful omissions described in the memorandum of law can be established. (Doc. 83). When purged of its statements in reckless disregard for the truth and supplemented by its material omissions, the Affidavit fails to provide the necessary probable cause to support issuance of the search warrant for the subject premises.

---

[1] *Franks v. Delaware* 483 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)

<u>MEMORANDUM OF LAW</u>

The governing statute provides, in pertinent part, that, "A judge of the court should make a de novo determination of those portions of the report [and recommendation] … to which objection is made." 28 U.S.C. § 636(b)(1).  In addition, "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *see also* Local Rule 6.02 (same).  Finally, "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.; see also* Local Rule 6.02 (same).  The following objections address the factual and legal objections and their  page numbers in the R&R in which the reference appears.  Support for each objection, whether a request to reject or modify any finding or recommendation of the R&R, is provided by referring to a specific page of the documents filed in the case including *Defendant's Motion for a Hearing Pursuant to Franks v. Delaware* (Doc. 83), United States' Response in *Opposition to Defendant's Motion To For (Sic) A Hearing Pursuant to Franks v. Delaware* (Doc. 93) and *Defendant's Reply to United States' Response in Opposition to Defendants' Motion To For (Sic) a Hearing Pursuant to Franks v. Delaware.* (Doc. 117).

**Fourth Amendment Law**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrant shall issue, but upon probable cause."  U.S. Const. amend. IV.  Under the Fourth Amendment, a warrantless entry of a person's home is unreasonable *per se." Payton v. New York,* 445 U.S. 573 (1980).  The "chief evil against which" the Fourth Amendment is directed is a government agent's warrantless physical entry of a

person's home.  *Coffin v. Brandau,* 642 F. 3d 999, 1009 (11th Cir. 2011)(*en banc*). "To supplement the bare text [of the Fourth Amendment]," the Supreme Court recently observed, "this Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation."   *Davis v. United States,* _ U.S. _, 131 S.Ct. 2419. 2423 (2011).   The exclusionary rule "also prohibits the introduction of derivative evidence …that is…acquired as an indirect result of the unlawful search."  *Murray v. United States,* 487 U.S. 533, 536-37(1988).

**_Franks_ Law**

The Supreme Court instructed in *Franks v. Delaware* that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks* 438 U.S. 154, 155-56 (1978). *Franks* applies not only to knowing or intentional false statements in a warrant affidavit, but also extends to material omissions made intentionally or with reckless disregard for the truth. This applies to statements of the affiant and other government personnel consulted by the affiant. *See United States v. Martin*, 615 F.2d 318, 329 (5th Cir.1980); *United States v. Brown*, 298 F.3d 392, 407-08 (5th Cir. 2002). The Defendant requested an evidentiary hearing, pursuant to *Franks v.*

*Delaware*, wherein the statements made with reckless disregard for the truth and willful omissions described in the memorandum of law can be established. (Doc. 83). When purged of its statements in reckless disregard for the truth and supplemented by its material omissions, the Affidavit fails to provide the necessary probable cause to support issuance of the search warrant for the subject premises.

**Elimination of statements made in reckless disregard for the truth leaves insufficient probable cause to issue the search warrant**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." The search of Mr. Dove's home was in violation of his Fourth Amendment rights. The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), and of testimony concerning knowledge acquired during an unlawful search, *Silverman v. United States*, 365 U.S. 505, 81 S. Ct. 679, 5 L.Ed.2d 734 (1961). The exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that was otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the lawful search becomes "so attenuated as to dissipate taint," *Nardone v. United States*, 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 L. Ed.2d 307 (1939). *See* also *Wong Son v. United States*, 371 U.S. 471, 484-5, 83 S. Ct. 407, 415-16, 9 L.Ed.2d 441 (1963).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause to support a search warrant exists when, under the totality of the circumstances, there is a fair probability of finding contraband or evidence at a particular location. *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) "The focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). An affidavit in support of the warrant application must contain information giving rise to a fair probability that evidence will be found in the place police seek to search. *Id.* "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.*

**Improper Use of Government Provided Information**

A district court that is in doubt about whether to hold a *Franks* hearing has discretion to hold a so-called "pre-*Franks*" hearing to give the defendant an opportunity to supplement or elaborate on the original motion. *United States v. McMurtrey*, 704 F. 3d 502, 504 (7th Cir. 2013).   Though permissible, this procedural improvisation is not without risk. *Id.*  The *McMurtrey* court went on to explain the risk as follows:

> In such a pre-*Franks* hearing, the natural temptation for the court will be to invite and consider a response from the government. However, the court should not give the government an opportunity to present its evidence on the validity of the warrant without converting the hearing into a full evidentiary *Franks* hearing, including full cross-examination of government witnesses.

*Id*. at 504.

The *McMurtrey* court further stated:

The district court permitted the government to offer additional evidence to explain the discrepancies in the affidavits. That evidence should have required a full *Franks* hearing, yet the defendant was not permitted full cross-examination on the government's new evidence. The court then relied on the untested government evidence to find that the defendant had failed to make a showing sufficient to obtain a full *Franks* hearing. This procedure was erroneous because it denied defendant his full opportunity to challenge the warrant under *Franks.* Accordingly, we vacate and remand for further proceedings.

*Id*. at 505.

The R&R contains information provided by the government that add evidence to the affidavit without the benefit of cross examination. These assertion are outside the four corners of the affidavit yet are found throughout the R&R and should not be part of the R&R. These assertions will be addressed throughout this pleading as factual objections.

**Factual Objections and Legal Conclusions**

Paragraph 28 Card Numbers

The R&R correctly asserts Dove's claims that the Master Card debit/credit card information in Special Agent Garcia's affidavit is false or incomplete in three respects: (a) the last four digits of the account numbers are wrong; (b) the affidavit did not reveal that other individuals were associated with those debit/credit card accounts; and (c) at least one of the debit/credit cards was associated with another address in addition to the Subject Premises. (Doc. 135 P. 15). Dove asserted that the credit card numbers in ¶28 were inaccurate and put in the affidavit in reckless disregard for the truth. (Doc. 83 P. 5). The R&R concludes that Dove failed to show the information in paragraph 28 was made intentionally or in reckless disregard for the truth and that excluding the information would not preclude a finding or probable cause. (Doc. 135 at 16). The defendant requests

this Court reject this determination and find that paragraph 28 contained an inaccurate statement that was provided in reckless disregard for the truth and excluding that information and other information contained in this objection would preclude a finding of probable cause. The defendant provides the following information for the Court's consideration.

Dove asserted that the credit card numbers in ¶28 were inaccurate and provided to the court in reckless disregard for the truth. (Doc. 83 P. 5). Dove filed an affidavit that indicated he never had a credit/debit card ending in the numbers in ¶28 of the affidavit. (Doc. 117-2).

> The assertion in paragraph 30 is:
>
> > 28. The above-mentioned [BTC] account also contained the following payment card details: a. Master card debit card, ending in 2019, issued by Bank of America with the billing address: SUBJECT PREMISES.
> > b. Master card, ending in 2020, issued by Citibank with the billing address: SUBJECT PREMISES.
> > c. Master card debit card, ending in 2021, issued by Bank of America.

(Doc. 83-2 at ¶¶ 27-28).

The Government asserted in their pleadings regarding the incorrect numbers that "Agent Garcia simply made a typographical error". (Doc. 93 P. 13). The R&R asserts that "As the government concedes, the listed card numbers in paragraph 28 are not correct, insofar as they represent the cards' years of expiration, not the last four digits of the cards' account numbers." (Doc. 135 P. 16 citing to Doc. 93 at 13). Paragraph 28 of the search warrant links two of the debit/credit cards ending in certain numbers to the Subject Premises. (Doc. 83-2 ¶28). Dove provided an affidavit that he has never had credit/debit

cards ending in the numbers listed in ¶28 of the search warrant application. (Doc. 117 -2). The R&R concludes that the "misstated card numbers appear to represent nothing more than a scrivener's error and are hardly relevant". (Doc. 135 P. 16). The R&R makes two faulty conclusions. First, the R&R,  just as *McMurtrey*  warns is inappropriate, accepts the government's assertion in their Response that the incorrect credit card numbers were a scrivener's ("typographical") error.  The R&R apparently adopts this explanation from the government without ever calling affiant to the witness stand to have her explain the assertions in ¶28 related to the debit/credit cards nor giving the defendant the benefit of cross examination. Second, the R&R uses the faulty debit/credit card numbers to link Dove to the Subject Premises by stating as follows:

- "that **two of three debit/credit cards associated with his BTC account identify the Subject Premises** as the billing address." (Doc. 135 P. 19).
- Contrary to Dove's contention, however, it is reasonable and logical to conclude, especially under the probable cause standard, that "an internet user" engaging in BTC transactions using a BTC account registered only in Dove's name (as alleged in the affidavit) was Dove himself, particularly given that this account also listed Dove's business email address, his telephone number, and **two debit/credit cards billed to the Subject Premises** where Dove resided. Doc. 135 P. 27.
- Records subpoenaed from a United States-based BTC virtual currency exchange revealed that a BTC account registered to "Jack Dove" was created on or about November 16, 2016, with an email address and telephone number associated with Dove, **and with debit/credits card associated with the Subject Premises**. Doc. 135 P. 30.

It is unclear what debit/credit card numbers the R&R is referring to in these three uses listed above. The R&R has determined that the numbers are a scrivener's error, however, the remaining analysis treats the "scrivener's error" account numbers as if they were accurate which the R&R has determined they are not. The R&R uses the "scrivener's error" account numbers to establish links to Dove and the Subject Premises

and to establish probable cause yet determined the numbers are not accurate. These credit card numbers were included in the affidavit in reckless disregard for the truth. The defendant can only assume that the R&R is inappropriately relying on the information not contained in the four corners of the affidavit but, rather contained in the Response and the exhibits to the response. (See Doc. 93 ¶10 chart and Doc. 93-2). The R&R's continued reliance on known faulty information to establish probable cause is the equivalent of the R&R entering the numbers the government provides in their pleadings into the affidavit.

While the R&R asserts Dove does not show that excluding the information would preclude a finding of probable cause, excluding ¶28 (along with the other assertions in Dove's *Franks* motion) would preclude a finding of probable cause. The content of ¶28 is repeatedly used to link the BTC account to Dove and the subject premises. Without this link to Dove and the subject premises there is nothing more than a potentially unverified BTC account in the Name "Jack Dove" with an unverified address. Again the defendant request this court find that affiant stated inaccurate card numbers in paragraph 28 were in reckless disregard of the truth and that the exclusion of paragraph 28 along with the other objects the defendant raised to the affidavit would preclude a finding of probable cause.

Charter Communications Subpoena Response

In the request for a *Franks* hearing Dove asserted that a material omissions from the affidavit included that Charter Communications response to the subpoena indicated their records were not to be relied upon without independent corroboration and this fact was not included in the affidavit. (Doc. 83 P. 9-10). The R&R states:

> By my consideration, the inclusion of the disclaimer upon which Dove relies does not undermine the probable cause supporting the warrant. Consistent with that disclaimer, Special Agent Garcia did not rely solely on the Charter information to link Dove to the Subject Premises but

instead independently corroborated that connection through multiple other means, including—as noted above—Dove's driver's license, his BTC account records, the property records for the Subject Premises, and surveillance of the Subject Premises. *See, e.g., id*. at ¶¶ 27-28, 31-39.

The R&R does not find explicitly find that the affiant failing to inform the issuing magistrate of the disclaimer on the Charter Communications subpoena response was a material omission, however, the R&R finds that inclusion of the disclaimer would not preclude a finding of probable cause. The defendant requests this Court reject this determination and find that the omission of the Charter Communications disclaimer was a material omission and that including the disclaimer (along with the other assertions in the objection) would preclude a finding of probable cause. The defendant provides the following information for the Court's consideration.

The Charter Communications records response to subpoena included the following disclaimer:

> Charter's billing and customer records from which the above information is obtained are subject to human error and Charter cannot always guarantee the accuracy of such records. You should not rely solely on this information and should always independently corroborate the information Charter provides with other information you have concerning the identity of the individual.

(Doc. 83-5).

The defendant asserted the affiant made a material omission of the cautionary instruction on the Charter Communications records which stated the records were subject to human error and not to be relied upon without independent corroboration. The R&R incorrectly found that the affiant did not rely solely on the Charter information to link Dove to the Subject Premises but instead sufficiently independently corroborated that connection  through multiple other means, including—as noted above—Dove's driver's

license, his BTC account records, the property records for the Subject Premises, and surveillance of the Subject Premises. (Doc. 135 P. 21).

The R&R focuses only on the other information the affiant had linking Dove to the subject premises but fails to address that the affiant did not inform the issuing magistrate of the lack of reliability of the records corroborate the IP address so the magistrate could determine the reliability of the records. The failure to inform the issuing magistrate that the subpoena response said the records were not to be relied upon was a material omission from the affidavit. Further the R&R finds no proof that the affiant confirmed that the IP address itself was correctly linked the Subject Premises. The affiant provided no information to the issuing magistrate that indicated independent verification of the IP address to the Subject Premises including contacting a representative from Charter to verify the IP address is linked to the Subject Premises through procedures other than the record Charter Communications indicates is unreliable.  The affiant's failure to inform the issuing magistrate of the disclaimer on the records response and instead to let the issuing magistrate assume the records were accurate was a material omission from the affidavit. The disclaimer contained in the Charter Communications subpoena response should be included in the affidavit  and the affidavit reviewed *de novo*.

Assertions in Paragraph 30

The R&R correctly states Dove's *Franks* challenge concerning paragraph 30 in the affidavit. (Doc. 135 P. 22 citing to Doc. 83 at 5-7; Doc. 117 at 6). In  paragraph 30 the affiant alleges:

> On or about October 9, 2018, I received additional data that had been extracted from The Website, which revealed that DOVE had downloaded

approximately 20 child-pornographic videos on or about August 10, 2017 and approximately 18 child-pornographic videos on or about September 3, 2017. . . .

(Doc. 83-2 at ¶ 30).

The R&R accurately summarizes Dove argument as follows:

Dove argues he is entitled to a *Franks* hearing with respect to these averments because, at the time the affidavit was executed, Special Agent Garcia purportedly did not have any information to support her statement that Dove was the individual who actually downloaded the child pornographic content referenced in the paragraph. (Doc. 83 at 5-7). In support of this assertion, Dove states that the "additional data" to which Special Agent Garcia refers in the paragraph and which Dove has since obtained from the government only identifies the alleged downloader by the username "notus." (Doc. 117 at 6-11, 14, 16, 18-19); (Doc. 117-5). And, Dove maintains, nothing in the government's discovery shows that law enforcement had linked him to that username prior to the search warrant's submission to the issuing magistrate judge. *Id*.; *see also* (Doc. 83 at 6).

(Doc. 135 P. 23).

In regards to the assertions that Paragraph 30 were made in reckless disregard for the truth the R&R did a great deal of analysis then concluded:

In light of the above, it is not clear that Dove's challenge to the averments in paragraph 30 satisfies *Franks*' first prong. The Court need not resolve this issue, however, because it is evident that Dove's challenge does not meet *Franks'* second prong. Even without paragraph 30, the remaining information set forth in the affidavit is sufficient to establish probable cause for the requested search warrant.

(Doc. 135 P. 28).

The defendant requests this Court make a finding that the assertions in paragraph 30 were made in reckless disregard for the truth and that the contents of paragraph 30 should be struck from the affidavit along with other information contained in this

objection would preclude a finding of probable cause in a *de novo* review of the affidavit. The defendant provides the following information for the Court's consideration.

In reviewing the defendant's challenge to paragraph 30 the R&R states "it is not clear from the above that Dove's challenge to the averments in paragraph 30 satisfies *Franks*' first prong. (Doc. 135 P. 28). The defendant asserts he met his burden. Although the R&R failed to reach a conclusion the analysis in the R&R relied on incorrect factual findings and on information outside the four corners of the affidavit. Instead of taking the assertions of Dove and analyzing those assertions in light of the four corners of the affidavit the R&R takes assertions made by the government in pleadings and in court hearings and asserts these claims in the analysis. While this procedure is appropriate in other matters the *Franks* analysis must be on the four corners of the affidavit. In deciding the threshold question whether to grant a *Franks* hearing, the court should have limited its consideration of new information to the defense's evidence tending to refute probable cause. *McMurtrey* at 510. These inappropriate factual findings include misuse of government assertions at the hearing, failure to make findings of fact through discovery assertions by government, attributing mental state to the affiant with no evidence, shifting the lack of basis for the assertion to the defendant and finally finding the inaccurate information was merely shorthand will each be addressed in turn.

A. Government Assertions at the Hearing

The R&R states:

The government countered at the most recent hearing that all of the information contained in paragraph 30 is true. It also represented that the "additional data" extracted from The Website, which was provided to

Special Agent Garcia in October 2018, <u>was forensically linked to Dove at the time.</u>

(Doc. 135 P. 23).Emphasis added.

First, these assertions by the government at a hearing are beyond the four corners of the affidavit and should not be considered. Further, they are contradicted by pleadings by the government, discovery from the government that was provided to the court and the affidavit itself. This central issue is the statement in paragraph 30, "Dove downloaded child pornography", which Dove asserts was not known by the affiant at the time of the affidavit.

The government initially claimed  in its Response that "At worst, Agent Garcia's characterization that "Dove downloaded" child pornographic videos as described in Exhibit A, ¶ 30 as opposed to stating "Dove's *BTC account*" or "*a BTC account associated with* Dove" downloaded child pornographic videos was **negligent**." (Doc. 93 at 15)(emphasis added). The R&R fails to reject the new position of the government (at the most recent hearing) that all of the information in paragraph 30 is true (Doc. 135 P. 23) and never addresses the initial position of the government. The R&R further acknowledges the government's assertion at the hearing that the "additional data" referenced in ¶30 that "was forensically linked to Dove". (Doc. 135 P. 23). The assertion that the "additional data was forensically linked to Dove" is likewise not in the affidavit but R&R nevertheless echoes the government's assertion at the hearing. This information outside the affidavit is provided by the government to augment the affidavit without the defendant being able to cross examine the witness and it is improper to rely on it in conducting a *Franks* analysis.

The defendant requests the Court exclude any reference in the R&R to the government's bolstering of the contents of paragraph 30 through pleadings or statements at the hearing. This includes the assertion that "additional data" referenced in ¶30 that "was forensically linked to Dove" as referenced in the R&R. (Doc. 135 P. 23 citing to government statements at a recent hearing).

B.   R&R fails to make finding of Government's knowledge of Downloader

The R&R noted Dove states that the "additional data" to which Special Agent Garcia refers in the paragraph and which Dove has since obtained from the government only identifies the alleged downloader by the username "notus." (Doc. 117 at 6-11, 14, 16, 18-19); (Doc. 117-5). The R&R further noted "And, Dove maintains, nothing in the government's discovery shows that law enforcement had linked him to that username prior to the search warrant's submission to the issuing magistrate judge." Citing to *Id.*; *see also* (Doc. 83 at 6).

The R&R improperly fails to find that government's response to discovery request concerning the assertions in ¶30 never identified Dove as the downloader of child pornography. The R&R fails to address specific discovery information provided by the government that refutes the assertion in paragraph 30. On March 12, 2019 undersigned counsel sent an email to the government specifically requesting the "additional data" referenced in ¶30 of the search warrant affidavit. (Doc.117-3 (request #5)). On March 21, 2019 in response to the email request  the government sent a letter providing additional discovery to the defendant. (Doc. 117-4). In paragraph c of the letter the government indicates it has enclosed "a copy of the 'additional data' as described in paragraph 30 of the residential search warrant." (Doc. 117-4 ). Doc. 117-4 is the 2-page spreadsheet

which the government asserted is the "additional data" which supposedly allows the affiant to assert "DOVE" had downloaded child pornography. (Doc. 117-5 ) The spreadsheet apparently represents  download activity of "The Website". The spreadsheet has 12 columns, nine contain the word video and apparently relate  to various videos the spreadsheet indicates were downloaded. (Doc. 117-5). These columns  have titles including the video id, video categories, video file name, video desc., file size, duration and other video specific categories. (Doc. 117-5).  The remaining columns are "user name", "activity" (all rows indicate "download") and "activity date." (Doc. 117-5). The username for each purported download is the same, "notus". (Doc. 117-5). The only information   on this spreadsheet which could lead to identifying the person that downloaded these videos is the first column titled "username." (Doc. 117-5). This column contains  "notus" in every row. The government had no information regarding the ownership or access to user name "notus"[2] prior to the execution of the search warrant. Notably absent from the additional data is the IP address and payment method for the user that downloaded the videos. Again, the document the government identifies as the basis for the "additional data" the  affiant relied on for her statement in ¶30 provides no information regarding the defendant, a physical address tied to the defendant or an IP address tied to the defendant or the subject premises.

The R&R does note:

> While it is rather surprising that the government apparently does not have any  discovery  (such  as  a  law  enforcement  report)  related  to  the

---

[2] The R&R states "And, as was apparent at the most recent hearing, he does not even dispute that he is "notus." Doc. 135 P. 25. Dove does dispute he is not us and further disputes that he ever indicated he was "notus". Counsel has listened to the digital hearing and Dove responds to the Government's assertion that they knew he was "notus". In the response Dove asserts the government had no knowledge of  any connection to Dove and "notus". Dove acknowledges that after the search digital evidence containing "notus" was seized from the subject premises. Counsel is in the process of getting a transcript of the proceeding.

circumstances surrounding Special Agent Garcia's receipt of the "additional data," there are a number of aspects of Dove's falsity argument that give me pause.

(Doc. 135 P. 24). Despite this concern about the lack of reports and the direct evidence regarding communication with the government about the basis for the assertions in paragraph 30 the R&R incorrectly fails to find as fact that the spreadsheet provided by the government and identified by the government as the basis for ¶30 fails to support the assertion in ¶30 that "Dove downloaded child pornography" and that the statement was made in reckless disregard for the truth.

Based on the foregoing the defendant requests this Court make a finding of fact the government's only evidence about the download activity referenced in paragraph 30 was contained on the spreadsheet (Doc. 117-5) provided to the defendant and that the only information regarding the downloader was that their user name was "notus."

C.   What the affinat believed

The R&R suggests that paragraph 30 may be accurate based on what the affiant "believed" in reference to paragraph 30.(Doc. 135 P. 26). The R&R goes on to assert that "Here, while agent Garcia could have made it clearer, a common sense reading of paragraph 30 based on the affidavit taken as a whole (and the reasonable inferences to be drawn therefrom) is that Special Agent Garcia was provided this additional data after it had been forensically extracted by others from The Website, and that she believed the data at the time to pertain to Dove." (Doc. 135 P. 26). The R&R fails to recognize that the affiant acknowledges within the affidavit itself that the affiant is not aware of who conducted transactions with "the Website" by stating:

"Based on the instant investigation as described further herein, there is probable cause that **an internet user associated with the SUBJECT PREMISES** has engaged in BTC transactions with BTC addresses within The Website cluster, in amounts that appear to be consistent with payments for "points" on The Website.

(Doc. 83-2 ¶26)(emphasis added).

The affiant acknowledges in paragraph 26 of the affidavit that affiant had no knowledge who was conducting the BTC transactions with the website and refers to the suspect as "an internet user." (Doc. 83-2 ¶26). Four paragraphs later, in paragraph 30, affiant affirmatively states "DOVE" downloaded child pornography.(Doc. 83-2¶30). The R&R's analysis that the affiant "believed" Dove downloaded child pornography but the affiant only believed that an "internet user" set up the account with The Website is illogical. Again, the R&R is asserting facts (the affiant's personal "belief") into the four corners of the affidavit without testimony and cross examination.

Based on the foregoing the defendant requests this Court make a finding of fact the assertions in paragraph 30 were made in reckless disregard for the truth and to excise any reference to speculation as the affiant's beliefs from the order.

D. Expert Unnecessary

The R&R's assertion that Dove should have submitted an expert affidavit is misguided. The only assertions the expert could say is exactly reflected in the correspondence with the government when they acknowledge that the basis for paragraph 30 is the spreadsheet which only identifies "notus" as  the username of the downloader. An expert could only have said an unknown person with the username "notus" downloaded the videos. An expert opinion is not required based on the government

identifying the basis for paragraph 30 and providing the spreadsheet which only identifies a user name.

Based on the foregoing the defendant requests this Court make a finding of fact the assertions in paragraph 30 were made in reckless disregard for the truth and to excise any reference to the defendant's failure to provide expert affidavit from the order.

E.  Shorthand

The R&R again adds facts that are not contained within the four corners of the search warrant and without the benefit of testimony by suggesting agent Garcia's use of "Dove" in paragraph 30 may have been employed as  "shorthand." (Doc. 135 P. 27). The R&R claims that "Under such circumstances, to employ the name Dove as a shorthand in paragraph 30 is not materially false when the affidavit is read as a whole and in context." (Doc. 135 P. 27). There is nothing in the four corners of the affidavit to indicate the use of "DOVE" in paragraph 30 was shorthand. The R&R goes further and suggests that the issuing magistrate would not read it as "DOVE" but would recognize it as shorthand by stating:

> Nor would the issuing magistrate judge have mistakenly inferred from Special Agent Garcia's shorthand reference to Dove in paragraph 30 that law enforcement had definitively identified Dove as the downloader of the child pornography at issue.

(Doc. 135 P. 28).

The R&R  finds that a magistrate reading the following paragraph would not think law enforcement had definitively identified Dove as the downloader of child pornography:

> "On or about October 9, 2018, I received additional data that had been extracted from The Website, which revealed that **DOVE had downloaded approximately 20 child-pornographic videos** on or about August 10, 2017 and approximately 18 child-pornographic videos on or about September 3, 2017……….

Doc. 83-2 ¶30.(Emphasis added).

Astonishingly, the R&R finds that affirmatively stating "DOVE had downloaded approximately 20 child pornographic videos" would not lead a magistrate to believe that law enforcement had definitively identified Dove as the downloader. (Doc. 135 P. 28). This is despite the affiant's use the term "internet user associated with the premises" throughout the affidavit for other assertions.

Based on the foregoing the defendant requests this Court make a finding of fact  that the assertions in paragraph 30 were made in reckless disregard for the truth and to excise from the order any reference that the use of "DOVE" in paragraph 30 was merely shorthand for some other attribution. Further, the defendant requests this Court find that the R&R incorrectly concludes that it is not clear that Dove's challenge to paragraph 30 satisfied the first prong of *Franks*. Dove request this Court find he satisfied the first prong of *Franks* in regards to Paragraph 30 and his other assertions.

**Paragraph 30 and the Second Prong of Franks**

R&R holds that even without ¶30 the remaining information in the affidavit is sufficient to establish probable cause and goes on to bullet point the information the R&R is relying on for probable cause. (Doc. 135 P 28-31).  Some of the factual assertions are incorrect and the defendant believes the legal analysis is flawed. The incorrect factual assertions or omissions include that the individual who made the BTC account had their

identification verified, that Dove asserted the website also had adult pornography and failure to include the information that the affiant failed to attribute any characteristics to Dove indicating he had a sexual interest in children. These will be addressed in turn.

Verified Identity

The R&R incorrectly states: "As required by law, the United States-based BTC exchange *verified Dove's identity*. *Id*. at ¶ 14."( Doc. 135 P. 31). (emphasis added). There is nothing in the four corners of the affidavit indicating that the identity of the person making the BTC account  registered to "Jack Dove" was verified.  ¶14 of the affidavit states "Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act and must collect verifying information of their customers and verify their customers identity." (Doc. 83-2 ¶14). While the law may require the verification of identity there is no indication in the affidavit that the BTC exchanged verified the account maker's identity.

Based on the foregoing the defendant requests this Court make a finding of fact the affidavit did not assert that the user of the BTC account user's identity was verified.

Adult Pornography was on The Website

The R&R incorrectly attributes the assertion that adult pornography was also located on The Website to Dove by stating:

> In an effort to convince the Court otherwise, Dove asserted at the most recent hearing that, without paragraph 30, probable cause is lacking because The Website contained adult pornography in addition to child pornography.

(Doc. 135 P. 33).

21

The affidavit (in paragraph 18) asserted the fact that adult pornography was also on The Website, not Dove. (Doc. 83-2 ¶18).  Dove merely called it to the Court's attention.

Based on the foregoing the defendant requests this Court make a finding of fact the according to the affidavit there is also adult pornography on The Website.

Lack of Evidence of Sexual Interest in Children

The R&R reasserts a portion of the affidavit about characteristics of individuals with sexual interest in children and states "Individuals who have a sexual interest in children or images of children and who utilize the web to access with the intent to view, possess, receive, or distribute images of child pornography almost always possess and maintain their child pornographic materials "for many years" in the privacy and security of their homes or some other secure locations." (Doc. 135 Page 32 citing to *Id*. at ¶¶ 41(c), (d), 42). However the R&R fails to make a finding of fact that the affiant provided the court with no information Dove had sexual interest in children. The affiant stated:

> Based on the following, I believe Dove likely displays characteristics common to individuals who possess or access with intent to view child pornography.

(Doc. 83-2 ¶42).

Rather than list details for her conclusion that Dove likely displays characteristics common to individuals who possess or access with intent to view child pornography, the affiant just boldly asserts that "He likely keeps any child pornography at the Subject Premises, inside his vehicle(s), or, at times, on his person, to enable DOVE to child pornography in a hard copy or electronic form." (Doc. 83-2 ¶42). The affiant asserts "Based on the following" and then nothing follows. (Doc. 83-2 ¶42). The affiant provides

22

no details that Dove has a sexual interest in children and the R&R incorrectly fails to making a finding of fact on this issue.

Based on the foregoing the defendant requests this Court make a finding of fact the affidavit presented no evidence concerning Dove having a sexual interest in children.

**Lack of Probable Cause After Excising Paragraph 30**

Many of the cases cited by the R&R are of scant value in that they make sweeping statements through dictum unrelated to the facts of the case in the opinion. In *U.S. v. Orr*, ___ F. Appx'd ___, 2020 WL 3564626 (11th Cir. 2020) the defendant was in communication with an adult and a child (both played by the same undercover agent) on both a computer and a cell phone both of which were linked to the subject premises. The communication included informing Orr of the child's age (14) and Orr requesting numerous nude pictures of the child in various poses. *Id*. At 3.  The *Orr* court concluded that the affidavit provided a sufficient basis to conclude that there was a fair probability of finding contraband or evidence at Mr. Orr's apartment. *Id.* It demonstrated that Mr. Orr knew "Emily" was a minor and that he was seeking and requesting sexually explicit visual depictions of a minor. *Id.* Texts and emails went on for months with Orr soliciting naked photographs. *Id*. At 16. The search warrant sought evidence of digital devices (as well as child pornography) used to communicate to entice into the production of child pornography the *Orr* case was a child enticement case and did not involve allegedly obtaining child pornography from a website. Included in the evidence that might be found would be devices used to communicate with the undercover detective to prove child enticement case or an attempted production of child pornography case. These devices had already been linked to the defendant and his home. The *Orr* court held:

The affidavit provided a sufficient basis to conclude that there was a fair probability of finding contraband or evidence at Mr. Orr's apartment. It demonstrated that Mr. Orr knew "Emily" was a minor and that he was seeking and requesting sexually explicit visual depictions of a minor. The details regarding Mr. Orr's behavior throughout the investigation, and information regarding the general tendencies of child pornographers based on past investigations, established a nexus between the criminal conduct and Mr. Orr's apartment, indicating that law enforcement would find evidence there related to advertising for, receiving, distributing, and possessing child pornography.

*Id.* at 15, 16.

The *Orr* court did not need proof of child pornography for the search warrant because they had proof of the use of the devices to request child pornography.

The *Orr* court cited *U. S. v. Williams*, 444 F. 3d 1286, 1304 n.87 (11th Cir. 2006). *Williams* addressed not a search warrant but a constitutional challenge to a statute. *Williams* merely asserted in a footnote that several courts have held that affidavits indicating a defendant has joined internet groups where members exchange child pornography provide probable cause to search his home, although there was no evidence of any downloads of illegal child pornography. The *Williams* court assertion is dicta and not binding as this issue was not addressed in the opinion.

*United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004)), *aff'd*, 935 F.3d 1279 (11th Cir. 2019), *as corrected*, (Sept. 4, 2019) is also cited in the R&R. In *Froman* the defendant joined a cite called "Candyman" on January 9, 2001, and remained a member until it was shut down on February 6, 2001. *Id.* at 890. The sole purpose of the Candyman eGroup, was to receive and distribute child pornography and erotica. *Id* .The website enabled members to upload and download images of child pornography. *Id.*

Froman registered a number of screen names with AOL that reflected his interest in child pornography, including Littlebuttsue and Littletitgirly. *Id.*

The *Fromm* court did not hold that a membership alone in a child pornographic website sufficiently establishes probable cause. Rather the *Fromm* court explicitly declined to adopt a universal rule and instead ruled on the particular facts of Fromm's case stating:

> Appellant essentially argues in the abstract that without evidence of actual possession of contraband, probable cause does not exist. ***We decline to adopt such a universal rule***. All we need decide in this case is that given the predominant purpose of this group to engage in collection and distribution of child pornography and the fact specific evidence of Froman's voluntary membership in that group and his interest in child pornography, the affidavit was sufficient to establish probable cause even when we excise the disputed material.

*Id.* at 891.  (Emphasis added.)

In Dove's case, there were no ties to screen names that reflected interest in child pornography or, for that matter, any facts in the affidavit asserting Dove had an interest in child pornography. Further, Fromm's email address was in direct contact with the website whereas this affidavit presented no direct contact between Dove's email and The Website. Finally, the website at issue in Dove's case also contained adult pornography. (Doc. 83.-2 ¶18).

*United States v. Schwinn*, 376 F. App'x 974 (11th Cir. 2010) (per curiam) was also cited by the R&R. The evidence in *Schwinn* included the defendant being a registered sex offender with a conviction stemming from an offense with a minor. Id. at 978. Schwinn had signed up as a member for four websites each containing child pornography. *Id.* at 977. The court noted the website was signed up under Schwinn's name, address, phone number, email address and credit card information combined with

Schwinn's conviction for an offense with a minor made it probable that Schwinn signed up for these four websites. Id. at 978, 979. By contrast in this case we have one website with an innocuous name[3], no direct contact of Dove's personal information to the website, no prior convictions for sexual offenses with children, no evidence of sexual interest in children and a website that also contains adult pornography.

When paragraphs 30, 30a, 30b and 30c are excised from the search warrant affidavit the affidavit contains no information that any transaction made by the "Jack Dove" BTC exchange account with "The Website" was illegal. The BTC transactions referenced in the affidavit could have been for non-criminal activity including, buying a membership and not viewing anything, or buying a membership and viewing and downloading adult pornography. These activities are not illegal and a search warrant for the home would not be justified. A better analogy for this situation is in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In Y*barra* the police received information from a confidential informant that the bartender at a public tavern was in possession of heroin packets. *Id.* at 87-88, 100 S.Ct. 338. Acting on the basis of this information, the police obtained a warrant authorizing them to search the bartender and the tavern. *Id.* at 88, 100 S.Ct. 338. Upon entering the tavern, however, the police also conducted "frisk" searches of the patrons, one of whom was Ybarra. When Ybarra was frisked, the police discovered a cigarette pack containing six tinfoil packets of heroin. *Id.* at 89, 100 S.Ct. 338. Ybarra was subsequently indicted and found guilty of unlawful possession of a controlled substance. *Id*. In reversing the judgment the *Ybarra*

---

[3] The name is innocuous however it has not been revealed. Since it was not identified in the affidavit for the purposes of this motion we need must assume there is no evidence of The Website's name having any relation to child pornography.

court held that probable cause must be particularized with respect to the person searched. *Id.* at 91. Basing probable cause solely on group membership where there maybe be probable cause to search another in the group runs counter to the well-established rule in *Ybarra v. Illinois, Id.* at 91, 100 S.Ct. 338. In this case there was no particularized probable cause as to Mr. Dove or the Subject Premises.

The defendant has shown sufficient evidence to merit a *Franks* hearing and accordingly request this Court modify the report and recommendation as requested and to schedule a *Franks* hearing on the matter.

WHEREFORE, the defendant files his objections to the Report and Recommendation.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

/s/ *Timothy J. Fitzgerald*
Timothy J. Fitzgerald, Esq.
Fla. Bar No. 0780618
400 N. Tampa St. Suite 2840
Tampa, FL  33602
(813) 228-0095
FAX (813) 224-0269
Tjfitz@me.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 18th day of September, 2020:

AUSA Lisa Thelwell
Lisa.thelwell@usdoj.gov

/s/ *Timothy J. Fitzgerald*
COUNSEL