UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No: 8:19-cr-33-CEH-CPT

JACK R. DOVE, III
_____/

## O R D E R

This cause comes before the Court upon the Report and Recommendation filed by United States Magistrate Judge Christopher P. Tuite on September 4, 2020 (the "R&R"). (Doc. 135). In the R&R, Magistrate Judge Tuite recommends that Defendant's Motion for a Hearing Pursuant to *Franks v. Delaware* (the "Motion") (Doc. 83) be denied. (Doc. 135 at 35).

All parties were furnished copies of the R&R and were afforded the opportunity to file objections, pursuant to 28 U.S.C. § 636(b)(1). Defendant Jack R. Dove, III ("Dove") filed his Objections to Magistrate Judge's Report and Recommendation on September 18, 2020 (the "Objection"). (Doc. 141). The Government responded on October 2, 2020. (Doc. 142). Upon consideration of the R&R and this Court's independent examination of the file, it is determined that the R&R should be adopted.

## I.    BACKGROUND

### A. Factual Background

This action arises from an ongoing law enforcement investigation into a website mainly used to host and distribute child pornography and child erotica ("The

Website"). (Doc. 83-2 at ¶¶18, 22–23). The Website is an online child pornography website with over 125,000 unique videos available for its users to download. *Id.* at ¶¶18, 21. Although The Website may contain some adult pornography, law enforcement agents who have examined the website have found that the "overwhelming majority" of the images and videos on it appear to be child pornography or child erotica. *Id.* at ¶18. Indeed, The Website instructs viewers not to upload adult pornography. *Id.*

The Website is located on a darknet. *Id.* A darknet is any online network to which access may be gained only through the use of specific software, configurations, or authorization. *Id.* at ¶16. As such, a darknet is typically not accessible to users of the public, "open" internet. *Id.* Darknet markets are often commercial websites that primarily function as black markets, selling or brokering transactions involving illicit products, such as child pornography. *Id.*

The Website can be accessed using Tor, a computer network designed specifically to facilitate anonymous communications over the internet. *Id.* at ¶¶7, 16, 18. Tor accomplishes this anonymity by bouncing a user's communications around a distributed network of relay computers throughout the world, thereby rendering conventional methods of identifying users obsolete. *Id.* at ¶7. The Website's internet-protocol ("IP") address is hidden because Tor hides the IP addresses of web servers and replaces them with a Tor-based web address. *Id.* Additionally, when a user on Tor accesses The Website, the signal bounces around until it exits the network of

computers via an "exit node." *Id.* at ¶7 n.3. A practical method to trace a user's actual IP address back though the Tor exit-node IP address does not currently exist. *Id.*

A user may create a free account on The Website by providing a username and a password. *Id.* at ¶19. After creating an account, the user may browse previews of videos that are available for download and post text to The Website. *Id.* However, to download videos from The Website, the user must use "points," which are allocated to users by The Website. *Id.* Among other methods, a user who has created an account may earn "points" by either purchasing a "VIP" account with bitcoin ("BTC") or purchasing points incrementally with BTC. *Id.*

BTC is a form of virtual currency, not issued by any government, bank, or company, but controlled through computer software operating via a decentralized, peer-to-peer network. *Id.* at ¶8. BTC can be purchased from BTC virtual currency exchanges using conventional money. *Id.* at ¶14. Those virtual current exchanges doing business in the United States are subject to the Bank Secrecy Act and must collect identifying information of their customers and verify their clients' identities, as well. *Id.*

BTC is sent to, and received from, BTC "addresses." *Id.* at ¶9. Somewhat similar to a bank account number, a BTC address is represented as a lengthy string of case-sensitive, alphanumeric characters. *Id.* A unique private key controls each BTC address, which serves as a cryptographic equivalent of a password or pin needed to access the address. *Id.* Only the holder of a BTC address's private key may authorize

3

a transfer of BTC from that BTC address to another BTC address. *Id.* Users may operate multiple BTC addresses at any given time, thereby allowing the possibility of using a unique BTC address for every transaction. *Id.*

To transfer BTC, the sender transmits a transaction announcement, which is cryptographically signed with the sender's private key, across the peer-to-peer BTC network. *Id.* at ¶10. The only pieces of information transmitted across the network to initiate and complete the transactions are the BTC address of the receiving party and a publicly identified key associated with the sender's private key. *Id.* Consequently, little, if any, personally identifiable information of either the sender or the recipient is transmitted in a BTC transaction. *Id.* However, once the sender's transaction is verified, the transaction is added to the blockchain, which is a decentralized public ledger that records all BTC transactions. *Id.* The blockchain logs every BTC address that has ever received BTC and maintains records for every transaction for each BTC address. *Id.*

Although the identity of the BTC address owner is generally anonymous, analysis of the blockchain can often be conducted to identify the owner of a BTC address. *Id* at ¶11. Blockchain analysis companies conduct this analysis by developing large databases that group BTC transactions into "clusters" through analysis of data underlying BTC transactions. *Id.* at ¶12. As a result of numerous unrelated investigations, law enforcement has found the intelligence provided by these third-party companies to be reliable. *Id.* Consequently, law enforcement can utilize third-party blockchain analysis software to locate BTC addresses that transact at the same

time and "cluster" these addresses together to represent the same owner. *Id.* at ¶13. Further, because the blockchain operates as a searchable public ledger of every BTC transaction, investigators may trace transactions to BTC exchanges. *Id.* at ¶15. Since exchanges collect identifying information of their customers, investigators may then subpoena the exchanges to obtain, at least in some instances, the true identity of the individuals responsible for the transactions. *Id.* at ¶15.

Here, law enforcement agents utilized third-party block chain software to analyze BTC addresses associated with The Website and identified nearly 3,000 unique BTC addresses clustered together ("The Website Cluster"). *Id.* at ¶24. By following a controlled, undercover payment of BTC from an agent's BTC wallet to a BTC addressed on The Website, law enforcement agents corroborated this clustering analysis. *Id.* The third-party blockchain analysis software added this undercover transaction to The Website Cluster. *Id.*

The third-party blockchain analysis demonstrated that, from in or around October of 2015 to in or around February of 2018, The Website Cluster received approximately 411 BTC through 7,786 transactions from 4,255 different BTC addresses worth approximately $324,961. *Id.* at ¶25. Significantly, these payments included BTC payments sent to BTC addresses within The Website Cluster directly from addresses created through virtual currency exchanges. *Id.*

As part of its investigation of The Website, law enforcement agents subpoenaed business records from a BTC exchange based in the United States. *Id.* at ¶27. The records revealed that a BTC exchange account, created on or about November 16,

2016, was registered to "Jack Dove" at a specified property located in Lakeland, Florida (the "Subject Premises") and linked to eight different BTC addresses as well as multiple IP addresses, including IP address 70.127.40.255. *Id.* at ¶¶2, 27. The records for the BTC exchange account also included a telephone number associated with Dove and an e-mail address—jdove@totalonguardprotection.com—affiliated with a Dove-owned business named Total OnGuard Protection, LLC, which listed the Subject Premises as its registered address.[1] *Id.* at ¶¶27, 34 n.10. Additionally, the payment details for the account identified three Master Card debit/credit cards, two of which listed the Subject Premises as a billing address. *Id.* at ¶28.

The blockchain analysis software determined that this BTC account registered to Dove engaged in multiple transactions with a BTC address within The Website Cluster between on or about November 16, 2016, and on or about August 23, 2017. *Id.* at ¶29. Further, additional data extracted from The Website provided to the affiant for the search warrant, Homeland Security Investigations Special Agent Tavey Garcia ("Garcia"), on October 9, 2018, revealed that Dove had downloaded approximately twenty child pornographic videos on or about August 10, 2017, and approximately eighteen child pornographic videos on or about September 3, 2017. *Id.* at ¶30.

Prior to seeking a search warrant for the Subject Premises, law enforcement agents ascertained that: (1) Dove purchased the Subject Premises around March of

---

[1] On June 22, 2017, Dove voluntarily dissolved this business and "created a fictitious business name 'Our Secret Toys,'" with the Subject Premises serving as the registered business address. (Doc. 83-2 at ¶34 n.10).

2011; (2) Dove and another individual with Dove's surname listed the Subject Premises on their driver's licenses; and (3) after receiving a summons, a representative of Charter Communications provided subscriber information for IP address 70.127.40.255, which revealed that the IP address was associated with "Jack Dove" at the Subject Premises between June 6, 2017, and on or about August 18, 2017. *Id.* at ¶¶31–33. Further, in the weeks leading up to the submission of the search warrant, law enforcement agents surveilled the Subject Premises and observed, among other things: (1) a vehicle, of which Dove was the primary driver, registered to an individual associated with Dove and his business; and (2) another vehicle associated with the Subject Premises. *Id.* at ¶¶34–37.

On November 27, 2018, a magistrate judge issued a search warrant for the Subject Premises. (Doc. 83-1 at 1). The search warrant, supported by Garcia's affidavit, authorized agents to search for evidence, contraband, or property relating to the distribution, receipt, or possession of child pornography. (Doc. 83-2 at 1). Upon executing the warrant, the Government seized several electronic digital devices from the Subject Premises that contained child pornography. (Doc. 93 at 7–8); *see* (Doc. 1 at ¶¶17–21).

### B. Procedural Background

Dove was indicted on charges of: (1) receiving a visual depiction involving the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and (2) possessing and accessing a visual depiction involving the use of a prepubescent minor who had not attained twelve years of age engaging in

sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Doc. 17 at 1–2).

Dove filed the Motion on January 3, 2020, seeking a *Franks* hearing and, following that hearing, an order suppressing all evidence obtained or derived from or as a result of the search of the Subject Premises. (Doc. 83 at 1). Dove contended that the Garcia affidavit, which was offered in support of the warrant, "omitted material facts and contained statements made in reckless disregard for the truth which, when omitted/added from/to the affidavit would have changed the magistrate's decision to sign the search warrant authorization." *Id.* The Government responded in opposition, (Doc. 93), and Dove replied, (Doc. 117). The magistrate judge held a series of initial hearings on the Motion to address, in part, Dove's request for the Government to disclose certain records that he believed were relevant to the Motion. (Doc. 135 at 3). Following Dove's receipt of those records, the magistrate judge conducted another hearing directed principally at the issues raised in Dove's reply. *Id.* Thereafter, the magistrate judge issued the R&R, in which he recommended denying the Motion. (Doc. 135 at 35). Dove now objects to numerous findings by the magistrate judge, discussed below (Doc. 141 at 6–27), and the Government responds in opposition to those objections, (Doc. 142 at 4–5).

## II.    LEGAL STANDARD

Congress vested Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions. 28 U.S.C. § 636(b)(1)(A). Magistrate judges have the authority to

submit proposed findings of fact and recommendations for disposition by an Article III judge. *Id.* § 636(b)(1)(B). When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C). *See also* Fed. R. Crim. P. 59(b)(3). In the absence of specific objections, there is no requirement for a district judge to review factual findings *de novo*, *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the district judge may accept, reject, or modify, in whole or in part, the findings and recommendations, 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). The district judge must review legal conclusions *de novo*. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Sch. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019). Finally, objections to a magistrate judge's report and recommendation must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019) (internal quotation marks omitted).

## III.   ANALYSIS

### A. Probable Cause and *Franks*

At the outset, a brief review of probable cause and the guiding principles of *Franks* is warranted.

9

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam). Probable cause, as the name implies, "deal[s] with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

An affidavit supporting a search warrant is presumed valid. *Franks*, 438 U.S. at 171. A defendant may challenge the validity of a search warrant through the procedure first articulated by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155.

This principle extends to omissions, as a defendant is entitled to a *Franks* hearing where he or she makes a "substantial preliminary showing" that "the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit," *see United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980),[2] and that inclusion of the alleged omissions would have prevented a finding of probable cause, *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) (per curiam). "[N]egligent omissions will not undermine the affidavit," *Martin*, 615 F.2d at 329, nor will insignificant or immaterial omissions invalidate a warrant, *United States v. Sims*, 845 F.2d 1564, 1571 (11th Cir. 1988); *United States v. Williams*, 146 F. App'x 425, 430 (11th Cir. 2005) (per curiam).

Therefore, to be entitled to a *Franks* hearing, a defendant must make a "substantial preliminary showing" that "(1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting *Franks*, 438 U.S. at 155–56). A defendant must satisfy each of these prongs to be entitled to a *Franks* hearing. *See id.*

The "substantial preliminary showing" required by *Franks* is "not lightly met." *Id.* at 1294. Indeed, the Supreme Court articulated in *Franks*:

---

[2] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer or proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement or supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

"[I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72. However, "if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." *Id.* at 172.

With these principles in mind, the Court turns to Dove's enumerated objections.

## B. Master Card Credit/Debit Cards

In evaluating Dove's arguments that the Master Card credit/debit card information in Garcia's affidavit is false or incomplete, the magistrate judge concluded that Dove failed to make a substantial preliminary showing that Garcia had provided the inaccurate information intentionally or in reckless disregard of the truth, or that excluding such information would preclude a finding of probable cause. (Doc. 135 at 16). Dove now asks the Court to reject this determination and find that paragraph 28, which addresses the credit/debit card information, "contained an inaccurate statement that was provided in reckless disregard for the truth and excluding that information

12

and other information contained in this objection would preclude a finding of probable cause." (Doc. 141 at 7). The Court will overrule this objection.

Paragraph 28 of the affidavit states that "[t]he above-mentioned [BTC account] contained the following payment card details": (1) a Master card debit card, ending in 2019, issued by Bank of America, which listed the Subject Premises as the billing address; (2) a Master card, ending in 2020, issued by Citibank, which listed the Subject Premises as the billing address; and (3) a Master card debit card, ending in 2021, issued by Bank of America. (Doc. 83-2 ¶28). The magistrate judge noted, per the Government's response to the Motion, the Government's concession that the listed card numbers are incorrect, insofar as they represent the cards' years of expiration, not the last four digits of the cards' account numbers. (Doc. 135 at 16). In concluding that Dove failed to carry his burden for a *Franks* hearing, the magistrate judge found the misstated cards numbers "appear to represent nothing more than a scrivener's error and are hardly relevant, much less vital" to the probable cause determination. *Id.*

Dove argues that the magistrate judge made two faulty conclusions: (1) the magistrate judge accepted the Government's assertion in its response that the incorrect credit card numbers constituted scrivener's errors in contravention of *United States v. McMurtey*, 704 F.3d 502 (7th Cir. 2013); and (2) the magistrate judge used the faulty debit/credit card numbers to link Dove to the Subject Premises. (Doc. 141 at 9). Both arguments fail.

In *McMurtey*, the district court held a "pre-*Franks* hearing," the purpose of which was to determine whether the defendant had made a substantial preliminary showing

of intentional or reckless misrepresentations in the warrant affidavit and, thus, whether a *Franks* hearing should be held. 704 F.3d at 507. During this "pre-*Franks*" hearing, the district court permitted the government to call an officer to respond to the defendant's allegations, the express purpose of which was to bolster the affidavit supporting the warrant and the issuing judge's probable cause finding based on that affidavit. *Id.* The district court prevented the defendant from conducing cross-examination of the officer regarding the basis for the affidavit. *Id.* at 508. After this limited cross-examination, the district court relied upon the officer's testimony to find that a *Franks* hearing was not needed. *Id.* The Seventh Circuit vacated and remanded, explaining that the "pre-*Franks*" hearing went astray when the district court allowed the government to present new evidence to explain the discrepancies identified by the defendant, but did not allow the defendant a full opportunity to challenge or rebut that evidence. *Id.* at 509–10. The court also noted that the district court's restrictions on cross-examination would have been insignificant if the defendant had not made a sufficient showing to obtain a full *Franks* hearing, but the defendant had already done so by highlighting certain discrepancies.

Dove's argument is simply that the magistrate judge accepted the Government's *argument* in its response that these numbers were scrivener's errors, not that the magistrate judge improperly considered the Coinstar record attached to the response

to bolster the affidavit and as a basis to deny the *Franks* hearing.[3] In any event, *McMurtey* is not binding on this Court. And, most importantly, the magistrate judge's conclusion here was grounded in his finding that Dove failed to carry his *Franks* burden. The Court agrees with this finding.

Dove next argues that, because the magistrate judge concluded that the card numbers represented in the affidavit were scrivener's errors, it is unclear which debit/credit cards the magistrate judge references throughout the R&R when mentioning that certain debit/credit cards were associated with the Subject Premises. (Doc. 141 at 8–9). In other words, Dove argues that because the debit/credit card numbers were incorrect, Garcia's representation that certain debit/credit cards were linked to the BTC account is incorrect and, therefore, the magistrate judge erred. But this argument is unavailing. As the magistrate judge explained, the fact that these cards' numbers are incorrect does not conclude the inquiry: Dove must make a substantial preliminary showing that Garcia provided this inaccurate information intentionally or in reckless disregard of the truth, and that excluding this information would preclude a finding of probable cause. (Doc. 135 at 16). The magistrate judge found that Dove failed to make this showing, and, upon review, the Court agrees. As such, these objections will be overruled.

## C. Charter Communications Subpoena Response

---

[3] Later in his argument, Dove argues that he can "only *assume* that the R&R is inappropriately relying on the information not contained in the four corners of the affidavit but, rather contained in this Response and exhibits to the response." (Doc. 141 at 9) (emphasis added).

Garcia claimed in the affidavit that, pursuant to a subpoena, a representative of Charter Communications provided subscriber information for IP address 70.127.40.255, which revealed that the IP address was associated with "Jack Dove" at the Subject Premises between June 6, 2017, and or about August 18, 2017. (Doc. 83-2 at ¶33). Dove argued in the Motion that Garcia failed to inform the issuing magistrate of a disclaimer from Charter Communications in response to a subpoena. (Doc. 83 at 9–10). The disclaimer provided:

> Charter's billing and customer records from which the above information is obtained are subject to human error and Charter cannot always guarantee the accuracy of such records. You should not rely solely on this information and should always independently corroborate the information Charter provides with other information you have concerning the identity of the individual.

(Docs. 83 at 10; 83-5 at 1).

In the R&R, the magistrate judge found that the inclusion of the disclaimer would not undermine the probable cause supporting the warrant. (Doc. 135 at 21). Indeed, the magistrate judge reasoned, Garcia acted consistently with that disclaimer, as she did not rely solely on the Charter information to link Dove to the Subject Premises, but rather independently corroborated the connection through multiple other means, such as Dove's driver's license, his BTC account records, property records for the Subject Premises, and surveillance of the Subject Premises. *Id.*

Dove objects and asks the Court to find that Garcia's omission of the disclaimer constituted a material omission and that including the disclaimer, "along with the other assertions in the objection," would preclude a probable cause finding. (Doc. 141

at 10). According to Dove, the magistrate judge erred by failing to address that Garcia did not inform the issuing magistrate of the lack of reliability of the records. *Id.* at 11. Dove further contends that the magistrate judge found "no proof" that Garcia confirmed the IP address itself was linked to the Subject Premises. *Id.* Finally, Dove contends that Garcia provided no information to the issuing magistrate that indicated any independent verification of the IP address to the Subject Premises. *Id.*

Upon review, the Court agrees with the magistrate judge that Dove failed to carry his burden. Although the magistrate judge focused only on whether the inclusion of the disclaimer would destroy the probable cause finding, the Court agrees with this conclusion. The magistrate judge correctly recognized that Garcia did not rely solely on the information from Charter, but rather independently corroborated Dove's connection to the Subject Premises through other means, including the BTC account records, Dove's driver's license, and property records for the Subject Premises. Again, Dove, as the party seeking a *Franks* hearing, carries the burden of making a substantial preliminary showing that: (1) Garcia deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the magistrate's probable cause finding. Dove has not carried that burden.

Dove's objections to the R&R do not alter this conclusion. The disclaimer stated only that Charter's "billing and customer records from which the above information is obtained" was *subject* to human error, that Charter could not *guarantee* the accuracy of the records, and the recipient should independently corroborate the provided

17

information. (Doc. 83-5 at 1). The disclaimer did not expressly state that the information was unreliable. As discussed, the affidavit shows that Garcia performed independent corroboration. For that reason, Dove's second and third objections here—attacks upon any lack of proof of independent corroboration in the R&R—fall short and misunderstand the burden. Thus, these objections will be overruled.

### D. Paragraph 30 of Affidavit

Dove previously challenged paragraph 30 of the affidavit in seeking a *Franks* hearing. (Docs. 83 at 5–7; 117 at 6–11). Paragraph 30 provides, in relevant part:

> On or about October 9, 2018, I received additional data that had been extracted from The Website, which revealed that DOVE had downloaded approximately 20 child-pornographic videos on or about August 10, 2017, and approximately 18 child-pornographic videos on or about September 3, 2017.

(Doc. 83-2 at ¶30).

Upon consideration and a detailed analysis of Dove's arguments, the magistrate judge explained that whether Dove's challenge to the averments in paragraph 30 satisfied the first prong of *Franks* was unclear. (Doc. 135 at 28). However, the magistrate judge explained that the issue need not be resolved because Dove's challenge failed to meet the second prong of *Franks. Id.* The magistrate judge found that even without paragraph 30, the remaining information contained in the affidavit was sufficient to establish probable cause for the requested warrant. *Id.*

Dove now objects to this finding by the magistrate judge and asks the Court to find that the assertions in paragraph 30 were made in reckless disregard for the truth

18

and strike the contents of paragraph 30 from the affidavit. (Doc. 141 at 12). Dove makes a series of interrelated arguments in support. *Id.* at 13–27. The Court addresses each argument below. For the reason stated below, the Court will overrule these objections.

### i.   *Government Assertions*

In examining Dove's challenge to paragraph 30, the magistrate judge first quoted paragraph 30, articulated Dove's argument, and briefly summarized the Government's response. (Doc. 135 at 22–23). In doing the latter, the magistrate judge explained that the Government had "countered at the most recent hearing that all of the information contained in paragraph 30 is true" and that the Government had represented that the "additional data" in paragraph 30 "was forensically linked to Dove at the time." *Id.* at 23. The magistrate judge then proceeded to explain the bases for rejecting Dove's request for a *Franks* hearing.

Dove argues that the magistrate judge's mention of the Government's response at the hearing extends beyond the four corners of the affidavit and is "contradicted by pleadings by the government" and "discovery from the government." (Doc. 141 at 14). Dove also asserts that this information is provided by the Government "to augment the affidavit" with Dove's inability "to cross examine the witness." *Id.*

A review of the magistrate judge's thorough analysis does not evidence that the magistrate judge relied upon these representations by the Government. Instead, the magistrate judge merely explained the Government's response to Dove's arguments. Further, the magistrate judge separately found that the affidavit established probable

cause for the warrant without paragraph 30 and, as discussed below, Dove's objections to that finding will be overruled. Thus, this objection will be overruled.

ii. *Government's Knowledge of Downloader*

Dove previously argued that Garcia made the statements in paragraph 30 in reckless disregard of the truth because, upon Dove's request, the Government's provision of the "additional data" referenced in paragraph 30 indicated that a user with the username "notus" had downloaded child pornography. (Doc. 117 at 9–10). Based on the provision of this record, which was a spreadsheet, Dove argued that there was no information regarding him, a physical address tied to him, or an IP address tied to him or the Subject Premises. *Id.* While the magistrate judge expressed some surprise that the Government did not have any discovery related to the circumstances surrounding Garcia's receipt of the "additional data," he nonetheless articulated several aspects of Dove's argument that gave him pause. (Doc. 135 at 24–28). Ultimately, the magistrate judge explained that it was not clear that Dove's challenge to paragraph 30 satisfied the first prong of *Franks*, but, in any event, resolution of this issue was unnecessary because the challenge did not meet the second prong of *Franks*. *Id.* at 28.

Dove now argues that the magistrate judge "fail[ed] to find that [the] government's response to discovery requests concerning the assertions in [paragraph] 30 never identified Dove as the downloader of child pornography." (Doc. 141 at 15). Dove claims that the magistrate judge failed to "address specific discovery information provided by the government that refutes the assertion in paragraph 30." *Id.* In support,

20

Dove repeats his argument from earlier nearly verbatim. *Id.* at 15–17. Accordingly, Dove asks the Court to find that the spreadsheet served as the Government's only evidence regarding the download activity referenced in paragraph 30 and that the only information regarding the downloader of the listed content was a user with the username "notus." *Id.* at 17.

This argument is unavailing. The substance of Dove's argument now is nearly identical to the argument he made before the magistrate judge.[4] The magistrate judge expressly summarized Dove's argument before identifying problems with the argument. (Doc. 135 at 23). As framed, Dove does not challenge a factual finding by the magistrate judge, but, instead, the magistrate judge's purported *failure* to make a factual finding. But the intended consequence of Dove's request appears to be to undermine the probable cause for the warrant.

"[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, 438 U.S. at 164–65 (alteration and emphasis in original). "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165. However, it must

---

[4] The magistrate judge found that, "as was apparent at the most recent hearing, [Dove] does not even dispute that he is 'notus.'" (Doc. 135 at 25). However, Dove "does dispute that he is [notus] and further disputes that he ever indicated that he was 'notus.'" (Doc. 141 at 16 n.2). Regardless, this dispute does not alter the Court's conclusion.

be "truthful" in that "the information put forth is believed or appropriately accepted by the affiant as true." *Id.* Thus, as the magistrate judge articulated, the operative inquiry is whether Garcia believed or appropriately accepted the information as true, not whether Garcia *correctly* identified Dove as the downloader of the child pornography. (Doc. 135 at 25). Based on his review, the magistrate judge found that Garcia believed that the data at the time pertained to Dove. *Id.* at 26. Upon review, and in light of the Court's overruling of Dove's objections directed towards the magistrate judge's finding regarding the second prong of *Franks*, the Court declines to disturb this finding or make the factual finding requested by Dove.

### iii. Garcia's Belief and Shorthand Reference

Relatedly, Dove also objects to the magistrate judge's finding that reviewing the affidavit as a whole demonstrates that Garcia believed that the "additional data" referenced in paragraph 30 pertained to Dove. (Doc. 141 at 17). Dove argues that the magistrate judge failed to recognize that Garcia acknowledged in the affidavit that she did not know who conducted transactions with The Website. *Id.* Dove premises this argument on a comparison of Garcia's assertions in paragraph 26 and paragraph 30, in which she stated in the former that "an internet user associated with the SUBJECT PREMISES" had "engaged in BTC transactions with BTC addresses within The Website cluster," whereas she referenced Dove by name in the latter. *Id.* at 17–18. Dove claims that the magistrate judge "assert[ed] facts . . . into the four corners of the affidavit without testimony and cross examination." *Id.* at 18. As such, Dove claims that the statements in paragraph 30 were made in reckless disregard of the truth and

22

the Court should excise any reference to speculation as to Garcia's beliefs from the R&R. *Id.*

Dove recycles support for this argument from an argument made in the Motion. (Doc. 83 at 6–7). Upon review, the magistrate judge did not inject facts into the affidavit, but instead conducted an analysis of the affidavit as a whole. *See United States v. Joyce*, No. 11-80155-CR, 2012 WL 7148366, at *2 (S.D. Fla. Dec. 12, 2012) ("An evaluation of probable cause entails reading the application and affidavit as a whole, not reading words and phrases . . . out of the context in which they were written."), *report and recommendation adopted*, No. 11-80155-CR, 2013 WL 560817, at *1 (S.D. Fla. Feb. 13, 2013).

The magistrate judge addressed Dove's argument contrasting paragraph 26 and paragraph 30, finding that employing Dove's name "as a shorthand" in paragraph 30 was not materially false upon review of the affidavit as a whole and the surrounding context and that this argument regarding the "shorthand" reference to Dove in paragraph 30 was unpersuasive. (Doc. 135 at 27) (quoting Doc. 83 at 6). Specifically, the magistrate judge explained that it was reasonable and logical to conclude, particularly under the probable cause standard, that "an internet user engaging in BTC transactions using a BTC account registered only in Dove's name (as alleged in the affidavit) was Dove himself, particularly given that this account also listed Dove's business email address, his telephone number, and two debit/credit cards billed to the Subject Premises where Dove resided." *Id.* The magistrate judge also found that the issuing magistrate would not have mistakenly inferred from Garcia's shorthand

reference to Dove that "law enforcement had definitely identified Dove as the downloader of the child pornography," especially since Garcia stated in paragraph 26 that an internet user associated with the Subject Premises had engaged in the specified BTC transactions within The Website Cluster and that the warrant was for the Subject Premises, not Dove's person. *Id.* at 28.

Dove contends that the magistrate judge's suggestion that Garcia's use of "Dove" in paragraph 30 was "shorthand" served to "add facts that are not contained within the four corners of the search warrant and without the benefit of testimony." (Doc. 141 at 19). Dove also attacks the magistrate judge's conclusion that Garcia's reference to "Dove" in paragraph 30 would not lead the issuing magistrate to infer that law enforcement had definitely identified Dove as the downloader of the child pornography, on the basis that Garcia utilized "'internet user associated with the premises' throughout the affidavit for other assertions." *Id.* at 20. As such, Dove asks the Court to find that the assertions in paragraph 30 were in reckless disregard for the truth and to excise from the R&R any reference to the use of "Dove" in paragraph 30 as "shorthand." *Id.*

Again, the magistrate judge's analysis was grounded in a review of the affidavit as a whole and in context, and Dove does not sufficiently articulate the basis for his argument that this analysis added facts, aside from generally claiming that "nothing in the four corners of the affidavit" indicates that this use was "shorthand." *Id.* at 19. Upon review, the magistrate judge's thorough analysis withstands these attacks and,

24

in any event, the Court overrules Dove's objections to the magistrate judge's finding that Dove has failed to meet the second prong of *Franks*, as discussed below.

    *iv.   Use of Expert*

   Dove objects to the R&R on the basis that the magistrate judge's "assertion that Dove should have submitted an expert affidavit is misguided." (Doc. 141 at 18). Dove asserts that the expert could say only that the basis for the "additional data" reference in paragraph 30 is the spreadsheet identifying "notus" as the username of the downloader, that an unknown person with the username "notus" downloaded the videos, and that an expert opinion is not required "based on the government identifying the basis for paragraph 30 and providing the spreadsheet which only identifies a user name." *Id.* at 18–19. On this basis, Dove asks the Court to find that the assertions in paragraph 30 are in reckless disregard for the truth and excise from the R&R any reference to Dove's failure to provide an expert affidavit. *Id.* at 19.

   But Dove seems to misinterpret the R&R. The magistrate judge did not state that Dove should have submitted an expert affidavit, but instead commented that it was noteworthy that, despite retaining his own computer forensic expert, Dove, as the party seeking a *Franks* hearing, did not tender any affidavits or other reliable witness statements to support his challenge. (Doc. 135 at 26). "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained" by the defendant seeking a *Franks* hearing. *Franks*, 438 U.S. at 171. The magistrate judge stated that Dove had not provided a satisfactory explanation as to why he had not included any such affidavits and statements with his submissions.

(Doc. 135 at 26). Dove claims now that such affidavits or statements would not support his request. This objection will be overruled.[5]

*v. Second Prong of* Franks

The magistrate found that Dove's challenge did not meet the second prong of *Franks*, as even without paragraph 30, the remaining information in the affidavit was sufficient to establish probable cause for the warrant. *Id.* at 28. The magistrate judge performed a thorough analysis of the remaining averments in the affidavit upon removal of paragraph 30. *Id.* at 29–32. Dove now contends that "[s]ome of the factual assertions are incorrect" and "the legal analysis is flawed." *Id.* at 20. These arguments are unavailing.

First, Dove argues that the magistrate judge incorrectly found that the United States-based BTC exchange verified Dove's identity, as there is nothing within the four corners of the affidavit indicating that the identity of the person making the BTC account registered to "Jack Dove" was verified. (Doc. 141 at 21). However, the magistrate judge made this finding in the context of evaluating the remaining paragraphs of the affidavit, upon removal of paragraph 30, and *the reasonable inferences to be drawn therefrom*, in determining whether there was a "fair probability" that evidence, contraband, or property relating to the distribution, receipt, or possession of

---

[5] Before addressing the magistrate judge's finding regarding his failure to meet the second prong of *Franks*, Dove argues that, based on all the arguments regarding paragraph 30 analyzed thus far, the Court should find that the magistrate judge incorrectly concluded that it was not clear that Dove's challenge to paragraph 30 satisfied the first prong of *Franks*. (Doc. 141 at 20). Based on the analysis herein, this argument is unavailing.

child pornography would be found at the Subject Premises at the time the issuing magistrate signed the warrant. (Doc. 135 at 31). In paragraph 14 of the affidavit, Garcia states that virtual currency exchanges based in the United States are regulated under the Bank Secrecy Act "and must collect identifying information of their customers *and verify their clients' identities*." (Doc. 83-2 at ¶14) (emphasis added). Records subpoenaed from a United States-based currency exchange revealed a BTC account, created on or about November 16, 2016, registered to "Jack Dove" at the Subject Premises, with an e-mail address and telephone number associated with Dove, and with debit/credit cards associated with the Subject Premises. *Id.* at ¶¶27–28. Citing paragraph 14 of the affidavit, the magistrate judge found that a reasonable inference to draw from the affidavit in assessing the existence of probable cause was that the United States-based BTC exchange had verified Dove's identity. Given the magistrate judge's analysis and citation to paragraph 14, the Court does not construe the R&R as finding that the affidavit expressly states that the currency exchange verified Dove's identity, only that a reasonable inference could be made that the exchange did so. Because the affidavit speaks for itself, the Court declines to expressly find that the affidavit did not assert that the identity of the BTC user's account was verified.

Second, Dove contends that the magistrate judge erred by attributing the assertion that adult pornography was also located on the website to Dove, as paragraph 18 of the affidavit asserted that the adult pornography was on the website and Dove merely called it to the Court's attention. (Doc. 141 at 21–22). As such, Dove asks the Court to find, according to the affidavit, that adult pornography also exists on

The Website. *Id.* at 22. The affidavit states that "[w]hile there may be some images of adult pornography accessible on The Website, the *overwhelming majority* of images and videos observed by law enforcement agents appear to be of child pornography or child erotica." (Doc. 83-2 at ¶18) (emphasis added). The affidavit also states that The Website is used to host and distribute images and videos depicting child pornography and child erotica. *Id.* Further, the upload page on The Website instructs user to avoid uploading adult pornography. *Id.* The affidavit speaks for itself and clearly indicates that there may be some images of adult pornography accessible on The Website. The Court declines to make any additional finding.

Third, Dove argues that the magistrate judge failed to find that Garcia provided the issuing magistrate with no information that Dove had sexual interest in children. *Id.* at 22. As such, Dove now requests the Court to make a finding to this effect. *Id.* at 23. In evaluating the remaining paragraphs of the affidavit upon removal of paragraph 30, and drawing all reasonable inferences therefrom, to analyze the existence of probable cause, the magistrate judge highlighted assertions by Garcia, based on her investigative experience, regarding the behavior of individuals who have a sexual interest in children or images of children. (Doc. 135 at 31). In the affidavit, after she described characteristics and behaviors common to individuals who utilize the web with the intent to view, possess, receive, or distribute images of child pornography, Garcia stated her belief, "[b]ased on the following," that Dove likely displayed characteristics common to those individuals. (Doc. 83-2 at ¶¶41–42). Dove contends

that "nothing follows" this assertion and that Garcia provides no details that Dove had a sexual interest in children. (Doc. 141 at 22–23).

By this challenge, Dove seeks to undercut the existence of probable cause for the warrant. The magistrate judge evaluated the specified paragraphs in determining whether probable cause existed without paragraph 30. (Doc. 135 at 28–31). He determined that a fair probability existed that evidence, contraband, or property relating to the distribution, receipt, or possession of child pornography would be found at the Subject Premises at the time of the warrant's signing. *Id.* at 32. Upon review, this argument is unavailing, and the Court declines to make the specified finding.

Finally, Dove attacks certain cases relied upon by the magistrate judge in the R&R and argues that when paragraph 30 is excised from the affidavit, the affidavit contains no information that any transaction made by the "Jack Dove" BTC exchange account with The Website was illegal. *Id.* at 23–26. The magistrate judge performed a detailed analysis of those pertinent paragraphs in the affidavit, and the reasonable inferences that could be drawn therefrom, following the removal of paragraph 30. Based on this analysis, the magistrate judge concluded that Dove had failed to satisfy the second prong of *Franks*. (Doc. 135 at 28–33). The magistrate judge also rejected Dove's argument that the affidavit lacked probable cause because, in addition to an "overwhelming" presence of child pornography, the website also contained some adult pornography. *Id.* at 33–34. The magistrate judge noted that the affidavit demonstrated that The Website "principally peddled child pornography and actively discouraged the uploading of adult pornography." *Id.* at 34.

Dove's arguments and attempts to distinguish some of the cases relied upon by the magistrate judge do not warrant a different conclusion than the conclusion reached by the magistrate judge. Upon review, the Court agrees with the magistrate judge's findings. Probable cause "deal[s] with probabilities," and the totality of the circumstances allowed a conclusion that a "fair probability" existed that "contraband or evidence" relating to the distribution, receipt, or possession of child pornography would be found at the Subject Premises at the time of the warrant's signing. *Gates*, 462 U.S. at 231, 238. Even without paragraph 30, the remaining information in the affidavit was sufficient to establish probable cause for the requested warrant. Dove's objections here will be overruled.

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Defendant's Objections to Magistrate Judge's Report and Recommendation (Doc. 141) are **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Christopher P. Tuite (Doc. 135) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this order for all purposes, including appellate review.

3. Defendant's Motion for a Hearing Pursuant to *Franks v. Delaware* (Doc. 83) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on March 5, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Magistrate Judge Christopher P. Tuite
Counsel of Record and Unrepresented Parties, if any