UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.

CASE NO. 8:19-cr-33-T-36CPT

JACK R. DOVE, III.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Jack R. Dove, III., by and through the undersigned counsel and pursuant to Chapter 18, United States Code Section 3553(a), moves this Honorable Court for downward variance form the otherwise applicable guideline range, for the reasons set forth herein, and in support states as follows:

Background of Case

Mr. Dove was arrested for the offense on November 30, 2018.(Doc. 1). On December 7, 2018, Mr. Dove was released on pretrial release conditions including electronic monitoring. (Doc. 7). Mr. Dove has not violated any conditions of pretrial release in 30 months of electronic monitoring. The case proceeded to trial on March 22, 2021. (Doc. 196). On Friday March 26, 2021, the defendant enter a guilty pleas to Count one and two of the Indictment and a Report and Recommendation recommending accepting those pleas was issued. (Doc. 210). On March 29, 2021, the District court accepted the guilty plea. (Doc. 218). The Presentence Report current calculates the applicable Guideline range at a level 33

category I corresponding to an advisory guideline range of 135-168 months. (Doc. 224 ¶82). Count one has a 5-year mandatory minimum sentence and has a twenty year maximum; Count two has a twenty year maximum. (Id. ¶81).

Personal Background of Defendant

Mr. Dove is 40 years old. (Id.  ¶47). He was born in Michigan to married parents and is one of three children born to that union. (Id. ¶47). He grew up extremely poor and with a father who was physically abusive to his mother, his sisters and him. (Id. ¶48). Following another violent abusive episode of Mr. Dove's father toward the family members, Mr. Dove and his mother moved out of the home and moved to Florida. (Id. ¶48).

Mr. Dove did not communicate with his father for approximately four years. (Id. ¶50). When Mr. Dove reached out to his father to have his father explain his behavior Mr. Dove's father insisted that he was a good father and that the children were bad kids.  (Id. ¶50). The relationship never recovered.

Records indicate Mr. Dove left school several years before graduating. (Id. ¶70,71). Mr. Dove indicates he left school to work and  start helping the family financially. (Id. ¶70). He became a door-to-door salesman selling vacuum cleaners and satellite dishes.  (Id. ¶74). After moving to Florida Mr. Dove began working for U.S. Security Associated, Inc. as a security guard. (Id. ¶75). Mr. Dove performed well in the job and, through a series of promotions, became regional district manager. (Id. ¶75). Mr. Dove worked for U.S. Security Associated, Inc. for 13 years. and left to start his own company. From 2014 to 2017 Mr. Dove owned his own

security company, which he sold in 2017. (Id. ¶76). Mr. Dove briefly sold real estate before becoming a long-distance truck driver which was his occupation at the time of his arrest. (Id. ¶¶78).

In 2011 Mr. Dove married to his current wife, Melissa Dove. (Id. ¶ 54). Mr. Dove and his wife have five children. (Id. ¶¶53,54). Mr. Dove is forty years old and suffers from health concerns including hypertension, diabetes and significant back pain. (Id. ¶¶ 61-63). He is on a myriad of medications. (Id.¶63).

Motion for a Downward Variance from the Advisory Guidelines Range

Mr. Dove will move for a downward variance from the otherwise applicable advisory guideline range based on his personal characteristics, pertinent policy statements and the need to avoid unwarranted sentencing disparity. He will briefly address the legal basis for a variance and the specific facts pertaining to him that justify a variance.

The Eleventh Circuit reemphasized the wide discretion district courts enjoy in determining whether variances are appropriate. *See United States v. Rosales-Bruno,* 789 F. 3d 1249 (11th Cir. 2015). Although district courts must consider all available § 3553(a) factors, they need not give all the factors equal weight. *Id. at 1254.* (Citation omitted). "Instead, the sentencing court 'is permitted to attach "great weight" to one factor over others.'" *Id., quoting Gall v. United States,* 552 U.S. 38, 57 (2007). Likewise, although district courts must consider the advisory guidelines range, "it is only one of a dozen or so factors that the court must take into account." *Id.* at 20 (citation omitted). Moreover, "The Supreme Court has

3

been clear that "[t]he Guidelines are not the only consideration.... Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the §3553 factors to determine whether they support the sentence requested by a party.'" *Id., quoting Gall,* 552 U. S. at 50. In fact, "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." *Id.*

A. <u>Nature and Circumstances of the Offense</u>

First, §3553(a) instructs this Court to consider the specific nature and circumstances of the offense at issue in determining a fair and reasonable sentence. This is a serious felony offense, but is non-violent and was limited in scope, taking place over a period of less than 2 years.  Mr. Dove in no way intends to undermine or minimize the seriousness of the offenses to which he has pleaded guilty which is criminal and reprehensible; however, they do not constitute a violent offenses and this fact should be considered by the court in determining the reasonableness of a sentence under the circumstances.

The circumstances of the offense involved the use of a computer which increased the advisory guideline range by two levels pursuant to USSG §2G2.2(b)(6). However, nearly every offense of this nature is committed with the use of a computer. The enhancement is antiquated and does not reflect conduct that should be enhanced above the run of the mill case of this nature. The guideline

enhancement is not based on any empirical data (which will be addressed further below) and the court may exercise discretion and vary two levels downward to account for this outdated enhancement.

B. <u>Characteristics of the Offender</u>

Next, § 3553(a) instructs the Court to consider Mr. Dove, as an individual to determine a fair and reasonable sentence. In evaluating Mr. Dove as an individual, the court should account for his lengthy history of law-abiding behavior, his family circumstances during his upbringing, his outstanding history of gainful employment, his health conditions, and his network of supportive family and friends.

1. <u>No Prior Criminal History</u>

While awarding defendants generally some credit for leading relatively crime-free lives, the Criminal History Category of the Sentencing Guidelines does not account for the length of time a particular defendant refrains from criminal conduct. Thus, for example, the guidelines do not distinguish between a nineteen-year-old and a forty-year-old, both of whom have led crime-free lives and consequently are assigned the same low Criminal History Category. Although age [by itself] is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose. Mr. Dove is

forty years old and has no prior criminal history. The Court should consider his long history as a law-abiding citizen in fashioning a reasonable sentence.

2. Personal Background

In addition, the Court should consider the circumstances under which Mr. Dove was raised. Mr. Dove was raised in a home where physical abuse was frequent and he had a tumultuous home life. Accordingly, Mr. Dove was raised without an adequate father figure during the most formative years of his life. He left school early to help support his family. Mr. Dove does not mean to use his upbringing as an excuse for his behavior, but rather indicates that forces beyond his control did contribute to the decisions he has made and his present legal situation. The court can and should consider his upbringing in evaluating his conduct and whether a substantial prison term will serve the interests of justice.

3. Employment History

Mr. Dove has always maintained in gainful employment. Mr. Dove dropped out of school without finishing the ninth grade to start working to help support his family. Mr. Dove was gainfully employed throughout his life in the security industry and later in the trucking industry. Mr. Dove contributed to society in a meaningful way through gainful employment and upon his release from incarceration he will continue to work hard, support his family and be a tax paying citizen. Mr. Dove is extremely driven to support his family.

4. <u>Family Support</u>

Finally, Mr. Dove enjoys a strong and supportive family relationship with a loving wife and family. Mr. Dove is a man with very supportive friends and family who can assist and encourage his rehabilitation even after he is released from his term of incarceration. He is by all accounts a good man and excellent father, Attached Ex. 1 and 2 are correspondence to the Court from family describing Mr. Dove and his qualities.

Given the foregoing, the court should consider Mr. Dove's lengthy crime-free life, his upbringing, his ability to contribute to society upon release, his age and health characteristics, and his current support systems and qualities in crafting a sentence that is appropriate for this offense.

C. <u>Need to Protect Public</u>

The minimum mandatory sentence will protect the public. However, Mr. Doves prior lack of history also indicates the public will be safe. Further, the past 30 months Mr. Dove was on pretrial release including electronic monitoring and he did not have one violation. Mr. Dove explicitly followed court orders and will most certainly do so in the future.

D. *Pertinent Policy Statements*

In addition to these factors, the court should review and evaluate whether pertinent policy statements support a variance. On February 27, 2013 the United

states Sentencing Commission released a report to Congress on the child pornography sentencing guidelines ("2013 report"). *See* United States Sentencing Comm'n, *Special Report to Congress: Federal Child Pornography Offenses* (Dec.2012). https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses The Commission's 2013 report centers on U.S.S.G. § 2G2.2, the guidelines for non-production child pornography offenses. In *United States v. Cubero* the Eleventh Circuit addressed the 2013 Report and its effect on sentencings. The *Cubero* court noted:

> In its 2013 report, the Commission concludes that "the current non-production guideline warrants revision" because (1) the enhancements do not account for an offender's use of modern technology and are, thus, "outdated and disproportionate"; (2) the guideline fails "to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior"; and (3) "[t]he current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application."

*Id*. at 898, 899.

The *Cubero* court goes on to note the commission's recognition of flaws with the current guidelines scheme including, that it is not based on empirical evidence as most other guideline schemes are;

> The 2013 report questions the appropriateness of the current guidelines scheme in § 2G2.2 for non-production cases where the offender used peer-to-peer file sharing and the Internet to receive and distribute pornography. The report states that some courts criticize the current child pornography guidelines because they are influenced by congressional directives, "fail[ ] to reflect the Commission's traditional institutional expertise," and are "not based on empirical evidence."

*Id*. at 899. Further, the *Cubero* court recognized that the Commission

recommended amending guidelines §2G2.2 but believed it required express authority from Congress to do so. *Id*. at 899. This court can consider the flaw in the guidelines as recommended by the commission and vary from the applicable guideline range. The *Cubero* court noted that "While a district court may certainly consider the 2013 report in choosing the ultimate sentence, the report does not invalidate § 2G2.2. *Id*. at 900.

As previously addressed above, Mr. Dove is being enhanced two levels for use of a computer pursuant to 2G2.2(6). In *Dell v. United States,* 710 F.3d 1267, 1279 (11th Cir.2013) The Eleventh Circuit noted that the Supreme Court's opinion in *Kimbrough* "empowered" the district courts with discretion to impose a variance based on a policy disagreement with the sentencing guidelines' crack/powder cocaine disparity but did not "command" them to exercise that discretion), *cert. denied,* ––– U.S. ––––, 134 S.Ct. 1508, 188 L.Ed.2d 387 (U.S.2014).

When the Sentencing commission itself recognizes that a section of the guidelines is not based on empirical data and can result in overly harsh sentences for some offenders and, expressly questions the guidelines scheme for nonproduction cases where the offender used peer-to-peer file sharing and the Internet to receive and distribute pornography a downward variance is not only permitted and appropriate.

E. <u>Sentencing Disparity</u>

Section 3553(a) also indicates that considerations of sentencing disparity

9

among similarly situated defendants is a relevant consideration to the ultimate sentence imposed. Without question a central goal of the guideline scheme is to ensure as much "parity in sentencing as possible." See *United States v. Everett*, 376 Fed. Appx. 271, 273 (3d Cir. 2010). Further § 3553(a) requires the court to consider the sentences of similarly situated defendants in its application of the guidelines in any given case. See *United States v. Rodriguez*, 527 F. 3d 221, 228-29 (1st Cir. 2008) (recognizing that a court may base a variant sentence on parity considerations); United States v. Butler, 130 F. Supp. 3d 317, 323 (D.C. Cir. 2015) (acknowledging that disparity is a consideration for sentencing). Courts have upheld significant variances in cases like Mr. Dove's. For example, *United States v. Tucker*, No. 11-CR-00252 (M.D. Fla. 2012) (sentenced to time served (one day) followed by 15 years of supervised release, with 18 months in home detention with electronic monitoring); See also *United States v. Gray*, 453 F.3d 1323(11th Cir. 2006) (affirming 72-month long sentence which was below advisory guideline range  age, prior minimal record and medical condition(64 and heart condition) and U.S. v. Mcbride, 511 F3d 1293 (11th Cir. 2007) (affirming a 84 month sentence where range was 151-188). Notably, the person responsible Welcome 2 video website, Son Jong-woo, served only an 18-month sentence in Korea. (Attached Ex. 3). While the United States government appears to be actively trying to extradite Mr. Jong-woo it seems (at least through newspaper accounts) that he may not be extradited and his sentence may only be 18 months he already served.

Conclusion

Based on the above reasons the defendant will request a sentence below the applicable guideline range as determined by the Court.

WHEREFORE, the defendant moves for a downward variance from the otherwise applicable guideline range.

                                              Respectfully submitted,

                                              FARMER & FITZGERALD, P.A.

                                              *Timothy J. Fitzgerald*
                                              Timothy J. Fitzgerald, Esq.
                                              FL Bar No. 0780618
                                              1560 W. Cleveland St.
                                              Tampa, FL 33606
                                              (813) 228-0095
                                              FAX (813) 224-0269
                                              fflawpafedtjf@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by Cm/ecf on June 22, 2021 to the following:

AUSA Lisa Thelwell
Office of the U.S. Attorney