UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
- - -

HONORABLE CHARLENE EDWARDS HONEYWELL
UNITED STATES DISTRICT JUDGE PRESIDING

UNITED STATES OF AMERICA,     )
                              )
            PLAINTIFF,     )
                              )
            VS.           )8:19-cr-33-T-36CPT
                              )
JACK R. DOVE, III,        )
                              )
                              )
              DEFENDANT.     )

**JURY TRIAL - DAY ONE**
REPORTER'S TRANSCRIPT OF PROCEEDINGS
MARCH 22, 2021
TAMPA, FLORIDA

SHARON A. MILLER, CSR, RPR, CRR, FCRR
IL CSR 084-2617
FEDERAL OFFICIAL COURT REPORTER
801 N. FLORIDA AVENUE, SUITE 13A
TAMPA, FLORIDA 33602

Proceeding recorded by stenography,
transcript produced by computer-aided transcription

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   APPEARANCES OF COUNSEL:

2   ON BEHALF OF PLAINTIFF:

3           UNITED STATES ATTORNEY'S OFFICE
            MS. LISA THELWELL
4           MS. ILYSSA SPERGEL
            400 N. Tampa Street
5           Tampa, FL  33602
            (813)274-6000
6           Lisa.Thelwell@usdoj.gov
            Ilyssa.Spergel@usdoj.gov
7

8   ON BEHALF OF DEFENDANT:

9           FAMRER & FITZGERALD, P.A.
            MR. TIMOTHY JAMES FITZGERALD
10          800 West DeLeon Street
            Tampa, Florida 33606
11          (813) 224-0269
            fflawpafedtjf @aolcom
12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    (Court in session at 9:48 a.m.)

2    (Proceedings had outside venire's presence.)

3              THE COURT:  All right.  Good morning.

4              COURTROOM DEPUTY CLERK:  Good morning.

5              THE COURT:  We are here in the matter of United

6    States of America versus Dove, case 8:19-cr-33.  Counsel,

7    please identify yourselves for the court.

8              MS. THELWELL:  Good morning, Your Honor.  Lisa

9    Thelwell and Ilyssa Spergel on behalf of the United

10   States.

11             MS. SPERGEL:  Good morning, Your Honor.

12             THE COURT:  Good morning.

13             MR. FITZGERALD:  Timothy Fitzgerald on behalf of

14   Jack R. Dove, III, and he's present seated to my right.

15             THE COURT:  All right.  Great.  And we are here

16   for a jury trial.  Counsel, are there any issues that we

17   need to take up before I bring the venire in?

18             MS. THELWELL:  Yes, Your Honor.  I'm not sure if I

19   can be heard.  Can I be heard?  Okay.

20             Yes, Your Honor.  I just wanted to bring to the

21   Court's attention the outstanding objection regarding the

22   90214 certification.  As I indicated in my response to the

23   Defendant's objection, Edward Schwaigert is present and

24   available to testify in the trial but the United States

25   was seeking a pretrial determination as to the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   admissibility of the servers at issue in this case prior

2   to a jury being sworn, because if the Court were to

3   sustain the Defendant's objection even after testimony

4   from Mr. Schwaigert, that would greatly impact the

5   prosecution and we would need to potentially reassess our

6   presentation of the evidence.

7           THE COURT:  Let me just log in up here.  All

8   right.  And I have reviewed the objection that was filed

9   by Mr. Fitzgerald on behalf of his client.  I'm just

10  taking a moment to log into the CM/ECF here in the

11  courtroom.

12          Mr. Fitzgerald, I've reviewed the Government's

13  response to the objection that you filed.  Is there

14  anything else, sir, in light of their response?

15          In your objection you raised some issues regarding

16  the Government's attempt to admit the evidence based upon

17  their notice of filing the third amended FRE 90214, and

18  you raised issues with regard to chain of custody.  You

19  raised some issue with regard to the hash values not being

20  the same.  I think that the issue to the extent that

21  the -- another copy has been made and that copy does

22  indeed have the same hash value, that issue appears to

23  have been resolved, but I'll give you an opportunity to be

24  heard if you wish to.

25          MR. FITZGERALD:  Can you all hear?  I'm having a

1    difficult time hearing, Your Honor.  I don't know if

2    obviously the mask situation.

3         I'm having a slight difficult time hearing, Your

4    Honor.  I don't know if it's the microphone, the mask.

5         THE COURT:  Okay.  Is that better?  Any better?  I

6    turned it up some.

7         MR. FITZGERALD:  That's better, yes.

8         THE COURT:  Okay.

9         MR. FITZGERALD:  Your Honor, first, as to the hash

10   values, they made another copy and said the hash values

11   match but that's not the copy that my expert got to look

12   at.  My expert looked at a copy that had dead sectors and

13   Mr. Schwaigert, through the Government, the Government is

14   proffering that there's no exculpatory information on the

15   new accurate hash value copy but we never got to look at

16   it and still don't have it.

17        Secondly, the weight of the chain of custody in

18   the fact that the Korean expert wrote an affidavit that

19   has the wrong serial numbers is that that goes to the

20   weight of the evidence, not the admissibility.  And they

21   cited a case Cullen from the Eleventh Circuit that was

22   unpublished, that basically a person testified, an expert,

23   he left off four serial numbers on a hard drive and they

24   showed him the hard drive.  He identified the hard drive

25   by the way of look.  He matched up the majority of the

1   serial numbers and he said he was totally sure that was

2   the same hard drive, and so the Eleventh Circuit then said

3   the admission of that goes to the weight, not the

4   admissibility, which is fine, except I don't have a

5   witness to question.

6          This gentleman from Korea that wrote down the

7   wrong serial numbers isn't going to be here.  I can't ask

8   him, are you sure that's the right hard drive.  I can't

9   ask him about the chain of custody.  The whole weight, not

10  admissibility out the window using 90214 because there's

11  no one to testify.  There's no one to tell me how long

12  they went inside, who went inside for the Korean police,

13  what they did inside.

14         There's no one to address the weight issue to the

15  jury, so for that reason I think that's different from the

16  Eleventh Circuit case where they called the person that

17  miswrote down the serial numbers.  And I understand

18  they're trying to cure -- Mr. Schwaigert did the same

19  thing and they're trying to cure it with him and they will

20  be.  And I understand the second half goes to the weight,

21  not the admissibility with Schwaigert, but the first half

22  with Mr. Kim and with everything that happened in Korea,

23  there's no witness to cross examine, so I think it goes to

24  admissibility because they're going to use 90214.

25         If Mr. Kim came and testified and I called him

1    with the serial numbers, they can address it, I could

2    question him.  And so for that reason I think it's

3    different than the case cited by the Government and I

4    think the Court should exclude it, Your Honor.

5         THE COURT:  And you filed a motion in limine at

6    Doc. 190 with regard to this evidence that you say you

7    just received this week.  Is that -- what is that?  I'm

8    not clear that I know.  It was in the response to the

9    Government's notice of filing declaration of

10   authentication of business records, Doc. 189.

11        MR. FITZGERALD:  They -- early on, I don't know

12   when, but a couple years ago got Bitcoin records from a

13   company called Coinbase and they did the usual give us the

14   records, whether it's a phone company or whatever, and

15   we've had those.  During trial prep, they discovered that

16   the company also had additional records.  They issued a

17   subpoena that day.  The company responded that day, gave

18   them the records.  Ms. Thelwell gave it to me.

19   Immediately before she could even produce it she sent a

20   text of what she intended to use to get it immediately to

21   me, but I think it was Wednesday or Thursday of last week

22   and so we're objecting because it's outside the scope of

23   the Court's discovery deadline and our expert hasn't been

24   able to look at it to verify its authenticity.

25        THE COURT:  And it's documents from the Bitcoin

1    company?

2         MR. FITZGERALD:  Sort of.  It's -- the Bitcoin

3    company subscribes to a company called Jumio.  Jumio

4    provides identification services so that if you go on to

5    log into this account, if you hold up your driver's

6    license and it takes a picture, and my understanding is it

7    scans it and also looks for portions of your driver's

8    license to make sure it's a real one and then you also can

9    identify yourself through -- it takes a photograph.

10        The evidence is going to show in the original

11   Bitcoin production that somebody logged onto this account

12   three times, using a driver's license three times and used

13   a photo identification one of those three times.  The

14   Government's latest production last week were seven items.

15   Six were I guess front and back pictures of the driver's

16   license for each time it was used, and the seventh was a

17   photograph of Mr. Dove in a black chair.  So, that's what

18   it is.

19        THE COURT:  And that was the first time you had

20   seen the photograph of Mr. Dove in the black chair?

21        MR. FITZGERALD:  Correct, Your Honor.

22        THE COURT:  And you would like for your expert to

23   review that?

24        MR. FITZGERALD:  I don't know what form it is.  I

25   don't know enough about Jumio, but I don't know if you can

1     hold up a photograph of somebody through your computer

2     screen and Jumio can't tell whether the person is live or

3     not live.  I don't know if the expert when he looks at

4     metadata can tell if it is a live picture or photograph

5     held up, and I don't have the expertise for that

6     obviously.

7          THE COURT:  Okay.  Ms. Thelwell, or one of your

8     assistants, what is your response?

9          MS. THELWELL:  Yes, Your Honor.  May I approach

10    and provide the Court with a copy of what the Government

11    intends to introduce?

12         THE COURT:  Yes.  And please explain to me why it

13    was just produced last week for a case that was filed in

14    2019.

15         MS. THELWELL:  Yes, Your Honor.  So the records

16    that Defense Counsel is objecting to is premarked right

17    now as Government's Exhibit 41A and 41B, which as Your

18    Honor can see, are photographs of the Defendant's driver's

19    license as well as essentially a self photograph of the

20    Defendant that is provided to Coinbase to authenticate and

21    verify his account.

22         THE COURT:  It was provided to who?

23         MS. THELWELL:  It was provided to Coinbase.  So

24    the Defendant in creating his Coinbase account is required

25    to verify his identification, because Coinbase is a money

1    service business that is required to obtain certain

2    documents and apply -- follow Federal regulations as it

3    relates to, you know, collecting information about the

4    customer, so in order to do that, they require that a

5    customer provide some form of identification.

6          In this case, Mr. Dove provided his Florida

7    driver's license.  So Exhibit 41A is the document that he

8    provided at the time that he created his account in

9    November of 2016 and at some point Mr. Dove had to

10   reverify his account, and when he did that in August of

11   2017, which you see in Government's Exhibit 41B, those are

12   the photographs of his driver's license as well as a self

13   photo that he took and provided to Coinbase in order to

14   verify his account.

15         Now, in the process of -- to back up -- to back

16   up, at the time this case was indicted, we already had

17   Coinbase record that show essentially a massive spread

18   sheet of all of the transaction history, subscriber

19   information related to Jack Dove's Coinbase account.  In

20   those records where it talks about the identification

21   provided, it shows that a Florida driver's license was

22   provided and then there's a note that says photo

23   verification.

24         During trial prep with one of the witnesses who

25   will be testifying about the Coinbase records, he alerted

1    me that Coinbase has begun requiring customers to submit

2    self photographs and indicated that they only provide that

3    information when we specifically request it.

4         The first subpoena that had been sent, you know,

5    as part of a larger international investigation did not

6    specifically request any type of photo documentation, so

7    that same -- well, I can't say that same day but shortly

8    after I learned that information, I had the case agent who

9    was here present, Agent Garcia, subpoena Coinbase for the

10   photo documentation associated with this Coinbase account,

11   and that same day which was last Wednesday, we received

12   Government's Exhibit 41A and 41B, and as Mr. Fitzgerald

13   mentioned, I provided to him that same day.

14        Now, I understand Defense counsel's objection as

15   to the Court's discovery order, but the Court's discovery

16   order also requires us to follow Rule 16C which is an

17   ongoing discovery obligation, so the moment that we found

18   out about this information, we did provide it to Defense

19   Counsel.

20        Additionally, Your Honor, I don't quite see how --

21   I don't know to what extent any expert is going to be able

22   to validate Government's Exhibit 41A and B because they

23   are just photographs that were supplied to us by Coinbase

24   by the same individual, if I'm not mistaken.  Is it the

25   same individual from the first subpoena?

1              AGENT GARCIA:  I'm sorry, I don't know.

2              MS. THELWELL:  Well, regardless, it was provided

3    to us by the same company that we had already provided a

4    90211 within which Mr. Fitzgerald has not objected, so I

5    understand that additional evidence, especially these

6    photos, obviously go against Mr. Dove, but there is no

7    discovery violation here.  They were outside our custody

8    and control.  We obtained the information, provided it to

9    Defense Counsel at the same time, and there is no

10   substantial prejudice.  Because when you look at the

11   Coinbase records, which have been in existence from the

12   inception of this case, it does alert that there was some

13   sort of photo verification in that record.

14             THE COURT:  And nobody thought to follow up with

15   Coinbase prior to last week to get the photo

16   identification or photo verification?

17             MS. THELWELL:  I was not aware of that until a

18   witness told me that that information existed, and

19   regardless of whether or not the Court ultimately rules in

20   favor for Mr. Dove on this issue, that witness will still

21   testify as to his knowledge about what that information in

22   Government's Exhibit 41 which is the Coinbase record, what

23   that means, because that's within his personal knowledge

24   and he will be able to testify that in order for that

25   record to reflect that there was some sort of

1    verification, that means that Mr. Dove provided his

2    Florida driver's license and it was verified by Coinbase

3    in order to authenticate his account.

4         THE COURT:  All right.  Well, with that

5    explanation, Mr. Fitzgerald.  I'm also a little troubled

6    with regard to what your expert would -- your expert is a

7    forensic computer analyst as I recall; is that correct?

8    And so what for what purpose would his review of these

9    exhibits serve?

10        MR. FITZGERALD:  Well, it's two, Your Honor.  One,

11   is those records would --

12        THE COURT:  Would what?

13        MR. FITZGERALD:  The records that the digital data

14   that they have stored, perhaps he could look at it and

15   find out if Jumio -- okay.  Just so we're clear, Coinbase

16   is the company.  Coinbase doesn't do this.  Coinbase subs

17   it out to a company called Jumio, and it's actually on the

18   spread sheet that they initially subpoenaed, it says

19   Jumio, because Jumio does the background check.  So I

20   could -- potentially, I don't know if my expert has any

21   knowledge or if another expert has knowledge of how Jumio

22   works and whether Jumio could be fooled back in 2016 or

23   2017 with a photograph versus a live picture, if you just

24   put a photograph in front of the computer and took a

25   snapshot of a canopy full.  I can have an expert that

1    could look at that.

2         THE COURT:  So you're suggesting that this might

3    be a photo as opposed to a live person, and by this I'm

4    referring to 41B?

5         MR. FITZGERALD:  I'm suggesting I don't know what

6    it was.  I learned about it Wednesday and that might be

7    something that if I had had two years ago that we would

8    have explored just to make sure, you know.

9         THE COURT:  And is your expert available this

10   week?

11        MR. FITZGERALD:  He's available, but I don't know

12   if he can look at it without the digital -- you know, with

13   whatever I have.  It's a .pdf or a jpeg that says it was

14   created whatever day Ms. Thelwell gave it to me, Wednesday

15   of last week, so it's not the original metadata of the

16   picture.

17        THE COURT:  Okay.  And then you still don't have

18   copy three that the agent discusses or that Ms. Thelwell

19   discusses in her response to your objection?

20        MR. FITZGERALD:  Correct.

21        THE COURT:  Ms. Thelwell, where is that copy?

22        MS. THELWELL:  I apologize, Your Honor, where is

23   which copy?

24        THE COURT:  Copy three.  You indicated that part

25   of the objection raised by Mr. Fitzgerald with regard to

1    the FRE 90214 notice was the fact that the copy was not --

2    copy two was not identical to copy one.  Well, that's been

3    cured because there's now a copy three.

4              MS. THELWELL:  Yes, Your Honor.

5              THE COURT:  Mr. Fitzgerald says he still does not

6    have copy three and as a result his expert still hasn't

7    reviewed it.

8              MS. THELWELL:  Yes, Your Honor.  So copy three is

9    available for inspection and it has been available since

10   Mr. Fitzgerald was made aware of it which was that same

11   date of last week Wednesday which would be the day that

12   our HSI office received it.

13             I called Mr. Fitzgerald.  We spoke multiple times

14   on Wednesday, and I advised him of copy three.  If at any

15   time he wanted to have his expert review it, he could

16   have.  And just so the Court is clear, as it relates to

17   the server, his expert has never physically taken a copy

18   of the server with him because it contained child

19   pornography, so his expert has come to HSI in the past on

20   multiple occasions to review the copy that we have of the

21   server.  And as I indicated in my response to the

22   objection, there's no -- let me rephrase.  Mr. or Agent

23   Schwaigert reviewed the files that were in the, quote

24   unquote, failed sector and none of those files are

25   exculpatory as to Mr. Dove, and I don't have it in front

1    of me, but in my response I listed out exactly what those

2    files are.

3         THE COURT:  I understand that, but the fact of the

4    matter apparently is that Mr. Fitzgerald wants his expert

5    to review it and he shouldn't have to rely upon what Agent

6    Schwaigert says.  That's the issue.  He has a separately

7    retained forensic expert who has, as you know, already

8    reviewed some materials.  His concern is, and I have to

9    agree with him, he shouldn't have to rely upon what Agent

10   Schwaigert represents, his expert.  He wants his expert to

11   review it.

12        MS. THELWELL:  I understand that, Your Honor, and

13   there's two points that I'd like to make.  His expert --

14   apart from having the opportunity to view, I'll call them

15   the HSI Tampa copies, right, of the Welcome to Video

16   server, his expert also in the course of this prosecution

17   traveled to DC to meet with some of our forensic analysts,

18   I should say, who have a copy the server, and he also had

19   an opportunity to review information there.

20        Secondly, you know, exclusion is the most onerous

21   remedy.  A proper remedy if Mr. Fitzgerald truly wants to

22   have an opportunity for his expert to review whatever

23   maybe -- whatever may have been missing from this new copy

24   of the server, he should request a continuance.

25        THE COURT:  Well, that's really what I'm thinking.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          I'm not considering exclusion of the evidence at this

2     point.  I am more inclined, however, to continue it,

3     although I really don't want to do that.  But, you know,

4     I'm always troubled when I get these last minute discovery

5     issues and, you know, my goal here is to ensure that all

6     parties get a fair trial.  And so when you come in this

7     door, I want the prosecution to have had an opportunity to

8     do all that you need to do to be ready for trial.  I want

9     the Defendant to have had an opportunity to do all that he

10    needs to do to be ready for trial, and apparently that

11    hasn't happened here, and it's really aggravating to me

12    because this is a 2019 case.  I don't know when I'm going

13    to get it back on the trial docket for use of this

14    courtroom given the coronavirus and the fact that we are

15    sharing this courtroom, so that's what's troubling to me.

16         The other issue that you need to respond to is the

17    argument with regard to the serial number.  I mean, you've

18    indicated, and I tend to agree, that the issue regarding

19    the hash values now, that the hash values for copy three

20    are identical to the hash values of copy one tend to

21    eliminate issues with regard to there being some

22    differences between those, such that I think those could

23    come in particularly with the fact that Agent Schwaigert

24    is here to testify.

25         The other issue, however, is the serial numbers,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    and I don't know who is going to testify regarding the

2    serial numbers because you argue in your response that

3    it's a typo.  Well, but who's going to testify to that

4    that it's a typo?  How is Agent Schwaigert going to know

5    that it's a typo?

6            MS. THELWELL:  Your Honor, I would need to clarify

7    with Agent Schwaigert, but based on my recollection the

8    typo -- I don't have it in front me, but the one where it

9    indicates the last two digits are a 6 and an H of the

10   serial number versus a G and an H.  That's the same

11   typographical error that Agent Schwaigert had made and it

12   was based on his own handwriting notes, so my

13   understanding is that that is exactly why the KNPA made

14   the same mistake, but --

15           THE COURT:  Based on whose notes?  Based on Agent

16   Schwaigert's notes?

17           MS. THELWELL:  Yes, Your Honor.

18           THE COURT:  Okay.

19           MS. THELWELL:  His handwriting.

20           THE COURT:  Is he here?

21           MS. THELWELL:  He is.

22           THE COURT:  Can we bring him in?  You want a

23   moment with him?

24           MS. THELWELL:  Yes.

25           THE COURT:  Because I need to resolve that issue,

1    and there were two typos.  There was the G and I think and

2    the 6, and then the second was three or four numbers were

3    not even there, numbers or alphabet were not even present,

4    and it looked like -- well, let me just find it.  I have

5    it here.

6          MS. THELWELL:  If I recall it was just an extra Z

7    at the end versus --

8          THE COURT:  There's a 6 and an H as opposed to a G

9    and an H, and that's item one on page one, and then line

10   item one on page two, and that's with regard to the 001.

11   And then with regard to line item 002 serial number, a Z

12   is omitted at the end.  So they are typographical errors

13   as you've defined them with regard to both.

14         And while I agree that they certainly appear to be

15   typographical error, I do think that I need some evidence

16   or testimony to substantiate that.

17         MS. THELWELL:  Your Honor, the purpose of the

18   serial number is to serve as some sort of identifier.

19   Mr. Kim's affidavit, you know, had they not included the

20   serial numbers but just described generally described in

21   the hard drive and so that they matched, that would be

22   sufficient.  The fact that there is some sort of

23   scrivener's error does not all of a sudden invalidate the

24   authenticity of the evidence that is contained on those

25   hard drives, especially when we look at the fact that the

1       hard drive that Mr. Kim is swearing to in his affidavit

2       were provided to Agent Schwaigert who then made those

3       copies, and not only extracted evidence in general for

4       other Defendants in this case, but as to Mr. Dove and then

5       went back at the Government's request really because of

6       the Defendant's request and made another copy so that we

7       could have a copy of that server here locally in Tampa.

8              So when we look at essentially circumstantial

9       evidence of showing that these hard drives obviously are

10      distinct -- have distinct characteristics that cannot be

11      easily changed, and when we look at the totality of the

12      circumstances, it's clear that these hard drives that

13      Mr. Kim is talking about, despite the inconsistency in the

14      serial numbers, are the very same hard drives that

15      Mr. Schwaigert or at least they contain the same data, I

16      should say, Agent Schwaigert has in his possession and

17      then ultimately made a duplicate copy for HSI Tampa and

18      the Defendant to review.

19             THE COURT:  Okay.  I mean that's fine, and it may

20      be that I just need to hear some testimony with regard to

21      this issue.  I don't know where these types or how they

22      arose with regard to this, and if the agent is here, I'll

23      give you a short period of time to go and speak with him

24      before we come back, and I'll either continue it or we'll

25      get the jury selection.

1          Do you wish to be heard, Mr. Fitzgerald?

2          MR. FITZGERALD:  No, Your Honor.  Is he here?

3          MS. THELWELL:  Yes, I'm going to go talk to him.

4          THE COURT:  Why don't we take about five minutes.

5   Is that enough?

6          MS. THELWELL:  I think so, Your Honor.

7          THE COURT:  All right.  And you can go ahead and

8   talk to him and let me -- I'm not going to leave.

9          MR. FITZGERALD:  Could I speak to Your Honor at

10  sidebar for a second?

11         THE COURT:  Yes, put on your headset, these

12  (indicating).

13  (Bench conference begins.)

14         MR. FITZGERALD:  I'm objecting to this evidence as

15  you know and this is my duty and I'm making a record.  We

16  anticipated what the Court's resolution to these issues

17  might be being a continuance, and I have discussed it with

18  Mr. Dove and it's the Court's resolution if it is a

19  continuance he has instructed me he does not want one, but

20  I would like the Court to inquire from him to get him on

21  the record saying that, because this is evidence I haven't

22  seen and my expert hasn't seen if that ends up being the

23  Court's ruling.

24         THE COURT:  Okay.  I'll do such.

25         MR. FITZGERALD:  Did you hear anything I said?

1          THE COURT:  I heard everything.  And you heard me?

2          MR. FITZGERALD:  I couldn't hear you, no.

3          THE COURT:  Okay.  I did hear you, and I will

4     certainly inquire of Mr. Dove.

5     (Bench conference concluded.)

6          THE COURT:  All right.  I'm going to allow you all

7     to go out now and talk to Agent Schwaigert.  We're in

8     recess for five minutes.

9     (Recess had.)

10    (Court resumed outside venire's presence.)

11         THE COURT:  Back in session.

12         MS. THELWELL:  I apologize, Your Honor.  I was

13    saying I wanted to doublecheck the filings that we had

14    filed as it relates to the 90214s, because in speaking

15    with Agent Schwaigert, it appears that some of those

16    attachments that we filed may address the Court's concern

17    about the serial numbers, because those are image reports

18    that were automatically computer generated and they

19    automatically extract the serial numbers for those hard

20    drives, so that would be one way to authenticate what the

21    hard drive serial numbers were, so I just wanted to

22    doublecheck.

23         THE COURT:  Okay.  All right.  Ready to go back on

24    the record.  We're back in session.

25         MS. THELWELL:  Yes, Your Honor.  Defense Counsel

1    and I have had an opportunity to meet with Agent

2    Schwaigert and review the documents filed at Document 180,

3    specifically Exhibit 4 and 5.  Defense Counsel agreed that

4    I could provide a proffer to the Court as to Agent

5    Schwaigert's statements.

6         Looking at Exhibit 5, Exhibit 5 is an imaging

7    report that is created when the original hard drive that

8    was seized from the administrator's house was then copied.

9    In that process, the imaging report will automatically

10   extract this data or drive information, I should say, such

11   as the name, type and serial number of that hard drive and

12   provide that in the report.

13        So Document 180, Exhibit 5 on that first page

14   under device information, it indicates the date of the

15   imaging which was on or about March 4th, 2018 which would

16   corroborate and be consistent with around the time that

17   the server was seized from the administrator's house.  The

18   label which is the name -- excuse me -- the type of the

19   device.  It's a Samsung, and the serial number is listed

20   there, and it's a serial number ending in 6-H, and as to

21   Exhibit 4 -- and just to be clear, Your Honor, Exhibit 5

22   would have been provided by the Koreans, right?  That's

23   the imaging report that is created at the time that the

24   process -- the imaging process happened.

25        Exhibit 4 is the same imaging report but it is for

1    a different hard drive.  It's for the Hitachi two terabyte

2    hard drive which is the device ending in serial number

3    Z-A, and that information is contained on page 36 of

4    Exhibit 4 of Document 180.

5         So in looking at these imaging reports, it is

6    clear that the information that is inconsistent in the

7    KNPA affidavit is a mere typo and/or scrivener's error, so

8    it's the Government's position as I have articulated in

9    our response to the objection, that the error does not in

10   and of itself invalidate the authenticity that the hard

11   drives are what they purport to be.

12        THE COURT:  Okay.  Anything further,

13   Mr. Fitzgerald?

14        MR. FITZGERALD:  No, Your Honor.

15        THE COURT:  All right.  With regard to the issue

16   that was raised as it pertains to the serial numbers and

17   there being typos, a scrivener's error, I do determine

18   based upon the further argument of Counsel that indeed

19   these are typos that do not invalidate or otherwise defeat

20   the issue of authenticity of the electronic evidence in

21   that the Government seeks to issue -- seeks to admit.

22        The other issue that remained was with regard to

23   Agent Schwaigert's production of a copy three which is

24   identical to copy one in terms of the hash values and the

25   fact that defense counsel has not had an opportunity to

1  review copy three or have copy three reviewed by his

2  expert and/or consider the argument raised by Counsel for

3  the United States as it relates to the differences between

4  copy one and copy two and what caused those differences.

5  For purposes of that, as I indicated, while I do

6  think that the fact that copy one and copy three are

7  identical solves the issue as it pertains to the

8  authenticity of the electronic evidence because the hash

9  values tend to indicate that they are identical, but

10  because Mr. Fitzgerald and his expert have not had an

11  opportunity to review it, I would solve that issue by

12  continuing this trial so that he could provide it to his

13  expert.

14  I will inquire of Mr. Dove.  Obviously this issue

15  ultimately would be his regard to whether we continue

16  today or whether the trial is continued.  Madam Clerk,

17  please place Mr. Dove under oath.

18  COURTROOM DEPUTY CLERK:  Sir, please rise and

19  raise your right hand.

20  (Defendant sworn.)

21  THE DEFENDANT:  I do.

22  COURTROOM DEPUTY CLERK:  Please state your name

23  for the record and spell your last name for the court.

24  THE DEFENDANT:  Jack R. Dove, III, D-O-V-E.

25  DEPUTY COURTROOM CLERK:  Thank you.  Be seated.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1              THE COURT:  All right.  Mr. Dove, as you've heard

 2     your attorney, Mr. Fitzgerald, argue this morning that

 3     there are some items of evidence that he would like for

 4     his expert, the forensic analyst, an opportunity to review

 5     that has not occurred including, and let me add, exhibits,

 6     Government's Exhibit's 41A and 41B which were just

 7     provided last week.

 8              The way I would cure that would be to continue the

 9     trial; however, I would inquire with the Defendant to

10     determine if indeed you would like for the trial to be

11     continued or if you would prefer that we proceed.  I know

12     that everyone has prepared to proceed.  I am ready to

13     proceed, but certainly I would continue it to ensure that

14     everyone has had an opportunity to look at all of the

15     evidence and for their experts to review it.

16              Given that information, what is your pleasure --

17     well, first let me ask you.  Have you had an opportunity

18     to discuss this issue with your attorney?

19              THE DEFENDANT:  I have, Your Honor.

20              THE COURT:  And given the option of continuing the

21     trial to a later date so that your forensic analyst can

22     review Exhibits 41A and 41B and not so much the exhibits

23     but I think it was a company Jumio that provides some

24     support for the company that provided or produced these

25     exhibits and copy two and three -- I think that you have
```

1      copy two, but copy three from the server which -- in which

2      the hash values now are identical to the hash values in

3      copy one.  With that as background, is it your desire to

4      continue the trial or do you wish to proceed with the

5      trial today?

6              THE DEFENDANT:  Can you give me one second, Your

7      Honor?

8              THE COURT:  I can.

9      (Brief pause.)

10             THE DEFENDANT:  I'm sorry, Your Honor, just based

11     on the length of time that this has went on and the

12     restrictions, I would prefer not to have a continuance.

13             THE COURT:  So you would prefer to proceed to

14     trial today?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Okay.  And so then with regard to the

17     objections to the Government's third amended FRE 90214,

18     notice of filing affidavit certifying the authenticity of

19     the copy of the electronic evidence, Agent Schwaigert is

20     here to testify so that removes the objection.  I think

21     that the objection as it relates to the chain of custody,

22     again, the evidence before the court at this point is that

23     the proponent is required to produce the evidence

24     sufficient to support a finding that the items indeed are

25     what the proponent claims, and it appears from my review

1    of the information that these issues will be resolved

2    through the testimony of Agent Schwaigert and the

3    affidavit that he's provided to the Court such that the

4    Defendant's objections are overruled except for the

5    objection with regard to the inability to review and

6    consider copy three.

7         And, again, I've offered a continuance which would

8    resolve that issue.  Mr. Dove, and I completely understand

9    Mr. Dove's desires to proceed to trial given the fact that

10   this case has been pending since 2019, and so in this

11   case, therefore, we will proceed to jury selection.

12        You should have before you additional jury

13   questionnaire, just some copies that I made I got from

14   jury services.  I had them inquire of the members of the

15   venire as they reported this morning, those who already

16   received the COVID-19 vaccination and those who have

17   already had COVID-19, and so this may help you as you make

18   decisions with regard to the jurors in this case.

19        Madam Clerk, would you have them line up the

20   venire so they can bring them up?

21        And so this is just some information that I

22   thought you would find useful and this was provided to

23   them this morning, so this is current.  So you'll see that

24   there are a few that have been vaccinated, both doses, and

25   there are a few that indicate, at least one or two, that

1   they have already had the virus, so that's provided for

2   your benefit.

3        Anything else before I bring the venire in?

4        The other thing that I was going to offer,

5   Mr. Dove, and I'm sure that there would be no objection to

6   the extent that your expert is available.  The Government,

7   Ms. Thelwell, can you provide to the extent you need to

8   any of the information that this expert would need as it

9   relates to Exhibits 41A and 41B?

10       MS. THELWELL:  Mr. Fitzgerald's expert?

11       THE COURT:  Yes.  Give it to Mr. Fitzgerald so he

12   can provide it to his expert.

13       MS. THELWELL:  Right.  We provided Mr. Fitzgerald

14   with the documents that were provided to us from Coinbase.

15       THE COURT:  Okay.

16       MS. THELWELL:  So there's no additional

17   information that I have received from Coinbase.  They gave

18   us what they have, except what they have is a jpeg which

19   is a digital photograph and it's dated Wednesday of last

20   week, so it's not something that can be analyzed.  You

21   need like the original one they took back in August of

22   2017.  We'd need the metadata for that to look at that.

23       THE COURT:  The Government doesn't have that?

24       MS. THELWELL:  No.  It was not provided.  I will

25   say, Your Honor, in response to -- and I forwarded the

1    entire email chain to Mr. Fitzgerald, and it indicates the

2    response from Coinbase as to the dates that each of those

3    photos were taken according to their system.

4            THE COURT:  And so the other issue then was the

5    Government's -- I'm sorry.  Mr. Fitzgerald's motion for an

6    order in limine.  I think it's Doc. 190.  Let me pull it

7    up.

8            So to the extent the Defendant requests that the

9    documents be excluded, the Court is going to deny that

10   request.  Again, my alternative would be to continue the

11   case to the extent that the Defendant would like for his

12   expert to forensically examine the exhibits or the

13   metadata that supports the documents that have been

14   offered as Government's Exhibit 41A and Government's

15   Exhibit 41B.  And Mr. Dove has declined a request for a

16   continuance, so we will proceed.

17           And as soon as we get the venire in, we will begin

18   with jury selection.  What I'm going to do in this case

19   because of the sensitive nature of this topic, I would

20   usually ask case sensitive questions near the end of the

21   voir dire.  I'm going to actually start there today -- I

22   think I'm going to just ask a couple of preliminary

23   questions and then dive right into it, because I can with

24   your consent easily excuse those individuals who have

25   strong objections to sitting in a trial where part of the

1    evidence will include child pornography.

2          MS. THELWELL:  Your Honor, there was one juror who

3    I know very well.  Juror No. 29, Belinthia Berry.  I have

4    disclosed that to Defense Counsel and I'm disclosing that

5    to the Court.  I think she should be excused for cause

6    based.

7          THE COURT:  29?

8          MS. THELWELL:  Based on our relationship.

9          THE COURT:  29.

10         MS. THELWELL:  Juror No. 29, Belinthia Berry.

11         THE COURT:  Madam Clerk, I don't have the sheet

12   yet.  Mr. Dove, Mr. Fitzgerald?

13         MR. FITZGERALD:  He just wants to make the Court

14   aware, Mr. Dove does, that he may or may not know No. 16.

15   The name looks familiar.

16         THE COURT:  Okay.  Thank you.

17         Counsel, on your current list No. 8, Madeline Rose

18   McCarthy was excused.  She was downstairs and she had a

19   baby in the car with a friend and needed to go out and

20   breast-feed, and so because she's still nursing, I

21   exercised some discretion and excused her.  So she will

22   not be in the venire.

23         You will get a new sheet in just a moment when the

24   other members come up.  So, we still have a number of

25   people coming up, but No. 8 has been excused.  She is a

1    nursing mother and actually had her baby with her this

2    morning.

3              MS. THELWELL:  I just didn't know.  Is No. 8 just

4    going to be substituted or are the numbers shifting,

5    individuals?

6              THE COURT:  You have a new list so the -- did the

7    numbers change?  I think the numbers changed, did they

8    not, Madam Clerk?

9              COURTROOM DEPUTY CLERK:  They did not change.

10             THE COURT:  We added another one, number at the

11   end.

12             MS. THELWELL:  Okay.  Thank you.

13             THE COURT:  It's important to keep them in order.

14   It will change once more when I excuse those that have

15   some concerns with participating in trial involving the

16   images that may be shown here.  Keep them in order, in the

17   order that they've been randomly chosen.

18   (Brief pause.)

19             THE COURT:  All right.  You may bring them in.

20   (Venire in at 11:10 a.m.)

21             THE COURT:  Ladies and Gentlemen, good morning.

22   My name is Charlene Edwards Honeywell.  I am a United

23   States District Judge here in the Middle District of

24   Florida, Tampa division.  I'm going to be presiding over

25   this trial this week for which you are here to participate

1    in jury selection.

2            This is a criminal trial.  It's United States of

3    America versus Jack R. Dove.  As you've heard me say, I am

4    the judge.  You may hear people occasionally refer to me

5    as the Court.  Out of the -- that is the formal name for

6    my role.  My job is to maintain order and decide how to

7    apply the rules of the law to the trial.  I will also

8    explain various rules to you that you will need to know in

9    order to do your job as the jury.  It is my job to remain

10   neutral on the issues of this lawsuit.

11           The attorneys whom I will introduce to you shortly

12   have the job of representing their client; that is, they

13   speak for their clients here at the trial and they've

14   taken oaths as attorneys to do their best and to follow

15   the rules for the profession.

16           And we'll start first with the attorney

17   representing the United States, and so it on the side

18   closest to the jury box here, we have the attorneys

19   representing the United States.

20           Ms. Thelwell, if would you introduce yourself and

21   co-Counsel, please.

22           MS. THELWELL:  Yes, Your Honor.  Good morning,

23   Lisa Thelwell on behalf of the United States along with

24   co-Counsel Ilyssa Spergel.

25           THE COURT:  Thank you.  And then at the table

1    which would be to my left, we have Counsel representing

2    the Defendant, and the Defendant, Mr. Fitzgerald,

3    introduce yourself and your client please.

4         MR. FITZGERALD:  Good morning, Your Honor.  Ladies

5    and Gentlemen, my name is Timothy Fitzgerald and I'm

6    representing Jack R. Dove in this case.

7         THE COURT:  All right.  Thank you.  Then the

8    person sitting, the two individuals sitting in front of

9    me, one of them is our court clerk and she is assisting me

10   with the evidence here.  She also just assisted you all

11   when you came in terms of getting you seated properly, but

12   her job is to assist me with the mechanics of the trial

13   process, including the numbering and collecting of the

14   exhibits.

15        Then to her left is our court reporter, and she is

16   seated at a stenographic machine transcribing what is

17   going on here.  So it is very important that as you answer

18   questions that we ask that you speak loudly so that she

19   can transcribe them.

20        You should each have a number.  I will refer to

21   you by those number cards, and I don't mean to disrespect

22   you and not use your names, but it's just an easier more

23   efficient method to get through the questioning process

24   and to make sure that the court reporter accurately

25   includes the information.  I have a cheat sheet here that

1   this have your number and your name.

2          You've also had some interaction with our court

3   security officers who are helping with this proceeding.

4   The court security officers' jobs are to maintain order

5   and security in the courtroom.  They are also my

6   representatives to the jury, so anything you need or any

7   problems that come up for you during the course of the

8   trial should be brought to them.

9          And then last but not least is the jury, which we

10  will begin to select in a few moments from among all of

11  you.  The jury's job will be to decide what the facts are

12  and what the facts mean.  Jurors should be as neutral as

13  possible at this point and have no fixed opinion about the

14  lawsuit.

15         At the end of the trial, the jury will give me a

16  written verdict and that is simply the jury's answer to my

17  question about the case.

18         The last thing I'm going to do is talk about voir

19  dire which is the process that we use to select the jury.

20  This is a part of the case where the parties, the Court

21  and their lawyers have the opportunity to get to know a

22  little bit about you in order to help all of us come to

23  our own conclusions about your ability to be fair and

24  impartial.

25         First, I'll ask some general questions of you and

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1       then I'll allow the attorneys to ask some more -- some

2       follow-up questions based upon your responses to the

3       questions I've asked.

4               After all of the questions have been asked and

5       answered, I will meet with the attorneys and they will

6       give me their choices for jurors.

7               After we've concluded that process, and it's the

8       process of elimination, the remaining persons are selected

9       as the jury.  The questions that you will be asked during

10      this process are not intended to embarrass you or

11      unnecessarily pry into your personal affairs, but it is

12      important that the parties and their attorneys know enough

13      about you to make this important decision.

14              If a question is asked that you would prefer not

15      to answer in front of the whole courtroom, just let me

16      know and you can come -- actually you don't come up here

17      any more because of the coronavirus, but we do have

18      headsets that you will utilize so that we can hear your

19      concerns, your responses to information that you believe

20      is confidential.  And, again, we're not talking about all

21      information, just to the extent you have some very private

22      medical information, for example, other information that

23      you do not wish to share in front of everyone, let us

24      know.

25              You should know that there are no right or wrong

1    answers to the questions that will be asked of you.  The

2    only thing that I ask is that you answer the questions as

3    frankly and as honestly and as completely as you can.  You

4    have taken an oath to answer all questions truthfully and

5    completely and you must do so.  Remaining silent when you

6    have information is a violation of that oath.  If a juror

7    violates this oath, it not only may result in having to

8    try the case all over again, but also can result in civil

9    and criminal penalties against a juror personally, so,

10   again, it is very important that you be as honest and

11   complete with your answers as you possibly can.

12        If you don't understand the questions, raise your

13   hand and ask for an explanation or verification and,

14   again, you can just raise your number card and you will

15   get my attention.

16        So in sum, this is a process to assist the parties

17   and their attorneys and the Court to select a fair and

18   impartial jury.  All of the questions are for this

19   purpose.  If for any reason you cannot be fair and

20   impartial, you must tell us.

21        I'm going to start by letting you know a little

22   about the trial week.  We typically start trials between

23   9:00 and 9:30, conclude about 5:00, between 5:00 and 5:30

24   with about an hour break for lunch and a short break in

25   the morning and a short break in the afternoon.  Based

1    upon my conversation with Counsel, we do believe that this

2    case will take all week and there's some slight chance it

3    will run into next week, although we're going to do our

4    best to try and limit it to just this week.

5            I'd like to know if you have any hardships this

6    week such that you believe that you could not sit here and

7    serve.

8            I'm also going to ask, and I do have the

9    information that you provided to jury services with regard

10   to Covid, of course, which has changed much about the way

11   in which we are trying cases and our effort to ensure your

12   safety and protection while you're here at the courthouse.

13   I have that information, and so I will now hear about

14   hardship.

15           The only other thing I would suggest to you is

16   that during the course of this proceeding and based upon

17   the recommendation of an expert hired by the court, that

18   is the Middle District of Florida has hired an

19   epidemiologist to make recommendations to us with regard

20   to the best practices and procedures for jury trials given

21   the coronavirus and its impact in our community is that we

22   all wear face masks during this proceeding, so unless you

23   have some medical reason for not wearing your face mask,

24   I'm going to ask you to please put on your face mask

25   during the course of this proceeding.  And we will talk a

1    little bit more about that.  But our expert suggests that

2    even with a face shield or having the face shield it still

3    is no substitute for wearing a face mask, and that's why

4    you see all of us in here with a face mask on.

5            And so let me get back to the issue of hardships,

6    so raise your number card if you believe you have a

7    hardship such that you should not serve this week.

8            Okay.  I have 2, 9.  All right.  I see 19, 20, 25,

9    41, 35, 15, 27, 38, 3, 7.  I already have 9, and I already

10   have 2.  12.  Okay.  And 11.  Did I miss anyone?  I have

11   19.

12           All right.  Now, if you would it -- 36.  Okay.

13           Now, if you would stand and let me know and speak

14   loudly.  We have microphones but if you're soft spoken, I

15   do have a wireless microphone in the back that we can use

16   especially when we get to the back of the courtroom

17   because I know that sometimes it's difficult to hear, but

18   tell me why you believe you have a hardship, and then I

19   will ultimately make a decision with regard to whether

20   your circumstances qualify you for a hardship excusal.

21   No. 2.

22           PROSPECTIVE JUROR:  My wife had surgery on her

23   ankle less than a week ago and she's not able to put any

24   weight on it.  She's bedridden and I'm the sole caregiver.

25           THE COURT:  So you're the sole caregiver for your

1    wife.  Thank you.

2              No. 3.

3              PROSPECTIVE JUROR:  My grandmother had a stroke,

4    so I found out (inaudible).

5              THE COURT:  I need each of you to speak into the

6    microphone.  I'm sorry.  It's because of the masks we're

7    having difficulty.

8              PROSPECTIVE JUROR:  So I found out last week that

9    I am the power of attorney of my grandmother who recently

10   had a stroke.  If I were able to serve, I wouldn't be able

11   to make any of those decisions that would be required.

12             THE COURT:  Is she here with you?

13             PROSPECTIVE JUROR:  I'm sorry?

14             THE COURT:  Is she here living with you?

15             PROSPECTIVE JUROR:  She does not live with me.

16   She is at a nursing facility at the moment, but I'm the

17   sole person making those decisions or with the power to

18   make those decisions.

19             THE COURT:  And you expect that it -- I guess I'm

20   a little confused because I'm trying to --

21             PROSPECTIVE JUROR:  So everything is --

22             THE COURT:  What will occur this week such that

23   you could not be here this week?

24             PROSPECTIVE JUROR:  There are business decisions

25   and health care decisions since we're supposed to have a

 1    meeting with her health care team that I wouldn't be able

 2    to attend, and it's just because things are up in the air

 3    I don't know what the situation is going to be.

 4              THE COURT:  Is that meeting scheduled for this

 5    week?

 6              PROSPECTIVE JUROR:  It has not been scheduled yet,

 7    but it was scheduled for last week and they should be

 8    scheduling it I believe any time soon.

 9              THE COURT:  Okay.  Thank you.

10              PROSPECTIVE JUROR:  Thank you.

11              THE COURT:  No. 7.  We'll bring the microphone to

12    you.

13              PROSPECTIVE JUROR:  Hello.  I can't serve this

14    week for jury duty is that currently I am unemployed and I

15    had to go into my savings in order to make this trip up.

16    I'm currently trying to look for a job, and I feel like

17    the financials just would hinder my duties as a juror.

18              THE COURT:  Okay.  So it's a financial hardship

19    for you.  Where do you reside?

20              PROSPECTIVE JUROR:  I reside in Sarasota.

21              THE COURT:  Sarasota.  Okay.  Okay.  Thank you.

22    No. 9.

23              PROSPECTIVE JUROR:  Good morning, Your Honor.  I

24    have my -- I take many, many medications several times a

25    day that can make me drowsy, so I don't know that I would

```
 1   be able to fulfill my responsibilities as I fall asleep
 2   every trial.
 3              THE COURT:  I appreciate your candor because
 4   clearly, as you know, we don't want anyone sleeping during
 5   the course of the trial, so thank you for sharing that
 6   information with me.
 7              No. 11.
 8              PROSPECTIVE JUROR:  I'm --
 9              THE COURT:  Wait just a minute.  We're going to
10   bring you the microphone.
11              PROSPECTIVE JUROR:  I'm a Type 2 diabetic and I am
12   scheduled for my second Covid vaccine not necessarily this
13   week but next week.
14              THE COURT:  Well, what day next week?
15              PROSPECTIVE JUROR:  Wednesday.
16              THE COURT:  Okay.  So next Wednesday, second
17   Covid.  Okay.  Thank you.
18              No. 15.
19              PROSPECTIVE JUROR:  Your Honor, I'm a single
20   father of two, and I didn't know this was going to be
21   scheduled throughout the week.  I don't know if I'll be
22   able to have anybody pick him up after school.
23              THE COURT:  So you're a single father of two.  How
24   old are your children?
25              PROSPECTIVE JUROR:  Six and nine.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1            THE COURT:  The problem for you it would be to

2       have someone there to pick them up after school?

3            PROSPECTIVE JUROR:  Yes, Your Honor.

4            THE COURT:  Okay.  Who is scheduled to pick them

5       up today?

6            PROSPECTIVE JUROR:  My grandparents, their

7       grandparents.

8            THE COURT:  Okay.  No. 19.

9            PROSPECTIVE JUROR:  Your Honor, I'm a CPA.  This

10      is my week to make money.  I'm a one-man operation and

11      I've got staff that has to sit around and wait until I do

12      stuff, so my office will have to shut down the whole time

13      that I'm here.

14           THE COURT:  So you're arguing that you have a

15      financial hardship?

16           PROSPECTIVE JUROR:  Yes.

17           THE COURT:  What do you mean by you say this is

18      your week to make money?

19           PROSPECTIVE JUROR:  This is our busiest time

20      because tax returns are due and we'll have to calculate

21      the amount that people owe so they can pay, you know, with

22      the estimated or extension, if they have to be able to pay

23      money.  It's just not me.  It's all my clientele that need

24      me at this point and just feel obligated to at least tell

25      you that so you can make your decision.  I'll live with it

1    one way or the other.

2            THE COURT:  I appreciate that.  I understand that,

3    you know, tax filing season is a very busy season.

4    Although we have an extension until May 15th; right?

5            PROSPECTIVE JUROR:  Right.

6            THE COURT:  Okay.  Thank you.

7            No. 20.

8            PROSPECTIVE JUROR:  First, I want to tell you that

9    my English is like really bad, my English, a lot of

10   like -- maybe if it's just you if you talk about, I'm not

11   understand the --

12           THE COURT:  I'm sorry, but I can't understand what

13   you're saying.  I know you said that your English is not

14   very good.

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  What is your native language?

17           PROSPECTIVE JUROR:  Arabic?

18           THE COURT:  Arabic.

19           PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Okay.

21           PROSPECTIVE JUROR:  My husband's job, he has to

22   go, like, we have one car so we have to wait and he have

23   to drive me, so he wold really have to wait in town every

24   time.

25           THE COURT:  Okay.  So you said that your husband

1    had to drive you here because you don't have a car and so

2    he has to wait in order to drive you back?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Where do you live?

5              PROSPECTIVE JUROR:  Palm Harbor, Clearwater.

6              THE COURT:  Palm Harbor?

7              DEPUTY COURTROOM CLERK:  Like 40 something.

8              THE COURT:  Okay.  Thank you.

9              No. 25.

10             PROSPECTIVE JUROR:  Hello.  I have a flight to

11   Texas on the 24th of, I think, this week, so I don't think

12   I would be here.

13             THE COURT:  Okay.  So you have a flight to Texas.

14   That would be Wednesday?

15             PROSPECTIVE JUROR:  Yeah, Wednesday.

16             THE COURT:  That's nonrefundable?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  Flight to Texas on Wednesday.

19   When are you scheduled to return?

20             PROSPECTIVE JUROR:  The 27th.

21             THE COURT:  Okay.  Thank you.

22             No. 27.

23             PROSPECTIVE JUROR:  Hi, Your Honor.  I have a

24   pretty significant hearing loss.  I have my VA paperwork

25   with me.  I don't do well in settings like this.  As a

```
 1    matter of fact, I'm struggling right now to hear you.  I
 2    don't think it would be fair.  And, secondly, it probably
 3    less important, I have my house is currently under
 4    contract with a closing date of 7 April, so but I've
 5    considered that less important than my ability to hear in
 6    this courtroom, so.
 7              THE COURT:  Okay.  And we do have headsets that
 8    you can use if you have hearing issues.
 9              PROSPECTIVE JUROR:  Sometimes it's the issue of
10    clarity of the words, not so much like I can hear, but
11    it's the ability to process the words.  That's all.
12              THE COURT:  So it's not the volume?
13              PROSPECTIVE JUROR:  Correct.  Like at this hearing
14    I can -- I have hearing aids.  I can turn them up but that
15    doesn't always necessarily help, so I would not be
16    processing or hearing, missing information.
17              THE COURT:  Okay.  Thank you.
18              No. 35.
19              PROSPECTIVE JUROR:  Hello.  I actually -- my
20    husband and I both work from home and I have two young
21    children that I care for, and my mom had to leave from
22    Lakeland to come to Hudson to watch my children today and
23    she won't be able to watch them the rest of the week.
24              THE COURT:  How old are your children?
25              PROSPECTIVE JUROR:  One and four.
```

1          THE COURT:  And you work remotely from home?

2          PROSPECTIVE JUROR:  Yes, ma'am.

3          THE COURT:  Okay.  Thank you.

4          No. 38 -- I'm sorry, 36.  36.

5          PROSPECTIVE JUROR:  The distance that I travel

6     would be over 130 miles to come to the court, so it five

7     or six or seven days is a lot of driving.

8          THE COURT:  From where are you traveling?

9          PROSPECTIVE JUROR:  Sarasota.

10         THE COURT:  Sarasota.  Okay.  And do you meet the

11    requirements for staying in Tampa at a hotel?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  So you do meet those requirements.

14    Because that would be an option.  We do have the ability

15    to house you in one of the hotels within walking distance

16    to the courthouse.

17         PROSPECTIVE JUROR:  Okay.  All right.  That would

18    be fine.

19         THE COURT:  Okay.

20         PROSPECTIVE JUROR:  Okay.

21         THE COURT:  No. 38.

22         PROSPECTIVE JUROR:  I'm currently in my last

23    semester of college.  I'm one year away from graduating

24    and I'm taking classes, and it would be about 130 miles

25    every single day to go back and forth, and I am also not

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    comfortable to stay in a hotel alone in Tampa.

2         THE COURT:  Okay.  And so -- are you taking online

3    courses or do you have to report to your campus for

4    classes?

5         PROSPECTIVE JUROR:  I'm taking online classes but

6    on Tuesdays I have class meetings all day long, from 11:00

7    a.m. to 9:00 p.m.

8         THE COURT:  This is your last semester?

9         PROSPECTIVE JUROR:  Yes.

10        THE COURT:  So you need to be there for the

11   classes this week?

12        PROSPECTIVE JUROR:  Yes, ma'am.

13        THE COURT:  Okay.  Thank you.

14        No. 41.

15        PROSPECTIVE JUROR:  Hi.  I am a medical behavioral

16   assistant for a high school boy who has cerebral palsy,

17   and me being not being able to help him with those

18   accommodations would be a hardship and very stressful for

19   him and also stressful for me.  I asked for a postponement

20   because after he graduates June 1st, I'd be free to serve,

21   but right now I'm trying to get him ready for graduation

22   and testing and everything.  It would be very stressful

23   for both of us.

24        THE COURT:  Okay.  And you're with him all week,

25   five days a week?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        PROSPECTIVE JUROR:  Yeah.  I work with him every

2    day all day.

3        THE COURT:  Okay.  Thank you.

4        Okay.  I am now going to read for you the

5    indictment in this case.  Then after that, I'll ask you

6    some additional questions.  Did I forget someone?

7        Oh, I'm sorry.  No. 13 -- No. 12?

8        PROSPECTIVE JUROR:  I'm 13.  Your Honor, I am the

9    bread winner of the family, and if we go all week I know

10    the courts pay $50 a day, but I bring more home, more than

11    that, and it will financially hurt us if I miss a whole

12    week paycheck.

13        THE COURT:  How are you employed?

14        PROSPECTIVE JUROR:  I'm a nurse at a nursing

15    facility.

16        THE COURT:  And your facility will not pay you if

17    are serving on jury duty?

18        PROSPECTIVE JUROR:  I think -- I used my PTO.  I

19    think I have like three days of that, but we are a family

20    of three and I bring home the paycheck.

21        THE COURT:  Okay.  So it's financial hardship?

22        PROSPECTIVE JUROR:  (Nodding head.)

23        THE COURT:  All right.  Did I overlook any others.

24    No. 13?

25        PROSPECTIVE JUROR:  Hi, Your Honor.  I have

1    problems with my right ear and I have surgery scheduled

2    for April 6th.  I have a little hole in the eardrum.  Also

3    I'm a teacher, so as a teacher, I work with another

4    teacher and when I don't work she has to do a double

5    because they don't allow only two teachers in that room,

6    you know, of course with the virus, so that's --

7              THE COURT:  So what was the hearing problem you

8    have?

9              PROSPECTIVE JUROR:  I'm sorry?

10             THE COURT:  Did you describe a hearing issue?

11             PROSPECTIVE JUROR:  Yeah.  The right ear, I have

12   surgery scheduled for April 6th to go in and repair the

13   hole in the ear.  I have a small hole, and then being a

14   teacher.

15             THE COURT:  Would a hearing aid assist?  We have

16   headphones that can assist with hearing difficulties.

17   Would that help you?

18             PROSPECTIVE JUROR:  The headset?  Yeah, like the

19   gentleman, I could do that.

20             THE COURT:  Okay.  Okay.  Thank you.

21             All right.  As I indicate, I was going to share

22   with you the indictment in this case which is the charging

23   document.  I'm going to read the pertinent portion of the

24   indictment which sets forth the charges against the

25   Defendant.  The indictment is not to be considered as

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    evidence but it is a mere formal accusation against the

2    Defendant.  You must not consider it as evidence of the

3    Defendant's guilt and you must not be influenced by the

4    fact that this indictment has been filed against the

5    Defendant.

6            The indictment charges the following:  On or about

7    March 7th, 2017 in the Middle District of Florida and

8    elsewhere, the Defendant Jack R. Dove, III did knowingly

9    receive a visual depiction using any means and facility of

10   interstate and foreign commerce, including by computer,

11   and that had been shipped and transported in and effecting

12   interstate and foreign commerce when the production of the

13   visual depiction involved the use of a minor engaging in

14   sexually explicit conduct and the visual depiction was of

15   such conduct.  That's Count One.

16           Count Two of the indictment charges on an unknown

17   date but no later than on or about November 30th, 2018 in

18   the Middle District of Florida and elsewhere, the

19   Defendant Jack R. Dove, III, did knowingly possess and

20   access with intent to view a matter which contained a

21   visual depiction that had been shipped and transported

22   using any means and facility of interstate and foreign

23   commerce including by computer and when the production of

24   the visual depiction involved the use of a minor engaging

25   in sexually explicit conduct and the visual depiction was

1    of such conduct and the depiction involved a prepubescent

2    minor and a minor who had not obtained 12 years of age.

3         Having shared the indictment with you, my first

4    question is:  Do any of you think you know anything about

5    this case based just upon what I read from the indictment?

6    If so, please raise your number card.  All right.  All

7    negative responses.

8         My next question is:  I anticipate that testimony

9    and evidence in this case will concern frank and graphic

10   discussion and descriptions about sexual activity between

11   an adult and a minor child.  Are there any members of the

12   panel who, for whatever reason, are unable to hear such

13   testimony or discuss such matters with other members of

14   the jury?  If so, please raise your number cards.

15        Okay.  1, 4, 5, 7, 13, 17, 25, 26, 23, 31, 41.

16   Okay.  I think I have everyone.  1, 4, 5, 7, 13, 17, 25,

17   26, 23, 26, 31 and 41.

18        And I'm going to start with No. 1.  If you would

19   share with me why you are unable to hear such testimony.

20   Tell me if there's anything about it and about the subject

21   matter that would make it difficult for you to sit as a

22   juror in this case including reviewing images that may

23   portray sexual activity between adults and minors.

24        PROSPECTIVE JUROR:  I had an incident, in fact, in

25   this type of situation.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Okay.  I'm going to need to get more

2     information with you about that.  Why don't I give you a

3     headset.

4  (Bench conference with Juror No. 1.)

5          THE COURT:  Everyone have their headset?  No. 1,

6     can you hear me?  Can everyone hear?

7          Okay.  Explain to me what you mean about the

8     incident you're referring to.

9          PROSPECTIVE JUROR:  So when I was about three

10    years old, my dad tried to do sexual actions to me, which

11    led into my mom's divorce to my dad.  And I just feel like

12    I won't be able to not be biased of the situation.

13         THE COURT:  Okay.  So when you were three years

14    old, your dad actually tried to sexually molest you?

15         PROSPECTIVE JUROR:  Correct.  I had to go to

16    therapy and everything, so.

17         THE COURT:  You went to therapy as a result?

18         PROSPECTIVE JUROR:  Correct.  And I still have

19    some issues of previous.

20         THE COURT:  How long ago was that?  You said, I

21    don't know how old you are.

22         PROSPECTIVE JUROR:  I'm 22.

23         THE COURT:  You're 22.

24         PROSPECTIVE JUROR:  Uh-huh.  We didn't have to go

25    to court until I was like older, so I had to sit on the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    jury and talk to them about it.

2         THE COURT:  Okay.  So you had to testify in court

3    as a result of the proceeding?

4         PROSPECTIVE JUROR:  Correct.

5         THE COURT:  And your father was prosecuted?

6         PROSPECTIVE JUROR:  No, he was not.  I guess they

7    didn't have enough evidence of it.  I'm not for sure

8    exactly.  I was still young at the time, but I don't know

9    in any of that happened to him or not.

10        THE COURT:  You believe because of your own

11   experience, you would be unable to sit and view

12   photographs or hear testimony regarding child pornography?

13        PROSPECTIVE JUROR:  Correct.  I can't even watch

14   TV about it so I don't think that's fair to the Defendant.

15        THE COURT:  Okay.  Counsel, do either of you have

16   any questions of Juror No. 1?

17        MS. THELWELL:  No, Your Honor.

18        MR. FITZGERALD:  No, Your Honor.

19        THE COURT:  Okay.  All right.  Thank you.  You may

20   return.  Give your head setback to the CSO.

21   (Bench conference concluded.)

22        THE COURT:  All right.  Juror No. 4.

23        PROSPECTIVE JUROR:  Hello.

24        THE COURT:  You may come down too.

25   (Bench conference held with Juror No. 4)

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  I can't do it because I

2     have -- I had an incident when I was younger and I was

3     there too and plus in Central America we were told that

4     that's what Caucasian men come here to do to little girls.

5          THE COURT:  Okay.  This is Central America?

6          PROSPECTIVE JUROR:  I believe.

7          THE COURT:  How long ago?

8          PROSPECTIVE JUROR:  I've been here 24 years, so

9     what period of time.

10         THE COURT:  For how long?

11         PROSPECTIVE JUROR:  Pardon?  What period of time?

12    No.  That was in Belize.

13         THE COURT:  Okay.  I understand you were in your

14    country.  First, how old were you when this occurred?

15         PROSPECTIVE JUROR:  Very young, I think.

16         THE COURT:  Speak up a little bit.

17         PROSPECTIVE JUROR:  I'm not sure what age.  I know

18    it ended like when I was 13.

19         THE COURT:  Ended when you were 13?

20         PROSPECTIVE JUROR:  When I was 13.

21         THE COURT:  How old are you now?

22         PROSPECTIVE JUROR:  I'm 47.

23         THE COURT:  47.  Did you get any therapy or

24    treatment for the --

25         PROSPECTIVE JUROR:  No.  Because nobody didn't

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    know.  Only my mom when he started with my little sister.

2            THE COURT:  So you were molested, and then he

3    also, this individual, was it one person or several

4    people?

5            PROSPECTIVE JUROR:  One person.

6            THE COURT:  And he also molested your younger

7    sister?

8            PROSPECTIVE JUROR:  Well, he started to, but he

9    was the only one that my mom knew.

10           THE COURT:  You start loud, but then you fade out,

11   and I'm having trouble hearing your last comments.

12           PROSPECTIVE JUROR:  I said the only reason my mom

13   find out is because my little sister spoke of and I didn't

14   speak of so much.  That's how they discover that I was

15   too.

16           THE COURT:  Was this individual prosecuted when

17   you were in your country?

18           PROSPECTIVE JUROR:  Because nobody knew.

19           THE COURT:  Nobody knew.  You didn't tell anyone?

20           PROSPECTIVE JUROR:  No.  It was my --

21           THE COURT:  So you didn't tell your parents?

22           PROSPECTIVE JUROR:  Well, it was my father.

23           THE COURT:  It was your father?

24           PROSPECTIVE JUROR:  Uh-huh.

25           THE COURT:  And because of your experience do you

1    believe that you would be unable to sit as a juror in the

2    case of this nature?

3              PROSPECTIVE JUROR:  I don't -- I don't like to

4    hear stuff.  I don't know none of that.

5              THE COURT:  You don't like to hear stuff about

6    this, like this?

7              PROSPECTIVE JUROR:  Uh-uh.

8              THE COURT:  Would you be able to be fair to both

9    parties?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  No.  All right.  Counsel for the

12   United States, any questions of this Juror No. 4?

13             MS. THELWELL:  No, Your Honor.

14             THE COURT:  Counsel for Defendant?

15             MR. FITZGERALD:  No, Your Honor.

16             THE COURT:  Okay.  All right.  Thank you.

17   (Bench conference concluded.)

18   (Bench conference had with Juror No. 5 outside venire.)

19             THE COURT:  Juror No. 5.  Can you hear me?

20             PROSPECTIVE JUROR:  Yes, ma'am.  I have two really

21   young nieces that I'm extremely close with.  They're both

22   under 13, and I don't know if I can handle anything that

23   they're going to say or show.

24             THE COURT:  How old are your nieces?

25             PROSPECTIVE JUROR:  One is 9 and one is 12.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Okay.  And it's because of the fact

2     that you have the younger nieces that you are uncertain of

3     your ability to be fair and impartial?

4          PROSPECTIVE JUROR:  Absolutely.

5          THE COURT:  To your knowledge, has there been any

6     indication of any sexual misconduct toward your younger

7     nieces?

8          PROSPECTIVE JUROR:  No, absolutely not.

9          THE COURT:  It's just the fact that you have these

10     young nieces that you're concerned about your ability to

11     be fair and impartial?

12          PROSPECTIVE JUROR:  Yes, ma'am.  I'm very, very

13     close with them.

14          THE COURT:  Okay.  Counsel for the United States?

15          MS. THELWELL:  No, Your Honor.

16          THE COURT:  Counsel for the Defendant?

17          MR. FITZGERALD:  No questions, Your Honor.

18          THE COURT:  Okay.  All right.  Thank you, No. 5.

19     (Bench conference concluded.)

20          THE COURT:  All right.  Juror No. 7.  You don't

21     all have to come here.  It's just if you have information

22     that you'd like to discuss with the Court, would you

23     prefer to share it privately.

24          PROSPECTIVE JUROR:  There is information I would

25     like to discuss with you privately.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1              THE COURT:  Okay.  Then you may come forward.

 2   (Bench conference with Juror No. 7 outside venire.)

 3              THE COURT:  No. 7, can you hear me?

 4              PROSPECTIVE JUROR:  Yes.  Your Honor.  So I would

 5   like to -- first, one of the reasons I feel a little

 6   uncomfortable dealing with this case is mostly because I'm

 7   a virgin.  I've never had sex before or any sexual

 8   relationships with anyone, and on top of that, I do

 9   believe the case that you just described to me has curved

10   my opinion of the -- I don't know the right term but of

11   the person who is being accused here in court, and I do

12   not believe that my opinion would give him a fair trial.

13              THE COURT:  Okay.  So you don't believe based upon

14   just what I shared with you from the indictment that you

15   can give him a fair trial?

16              PROSPECTIVE JUROR:  Yes, that's correct, Your

17   Honor.

18              THE COURT:  Okay.  Because he's been accused of

19   this?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Okay.  So that means you would not be

22   able to then sit and listen to the testimony and evidence

23   and then make a decision?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Would you be -- would you also be

1    uncomfortable discussing the subject matter with other

2    members of the jury?

3            PROSPECTIVE JUROR:  Yes.  Of course.

4            THE COURT:  You'd be uncomfortable?

5            PROSPECTIVE JUROR:  Yes.

6            THE COURT:  Okay.  All right.  Counsel for the

7    United States.

8            MS. THELWELL:  No, Your Honor.

9            THE COURT:  Counsel for the Defendant?

10           MR. FITZGERALD:  No questions, Your Honor.

11           THE COURT:  All right.  Thank you.

12   (Bench conference concluded.)

13           THE COURT:  All right.  No. 13.

14           PROSPECTIVE JUROR:  Your Honor, like I was telling

15   you earlier, I'm a teacher for little 4 and 5 year olds,

16   and I would start crying.  Just thinking about it gets me

17   emotional.  I just can't.  I'm telling you, being a school

18   teacher, it would be very hard for me.

19           THE COURT:  And so because of your relationship,

20   with your students who are, is it 4 and 5 years old?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  You would have difficulty seeing such

23   evidence?

24           PROSPECTIVE JUROR:  Yes.  Yes.

25           THE COURT:  Would you also have difficulty

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1    discussing the subject matter with other matters of the
 2    jury?
 3              PROSPECTIVE JUROR:  Yes.
 4              THE COURT:  All right.  Any questions,
 5    Ms. Thelwell?
 6              MS. THELWELL:  No, Your Honor.
 7              THE COURT:  Mr. Fitzgerald?
 8              MR. FITZGERALD:  Yes, ma'am, do you think you
 9    could be fair to the Defendant in this trial?
10              PROSPECTIVE JUROR:  I'm sorry, my hearing loss.
11    I'm sorry, I couldn't hear you.
12              MR. FITZGERALD:  I'm sorry.  Do you think you
13    would have a hard time being fair to the Defendant in this
14    trial?
15              PROSPECTIVE JUROR:  I don't think -- my mind, I
16    don't think my mind would be focusing on just, you know --
17    I couldn't -- I don't think I could be fair.  I don't
18    know.  I mean I'm just saying just thinking about it
19    sitting through it would be very hard that it -- it would
20    be very hard to do.
21              MR. FITZGERALD:  That's a no, you don't think so?
22              PROSPECTIVE JUROR:  No, it would be very hard.
23              MR. FITZGERALD:  Thank you.
24              PROSPECTIVE JUROR:  Okay.
25              THE COURT:  All right.  No. 17.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1            PROSPECTIVE JUROR:  I have a nine-month old
 2    daughter so I don't believe I can be unbiased in this
 3    case.
 4            THE COURT:  All right.  So you have a nine-year
 5    old daughter and you don't believe you could be fair to
 6    both the Defendant and to the United States given the
 7    subject matter of this trial?
 8            PROSPECTIVE JUROR:  Correct.  It is nine months,
 9    my daughter.
10            THE COURT:  Nine month?
11            PROSPECTIVE JUROR:  Yes.
12            THE COURT:  And would you also have difficulty
13    discussing this topic with other members of the jury?
14            PROSPECTIVE JUROR:  Yes, ma'am.
15            THE COURT:  Okay.  All right.  Thank you.
16    Ms. Thelwell or Mr. Fitzgerald, any questions?
17            MS. THELWELL:  No, Your Honor.
18            MR. FITZGERALD:  No, Your Honor.
19            THE COURT:  All right.  No. 23.
20            PROSPECTIVE JUROR:  I think that I would be
21    very -- I would be very uncomfortable.  Just when you were
22    reading the indictment, I started crying.
23            THE COURT:  You started --
24            PROSPECTIVE JUROR:  I started crying.  My heart
25    started beating really fast.  I cannot even --
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Something happened with the mic.  You

2     cannot even?

3          PROSPECTIVE JUROR:  Watch pictures of children

4     being exposed or -- I have a 13-year old boy.  He's

5     playing, you know, online games, and I can't see when the

6     adults are trying to, you know, entice him to, you know,

7     give him information and everything.  I'm always close to

8     him being of age.  I mean make me feel so uncomfortable

9     and I feel anger, so I'm just saying.

10         THE COURT:  Okay.  I certainly appreciate your

11    candor.  As a result of your feelings and you're

12    emotional -- emotions as you've indicated have already

13    shown themselves based upon my review of the indictment

14    with you, you believe that you would be unable to be a

15    fair and impartial juror in this case given the subject

16    matter?

17         PROSPECTIVE JUROR:  (Nodding head.)

18         THE COURT:  You have to answer out loud.

19         PROSPECTIVE JUROR:  Yeah, I think.

20         THE COURT:  And would you also be unable

21    to discuss the subject matter with other members of the

22    jury?

23         PROSPECTIVE JUROR:  No, I would not be able to.

24         THE COURT:  You would not be able to do that?

25         PROSPECTIVE JUROR:  No.

64

1           THE COURT:  All right.  Thank you.

2           No. 25.

3           PROSPECTIVE JUROR:  I mean morally anyone that is

4     sitting here should have an issue with seeing and viewing

5     those things, so I think this testimony should be for

6     everyone, but personally I have gone through this as well,

7     so I don't think I could be comfortable being around this

8     person is making me uncomfortable to begin with.  I would

9     100 percent be biased in this situation so I don't think

10    that I could --

11          THE COURT:  You say you have a three-year old?

12          PROSPECTIVE JUROR:  And 21.

13          THE COURT:  Okay.

14          PROSPECTIVE JUROR:  I said I've been through these

15    things myself, and I said morally anyone who has, like,

16    would see those things should be uncomfortable, so I don't

17    think that I could sit through this trial and be unbiased

18    to somebody who is being accused of that.

19          THE COURT:  Okay.  And I understand the discomfort

20    or uncomfort with regard to listening to such testimony

21    and viewing such photographs, but my question is would

22    your discomfort be such that you could not be fair and

23    impartial to both the Defendant and the United States?

24          PROSPECTIVE JUROR:  What do you mean by that?

25    Like --

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  In other words, do you have

2     preconceived opinions or beliefs based just on what I have

3     shared with you from the indictment?

4          PROSPECTIVE JUROR:  I have preconceived beliefs on

5     pedophilia, yeah.

6          THE COURT:  You're what?

7          PROSPECTIVE JUROR:  I have preconceived beliefs

8     based on pedophilia.

9          THE COURT:  There's no evidence or any testimony

10    with regard to this Defendant.  He has been charged by an

11    indictment.

12         PROSPECTIVE JUROR:  Yes, but evidence that will be

13    shown that you said that we would -- we might have to look

14    at, I would not be comfortable with.

15         THE COURT:  You would not be comfortable with

16    viewing that evidence?

17         PROSPECTIVE JUROR:  Right.

18         THE COURT:  Would you likewise be uncomfortable,

19    did you say, discussing the evidence and testimony with

20    other members of the jury?

21         PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  Yes.

23         PROSPECTIVE JUROR:  Yeah.  I wouldn't be

24    comfortable.

25         THE COURT:  And would your uncomfort or discomfort

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    rise to the level that you believe you could not be fair?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Or an unbiased juror?

4              PROSPECTIVE JUROR:  Yeah, I would not be fair.

5              THE COURT:  You would not be fair and unbiased.

6    Counsel, any follow-up questions of No. 25.

7              MS. THELWELL:  No, Your Honor.

8              MR. FITZGERALD:  No, Your Honor.

9              THE COURT:  No. 26.

10             PROSPECTIVE JUROR:  If I think it would be best if

11   I come up there.

12             THE COURT:  Okay.  Thank you.

13   (Bench conference begins with Juror No. 26.)

14             THE COURT:  Can you hear me?

15             PROSPECTIVE JUROR:  Can you hear me?

16             THE COURT:  Pull the microphone up to you.

17             PROSPECTIVE JUROR:  I have Mr. -- I had a 13-year

18   old granddaughter who was molested by her father.  It was

19   an adopted.  She's my real blood but he's not the father,

20   but he adopted her, and just hearing you talk about the

21   indictment it brought back a lot of memories, so I don't

22   see any possible way I could be impartial to be honest.

23   It's pretty upsetting.  I can answer any questions you

24   have.

25             THE COURT:  How long ago did this occur?  How long

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   ago did this occur?

2         PROSPECTIVE JUROR:  She's 20 years old now.  It

3   happened when she was 13.

4         THE COURT:  Okay.  So seven years ago.  And was

5   anyone charged?  Was he prosecuted?

6         PROSPECTIVE JUROR:  Yes.  He was -- he's serving a

7   30-year sentence in Oklahoma.

8         THE COURT:  Okay.  All right.  Thank you very

9   much.  I appreciate your candor.

10  (Juror No. 26 returned to panel.)

11  (Bench conference had with Juror No. 31.)

12        THE COURT:  No. 31.

13        PROSPECTIVE JUROR:  Can you hear me?

14        THE COURT:  Yes.  You may proceed.

15        PROSPECTIVE JUROR:  Okay.  I don't think I could

16  be fair.  I'm trying to keep my emotions in check.  When I

17  heard the details, I couldn't see pictures or anything

18  like that because when I was about 11 or 12 I had an uncle

19  touch me inappropriately and I just feel the anger and

20  hatred still today.  I just don't think I could be fair or

21  handle that.

22        THE COURT:  All right.  I certainly appreciate

23  your candor.  Thank you very much.

24  (Juror No. 31 returned to the panel.)

25  (Bench conference had with Juror No. 41.)

1          THE COURT:  No. 41.  Okay.  Can you hear me?

2          PROSPECTIVE JUROR:  Yeah.

3          THE COURT:  You may proceed.

4          PROSPECTIVE JUROR:  A couple different things.

5   You know, I've been in the school system a very long time.

6   I have worked with children from K through 12, and I have

7   a very high regard for children.  I have a five-year old

8   granddaughter myself.

9          THE COURT:  I'm losing you.  Can we turn up

10  here -- turn hers up a little, or adjust the microphone?

11         PROSPECTIVE JUROR:  Can you hear me better now?

12         THE COURT:  Yes.  Yes.

13         PROSPECTIVE JUROR:  Okay.  Thank you.  I'll start

14  over.  I'm sorry.  You know, I've worked in the school

15  system for many years and with children from all the way

16  from K to 12 and I have a very high regard for children.

17  I have a five-year old granddaughter.  Listening to this I

18  know would make me physically ill.

19         I've also had myself an incident when I was a

20  young girl that I've never really talked about or thought

21  about until here, so I know I cannot be impartial or fair

22  and this would probably make me physically sick.

23         THE COURT:  Okay.  You said you had an incident

24  when you were a young girl.  Was it someone molested you?

25         PROSPECTIVE JUROR:  Yes.  I guess so.  I can't

1   really -- I never talked about it.

2           THE COURT:  Okay.  All right.  Counsel, any

3   questions?

4           MS. THELWELL:  No, Your Honor.

5           MR. FITZGERALD:  No, Your Honor.

6           THE COURT:  Okay.  Thank you.

7   (Juror No. 41 returned to the panel.)

8           THE COURT:  As to No. 3.

9   (Bench conference begins with Juror No. 3.)

10          PROSPECTIVE JUROR:  Hi.

11          THE COURT:  Can you hear me?

12          PROSPECTIVE JUROR:  Yes.  I can.  Thank you.

13  Based on my religious belief system, I feel that it would

14  be rather difficult for me to remain impartial and

15  unbiased, but also viewing and discussing things of an

16  overt sexual nature with other members of the jury.

17          THE COURT:  Okay.  And so because of your

18  religious beliefs, you believe that you could not be fair

19  and impartial --

20          PROSPECTIVE JUROR:  I think it would be difficult.

21          THE COURT:  -- given the nature of this type of

22  proceeding?

23          PROSPECTIVE JUROR:  Correct.

24          THE COURT:  Any questions either, Ms. Thelwell or

25  Mr. Fitzgerald?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1              MS. THELWELL:  No, Your Honor.
 2              MR. FITZGERALD:  No.
 3              THE COURT:  Okay.  Thank you.
 4              PROSPECTIVE JUROR:  Thank you very much.
 5   (Juror No. 3 returns to the panel
 6              THE COURT:  No. 38.
 7   (Bench conference begins with Juror No. 38.)
 8              THE COURT:  Can you hear me?
 9              PROSPECTIVE JUROR:  Yes.  Okay.
10              THE COURT:  Okay.  We can't hear you.
11              PROSPECTIVE JUROR:  Can you hear me?
12              THE COURT:  Say something again.  Testing.
13              PROSPECTIVE JUROR:  Testing.
14              THE COURT:  Okay.  Yes.
15              PROSPECTIVE JUROR:  Okay.  I think that if I sat
16       and listened I would be extremely biased and it would
17       cause me emotional stress outside.  I think it would
18       bother me a lot because I had two incidents when I was
19       younger, but like I said, I thought it would be okay
20       because they were a long time ago.  I don't really want to
21       go into them, but I feel like if I had to sit in here for
22       a week that I wouldn't be okay for a while.
23              THE COURT:  When you say -- and I'm not asking
24       about the details, but when you say you had two incidents
25       when you were younger, are you referring to yourself as
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1   the victim of sexual molestation?

 2          PROSPECTIVE JUROR:  Yes, ma'am.

 3          THE COURT:  I see that you have become emotional

 4   just talking to me about it.  Okay.  Thank you.

 5          PROSPECTIVE JUROR:  Thank you.

 6   (Juror No. 38 returned to the panel.)

 7          THE COURT:  And I saw one other.  No. 18.

 8          COURT SECURITY OFFICER:  They didn't hear you,

 9   Your Honor.

10          THE COURT:  No. 18.

11   (Bench conference begins with Juror No. 18.)

12          PROSPECTIVE JUROR:  I would like to apologize for

13   not initially raising my card above, but the longer I

14   thought about the indictment that you read off about the

15   Plaintiff, I was not personally affected by the subject

16   matter at hand, however, my roommate and somebody who's

17   been my wife for almost two decades now was victimized by

18   similar charges.  And the longer I thought about it, the

19   more I thought it would be difficult to abstain from

20   letting my preconceived notions about the subject matter

21   affect my decision as a juror.

22          THE COURT:  Okay.  So if I understand you

23   correctly, then someone who's very close to you was you

24   said victimized by similar charges.  So you mean that

25   person was charged similar to the charges I read to you in

1   the indictment or was that person the victim of sexual

2   molestation?

3              PROSPECTIVE JUROR:  She was the victim.

4              THE COURT:  She was the victim.  Okay.  And was it

5   while she was a child?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And so based upon your relationship

8   with this individual, you believe you could not be fair

9   and impartial given the nature of the charges in this

10  case?

11             PROSPECTIVE JUROR:  Correct.  Given my close

12  relationship to the individual that was the victim.

13             THE COURT:  Okay.  And was anyone prosecuted in

14  your friend's case?

15             PROSPECTIVE JUROR:  No, they were not.  They got

16  off.

17             THE COURT:  Do you know if she reported it to law

18  enforcement?

19             PROSPECTIVE JUROR:  Not until much later, and at

20  that point I believe the statute of limitations had

21  prevented her from pursuing any charges.

22             THE COURT:  All right.  Thank you.

23             PROSPECTIVE JUROR:  Thank you.

24  (Juror No. 18 returned to the panel.)

25             THE COURT:  Now that takes me to my next question

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    which is have you or any of your relatives or close

2    friends ever had any experience with a person who has

3    engaged in sexual activity with a child that might in any

4    way affect your judgment in this case?  We've just heard

5    from someone who told me about a relationship with a close

6    friend.  Any others of you who may not have personally

7    experienced such but have close friends or family members

8    who have and based upon your relationships with those

9    close friends and family members don't believe that you

10   can fairly and impartially serve as a juror in this case?

11   All right.  No. 5.  We'll get the microphone to you.

12        PROSPECTIVE JUROR:  My uncle is serving life in

13   prison right now for I guess raping a -- I don't know.

14   He's been in there probably 13 or 14 years maybe.

15        THE COURT:  Okay.  So he's serving life in prison

16   and it was -- was it with regard to a child or just a

17   rape?

18        PROSPECTIVE JUROR:  It was a child.

19        THE COURT:  It was a child.  And as a result of

20   your relationship with your uncle, do you think you could

21   be a fair and impartial juror in this case?

22        PROSPECTIVE JUROR:  No.

23        THE COURT:  Is that a no?

24        PROSPECTIVE JUROR:  No, Your Honor.

25        THE COURT:  Is that because you don't believe your

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    uncle was treated fairly?

2            PROSPECTIVE JUROR:  No, I feel like he deserved

3    what he did.

4            THE COURT:  Okay.  So you agree with the outcome

5    of his case?

6            PROSPECTIVE JUROR:  Yes, Your Honor.

7            THE COURT:  Okay.  Thank you.

8            Do any of you belong to any groups that promote,

9    advocate or otherwise condone sexual relations between

10   adults and individuals who are less than 18 years of age?

11           All right.  All negative responses.

12           All right.  I'm now going to identify for you the

13   witnesses who may be called to testify in this case.  If

14   you think that you know any of them, please raise your

15   number cards.

16           Special Agent Tavey Garcia.  Computer Forensic

17   Analyst Justin Gaertner.  Computer Forensic Analyst Edward

18   Schwaigert.  Special Agent Darrell Franklin.  Special

19   Agent Thomas Tamsi.  Intel Research Specialist Kimberly

20   Reece.  Contractor Aaron Bice.  Special Agent Tigran

21   Gambaryan, G-A-M-B-A-R-Y-A-N.  Special Agent Chris

22   Janczewski.  James Daniels.  Gus Dimitrelos.  Melissa

23   Dove.  Rachel Ortengren.  And then you already have had an

24   opportunity to meet the attorneys and the agents as well

25   as the Defendant.

1          Do any of you know any of the attorneys involved

2     in this case or any of the case agents?

3          Okay.  No. 29.  No. 29, how do you know -- who do

4     you know?

5               PROSPECTIVE JUROR:  I know attorney Thelwell.

6               THE COURT:  Thelwell.  How do you know her?

7               PROSPECTIVE JUROR:  We belong to a group together.

8               THE COURT:  Okay.  Let me get the microphone to

9     you.

10              PROSPECTIVE JUROR:  Sorry.  We belong to a group

11    together.  It New Leaders.  We're both alumni of that

12    group.

13              THE COURT:  Okay.  And do you believe that your

14    relationship and knowledge with Ms. Thelwell will have an

15    impact on your ability to serve as fair and impartial

16    juror in this case?

17              PROSPECTIVE JUROR:  No, I don't think so.  I don't

18    know what she does fully, but no, I can be fair.

19              THE COURT:  Okay.  Thank you.  Any others of you

20    know anyone here, including the Court?

21          All right.  All negative responses.

22          We talked a little bit about this earlier with

23    regard to hearing loss.  Do any of you have any physical

24    impairments which would need to be accommodated if you are

25    selected as a juror such as hearing or sight difficulties

1    or medical condition?  I know that I have heard about

2    hearing and I've heard about medications that may make you

3    drowsy.  Are there any others?

4         All right.  All negative responses.

5         Are there any members of the panel this morning

6    that do not have a computer at home?  Any of you here that

7    do not have a computer at home?  If so, please raise your

8    number card.

9         All right.  No. 31.  No. 14?  I can't hear her.

10   You need to get the microphone.  Let me get the microphone

11   to you.

12        PROSPECTIVE JUROR:  Did you mean computer or iPad?

13        THE COURT:  Okay.  Thank you.  Good question.  I

14   said computer, but an iPad would be fine as would a smart

15   phone, something that would allow you to access the

16   Internet.

17        PROSPECTIVE JUROR:  Okay.  Thank you.

18        THE COURT:  So No. 31, is your answer still that

19   you do not have?

20        PROSPECTIVE JUROR:  I have a smart phone.

21        THE COURT:  You have a smart phone.  Okay.

22        Are there any of you who do not use a computer at

23   work?  If you do not use a computer at work, please raise

24   your number card.  No. 20.

25        And No. 20, how are you employed?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  I don't use the computer at

2     work or on line.

3          THE COURT:  So you don't use a computer at work.

4     What is your job?

5          PROSPECTIVE JUROR:  I working as companion with

6     old people who have Alzheimer's.

7          THE COURT:  So you are --

8          PROSPECTIVE JUROR:  So I just using my phone to do

9     like clock in and out, and now I'm not working.  I collect

10    unemployment.

11         THE COURT:  I could not understand your response.

12    Are you employed now?

13         PROSPECTIVE JUROR:  No, I'm not working.  Usually

14    in my work I'm not using the computer.  I'm just using my

15    phone as like clock in and clock out.

16         THE COURT:  Okay.  Okay.  Thank you.

17         No. 36.

18         PROSPECTIVE JUROR:  I'm retired so I don't work.

19         THE COURT:  Okay.  Thank you.  I'm trying to get

20    there.

21         PROSPECTIVE JUROR:  So I'm not that computer

22    efficient.

23         THE COURT:  Is there anyone in here?  No. 25.

24         PROSPECTIVE JUROR:  Does it count if you don't

25    work right now?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Does it count if you don't work?

2          PROSPECTIVE JUROR:  Yeah.  Because I don't work so

3   I don't -- not using a computer.

4          THE COURT:  So you don't use a computer, but do

5   you use the Internet on your smart phone?

6          PROSPECTIVE JUROR:  Of course, yes.

7          THE COURT:  Okay.  Thank you.  Is there anyone in

8   here to does not have access to the Internet?  Anyone in

9   here who does not have access to the Internet?

10         All right.  All negative responses.

11         Is there anyone in here who is not familiar with

12  the following terms?  Surfing the net?  Anyone not

13  familiar with that?  Surfing the net.  Anyone not familiar

14  with browsing?  Anyone not familiar with downloads?

15         No response.

16         Anyone not familiar with software?  How many of

17  you are familiar with the Dark Web?  If you are familiar

18  with the Dark Web, please raise your number cards.

19         2, 9, 12, 15, 18, 25, 24, 27, 35, 32, 37, and 40

20  and 3 and 7.

21         We'll come over to No. 2.  Tell me, sir, what is

22  the extent of your knowledge or your experience with the

23  Dark Web?

24         PROSPECTIVE JUROR:  I know that it exists.  I've

25  worked with computers for over 50 years so pretty much

1    anything with computers I know about.  I haven't actually

2    done anything with the Dark Web.

3            THE COURT:  You know that it exists and you were

4    working with computers for about 50 years?

5            PROSPECTIVE JUROR:  50.

6            THE COURT:  50, oh, my.  So would you consider

7    yourself to have specialized computer training?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Okay.  All right.  Thank you.

10           No. 3.

11           PROSPECTIVE JUROR:  I would say along the same

12   lines.  I'm familiar that it exists and I am working.  I'm

13   an accountant, so I am familiar with the fact that credit

14   card numbers and identities can be stolen through the Dark

15   Web or traded and sold, so.

16           THE COURT:  All right.  Thank you.

17           No. 7.  We're going bring the microphone to you.

18           PROSPECTIVE JUROR:  Your Honor, I only know the

19   Dark Web through the dictionary definition knowing that

20   usually illegal matters are on it and it's distribution

21   and just knowing that.  My only experience is to either

22   social media or Webster's dictionary.  That's it.

23           THE COURT:  All right.  Thank you.

24           No. 9.

25           PROSPECTIVE JUROR:  Yes, Your Honor.  I'm aware

1    that it exists and what I've heard in the news and that

2    it's used primarily for exchanging illegal goods, be it

3    drugs, pornography, whatnot.  I have not used it but I do

4    know it exists.  I know what it's used for.

5              THE COURT:  Okay.  All right.  Thank you.

6              No. 12.

7              PROSPECTIVE JUROR:  I know about the Dark Web,

8    that it's useful and people can be in a section that

9    you're not supposed to and doing stuff.  That's about what

10   I know about it.

11             THE COURT:  Thank you.

12             No. 15.

13             PROSPECTIVE JUROR:  Your Honor, I know that it is

14   like a lawless form of the Internet.  Like, only, like --

15   well, what I have to say is that place where criminals

16   exchange, you know, stuff that shouldn't be put out there.

17             THE COURT:  Okay.  Thank you.

18             No. 18.

19             PROSPECTIVE JUROR:  Like others have stated, I'm

20   familiar with its existence.  I know that the content on

21   there can vary from major to minor in illegal activities

22   and content, and I know that if I'm not mistaken, you need

23   a separate Internet protocol to access it.  It's not

24   something you can just find online on the normal Internet.

25   And that's my full extent of my knowledge of the Dark Web.

1    I've never personally been on it.

2              THE COURT:  Okay.  Thank you.

3              PROSPECTIVE JUROR:  Thank you.

4              THE COURT:  No. 25.

5              PROSPECTIVE JUROR:  Like everyone, Judge, I know

6    they exist and what this person said.  I'm aware that you

7    need it's like VPN or other things to get up on it or a

8    lot harder to reach than just the normal Internet, and

9    that there's illegal things on there.  You can exchange

10   drugs.  There's videos on there with regard to this case

11   as in like assault videos, et cetera, you know, but, yeah,

12   to my extent, I know that it's hard to reach and something

13   not everyone can get on.  You have to have your

14   connections to get on there.

15             THE COURT:  Okay.  Thank you.

16             MS. THELWELL:  Your Honor, at the beginning of

17   Juror No. 25's answer was going in and out.  I think I was

18   able to grasp essentially what that juror was saying but I

19   don't know if the Court was able to capture the complete

20   statement.

21             THE COURT:  Okay.  She said like everyone, Judge,

22   I know they exist and what this person said.  I'm aware

23   that you need, it's like a VPN on or other things to get

24   on it or a lot harder to reach than just the normal

25   Internet and that there's legal -- there's illegal things

1    on there.  You can exchange drugs.  There's videos on

2    there with regard to this case as in, like, assault

3    videos, et cetera, you know.

4          Anything else that I misstated, or anything else

5    you'd like to add, No. 25?  And hold the mic. but don't

6    cover the microphone with your hand.  Hold it at the

7    bottom.

8          PROSPECTIVE JUROR:  All right.  What did you miss?

9    I'm sorry.  Did you get everything?

10          MS. THELWELL:  Yes, I was able to hear.  Thank

11    you, your Honor.

12          PROSPECTIVE JUROR:  Then was that the end of what

13    I said?

14          THE COURT:  Yes.

15          PROSPECTIVE JUROR:  Okay.  Then I'm good, yeah.

16          THE COURT:  Okay.  Thank you.

17          No. 24.

18          PROSPECTIVE JUROR:  Your Honor, I don't really

19    know a lot about the Dark Web.  I'm familiar with the

20    term.  I think there's illegal activities going on there.

21    I don't know if it's the buying and selling of human

22    trafficking or drugs.  I'm just familiar with the term

23    basically.

24          THE COURT:  Thank you.  Thank you.

25          No. 27.

1              PROSPECTIVE JUROR:  It's a place on the Internet

2       for nefarious organizations and individuals to conduct

3       activities that they don't want to be detected by law

4       enforcement, pretty much used worldwide for human

5       trafficking, drugs, moving of finance and money and other

6       subjective uses.  I have a background in military

7       intelligence, counter human trafficking, defense

8       contracting, software, so to those various activities I'm

9       aware of it.

10             THE COURT:  All right.  Great.  Thank you.  So you

11      have some -- would you say you have some specialized

12      computer training?

13             PROSPECTIVE JUROR:  More from a management.  I'm

14      not a coder or a data analyst or anything like that, but

15      I've owned a software company, so inevitably I'm aware of

16      it.

17             THE COURT:  Okay.  Thank you.

18             No. 32.

19             PROSPECTIVE JUROR:  Yes.  I'm currently enrolled

20      in an Associate's degree program to get my crime scene

21      technology degree, so we've covered cyber crime,

22      international crime, crimes on the computers, so I'm

23      familiar with Dark Web design.

24             THE COURT:  Okay.  Thank you.

25             No. 35.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1           PROSPECTIVE JUROR:  I just have basic knowledge.

2      I know that I've received notification through my credit

3      reporting that I've been like information, personal

4      information has been found on the Dark Web.  That's about

5      the extent of it.

6           THE COURT:  Okay.  All right.  Thank you.

7           No. 37.

8           PROSPECTIVE JUROR:  Hi.  I just know the

9      definition and that illegal activity is on that, never

10     experienced it myself, but.

11          THE COURT:  Thank you.

12          No. 40.

13          PROSPECTIVE JUROR:  I had identity theft and my

14     information has been auctioned and sold on it.

15          THE COURT:  All right.  Thank you.

16          Now, I was able to tell from some of your

17     responses, those of you who may have some specialized

18     computer training or knowledge.  Did I miss anyone?  Are

19     there any others of you who have computer training or

20     knowledge?  If so, please raise your number card.

21          All right.  No. 34.  What is the course of your

22     specialize computer training and knowledge?

23          PROSPECTIVE JUROR:  Yeah.  I own and operate an IT

24     managed services system, so we are the IT department for

25     all of our customers.  I don't particularly have much goes

1    on with the customers as far as computer access and

2    support for them.  I'm more in the account management and

3    VP of operations for our company.

4             THE COURT:  Okay.  So you said the account

5    management for your company?

6             PROSPECTIVE JUROR:  Yes.

7             THE COURT:  All right.  Thank you.  It's about

8    12:40.  We are going to break for lunch.  When you come

9    back, I will have an opportunity to at least talk with the

10   attorneys initially with regard to some of the information

11   you've shared with me this morning, but I'm going to break

12   and allow you to go to lunch.  And when you return, you

13   will report back to the jury assembly room on the third

14   floor.  Some of you may be excused at that point.  Others

15   of you will be returned to the courtroom.  So we are in

16   recess.  It's 12:40.  We're in recess until 1:45.

17            Leave your number card here, and let me also just

18   state, if you see the attorneys or defendants out there,

19   don't be surprised if they run in the opposite direction.

20   Even though you have not been selected as a juror, they

21   want to avoid even the appearance of impropriety and not

22   have any contact or interaction with you.

23            You are excused for lunch.

24   (Venire out at 12:40 p.m.)

25   (Proceedings held outside the presence of the venire.)

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  All right.  Counsel, let's see if we

2     can go through and at least excuse those individuals who

3     have a hardship or who have expressed some concerns with

4     regards to serving as a juror in this cases based upon the

5     nature of this proceeding and the depiction of sexual acts

6     between adults and minors.

7          So I think I'm going to start first with those who

8     had comments relating to the sexual act and comment and

9     I'll ask so that you can tell me if you have an objection,

10    and I don't need argument.  If there's no objection to the

11    individuals, they will be excused.  If you have any

12    objection to me excusing them at that time, that

13    individual will remain.

14         The first one was Juror No. 1.  Is there any

15    objection to me excusing Juror No. 1?

16         MS. THELWELL:  No, Your Honor.

17         MR. FITZGERALD:  No objection, Your Honor.

18         THE COURT:  The next one was No. 4.  Let me just

19    state, No. 1 stated that she was three years old when her

20    dad tried to sexually molest her.  No. 4 said she was

21    molested when she was younger and then when she was 13, it

22    was her father.  Any objections to me excusing juror

23    No. 4?

24         MS. THELWELL:  No, Your Honor.

25         MR. FITZGERALD:  No objection to No. 4, Your

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1    Honor, but I think we passed No. 3 also had similar

 2    problem.

 3              THE COURT:  No. 3 had a religious belief system.

 4    He indicated that based upon his religious beliefs it

 5    would be difficult to remain unbiased given the nature of

 6    this type of proceeding.  Is there any objection to No. 3

 7    being excused?

 8              MS. THELWELL:  No, Your Honor.  He also indicated

 9    that his grandmother recently had a stroke and he's the

10    power of attorney, so even if he was to be selected, I do

11    think that he might be distracted based on the current

12    medical state of his grandmother.

13              MR. FITZGERALD:  No objection, Your Honor.

14              THE COURT:  So No. 3 will also be excused.

15              No. 5 indicated that she has two really young

16    nieces, 9 and 12 with whom she's very close and she is

17    quite uncertain of her ability to be able to listen to

18    this type of testimony without getting emotional.  And so

19    is there any objection to No. 5 being excused?

20              MS. THELWELL:  No, Your Honor.

21              MR. FITZGERALD:  No objection, Your Honor.

22              THE COURT:  No. 7 indicated that she was a virgin

23    and that she just does not believe that she can listen to

24    or observe photographs or evidence of sexual conduct

25    between minors and adults.  Is there any objection to No.

1    7?

2              MS. THELWELL:  No, Your Honor.

3              MR. FITZGERALD:  No objection, Your Honor.

4              MS. THELWELL:  Your Honor, for the record, she

5    also stated that it would be a financial burden to travel

6    from Sarasota because she was unemployed.

7              THE COURT:  She did indicate that she was

8    unemployed and it would be a financial hardship.

9              The next one I have is No. 13 who also indicated

10   that she would have some difficulty sitting through a

11   trial which involved allegations relating to child

12   pornography.

13             Is there any objection to No. 13?

14             MS. THELWELL:  No, Your Honor.

15             MR. FITZGERALD:  No objection, Your Honor.

16             THE COURT:  And she's the teacher, and so part of

17   her concerns is because she works with young children on a

18   daily basis, so No. 13 will be excused.

19             No. 17 also expressed the fact that she could not

20   be fair.  She has a nine-month old daughter and just does

21   not believe that she could sit and listen to such

22   testimony.  Is there any objection?

23             MS. THELWELL:  No, Your Honor.

24             MR. FITZGERALD:  No objection, Your Honor.

25             THE COURT:  The next one was No. 23 who also

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    requested to be excused.  Is there any objection regarding

2    No. 23?

3              MS. THELWELL:  No, Your Honor.

4              THE COURT:  I have excused -- I didn't write the

5    express comments for No. 23.

6              MS. THELWELL:  No. 23, Your Honor, I have that I

7    recall she became very emotional based on the charges, so

8    the one in here indicated that she also had a 10-year old

9    son, and just after listening to the reading of indictment

10   she didn't believe she could be fair and impartial and

11   that was at 12:02 p.m.

12             THE COURT:  All right.  Mr. Fitzgerald?

13             MR. FITZGERALD:  We have no objection, Your Honor,

14   but we did go past Juror 18, Mr. Albee.  He's one of the

15   ones that stood up late for the same situation.

16             THE COURT:  Okay.  Yes, I have him here.  I just

17   had him in the order that he stood up, so we can go back

18   to No. 18.  And No. 18 was the one who had a friend who

19   had been victimized by similar charges and the individual

20   was not prosecuted, but because of the relationship with

21   the friend, No. 18 did not feel that he could be fair and

22   impartial.  Is there any objection to excusing No. 18?

23             MS. THELWELL:  No, Your Honor.

24             MR. FITZGERALD:  No objection, Your Honor.

25             THE COURT:  No. 25 was the one who expressed

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    un-comfort or discomfort with regard to all of this.

2    She's also the one who has the flight to Texas on

3    Wednesday, although it's not a nonrefundable ticket, but

4    she indicated grave concern with her ability to be fair

5    and impartial.  Is there any objection?

6          MS. THELWELL:  No, Your Honor.  I did have in my

7    notes that it was nonrefundable.  I thought she said it

8    was nonrefundable.

9          THE COURT:  Mr. Fitzgerald.

10          MR. FITZGERALD:  No objection, Your Honor.

11          THE COURT:  I will excuse Juror No. 25.

12          No. 26 also requested to be excused based upon the

13    subject matter of the case, that she has a 13-year old

14    granddaughter who was -- actually it's a he -- 13 year old

15    granddaughter who was molested by her father; that the

16    father is now serving a 30-year prison sentence, but he

17    got pretty upset just again hearing the Court read from

18    the indictment.  Is there any objection to me excusing

19    No. 26?

20          MS. THELWELL:  No, Your Honor.

21          MR. FITZGERALD:  No objection, Your Honor.

22          THE COURT:  No. 31 indicated that she could not be

23    fair or impartial.  She had an uncle who touched her

24    inappropriately when she was about 11 or 12 years of age

25    and so she could not be fair in any type of a trial.  Is

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    there any this objection to excusing No. 31?

2         MS. THELWELL:  No, Your Honor.

3         MR. FITZGERALD:  No objection, Your Honor.

4         THE COURT:  No. 41 indicated that she fears she

5    would become physically ill from having to serve on a jury

6    in this case.  She's worked in the school system for many

7    years and she referenced an incident when she was a young

8    girl but did not want to talk in detail about it.  Is

9    there any objection to excusing juror No. 41.

10        MS. THELWELL:  No, Your Honor.

11        MR. FITZGERALD:  No objection, Your Honor.

12        THE COURT:  No. 38 referenced two incidents that

13   occurred when she was younger.  She was the victim.  She

14   became -- she believes she would be extremely biased and

15   she became emotional when discussing this.  Is there any

16   objection to excusing No. 38?

17        MS. THELWELL:  No, Your Honor.

18        MR. FITZGERALD:  No objection, Your Honor.

19        THE COURT:  Those are the only ones that I have

20   with regard to that question.  Did I omit or overlook

21   anyone?

22        MS. THELWELL:  Not from my notes, Your Honor.

23        MR. FITZGERALD:  No, Your Honor.

24        THE COURT:  All right.  Let's see what we can --

25   what decisions can be reached regarding those who have

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    requested a hardship excusal.

2          No. 2.  He's the sole caregiver for his wife.  He

3    came up here just before they were dismissed for lunch and

4    asked the courtroom deputy clerk how is he supposed to get

5    lunch to his wife who's at home today because he's the

6    sole caregiver?  You wish to be heard as to Juror No. 2's

7    request to be excused based on a hardship?

8          MS. THELWELL:  No objection, Your Honor.

9          MR. FITZGERALD:  No objection to excusing him,

10   Your Honor.

11         THE COURT:  The next one I have that hasn't

12   already been excused is No. 9 is the one who indicates

13   that he's on several medications that make him drowsy and

14   he's concerned about whether he might fall asleep during

15   the trial.  Do you wish to be heard as to No. 9?

16         MS. THELWELL:  No objection, Your Honor.

17         MR. FITZGERALD:  No objection, Your Honor.

18         THE COURT:  The next one is No. 11 who indicates

19   that she's a Type 2 diabetic.  She has received one dose

20   of her Covid vaccine.  She has another appointment

21   scheduled for next Wednesday.  Do you wish to be heard as

22   to her or shall we save her until later on in these

23   proceedings?

24         MS. THELWELL:  May I just have one moment, Your

25   Honor?

1          THE COURT:  Yes.

2          MS. THELWELL:  Your Honor, I don't anticipate this

3     trial going into next week, so I think it would be best if

4     we kept her on the panel at this time.

5          THE COURT:  Mr. Fitzgerald, do you wish to be

6     heard?

7          MR. FITZGERALD:  It didn't seem like a grave

8     hardship, Your Honor.

9          THE COURT:  Okay.  Thank you.  No. 15 indicated

10    that he is the single father of two.  He picks them up

11    after school.  He was able to get their grandparents to do

12    it today.  He doesn't know who he would get to do it for

13    the rest of the week.  What is your request regarding

14    No. 15?

15         MS. THELWELL:  Your Honor, my only question is I

16    would want to know if he's able to ask --

17         THE COURT:  Right.

18         MS. THELWELL:  -- as to whether or not he can find

19    child care.

20         THE COURT:  Okay.  Mr. Fitzgerald?

21         MR. FITZGERALD:  Your Honor, I leave it to you,

22    but it seems like he's concerned about his children and

23    thinking about them if they're getting out of school and

24    there's no one there to pick them up.

25         THE COURT:  Let me bring him back at least and ask

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     the additional question regarding whether his grandparents

2     can pick them up the rest of the week, their grandparents,

3     and so if I could get -- that's a follow-up question that

4     you all may ask as well.

5           No. 19 is a CPA and he's, of course, concerned

6     because this is tax season, but as I mentioned, you all

7     know that tax returns, the deadline has been extended to

8     May 15 now.  What is your pleasure regarding No. 19?  I'm

9     not certain that this serves as a hardship.

10          MS. THELWELL:  Yes, Your Honor.  I understand that

11    he is a sole practitioner, however, he did also indicate

12    to the Court if the Court had made a decision to keep him

13    he would essentially live with it and find a way to work

14    it out.  It doesn't seem if it is a true hardship but more

15    of a just strong inconvenience.

16          MR. FITZGERALD:  Your Honor, it sounds like a

17    strong inconvenience.  Pretty much every accountant makes

18    their money right now working day and night, so I'm not

19    only concerned that he would be able to have his mind on

20    the case because he's had return after return not filed

21    and people sending in their materials that he's not --

22    they're not getting responses from him, so I ask you to

23    consider striking him, Your Honor.

24          THE COURT:  That's something that I think would

25    be -- he's one that be appropriate for follow-up

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1    questioning, and as a follow-up question you may ask at

 2    the appropriate time.

 3          No. 20 is the individual whose primary language is

 4    Arab.  She has no car.  She lives in Palm Harbor next to

 5    Clearwater.  Her husband had to bring her this morning and

 6    will have to wait to bring her back home.  Her English is

 7    not very good.  Is there any objection to No. 20 being

 8    excused?

 9          MS. THELWELL:  No, Your Honor.

10          MR. FITZGERALD:  No objection, Your Honor.

11          THE COURT:  We've already talked about 25.  27

12    indicated a significant hearing loss, not so much as

13    volume, but he has some difficulty processing for purposes

14    of hearing.  Does anyone wish to be heard with regard to

15    his request for a hardship excusal?

16          MS. THELWELL:  No objection.

17          MR. FITZGERALD:  Your Honor, I think we need to

18    strike him for cause.  Given the mask situation, things

19    can get really difficult as they are without a hearing

20    issue.

21          THE COURT:  Okay.  Then I'll strike No. 27 for

22    cause.

23          The next one is 35 who indicates that she has two

24    young children, 11 and 4.  She works remotely from home

25    and would need to have assistance for her kids or a place

1   for them during the course of a week-long trial.  Is there

2   any objection?

3            MS. THELWELL:  No objection.  I believe she

4   already indicated that her mom who drove from Lakeland

5   would not be able to do that for the rest of the week.

6            THE COURT:  Mr. Fitzgerald?

7            MR. FITZGERALD:  No objection, Your Honor.

8            THE COURT:  No. 36 expressed some concern about

9   distance but then I did mention the hotel to her so she

10   did not maintain that objection.  Does anyone wish for me

11   to excuse her or perhaps we should ask further questions?

12            MS. THELWELL:  No, Your Honor.  I believe based on

13   her response, she appeared satisfied with the Court's

14   recommendation staying in a hotel.

15            MR. FITZGERALD:  I believe she was satisfied, Your

16   Honor.  Maybe we could just inquire a little bit to make

17   sure if she's satisfied with the hotel, then no objection.

18            THE COURT:  And then the next one is No. 38, I've

19   already excused her.  And No. 41 has already been excused.

20            Okay.  Those are the only requests that I have,

21   unless you all have some you'd like for me to consider at

22   this time.

23            MR. FITZGERALD:  Judge, we skipped No. 12 for

24   hardship, Ms. Gray.  She stood up late in the process.

25   That was the one whose employer won't pay her.  She only

1    gets $50 for being here.

2         THE COURT:  Okay.  Thank you.  Yes.  She said she

3    was the breadwinner.

4         MR. FITZGERALD:  Yes.

5         THE COURT:  She's a nurse at a facility.  It's a

6    financial hardship.  She said it would pose a problem for

7    her.  Is there any objection to excusing No. 12, or do you

8    wish to inquire further?

9         MS. THELWELL:  No, Your Honor.

10        MR. FITZGERALD:  No objection, Your Honor.

11        THE COURT:  All right.  No. 12 I will also excuse.

12   And then also I have No. 13, which I've already excused

13   No. 13.  Okay.  So that's it.

14        Just so that you have, these are the individuals

15   that have already been excused for cause, either hardship

16   or based upon their inability to hear the type of

17   testimony or review the evidence that we expect will be

18   presented in this case.

19        No. 1, No. 2, No. 3, No. 4, No. 5, No. 7, is

20   Morgan Stauffer.  No. 8 I already discussed with you.

21   That was the one who was nursing and brought her baby with

22   her.  No. 29, Grant Rosen.  No. 12, Melissa Gray.  No. 13,

23   Nancy Galbraith.  No. 12, Melissa Gray.  No. 13, Nancy

24   Galbraith.  No. 17, Ashley Leblanc-Blachly.  No. 18, Keith

25   Albee.  No. 20, Mirvat Alkhouri.  No. 23, Liliana Tanaka

1    Ugaz.  No. 25, Desirae Fields.  No. 26, Paul Wilmott.  No.

2    27, William Vuori.  No. 31, Cheryl Cash.  No. 35, Leah

3    Adams.  No. 38, Maleah Tinl.  And No. 41, who's name I

4    don't have.

5           Bettye, what's 41's name?

6           MR. FITZGERALD:  Joanne Navas.

7           THE COURT:  Okay.  No. 41, Joanne Navas.  Did I

8    omit -- the only other one that we can discuss briefly,

9    and I know you all should grab some lunch too, was the one

10   who knows Ms. Thelwell, No. 29, Belinthia Berry.

11   Ms. Thelwell, what's the nature of your relationship with

12   her?  She didn't think it would be a problem but clearly I

13   need to know more about the relationship.

14          MS. THELWELL:  Yes, Your Honor.  As she mentioned,

15   we met in 2017 by the New Leaders Council which we're both

16   a part of.  We became friends after that -- actually let

17   me think about it.  Not 2017.  I think it was 2018.

18   Knowing her, I know that she can be fair and impartial as

19   she stated, or at least I should say I believe that she

20   can be.  She didn't seem fazed, but, you know, I should

21   disclose that I text messaged her, what, two days ago

22   about getting together this coming weekend, so that's the

23   extent of our friendship.

24          THE COURT:  Okay.  Mr. Fitzgerald?

25          MR. FITZGERALD:  I don't understand that's the

1    extent of our friendship.  If they're close enough to text

2    and meet up, it sounds a little closer than Ms. Barry

3    indicated, and I think we should strike her for cause.

4         THE COURT:  I would agree.  I'm also going to

5    excuse No. 29.

6         All right.  That leaves 19.  I have about 20 more

7    individuals downstairs.  I will probably bring them all up

8    for the second half and start just as we started before to

9    see where we -- how we end up with them recognizing that

10   we still haven't addressed any peremptory challenges at

11   this point.  And, of course, I haven't gone through the

12   basic information if, you know, how they are employed,

13   their family members, et cetera, et cetera, because I

14   thought that the areas of inquiry would be the areas where

15   we were going to be faced with the greatest number of

16   requests for excusals or information that would constitute

17   an appropriate challenge for cause.

18        So when you come in, when we resume, we will bring

19   up the others and resume questioning.  We are in recess.

20        For purposes of seating, obviously I am going to

21   remove those that have already been excused and that means

22   some of those in the back will now be up here, and just so

23   that you know for purposes of the numbers, but they will

24   all have their appropriate numbers, the right numbers, so,

25   for example, even if I excuse No. 4, that doesn't mean

1    someone else will be given No. 4.   Okay?   So we will just

2    fill in so that we can get everybody in the courtroom.

3            MR. FITZGERALD:  Great.

4            THE COURT:  You should be back at 1:45.

5    (Lunch recess had at 1:06 p.m.)

6    (Proceedings resumed at 1:52 outside venire's presence.)

7            THE COURT:  All right.  Counsel, are we ready to

8    resume?

9            MS. THELWELL:  Yes, Your Honor.

10           MR. FITZGERALD:  Yes, Your Honor.

11           THE COURT:  All right.  Please have them send up

12   the venire.

13           Counsel, just for your information, 60 is it.  You

14   should have a second sheet that takes you through the

15   number 60.  We have no more jurors downstairs, so

16   everybody else will be in the courtroom and I am hopeful

17   that we will be able to select a jury from these.  I

18   understand that there are certain things that we're

19   looking for, but I just wanted you to know.  I'm not

20   saying that to threaten you or pressure you.  I just want

21   you to know that there are no others downstairs; that if

22   we go through 60 today then we'll be back tomorrow because

23   we'll have to summons some more individuals to the

24   courthouse.

25           You may bring them in.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    (Venire in at 2:15 p.m.)

2          THE COURT:  All right.  Good afternoon.  I am

3    Charlene Edwards Honeywell, United States District Judge

4    and I am particularly welcoming those of you who are here

5    for the first time.  Others of you were with me this

6    morning, and so I apologize for the repetitiveness of my

7    comments, but to those of you who are new to the courtroom

8    and to these proceedings, I'm going to just tell you a

9    little bit about the case and what we will be doing and

10   then I'll ask you some questions.

11         You are here in a criminal case.  It's United

12   States of America versus Jack Dove, case 8:19-cr-33.  It

13   is our expectation that the case will take all week.

14   There's an outside chance that it could go into Monday,

15   however, we will endeavor to make sure that that does not

16   happen, but with trials sometimes things occur that were

17   not anticipated.

18         In addition, a typical trial day starts at 9:00,

19   between 9:00 and 9:30 and ends between 5:00 and 5:30 p.m.

20   with an hour for lunch, a short break in the morning and a

21   short break in the afternoon.

22         With that information in mind and recognizing that

23   we will require the jurors to be here with us all week, if

24   you believe that you have a hardship for this week such

25   that you should not participate as a juror on a case this

1   week, I'm going to ask you to raise your number cards.

2   You have those cards that have been provided, and I'm

3   utilizing those cards because it helps me move in a more

4   efficient manner but still be accurate when it comes to

5   identifying the speaker.

6        I have a cheat sheet that coordinates or

7   correlates your name with the number, so when I talk about

8   hardship, I'm talking about financial hardship.  Some

9   people have medical appointments that cannot be

10  rescheduled.  Some people have nonrefundable reservations

11  or air flights, so those are the types of things the Court

12  will consider and ultimately make a decision based upon

13  what you provide as to whether your circumstances

14  constitute a hardship.

15       Once I've done that, then I'm going to introduce

16  you to the attorneys, tell you a little bit more about the

17  case, introduce you to the parties.

18       Let me do that first.  As I've indicated, I am the

19  judge and my purpose here is basically I am a neutral

20  arbiter, one who basically presides over the proceeding.

21  I have helping me today my Courtroom Deputy Clerk who is

22  seated below me to my right and my court reporter who is

23  seated below me to my left.  The court reporter is at the

24  stenographic machine transcribing everything that's being

25  said, so it's important that you this speak loudly and

1    clearly so that we can hear you.  We do have a microphone,

2    a wireless mic. to give you so that we can hear you.  And

3    then, of course, the Court Security Officer you've already

4    had some interactions with, but their job is to maintain

5    order and security in the courtroom and they are my

6    representatives to the jury.  Anything you need, any

7    problems that come up during the course of the trial

8    should be brought to their attention.

9         And then finally, it's the jury which we have

10   started picking, and we will continue to pick this until

11   we get a jury selected for this case.  And in doing that,

12   I'm going to be asking you questions.  When I conclude my

13   questions, I'll allow the attorneys to ask some follow-up

14   questions and based upon your responses and by process of

15   elimination we select a jury in this case of individuals

16   that we believe can be fair and impartial.

17        The questions asked are not to embarrass you or to

18   unnecessarily pry into your personal affairs, but it is

19   important that the parties, the attorneys and the Court

20   know enough about you to make this very important

21   decision.

22        If a question is asked that you would prefer not

23   to answer in front of the whole courtroom because, for

24   example, it contains private, confidential information,

25   you may let me know and we have headsets that we will

1    allow you to use to communicate your responses just to me

2    and the attorneys and the Defendant.

3          There are no right or wrong answers to your

4    questions.  The only thing I ask is that you answer the

5    questions as frankly and as honestly and completely as you

6    can.  You have taken an oath to answer all questions

7    truthfully and completely, and you must do so.  Remaining

8    silent when you have information you should disclose is a

9    violation of your oath, and if a juror violates the oath,

10   it not only may result in having to try the case all over

11   again but also can result in civil and criminal penalties

12   against a juror personally.  Again, it's very important

13   that you be as honest and complete in your answers as you

14   possibly can.

15         In sum, this is a process to assist the parties

16   and their attorneys and the Court in selecting a fair and

17   impartial jury.  Many of the questions that we ask are for

18   this purpose.  If, for any reason, and I mean any reason,

19   you do not think that you can be a fair and impartial

20   juror, you must tell me.

21         All right.  I'm now going to read for you the

22   pertinent portions of the indictment in this case which

23   sets forth the charges against the Defendant.  The

24   indictment is not to be considered as evidence.  It is a

25   mere formal application against the Defendant.  You must

1    not consider it as evidence of the Defendant's guilt and

2    you must not be influenced by the fact that this

3    indictment has been filed against the Defendant.

4         The indictment in this case charges the Defendant

5    as follows:  Count One.  On or about March 7th in the

6    Middle District of Florida and elsewhere the Defendant,

7    Jacker Dove, III, did knowingly receive a visual depiction

8    using any means and facility of interstate and foreign

9    commerce including by computer and that had been shipped

10   and transported in and affecting interstate and foreign

11   commerce with the production of the visual depiction

12   involved the use of a minor engaging in sexually explicit

13   conduct and the visual depiction was of such conduct.

14        Count Two.  Beginning on an unknown date but no

15   later than on or about November 30th, 2018 in the Middle

16   District of Florida and elsewhere, the Defendant, Jack R.

17   Dove, III, did knowingly possess and access with intent to

18   view a matter which contained a visual depiction that had

19   been shipped and transported using any means and facility

20   of interstate and foreign commerce including by computer,

21   and when the production of the visual depiction involved

22   the use of a minor engaging in sexually explicit conduct

23   and the visual depiction was of such conduct and the

24   depiction involved a prepubescent minor and a minor who

25   had not attained 12 years of age.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          Based upon that information, is there anyone here

2     who believes you already know something about this case,

3     and perhaps you've had discussions, perhaps you saw

4     something about it in the media.  If you believe that you

5     know something about this case, please raise your number

6     card.

7          All right.  All negative responses.

8          Now, those of you who believe that you have a

9     hardship such that you are unable to serve this week on

10    this jury, please raise your number card.

11         I have 42, 48, 52 and 56.

12         Okay.  We'll start first with No. 42.  We'll bring

13    you the microphone at the stand.  Let me know what the

14    circumstances are that you believe constitute a hardship.

15         PROSPECTIVE JUROR:  I'm supposed to get the Covid

16    shot, the second one on Wednesday of this week.

17         THE COURT:  This Wednesday?

18         PROSPECTIVE JUROR:  Uh-huh.

19         THE COURT:  What time?

20         PROSPECTIVE JUROR:  3:00 o'clock in the afternoon.

21         THE COURT:  3:00 o'clock.

22         PROSPECTIVE JUROR:  In Gibsonton.

23         THE COURT:  In Gibsonton.  Okay.  Thank you.

24         No. 48.

25         PROSPECTIVE JUROR:  Yes.  I'm, what do you call

it, the person who takes care of the household, head of
household.  I have a 62-year old brother and a 61-year old
lady living with me.  She is on early Social Security and
my brother is on a limited fixed income and I pay all the
household bills.  I work in Fort Myers.  I just recently
started a new job January of last year, and I can't afford
the time off from work in order to pay the bills because
they can't pay it.

THE COURT:  Okay.  So you're asking the Court to
excuse you because of a financial hardship?

PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  And your current employer will not pay
you for jury service?

PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  And you said you're the only
person in your household who is employed?

PROSPECTIVE JUROR:  I am employed.  She's on
Social Security and she has a part-time job just for
something to do because she got bored sitting at the house
and living on a fixed income.  He only gets paid, no
overtime, no nothing.  He can't.  He's 63.  He has bad
knees from construction worker.

THE COURT:  Okay.  Thank you.

PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  No. 52.

```
 1              PROSPECTIVE JUROR:  Hi.  Sorry.  I'm a bit
 2    nervous.  So I work in a salon.  I don't get paid hourly
 3    or salary and I have a full schedule all this week and I
 4    can't reschedule all of them.  It's like a financial, and
 5    then also hearing the case, I don't think I can be
 6    impartial with the fact in just hearing it and having two
 7    daughters makes me feel a little uncomfortable.
 8              THE COURT:  Okay.  And you work, is it a nail
 9    salon?
10              PROSPECTIVE JUROR:  Yes, ma'am.
11              THE COURT:  Okay.  And I'll come back to the issue
12    regarding the type of case.  Thank you.
13              No. 56.
14              PROSPECTIVE JUROR:  I'm a massage therapist.  I'm
15    only paid if I am providing service and massage.  That's
16    my reason for hardship.
17              THE COURT:  Okay.  So it's a financial hardship
18    for you as well, and your employer will not pay you while
19    you're on serving jury duty?
20              PROSPECTIVE JUROR:  No.
21              THE COURT:  And are you the only member of your
22    household who's employed?
23              PROSPECTIVE JUROR:  My wife is also employed, yes.
24              THE COURT:  But can't afford to be off of work for
25    a week?
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  Yes, ma'am.  It's just the

2     Covid is a big -- if I don't show up for work I don't get

3     booked, I don't get paid if I don't do the massage.

4          THE COURT:  Okay.  All right.  Thank you.

5          All right.  As you heard from the indictment that

6     I just read to you, this case involves information with

7     regard to child pornography.  I anticipate that testimony

8     and evidence in the case will concern frank and graphic

9     discussions and descriptions about sexual activity between

10    an adult and a minor child.

11         Are there any members of the panel who, for

12    whatever reason, are unable to hear such testimony or

13    discuss such matters with other members of the jury?  That

14    means you would be required to hear testimony about it and

15    review pictures that are admitted into evidence with

16    regard to this.

17         If you do not believe that you can review such

18    pictures or hear discussions regarding these matters,

19    please raise your number cards.

20         All right.  No. 51.  And if you will stand and

21    tell me why you believe that you would not be able to hear

22    or participate, for example, in discussions in the jury

23    room about the evidence or hear testimony and look at

24    photographs?

25         PROSPECTIVE JUROR:  I have seven grandchildren,

1   six of whom are female, and I don't believe -- I think it

2   would be really hard for me to be impartial for sure.

3           THE COURT:  Okay.  Seven grandchildren?

4           PROSPECTIVE JUROR:  Uh-huh.

5           THE COURT:  Six of whom are females?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And is your discomfort such that you

8   don't believe you could be fair and impartial?

9           PROSPECTIVE JUROR:  I feel at this point I would

10  have a hard time.

11          THE COURT:  All right.  Thank you.

12          No. 51.  No. 51.

13          PROSPECTIVE JUROR:  That was me.

14          THE COURT:  I'm sorry.  52.

15          PROSPECTIVE JUROR:  Yeah.  I have two daughters

16  and just hearing the topic I feel very uncomfortable.

17          THE COURT:  And is your un-comfort or discomfort

18  such that you do not believe that you could fairly and

19  impartially listen to the testimony and review the

20  photographs and then discuss this case with other jurors

21  when you are required to deliberate?

22          PROSPECTIVE JUROR:  Yes, ma'am, I don't think I'd

23  be able to discuss that.

24          THE COURT:  Will not be able to discuss it.  Okay.

25  All right.  Thank you.

1          Do any of you belong to any groups that promote,

2    advocate or otherwise condone sexual relations between

3    adults and individuals who are less than 18 years of age?

4          All right.  All negative responses.

5          Are there any of you who do not have a computer at

6    home?  And by computer, it can be a desktop, a laptop, a

7    smart phone.  Anyone in here who does not have a computer

8    at home?  No. 57 and 48.

9          What about No. 48, do you have a smart phone?

10         PROSPECTIVE JUROR:  Yes, ma'am.

11         THE COURT:  No. 57, do you have a smart phone?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  No.  Are there any of you who do not

14   use a computer at work, anyone in here who does not use a

15   computer at work?

16         All right.  All negative responses.

17         Is there anyone in here who does not have access

18   to the Internet either at work or at home?  Anyone in here

19   who does not have access to the Internet?

20         No. 57, you do not have access to the Internet at

21   all?

22         PROSPECTIVE JUROR:  Not at home, no.

23         THE COURT:  But you have access at work?

24         PROSPECTIVE JUROR:  Limited.

25         THE COURT:  Limited.  Okay.  I'm going to ask you,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
1    identify some phrases.  Let me know if you are not
2    familiar with these terms or phrases.  The first one is
3    surfing the net.  Are any of you, and in particular those
4    of you who are new to the courtroom this afternoon, are
5    you not familiar with the term surfing the net?
6              All right.  All negative responses.
7              Is there anyone in here who is not familiar with
8    the term browsing?
9              All negative responses.
10             Is there anyone in here who is not familiar with
11   the term downloads?  Downloads?
12             All negative responses.
13             Is there anyone in here who is not familiar with
14   the term software?
15             All right.  All negative responses.
16             How many of you are familiar with the Dark Web?
17   If you are familiar with the Dark Web, raise your number
18   card.
19             All right.  So I have 33, 43, 45, 47, 49, 50, 54,
20   55, 45.  I have 53 and 60.
21             Okay.  We'll start with No. 33.  And tell me how
22   you are familiar with the Dark Web.  What's the source of
23   your familiarity?  Wait, let me get the microphone to you.
24             PROSPECTIVE JUROR:  I've heard of it on the news.
25   It's been in television programs.  It's been in any kind
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    of media that you look at has mentioned the Dark Web.  I

2    know that it has or can be used for illegal activities,

3    but I have not been a victim of, as far as I know, any

4    personal information being stolen and placed on the Dark

5    Web.

6              THE COURT:  Okay.  Thank you.  No. 43.

7              PROSPECTIVE JUROR:  Same.  I've heard it through

8    the news and just growing up.  I've never been the victim

9    of it.

10             THE COURT:  Okay.  Thank you.  No. 45.

11             PROSPECTIVE JUROR:  Like the others, just

12   generally aware that it exists and that it has a nefarious

13   reputation.

14             THE COURT:  Thank you.

15             47.

16             PROSPECTIVE JUROR:  Yes, ma'am.  Same thing.  I've

17   never been on it, but I do know about some of the sites

18   and the existence of the Dark Web.

19             THE COURT:  Okay.  Thank you.

20             No. 49.

21             PROSPECTIVE JUROR:  Again, just I'm familiar with

22   it from general media as a place for illicit and illegal

23   activities to be taking place.

24             THE COURT:  Okay.  Thank you.

25             No. 50.

1         PROSPECTIVE JUROR:  I'm also aware that it exists

2    and that it has a lot of illegal activity tied to it.

3    I've never been on it or a victim of it.

4         THE COURT:  Okay.  Thank you.

5         No. 54.

6         PROSPECTIVE JUROR:  I'm just familiar with it from

7    TV shows and media.  I'm not sure even how to get on it

8    but I'm aware of what it's about.

9         THE COURT:  Okay.  Thank you.

10         No. 55.

11         PROSPECTIVE JUROR:  I'm aware of it through the

12    news and social media websites.

13         THE COURT:  Thank you.

14         No. 60.

15         PROSPECTIVE JUROR:  Basically aware of what

16    everybody else said, just cultural awareness and that

17    there's a lot of illegal activity that constitutes it.

18         THE COURT:  Okay.  Thank you.

19         Have you or any of your friends or close friends

20    or relatives ever had any experience with a person who has

21    engaged in sexual activity with a child that in any way

22    might affect your judgment in this case?  You, close

23    friends, family members have any experience with a person

24    who has engaged in sexual activity with a child that might

25    in any way affect your judgment in this case or had a

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1   family member who's been a victim of such sexual activity?

 2          MS. THELWELL:  I apologize to interrupt, Your

 3   Honor, but before you move on, I believe Juror No. 42 had

 4   his card raised.

 5          THE COURT:  We'll go back to the previous

 6   question.  I did not see you No. 42 with regard to the

 7   Dark Web.

 8          PROSPECTIVE JUROR:  I'm aware of it through the

 9   media, et cetera, but I wasn't -- I thought maybe you had

10   meant that it was more serious than that, that I'm aware

11   of that it's out there.

12          THE COURT:  Okay.  Thank you.

13          All right.  And then going on to the next question

14   which was the question with regard to did you, close

15   friends or relatives have any experience with a person who

16   has engaged in sexual activity with a child that it might

17   in any way affect your judgment in this case or have been

18   the victim of such sexual activity?

19          All right.  I see 46, 50, 51, 54 and 58 and 53.

20          All right.  No. 46, and I know as we get into some

21   sensitive topics, or this is a sensitive subject matter,

22   if those of you wish to describe that just to the Court

23   and Counsel, you may do so, just let me know, otherwise

24   you are free and we would like to know what your

25   experience has been.

1          No. 46.

2          PROSPECTIVE JUROR:  Yes.  The mother of my two

3     daughters was a victim of sexual assault abuse to the

4     point that the person that was involved was in prison for

5     a very long time.

6          THE COURT:  Okay.  So the person that sexually

7     abused the mother of your children was actually apparently

8     convicted and sent to prison?

9          PROSPECTIVE JUROR:  Not in prison anymore.

10          THE COURT:  But was sent to prison?

11          PROSPECTIVE JUROR:  I'm sorry?

12          THE COURT:  But the person was initially sent to

13     prison?

14          PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  And was the mother of your children a

16     child when this happened?

17          PROSPECTIVE JUROR:  I'm sorry.  I couldn't hear

18     you.

19          THE COURT:  Yes.  Was the mother of your children

20     a child herself when this occurred?

21          PROSPECTIVE JUROR:  That's correct, since she was

22     four years old.

23          THE COURT:  She was four years old.  Okay.  And is

24     there anything about that experience and your relationship

25     with her that you believe might affect your ability to

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
1    serve as a fair and impartial juror in this case?
2            PROSPECTIVE JUROR:  Well, it's a long story, but
3    everything regarding that ruined basically her life,
4    that's the reason why we're not together because
5    eventually she has some anger issues that comes and goes
6    and stuff like that, and I was in the middle of it for a
7    very long time.
8            THE COURT:  Okay.  So as a result of her
9    experience, what I hear you saying is that it impacted
10   your relationship with her and basically destroyed that
11   relationship?
12           PROSPECTIVE JUROR:  That's correct.
13           THE COURT:  And so then do you believe you could
14   be fair and impartial given this trial and what you've
15   heard based upon the indictment?
16           PROSPECTIVE JUROR:  That's a good question,
17   because I was involved in it, like, I know all the stories
18   and everything that happened, and I always with my two
19   daughters I was very overprotective because of it, and to
20   this point, and they are, I mean, one is 18, the other is
21   20, there was a lot of nos for me when they were going out
22   and stuff like that because I was afraid something like
23   that would happen.
24           THE COURT:  So you're questioning your ability to
25   be fair and impartial?
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  I would think, yes.

2          THE COURT:  Okay.  All right.  Thank you.

3          No. 50.

4          PROSPECTIVE JUROR:  I'm not sure this exactly fits

5    but I don't want to omit anything.  I adopted my daughter

6    out of foster care.  She was not the victim of sexual

7    abuse that we're aware of, but the foster home she was in

8    before ours, there was confirmed child-on-child which is

9    why she was removed from that home for safety, so I'm

10   aware of it in that sense, even though she directly was

11   not a victim.

12         THE COURT:  Okay.  And based upon the

13   circumstances that you have just described to the Court,

14   do you believe that you could be fair and impartial as a

15   juror in this case?

16         PROSPECTIVE JUROR:  I do feel that I can be fair

17   and impartial.  I just wanted to bring that to light.

18         THE COURT:  And I appreciate that.  That's exactly

19   what I want you to do.  Thank you.

20         No. 51?

21         PROSPECTIVE JUROR:  Again, this is just something

22   I would want to bring up.  My sister, I believe she was

23   age 16, allegedly said there was inappropriateness with my

24   mother's boyfriend at the time.

25         THE COURT:  But was anyone ever prosecuted?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  So law enforcement was never involved?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  Did your sister share this with your

5    mother?

6          PROSPECTIVE JUROR:  Yes.  She didn't believe her.

7          THE COURT:  Okay.  Is there anything about that

8    experience that you believe might impact your ability to

9    be a fair and impartial juror in this case?

10         PROSPECTIVE JUROR:  Not of that experience, no.

11         THE COURT:  All right.  Thank you.

12         No. 53.

13         PROSPECTIVE JUROR:  Yes, Your Honor.  My friend, I

14   was in her wedding, and the ex-husband was convicted and

15   is in Federal prison for child pornography, and then I had

16   a foster daughter, she was not the victim but her

17   counselor who was a colleague of mine was arrested for

18   child pornography as well.

19         THE COURT:  Okay.  And is there anything about

20   those experiences that you believe would impact your

21   ability to serve as a fair and impartial juror in this

22   criminal proceeding?

23         PROSPECTIVE JUROR:  No, Your Honor.

24         THE COURT:  Thank you.  No. 54.

25         PROSPECTIVE JUROR:  I have two nieces that were

1    sexually abused by their stepfather, so I just want to

2    bring that to the Court's attention.

3            THE COURT:  Two nieces.  And was the stepfather

4    prosecuted?

5            PROSPECTIVE JUROR:  Yes.  He was prosecuted and is

6    imprisoned.

7            THE COURT:  And he is serving prison time?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  And were you very close to your

10   nieces?

11           PROSPECTIVE JUROR:  I am now.  My brother ended up

12   marrying their mother, so it was before -- it was right

13   after that I guess that --

14           THE COURT:  What were the ages of your nieces, if

15   you know?

16           PROSPECTIVE JUROR:  At the time they were around

17   12, 13.  This happened for, a couple years.

18           THE COURT:  So this happened a few years ago?

19           PROSPECTIVE JUROR:  No, no.  It's been 15 years

20   ago now.

21           THE COURT:  15 years ago.  Is there anything about

22   that experience in your relationship with your nieces that

23   you believe would impact your ability to serve as a fair

24   and impartial juror in this criminal case?

25           PROSPECTIVE JUROR:  I don't know.  I guess it's

1    kind of emotional for me and I try to be impartial, but I
2    definitely have young children myself, so.
3           THE COURT:  What are the ages of your children?
4           PROSPECTIVE JUROR:  I have a six-year old and a
5    seven-year old, but I have older ones also.
6           THE COURT:  And you get emotional when you think
7    of your nieces?
8           PROSPECTIVE JUROR:  Yeah.
9           THE COURT:  So you are questioning at this point
10   your ability to be fair and impartial?
11          PROSPECTIVE JUROR:  Yes.  I think I could, you
12   know, but I don't know.  It's maybe.
13          THE COURT:  Okay.
14          PROSPECTIVE JUROR:  It's --
15          THE COURT:  I didn't hear what you just said.
16          PROSPECTIVE JUROR:  I said it's definitely
17   something that I feel strongly about, yeah, so.
18          THE COURT:  All right.  So you have strong
19   feelings with regard to this subject matter?
20          PROSPECTIVE JUROR:  Yeah.
21          THE COURT:  And so in that regard, do you think
22   you could be fair to the Defendant who has been indicted
23   for charges that I read to you in the indictment involving
24   depictions of children and adults engaged sexually?
25          PROSPECTIVE JUROR:  I mean I think I could be --

1    determining whether he was innocent or guilty, I mean I'd

2    keep an open mind, but if he's guilty at the end I'd

3    probably -- that would -- I don't know.

4          THE COURT:  Okay.  Well, as a member of the jury,

5    the jury would decide whether the Defendant was

6    innocent -- guilty or not guilty after reviewing all of

7    the evidence, listen to all of the testimony and hearing

8    the Court's instructions.  If the jury finds the person

9    guilty, then the Court makes the decision as to the

10   appropriate sentence.  The jury doesn't get involved in

11   sentencing at all.  Does that help?

12         PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  So with that explanation then, do you

14   think that -- and I don't want you to feel that -- feel

15   badly about saying it if you don't think you could be fair

16   and impartial.

17         PROSPECTIVE JUROR:  I guess.  I don't think I can.

18         THE COURT:  Okay.  Because every trial -- I mean

19   there may be a trial going down the hall that you would be

20   a better juror for, maybe a grand theft.  Maybe this type

21   is not one that you would be, you know, a good juror for,

22   but I want you to tell me whether you think you could be

23   fair and impartial.

24         PROSPECTIVE JUROR:  I guess I don't think I could.

25         THE COURT:  You don't think you could.  Okay.  All

1    right.  Thank you.

2         No. 58.

3         PROSPECTIVE JUROR:  My adopted granddaughter was

4    molested by her step-grandfather who was prosecuted and

5    sent to prison and has since passed away in prison so I

6    cannot be impartial.

7         THE COURT:  Cannot be impartial?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  How long ago did that occur?

10        PROSPECTIVE JUROR:  Five years ago.

11        THE COURT:  Five?

12        PROSPECTIVE JUROR:  Uh-huh.

13        THE COURT:  Okay.  And it's because of your

14   relationship with your adopted granddaughter and the

15   family member that you believe that you could not be fair

16   and impartial in this case?

17        PROSPECTIVE JUROR:  Yes, ma'am.

18        THE COURT:  Okay.  All right.  Thank you.

19        You all don't have my juror questionnaire?  Did

20   they give you another questionnaire.  Yes.  Does everyone

21   have -- it has 12 questions on it.  Does everyone have a

22   copy?

23        Okay.  So what we're going to do is we're going to

24   start up in the jury box, and you will stand, state your

25   number and then answer the questions.  You don't need to

1    read the questions again, but you can answer them and

2    then, of course, make sure you talk into the microphone so

3    that we can hear you.  We'll get the mic. to you.

4         PROSPECTIVE JUROR:  Hi.  My name is Alecia

5    Jimenez.  I live in Bradenton, Florida.  I've lived there

6    for seven years.  I've lived in the same city and state

7    for seven years.  I am an account manager for a payroll

8    and benefits company.  I am married.  He's a benefits

9    analyst, same company.  I have one child who's nine,

10   Madeleine.  I have a degree in business administration.

11   No military service.  I have never been on the jury

12   before.  That's it.

13        THE COURT:  And have you ever been a witness or

14   Plaintiff or Defendant in a court proceeding?

15        PROSPECTIVE JUROR:  I have not.

16        THE COURT:  Okay.  Thank you.

17        PROSPECTIVE JUROR:  Thank you.

18        THE COURT:  All right.  State your name.

19        PROSPECTIVE JUROR:  Amy Sell.  I live in Sarasota.

20   I've lived there for 26 years.  I've lived in Florida 34

21   years.  I am a retail manager.  I am single.  I have no

22   children.  I have a Bachelor's degree.  No military

23   service, no court experience and no previous jury service.

24        THE COURT:  Okay.  Thank you.

25        No. 11.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

125

 1           PROSPECTIVE JUROR:  I'm Lisa Prause.  I live in

 2    Riverview.  I've lived there 16 years, 11 months.  I've

 3    lived in Florida 16 years, 11 months.  I am a preschool

 4    teacher as well as a children's ministry director.  I am

 5    married.  My husband's a director of supply, director of,

 6    I don't know, supply chain.  I have four children, 33, 31,

 7    22, 20.  One is unemployed.  One's a speech language

 8    pathologist.  One is a student and one is taking a break

 9    from college.  I have a Bachelor's in social work.  I have

10    no military service, and I have no court experience or

11    I've been called to serve but never actually seated on a

12    jury.

13           THE COURT:  Okay.  Thank you.

14           No. 14.

15           PROSPECTIVE JUROR:  I'm Connie Six, and I live in

16    Lakewood Ranch for the last four years.  I've been in

17    Florida six-and-a-half years.  I'm retired.  Married.  My

18    husband is also retired.  I have two sons, and one of them

19    is in sales, and the other one is in electrical design.

20    High school education.  No, I have not had any military

21    service or any previous court experience and I did serve

22    on a grand jury many years ago.

23           THE COURT:  About how long ago did you serve on a

24    grand jury?

25           PROSPECTIVE JUROR:  16.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  More than 15?  And do you understand

2     the distinction between a grand jury and a petit jury

3     which is what you're here for today?

4          PROSPECTIVE JUROR:  I do.

5          THE COURT:  Actually let me ask.  You indicated

6     that you were retired and your husband is retired too.

7     From what occupation are you retired?

8          PROSPECTIVE JUROR:  Dental assistant.

9          THE COURT:  What about your husband?

10         PROSPECTIVE JUROR:  Lineman for the power company.

11         THE COURT:  Okay.  Thank you.

12         No. 15.

13         PROSPECTIVE JUROR:  My name is Christopfer Nephew.

14    I live in Largo.  I've been there for about 10 months now.

15    I've lived in Florida for 24 years.  I am a housekeeper at

16    the VA.  I'm divorced.  I have two children, 6 and 9.

17    Education level GED.  I've served four years in the U. S.

18    Army.  Other than divorce court, that's the only court

19    experience I've had.

20         THE COURT:  Okay.  Thank you.

21         No. 16.

22         PROSPECTIVE JUROR:  Hi.  I'm Maritza Ramirez.  I

23    live in Davenport.  I lived there for eight years, been in

24    Florida for 35.  I'm a manager in an orthopedic clinic,

25    married.  My husband is a truck driver.  I have three

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    children.  One is 36, warehouse worker.  35, works with

2    the VA.  29, he's a Marine.  He's just retired.  Some

3    college.  No military service, previous no court

4    experience and never served on a jury.

5            THE COURT:  Okay.  Thank you.

6            No. 19.

7            PROSPECTIVE JUROR:  John Willyoung, Oldsmar,

8    Florida, 28 years.  State of Florida, 68 years.  I'm an

9    accountant, married.  My wife is retired.  I have three

10   children, 33, 38 and 48.  I got a Bachelor's.  No military

11   service.  No court experience and haven't been on any

12   jury.

13           THE COURT:  No. 21.

14           PROSPECTIVE JUROR:  My name is Nicole Howell.  I

15   live in Holiday.  I lived there for about eight months.

16   I've been in Florida for four years.  I work as a

17   registered nurse.  I'm single.  I do not have any

18   children.  I have two Associate degrees.  I do not have

19   any military service, and I have no experience with the

20   court.

21           THE COURT:  Thank you.

22           No. 22.

23           PROSPECTIVE JUROR:  My name is Keely Taylor

24   Zastrow.  I reside in Bradenton, Florida, lived there for

25   20 years.  Florida for 38.  I'm self-employed.  I run a

128

1    health and wellness business.  I'm married.  My husband is
2    a manager at Wal-Mart.  I have three kids, 14, 15 and 17.
3    High school diploma.  No military.  No court experience
4    and no jury.
5              THE COURT:  Okay.  Thank you.
6              No. 24.
7              PROSPECTIVE JUROR:  Hi.  I'm Joy Jones.  I live in
8    Bradenton.  I have been in Bradenton for seven years, and
9    in Florida seven years.  I run a dental clinic, patient
10   care coordinator, and my husband is a metal worker or
11   welder.  Married.  We have six kids between us, but I have
12   two.  They're 37 and 39.  One is a stay-at-home mom with
13   my little two-and-a-half year old grandson and the other
14   helps run a company that does healthy frozen foods.  She
15   helps run that back office.  Just shy of a Bachelor's.  No
16   military service.  No real court experience, however, I've
17   been in family division court in Pittsburgh.  And no jury
18   service.
19             THE COURT:  Okay.  Thank you.
20             No. 28.
21             PROSPECTIVE JUROR:  Hi.  My name is Therese
22   Bernich.  I reside in New Port Richey, Florida.  I have
23   lived in Florida for 23 years.  I work for Sprouts Farmer
24   Market.  I am a deli manager.  I am divorced.  I have one
25   daughter.  She is 24 and she works for Publix, and I

1   graduated high school.  No prior military experience.

2   Court, I have divorce court and bankruptcy, and no jury.

3   First time.

4           THE COURT:  Okay.  Thank you.

5           No. 30.

6           PROSPECTIVE JUROR:  I'm Ashley Caal.  I live in

7   Riverview.  I lived there for four years, been in Florida

8   after moving back.  I'm unemployed, but I was working as a

9   health screener at the Superbowl.  I'm married.  My wife

10  is a customer service representative.  I have no children.

11  I have a Bachelor in Science.  I did four years in the

12  Marine Corps and honorably discharged.  No court

13  experience, and no jury service or anything like that.

14          THE COURT:  Okay.

15          No. 32.

16          PROSPECTIVE JUROR:  My name is Jennifer Fee.  I

17  live in Clearwater, Florida, and I've lived there for 13

18  years, and I've lived in Florida for 38 years.  I'm

19  currently a part-time tutor and science teacher for high

20  school students who are home schooled, and I've gone back

21  to school.  I'm married.  My husband is a project manager

22  for web services, and I have three children, 17, 13 and

23  10.  I have a Bachelor's degree in biology, and I'm going

24  back to school for another Associates degree.  I have no

25  military service.  When I was in high school I was

1    subpoenaed to give testimony for a trial but I was never

2    called into court to actually be a witness.  And I have no

3    jury service.

4         THE COURT:  For what type of case were you

5    subpoenaed to go to --

6         PROSPECTIVE JUROR:  Homicide.

7         THE COURT:  A homicide.  Were you a witness to it?

8         PROSPECTIVE JUROR:  No.  I knew the people

9    involved so I was a character -- or I had seen them in the

10   car but I don't know if it was the one used.

11        THE COURT:  So you were basically going to testify

12   as a character witness?

13        PROSPECTIVE JUROR:  Probably.

14        THE COURT:  Okay.  And how long ago was that?

15        PROSPECTIVE JUROR:  I'm sorry?  That was -- it

16   happened in 1989, so I think it was like '90 or '91 that

17   they called me to be a witness.

18        THE COURT:  Okay.  And was the case one that was

19   prosecuted by the U. S. Attorney's Office or the State of

20   Florida or where did it occur?

21        PROSPECTIVE JUROR:  It happened in the State of

22   Florida, and I don't remember if -- I think it was a State

23   of Florida case, but I don't remember.

24        THE COURT:  All right.  Thank you.

25        We'll go to No. 33.

1              PROSPECTIVE JUROR:  My name is Judith Roberts.  I
2    reside in Sun City Center.  I have lived there seven
3    years.  I've been in Florida 11.  I'm retired from the
4    university library system.  I am married.  My spouse is
5    retired from Aluminum Company of America.  We have no
6    children.  I have a B.A. in education.  I have no military
7    experience.  I've been a witness in a petty theft case and
8    I served on two to three prior juries.  It's been so long
9    ago I'm not sure about the third.  One verdict of guilty.
10   One verdict of not guilty.
11             THE COURT:  Both of the cases were criminal cases?
12             PROSPECTIVE JUROR:  Yes.
13             THE COURT:  And where did they occur?  Were they
14   here in Hillsborough County?
15             PROSPECTIVE JUROR:  No, ma'am.  They were in
16   Lafayette, Indiana.
17             THE COURT:  Okay.  Thank you.  No. 34.
18             PROSPECTIVE JUROR:  My name is Robin Stevens.  I
19   live in Lakeland, Florida, lived there for 16 years.  I've
20   lived in Florida for 54 years.  I'm a VP of operations for
21   a business.  I'm married, and my husband is the chief
22   information officer in information technology.  I have two
23   children, ages 40 and 37.  One is a patient services
24   specialist and the other is a banker.  I have a
25   Bachelor's.  No military experience.  And court experience

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    was when I had my divorce and I have served on a jury in

2    Hardy County, 2014.  I know it was a criminal case and

3    there was a verdict.

4            THE COURT:  Okay.  Thank you.

5            No. 36.

6            PROSPECTIVE JUROR:  My name is Cheryl Berger.  I

7    reside in Sarasota, Florida, five years.  I've lived in

8    Florida for five years.  I am a retired accountant.  I'm

9    married.  My husband is retired in sales.  I have two

10   children.  33, she's in real estate.  30, she's in

11   wellness.  I have a Bachelor's.  I have no previous

12   military experience.  Divorce court for court experience,

13   and I served on a criminal case in Maryland and there was

14   a verdict.

15           THE COURT:  Okay.  Thank you.

16           No. 37.

17           PROSPECTIVE JUROR:  My name is Lisa Barrett.  I

18   live in Bradenton, Florida.  I've been there 17 years and

19   17 years in the State of Florida.  I'm a registered nurse.

20   I am married.  My spouse is a product specialist for a

21   construction supply company.  I have one child, boy 16.

22   Two years of college.  I had no military experience, no

23   court experience or jury service.

24           THE COURT:  Okay.  Thank you.

25           No. 39.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              PROSPECTIVE JUROR:  Hi.  My name is Jennifer

2    Parkinson.  I live in Palm Harbor.  I've been there for 17

3    years.  I've lived in Florida for 47.  I'm an HR

4    operations manager.  Single status.  My son is 23.  He's

5    an apprentice for the Ironworkers Union.  A Bachelor

6    degree in business.  No military experience.  Previous

7    court was divorce and child support, and I've served on

8    two juries.

9              THE COURT:  What types, civil or criminal?

10             PROSPECTIVE JUROR:  Criminal.  One was a murder

11   trial.  One was grand theft.

12             THE COURT:  And did the jury reach a verdict?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  Thank you.

15             No. 40.

16             PROSPECTIVE JUROR:  I'm Leah Snyder.  I live in

17   Palmetto, Florida.  We've lived there 28 years.  I've been

18   in Florida for 54 1/2 years.  My occupation is computer

19   lab manager at an elementary school for Manatee County.

20   My husband is commercial warehouse manager.  We've been --

21   I have two children, 28 -- excuse me.  That just -- 29 and

22   31.  Both just happened.  The youngest is Publix,

23   assistant meat department manager.  The oldest is an EMT

24   Marine rescue lifeguard.  My level of education is a

25   Bachelor's.  I do not have military experience.  I have

1   not been a witness in a court.  I have been on two juries,

2   both returned a verdict in Manatee County District Court.

3   They were criminal.

4            THE COURT:  Okay.  Thank you.

5            No. 42.

6            PROSPECTIVE JUROR:  Hi.  My name is Linda Maloney.

7   I live in St. Petersburg, Florida.  I've lived there for

8   12 years, and I've been in Florida for 12 years.  I'm

9   retired, so is my husband.  I'm retired from a phone

10  center, customer service, and my husband is from TSA at

11  Tampa Airport.  And I have two children, 53 and 47.  My

12  daughter is in insurance.  My son is an ADT salesperson.

13  High school.  I have no military service.  The only -- I

14  have court duty once upon a time for jury for a civil

15  suit.  There was a verdict.  That's it.

16           THE COURT:  Thank you.

17           No. 43.

18           PROSPECTIVE JUROR:  My name is Katherine Dee.  I

19  live in Oldsmar, Florida.  I've lived there for about 23

20  years.  I've lived in Florida for 30 years.  I sell

21  medical supplies to emergency services.  I am single.  No

22  children.  I have a Bachelor's.  No previous military

23  service.  No previous court experience and no previous

24  jury service.

25           THE COURT:  Thank you.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          No. 44.

2          PROSPECTIVE JUROR:  My name is Karen Budd.  I live

3    in Spring Hill.  I've been there for 20 years.  I've lived

4    in the State of Florida for 40 years.  My occupation was

5    administration.  My husband -- oh, I'm retired.  And my

6    husband is an aerospace engineer.  I am married.  Okay.  I

7    have 5 children.  39, and he's a software engineer.  38,

8    she is a labor and delivery nurse.  36, he's a mechanical

9    engineer.  33, pediatrician, and 26, a pilot.  My

10   education is a Bachelor's.  I've had no military service

11   experience and no court experience.

12         THE COURT:  Okay.  Thank you.

13         No. 45.

14         PROSPECTIVE JUROR:  My name is Mark Zimmerman.  I

15   live in Lakewood Ranch, Florida.  I've been here for 17

16   years, both in Lakewood Ranch and in the State of Florida.

17   My occupation is environmental health and safety manager

18   for one of the power companies here in the state.  And

19   prior to that I worked for about 20 years in the

20   environmental insurance marketplace.  I am married.  My

21   wife is a registered nurse.  I have two children.  One is

22   27 and she works for -- she's a director at a nonprofit

23   and I have a son who's 24 and he's actually in law school.

24   I don't know if it has bearing on this, but he actually

25   was offered a clerkship for the Middle District here in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Florida.  I believe it's with Judge Stone in Fort Myers?

2            THE COURT:  Judge Steele in Fort Myers?

3            PROSPECTIVE JUROR:  Is it Steele.  Then it's

4    Steele, yes.

5            THE COURT:  Yes.  Has he completed law school?

6            PROSPECTIVE JUROR:  No, he's in his first year.

7            THE COURT:  This is a summer internship?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Okay.  Thank you.

10           PROSPECTIVE JUROR:  My level of education, I have

11   a BS and a Master's.  One in science, one in engineering.

12   I was in the Marine Corps, and I was honorably discharged.

13   Previous court experience, I have none as a Plaintiff or

14   Defendant.  And I've served on one jury which is a

15   criminal jury in the mid-'90s.  It was a county level case

16   and we did reach a verdict.

17           THE COURT:  Okay.  Thank you.

18           No. 46.

19           PROSPECTIVE JUROR:  My name is Braulio Pena.  I

20   live in Davenport, Florida for four years now.  Live in

21   Florida for 25.  Just started a job at Amazon as a sorting

22   specialist.  I am married.  My wife just started the same

23   job also.  I have two daughters.  One is 20.  She's in

24   sales.  One is 18.  She is a student.  Two years of

25   college.  No military service, no court experience and no

1    jury service.

2              THE COURT:  Okay.  Thank you.

3              No. 47.

4              PROSPECTIVE JUROR:  Yes, ma'am.  My name is Paul

5    Rezac.  I live in Winter Haven, Florida.  I've lived there

6    for six-and-a-half years.  I've been in Florida for

7    six-and-a-half years.  I currently work at Amazon

8    Fulfillment Center in Lakeland.  I'm married.  My wife is

9    self-employed.  I have four children 26, 25, 23 and 20.

10   Self-employed, nurse, psychologist and self-employed.

11   I've got an Associate of Applied Sciences from a

12   vocational college for fire suppression.  I was in the

13   Navy for seven years.  I was a witness for the prosecution

14   once, and I have no jury experience.

15             THE COURT:  In what type of case were you a

16   witness for the prosecution?

17             PROSPECTIVE JUROR:  It was an assault and battery.

18             THE COURT:  Was that for state court or Federal

19   court?

20             PROSPECTIVE JUROR:  State court, ma'am.

21             THE COURT:  How long ago did that occur?

22             PROSPECTIVE JUROR:  Twenty-seven years ago.

23             THE COURT:  And did you observe the assault and

24   battery or were you the victim?

25             PROSPECTIVE JUROR:  No.  I observed it, ma'am.

1              THE COURT:  You observed it.  And did you actually
2    testify?  Did you have to go into court and testify?
3              PROSPECTIVE JUROR:  Yes, ma'am.
4              THE COURT:  Is there anything about that
5    proceeding, Mr. Rezac, that you believe -- I'm sorry --
6    Mr. Johnson --
7              PROSPECTIVE JUROR:  Rezac.
8              THE COURT:  Mr. Rezac that you believe would
9    affect your ability to be fair and impartial in this case?
10             PROSPECTIVE JUROR:  No, ma'am.
11             THE COURT:  Okay.  Thank you.
12             No. 48.
13             PROSPECTIVE JUROR:  My name is Robert Johnson.  I
14   live in Sarasota, Florida.  I've lived there 45 years.
15   I've lived in the State of Florida for 58.  I'm a
16   warehouse foreman for a food wholesale distributor in Fort
17   Myers.  I am divorced.  I have two girls, 25 and 34.  The
18   youngest is in home health care.  The other one is in
19   logging.  I'm a high school graduate.  I served Army, four
20   years.  I was honorably discharged.  Other than divorce in
21   court, and no previous jury duty.
22             THE COURT:  Okay.  Thank you.
23             No. 49.
24             PROSPECTIVE JUROR:  I'm Thomas Rogers.  I live in
25   St. Petersburg, and I've lived there for 18 years.  I've

1    been in the State of Florida for 35 years.  I am currently

2    unemployed, previously a project and participating

3    manager.  I'm single.  I have no children.  I have two

4    years of college coursework completed.  I have no military

5    service, no jury service.

6            THE COURT:  No. 50.

7            PROSPECTIVE JUROR:  I'm Leah James.  I live in

8    Palm Harbor, Florida.  I've lived there for 10 years.

9    I've lived in Florida for 11.  I am a social worker with

10   the VA.  I am married, and my husband is a high school

11   teacher.  We have two children, a seven-year old boy and a

12   four-year old girl.  I have a Master's in social work.  I

13   have no prior military service.  My only court experience

14   is through the foster care and adoptive system, and no

15   prior jury service.

16           THE COURT:  Okay.  Thank you.  No. 51.

17           PROSPECTIVE JUROR:  I'm Kimberly Rose.  I live in

18   Wesley Chapel for 25 years, State of Florida, 43 years.  I

19   am the assistant comptroller for a hospitality industry.

20   I'm married.  My husband is a retail assistant manager.  I

21   have one child, 29.  She's a military stay-at-home mom.

22   Some college.  No military service, no court experience

23   and no jury.

24           THE COURT:  Okay.  Thank you.

25           No. 52.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  Hi.  Name is Lily Vo.  I live

2     in Wesley Chapel for two-and-a-half years.  I've lived in

3     Florida for seven years.  I work in a salon, do nails and

4     skin care.  I'm single.  I have two daughters, 9 and 17.

5     I have some college.  I have no military service, no

6     previous court experience and no jury service prior.

7          THE COURT:  All right.  Thank you.

8          No. 53.

9          PROSPECTIVE JUROR:  I'm Jennifer Geigan.  I live

10    in Tampa, Florida.  I have lived in Tampa for 13 years,

11    Florida for 13 years.  I am a licensed clinical social

12    worker in a community mental health center.  I have a

13    Master's in social work.  I am single.  No biological

14    children.  One foster child I have current guardianship

15    who's 21, unemployed.  No military service.  From 2008 to

16    2015 I was a child welfare case manager having to speak as

17    a witness to the Court.  And no jury service.

18          THE COURT:  So about how often were you in court

19    during your previous employment?

20          PROSPECTIVE JUROR:  I would say weekly depending

21    on the court schedule.  I had to testify in court trials

22    and judicial reviews.

23          THE COURT:  Okay.  Is there anything about that

24    experience that you believe would impact your ability to

25    serve as a fair and impartial juror in this criminal

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    proceeding?

2            PROSPECTIVE JUROR:  No, Your Honor.

3            THE COURT:  Okay.  Thank you.

4            No. 54.

5            PROSPECTIVE JUROR:  My name is Michael Bastien.  I

6    live in Bradenton.  I lived there for three years.  I

7    lived in Florida for four-and-a-half years.  I'm an

8    operations manager.  I'm married.  My wife is a registered

9    nurse.  Between two of us we have six children, six-year

10   old, seven-year old, 21-year old in the Air Force, 23-year

11   old that's in college, a 25-year old in retail and a

12   25-year old that's just finished college unemployed.  I

13   have no military experience.  My only court experience is

14   divorce court and no jury service.

15           THE COURT:  Okay.  Thank you.

16           No. 55.

17           PROSPECTIVE JUROR:  My name is Justin Caliva.  I

18   live in Spring Hill.  I've lived there for four years.

19   I've been in Florida for 27 years.  I'm a personal injury

20   litigation paralegal.  My marital status is single.  No

21   children.  My level of education, I have a Bachelor's in

22   legal studies.  I've never been in the military, and my

23   previous court experience is preparation for civil trials

24   and I've never served on a jury.

25           THE COURT:  All right.  And then with regard to

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    your employment, you are a paralegal for a personal injury

2    firm.  What's the name of the firm?

3           PROSPECTIVE JUROR:  Baunch [ph.]

4           THE COURT:  Do the firm owners do civil

5    litigation?

6           PROSPECTIVE JUROR:  Yes.  And I'm fairly new in

7    court with them within the past like week, so I don't know

8    if you need the firm I was with before?

9           THE COURT:  Have you previously been in court with

10   any firm that also did criminal law?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What firm was that?

13          PROSPECTIVE JUROR:  The Law Offices of Lucas and

14   Macyszyn.

15          THE COURT:  Where was that located?

16          PROSPECTIVE JUROR:  They have an office in New

17   Port Richey, Wesley Chapel, Clearwater and Inverness,

18   Spring Hill.

19          THE COURT:  In conjunction with your previous

20   employment, have you had an opportunity to attend court

21   proceedings?

22          PROSPECTIVE JUROR:  A civil matter, yes.

23          THE COURT:  Only for civil matters?

24          PROSPECTIVE JUROR:  That's correct.

25          THE COURT:  But did you study criminal law as part

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    of your degree for your paralegal certification?

2            PROSPECTIVE JUROR:  For my Bachelor's degree, it

3    was covered in the coursework.  It wasn't studied

4    exclusively there.

5            THE COURT:  Okay.  Thank you.

6            No. 56.

7            PROSPECTIVE JUROR:  My name is Marbon Martirez.  I

8    live in Town and Country.  I reside there for 10 years

9    now, state of Florida for 18 years.  I'm a massage

10   therapist.  Married.  My wife is a physical therapist.  We

11   have one child, high school freshman, 15 years old.  I

12   have a Bachelor degree.  No previous military experience.

13   No previous court experience, and no previous jury

14   service.

15           THE COURT:  Okay.  Thank you.

16           No. 57.

17           PROSPECTIVE JUROR:  Shelly Smith, reside in Largo

18   15 years, 15 years in Florida.  I'm a medical assistant.

19   I'm married.  My husband is unemployed.  No children.

20   Associates degree.  No, no and no.

21           THE COURT:  Okay.  So that's no jury service, no

22   prior court experience and no, you've not been in the

23   military?

24           PROSPECTIVE JUROR:  Right.

25           THE COURT:  Okay.  Thank you.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1           No. 58.

2           PROSPECTIVE JUROR:  Your Honor, my name is Kathy

3   Pahl Turner.  I live in Zephyrhills.  I've lived there and

4   in the State of Florida for 31 years.  I am retired,

5   elementary teacher.  I am divorced.  Two daughters, 36 and

6   40.  40-year old is an HR director.  The 36-year old is a

7   stay-at-home mom and entrepreneur.  I have a Master

8   degree.  I have no military service.  Experience with

9   divorce court and no prior jury service.

10          THE COURT:  Okay.  Thank you.

11          No. 59.

12          PROSPECTIVE JUROR:  Koby Potter, New Port Richey

13  for six years.  Florida for about 16 years.  Occupation,

14  lead technician.  Married.  My wife is a dental

15  coordinator.  I have zero children.  Education automotive

16  degree.  Eight years Marine Corps, honorably discharged.

17  No previous court experience or jury experience.

18          THE COURT:  Okay.  Thank you.

19          No. 60.

20          PROSPECTIVE JUROR:  Ariana Bautista.  I live in

21  St. Petersburg, Florida.  I've lived in St. Pete for five

22  years.  I've lived in Florida for 26 years.  I'm a

23  licensed clinical social worker with the VA.  I'm single.

24  No children.  I have a Master's in social work, no

25  previous military experience.  I've a very brief court

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   experience involving a restraining order and no previous
2   jury service.
3        THE COURT:  Okay.  The court experience that
4   involved the restraining order, were you the individual
5   that requested the restraining order?
6        PROSPECTIVE JUROR:  Yeah.  My mother, I was a
7   minor at the time, yes, on my behalf she requested it.
8        THE COURT:  Okay.  And how long ago was that?
9        PROSPECTIVE JUROR:  Fourteen years ago.
10        THE COURT:  Okay.  Why was the restraining order
11   requested?
12        PROSPECTIVE JUROR:  It was against a significant
13   other at the time and my mother was concerned about the
14   relationship, stalking behaviors.
15        THE COURT:  So a friend of yours or friend of
16   hers?  That's what I don't understand.
17        PROSPECTIVE JUROR:  A boyfriend.  I was a teenager
18   so she was concerned about the boyfriend basically at the
19   time.
20        THE COURT:  Okay.  About your boyfriend?
21        PROSPECTIVE JUROR:  Yes.  Yes.
22        THE COURT:  All right.  That's what I was trying
23   to make sure.  Okay.  So that temporary, that restraining
24   order, did it ultimately turn into a year long order or
25   was it just a temporary one, if you remember?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  I don't remember, but it

2     definitely could have been a year.

3          THE COURT:  Okay.  And did you have to go to court

4     to testify for that restraining order?

5          PROSPECTIVE JUROR:  I only went to court, but they

6     never called me up.  It was a very brief proceeding, I

7     think just to get it done, basically.

8          THE COURT:  Is there anything about that

9     experience that you believe would impact your ability to

10    serve as a fair and impartial juror in this criminal

11    proceeding?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  Thank you.

14         I'm going to ask some questions of the entire

15    panel, but I first need to go back because I neglected to

16    do this when we first started and that is have the

17    attorneys introduce themselves to you as well as the case

18    agent and the Defendant.  So let me just have Ms. Thelwell

19    who's over here at the table which would be the table to

20    my right introduce yourself and co-Counsel and the agent.

21         MS. THELWELL:  Good afternoon, everyone.  My name

22    is Lisa Thelwell along with co-Counsel Ilyssa Spergel and

23    the case agent Tavey Garcia.

24         THE COURT:  Mr. Fitzgerald, introduce yourself and

25    your client.

1          MR. FITZGERALD:  Good afternoon, Your Honor.  My

2     name is Timothy Fitzgerald, and I have the privilege of

3     representing Jack R. Dove in this matter.

4          THE COURT:  Okay, now do any of you know any of

5     the attorneys?  Ms. Thelwell, her assistant, co-Counsel

6     Ms. Spergel?  Okay.  I got it right.  Thank you.  Or the

7     case agent, or Mr. Dove or Mr. Fitzgerald?  Any of you

8     know them?

9          Have you had any contact, even a social or

10     professional relationship with them?

11          All negative responses.  Thank you.

12          Do any of you know any other persons seated in the

13     courtroom this afternoon who are here for jury selection?

14     As you look around, do you know any others?  Okay.  Raise

15     your number cards.

16          All right.  Nos. 50 and 60, you all know each

17     other.  Start with you, No. 50.  How do you know No. 60?

18          PROSPECTIVE JUROR:  We're both social workers at

19     Bay Pines VA.  We're in different sections, but we know

20     each other there.

21          THE COURT:  Okay.  And do you all socialize

22     outside of your employment?

23          PROSPECTIVE JUROR:  No, ma'am.

24          THE COURT:  Okay.  Would your relationship or

25     knowledge of No. 60 impact your ability to think

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    independently during the course of jury deliberations if

2    you were selected as a member of the jury?  In other

3    words, would you be unduly influenced because of your

4    knowledge and relationship with her?

5            PROSPECTIVE JUROR:  No, ma'am, I would not.

6            THE COURT:  Okay.  And, No. 60, the same question

7    of you.  Would your relationship and employment

8    relationship of No. 50 impact your ability to think

9    independently in terms of weighing and deliberating this

10   case if you were selected to serve on the jury?

11           PROSPECTIVE JUROR:  No, it would not.

12           THE COURT:  Okay.  Thank you.  Have any of you or

13   members of your family ever worked for the United States

14   Government?  If you or any members of your family ever

15   worked for the United States Government.

16           PROSPECTIVE JUROR:  Does that include military

17   service?

18           THE COURT:  Yes.  Raise your number card, and I'm

19   going to write them down.

20           I see 9, 11, 15.  30, 6.  Okay.  11, 15, 30, 32,

21   42, 43, 16, 49, 50, 47, 51, 53, 45, 24, 54, 58, 59, and

22   60.

23           Okay.  We'll start here in the jury box with

24   No. 6.  If you will tell me who your family worked for the

25   United States Government and in what capacity?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  My father served in the Navy
2    for eight years.  I would have been eight, so I'm 36 now,
3    so that's the time.
4          THE COURT:  Okay.  So he's retired?
5          PROSPECTIVE JUROR:  Yes, ma'am.  Since eight, I
6    was eight year's old.
7          THE COURT:  Okay.  Thank you.  No. 11.
8          PROSPECTIVE JUROR:  I have a nephew currently
9    serving in the Marine Corps.  I have a niece serving in
10   the National Guard in Michigan.  My father served in the
11   Army.  My brother served in the Army.  I have several
12   cousins that have served in the Navy, Marines and Army.
13         THE COURT:  Okay.  Thank you.
14         No. 15.
15         PROSPECTIVE JUROR:  My father was in the Navy for
16   four years.  My mother works at the VA as a nurse and I
17   had four years in the U. S. Army and I currently work at
18   the VA.
19         THE COURT:  How long have you been at the VA?
20         PROSPECTIVE JUROR:  I've been there for three
21   years.
22         THE COURT:  Okay.  All right.  Thank you.
23         No. 16.
24         PROSPECTIVE JUROR:  Yes.  My husband, former Army.
25   My son, former Marine.  Brother, former Army.  Nephew,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Special Forces.  Niece in the Army.

2              THE COURT:  Okay.  Thank you.

3              Then we'll go to No. 24.

4              PROSPECTIVE JUROR:  I have many uncles and aunts

5    and so they served all of the Armed Forces, Navy, Army,

6    Air Force, and I myself for about two years was a trainer

7    with the U. S. Census Bureau Quality Control Manager.  And

8    also in full disclosure, I do feel that I have to share

9    something with you if I may privately in the headphones.

10             THE COURT:  Yes.

11   (Bench conference begins with Juror No. 24.)

12             THE COURT:  Can you hear me?  Testing?

13             PROSPECTIVE JUROR:  In full disclosure, I do need

14   to say that my new husband that I have been married to for

15   six years had spent six-and-a-half years in prison from --

16   as he voluntarily admitted that he had sexual contact with

17   a minor.  This was a long time ago before I knew him and

18   also he and I were both victims of as young people

19   improper sexual contact.  It was a long, long time ago.

20   We've forgiven our perpetrators.  We've gotten over it and

21   we believe in the redeeming power of Christ, and as a

22   woman of God, I don't believe that any of that restricts

23   my ability to make a fair and impartial decision but I

24   just wanted to announce it in full disclosure.

25             THE COURT:  I appreciate that.  That's exactly

```
 1    what we're asking for during this process.  When was your
 2    husband released from prison, if you recall?
 3              PROSPECTIVE JUROR:  It was about 15 years ago.
 4              THE COURT:  Was he prosecuted here in this area or
 5    some other part of the country?
 6              PROSPECTIVE JUROR:  It was in Sarasota County.
 7              THE COURT:  So state court?
 8              PROSPECTIVE JUROR:  Uh-huh.  Yes.  And the young
 9    girl had said something to her father and he did right
10    away admit to it, and right away got counseling, but the
11    father asked that he would spend, you know, so long in
12    prison, you know, because of the perpetration done.
13    There's no rape.  It was just touching, but, yeah, so he
14    did do his time and he's done extensive counseling, and so
15    I'd like to help and I'd like to be an impartial juror in
16    this trial if I may and I don't hold any grudges.  It's a
17    long time ago.  We're past that, but I just thought I
18    needed to disclose it.
19              THE COURT:  Okay.  Counsel, Ms. Thelwell or
20    Mr. Fitzgerald?  First, Ms. Thelwell, do you have any
21    questions?
22              MS. THELWELL:  No, Your Honor.
23              THE COURT:  Mr. Fitzgerald?
24              MR. FITZGERALD:  No questions, Your Honor.
25              THE COURT:  Okay.  Thank you.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   (Bench conference concluded.)

2            THE COURT:  No. 30.

3            PROSPECTIVE JUROR:  I served four years in the

4   Marine Corps and I had two cousins also serve in the Army.

5            THE COURT:  Okay.  Thank you.

6            No. 32.

7            PROSPECTIVE JUROR:  My brother-in-law was in the

8   Air Force from 2004 to 2008 and then I had grandparents

9   who served.

10           THE COURT:  Grandparents?

11           PROSPECTIVE JUROR:  Yes, ma'am.  I think they all

12   served in the Coast Guard.

13           THE COURT:  Okay.  Thank you.  We'll go to No. 42.

14           PROSPECTIVE JUROR:  My father was in the Navy.  My

15   husband was in the Army.  I have two -- I have two nephews

16   in the Navy now and I worked for the Rock Island Personnel

17   Department in Illinois, long, long time ago.

18           THE COURT:  Okay.

19           No. 43.

20           PROSPECTIVE JUROR:  My brother-in-law is in the

21   Coast Guard.  My uncle is a police officer now.  He was in

22   the Army as a police officer and my cousin is in the Army

23   as well.

24           THE COURT:  Okay.  Thank you.  I'll come back to

25   you with regard to the police officer.

1          No. 49.

2          PROSPECTIVE JUROR:  My father was U. S. Army.  My

3     older brother was U. S. Air Force.

4          THE COURT:  Okay.  Thank you.

5          No. 50 -- I'm sorry.  No. 47.  Well, actually 50

6     is on this side, so why don't we go to 50, and then we'll

7     go to 47.

8          PROSPECTIVE JUROR:  I work at the Department of

9     Veteran's Affairs, and I think I forgot to say that I have

10    a Master's degree as my education.

11         THE COURT:  Okay.  Thank you.  Now, we'll go over

12    to 47.

13         PROSPECTIVE JUROR:  My father was in the Navy.  My

14    two uncles were in the Army.  I was in the Navy from '90

15    to '97.  I also then served in the Department of Homeland

16    Security from 2002 to 2007, and then I was also Assistant

17    Manager for Quality Assurance with the U. S. Census.

18         THE COURT:  Okay.

19         PROSPECTIVE JUROR:  2010, the Census.

20         THE COURT:  Okay.  And 45.

21         PROSPECTIVE JUROR:  I'm myself four years in the

22    Marine Corps.  My father, uncle were Navy vets, and I have

23    an uncle who was an Army vet.

24         THE COURT:  Okay.  Thank you.

25         51.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  Two cousins that were in the

2     Naval academy.  My son-in-law is staff sergeant in the

3     Army, and I also have a police officer in my background.

4          THE COURT:  Okay.  53.

5          PROSPECTIVE JUROR:  My father is retired Army.  I

6     have a brother that was in the Army Reserves, and I was a

7     census numerator in the 2010 census.

8          THE COURT:  Thank you.

9          54.

10          PROSPECTIVE JUROR:  My son is serving in the Air

11     Force and my wife served in the Army.

12          THE COURT:  Okay.  Thank you.

13          58.

14          PROSPECTIVE JUROR:  My father was retired Army.

15     My former husband is retired Air Force and currently works

16     for the Social Security Administration.

17          THE COURT:  Okay.  Thank you.

18          59.

19          PROSPECTIVE JUROR:  Mother in the Air Force, was

20     in the Air Force, father was in the Army.  Older brother

21     Army.  Myself Marine Corps, and then extended family all

22     branches of the service.

23          THE COURT:  Okay.  Thank you.

24          60.

25          PROSPECTIVE JUROR:  Grandfather in the Army.

1    Uncle in the Marine Corps, and I work for the Department

2    of Veteran Affairs.

3           THE COURT:  All right.  Thank you.  Let me go

4    back.  I did not do it yet for those who came in this

5    afternoon.  Let me identify for you the witnesses that we

6    believe may be providing testimony in this case.  These

7    persons have been identified as those individuals who may

8    provide testimony.

9           If you know any of them, please raise your number

10   cards.  Special Agent Tavey Garcia.  Computer Forensic

11   Analyst Justin Gaertner.  Computer Forensic Analyst Edward

12   Schwaigert.  Special Agent Darrell Franklin.  Special

13   Agent Thomas Tamsi.  Intel Research Specialist Kimberly

14   Reece.  Contractor Aaron Bice.  Special Agent Tigran

15   Gambaryan.  Special Agent Chris Janczewski.  James

16   Daniels.  Gus Dimitrelos.  Melissa Dove.  Rachel

17   Ortengren.

18          All right.  All negative responses.

19          And my question to you and particularly I know

20   some of you said you had family members who served in law

21   enforcement positions.

22          Do you have any member of your family, close

23   friends or acquaintance who are involved in law

24   enforcement including state or Federal police officers,

25   sheriff's deputies, law enforcement agents, Department of

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Homeland Security, HSI, ICE, United States Citizenship or

2    Immigration Services, DEA, IRS or any state or other

3    Federal law enforcement agency?  And I ask that because,

4    as you know now, from my having read the witness list that

5    a number of witnesses in this case will be law enforcement

6    officers.  So please let me know if you, a member of your

7    family, a close personal friend who is involved in law

8    enforcement in the state, at the state or Federal level.

9    If so, please raise your number card.

10           Okay.  So I have 21, 24, 43, 49, and 57.

11           All right.  We'll start with No. 21.  Tell me who

12   it is that served, what agency they served with, what the

13   person does.

14           PROSPECTIVE JUROR:  His name Ken Players.  He

15   works at the Hillsborough County Detention Center.

16           THE COURT:  What's your relationship to him?

17           PROSPECTIVE JUROR:  Ex-boyfriend.

18           THE COURT:  Ex-boyfriend.  Okay.  All right.

19   Thank you.

20           No. 24.

21           PROSPECTIVE JUROR:  My husband's son is a sheriff

22   in the Manatee court system, works in the courthouse, and

23   then his nephew also Manatee courthouse.

24           THE COURT:  No. 43.

25           PROSPECTIVE JUROR:  My uncle is a police officer

1    in Virginia.

2            THE COURT:  Do you know what capacity he does?  Is

3    it patrol or investigations or --

4            PROSPECTIVE JUROR:  I'm not sure.

5            THE COURT:  Okay.  All right.  Thank you.

6            No. 49.

7            PROSPECTIVE JUROR:  I have a cousin who was a

8    local police department officer, also a sheriff's deputy,

9    and then I went into various Federal agencies in an

10   investigator capacity.  His son is also an FBI deputy

11   agent in the DC office.

12           THE COURT:  Where is your cousin?  Is he in DC as

13   well?

14           PROSPECTIVE JUROR:  No.  He is in Georgia.

15           THE COURT:  Georgia.

16           PROSPECTIVE JUROR:  Okay.  I have a neighbor.  I

17   believe you mentioned close friends?

18           THE COURT:  Yes.

19           PROSPECTIVE JUROR:  A neighbor who was a local St.

20   Pete police officer and is currently working for the

21   Department of State.

22           THE COURT:  All right.  Thank you.

23           51.

24           PROSPECTIVE JUROR:  My ex-husband is a retired

25   TPD.

158

1          THE COURT:  Thank you.

2          And 57.

3          PROSPECTIVE JUROR:  My cousin is from Texas and

4    he's a cop.  I have a couple good friends in Michigan that

5    are cops, and one is border patrol in Michigan.

6          THE COURT:  Now, for those of you who have

7    identified either close family members or friends or

8    perhaps you as having served in law enforcement.

9          Could the fact that you, your family member or

10   close friend, could their employment in law enforcement

11   and your relationship with them affect your ability to be

12   a fair and impartial juror sitting in a criminal case such

13   as this and evaluating the testimony of law enforcement

14   officers?

15         As I've said, you will certainly hear testimony

16   from law enforcement.

17         Could your relationship with your family members

18   or close friends impact your ability to serve as a fair

19   and impartial juror and evaluate the testimony of law

20   enforcement officers?

21         If you think it could affect it, please raise your

22   number card.

23         All right.  All negative responses.

24         Does any member of the panel have a matter pending

25   before the United States Attorney's Office in this

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1       district or any other district?

 2                All right.  All negative responses.

 3                Have you, any member of your family or close

 4       friend ever been the victim of a crime?  If so, please

 5       raise your number cards.

 6                And some of you I've already talked about some

 7       crimes, but if you have not already divulged the crimes to

 8       me, please raise your number cards.

 9                It's you, a member of your family or close friend

10       ever been the victim of a crime.  If so, please raise your

11       number card.

12                Okay.  11, 32, 33, 48, 49, 60 and 51.

13                We'll start with No. 11.  Tell me what happened,

14       when it happened, you know, whether anyone was charged or

15       prosecuted and were you satisfied with the outcome of that

16       proceeding?

17                PROSPECTIVE JUROR:  In 2005 Christmastime we had

18       some sheds broken into along with all our neighbors.  I

19       have no idea if they ever caught whoever did it.

20                THE COURT:  All right.  Thank you.

21                PROSPECTIVE JUROR:  Had a lot of damage to our

22       building, so.

23                THE COURT:  It sounds like law enforcement was

24       called but you haven't heard anything more about it?

25                PROSPECTIVE JUROR:  No.  Yeah, they investigated

1    such, but, no, we never heard anything.

2            THE COURT:  Okay.  Thank you.

3            No. 32.

4            PROSPECTIVE JUROR:  1999 my car was broken into

5    and the radio was stolen and items from the car.  We

6    filled out a report, but nothing happened, and I didn't

7    really expect anything.

8            THE COURT:  All right.  Thank you.

9            No. 24.

10           PROSPECTIVE JUROR:  My daughter was a victim of an

11   attempted murder, but she survived and he's in prison in

12   Nevada for I think about two more years.

13           THE COURT:  Okay.  So then the individual was

14   prosecuted?

15           PROSPECTIVE JUROR:  Right.

16           THE COURT:  And is actually serving a prison

17   sentence?

18           PROSPECTIVE JUROR:  Right.  I think a total of

19   three-and-a-half to four years, so he's got about two more

20   years.

21           THE COURT:  Okay.  And were you there with your

22   daughter as she was going through the court proceeding?

23           PROSPECTIVE JUROR:  No.  I wasn't able to be

24   there.  Her stepmother was there with her, but, yeah, I

25   wasn't able.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Is there anything about that

2     experience and the fact that your daughter was the victim

3     of a very serious crime that you believe would impact your

4     ability to serve as a fair and impartial juror in this

5     case?

6          PROSPECTIVE JUROR:  I don't believe so.  I think I

7     can look at things impartially, case by case.

8          THE COURT:  Okay.  Thank you.  Then we'll go to

9     33.

10          PROSPECTIVE JUROR:  In the 1970's, my apartment

11     was broken into and some minimal change in a bank was

12     stolen, and I had to testify, and I don't recall if the

13     individual was convicted or not.

14          THE COURT:  All right.  Thank you.

15          48.

16          PROSPECTIVE JUROR:  Can I discuss this in private?

17          THE COURT:  Yes.

18          While I'm discussing this with Juror No. 48, if

19     there are those of you who would like to use the restroom,

20     I know you've been here for a little while now.  You may

21     do so at this time.  You know where they are so you may

22     exit and then return and I will wait for the next general

23     question, I'll wait for you to return.  You can put on the

24     headsets.

25     (Bench conference begins with Juror No. 48.)

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        THE COURT:  Okay.

2        PROSPECTIVE JUROR:  Okay.  Kind of rough to talk

3   about.  I was raped when I was eight years old.  High

4   school student, and it West Palm Beach.  I was coming home

5   from South Level Elementary.  His name was Neal Armstrong

6   amazingly, but when I told my parents, before the cops got

7   there to get the investigation, my father went out to look

8   for him.  They got to him before my dad did and all this

9   is bringing up bad memories.  That's it.  I just wanted

10  to -- but I didn't want to say it out loud.

11       THE COURT:  I appreciate that.  I appreciate your

12  coming forward.

13       PROSPECTIVE JUROR:  There's my mic.

14       THE COURT:  I appreciate your coming forward and

15  sharing that with me.  That is exactly what we'd like for

16  you to do, and so I thank you for sharing that with us and

17  I'm not going to go into too many more details, but you

18  told me that, and it sounds as though you got a little

19  emotional as you were starting to talk about it.

20       PROSPECTIVE JUROR:  Yes, ma'am.

21       THE COURT:  Given that your experience, do you

22  believe you could be a fair and impartial juror?

23       PROSPECTIVE JUROR:  No, ma'am.

24       THE COURT:  Okay.  Was the person ever prosecuted?

25       PROSPECTIVE JUROR:  Yes.  Well, he was caught.  I

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    don't know what happened.  I was eight years old.

2         THE COURT:  Okay.  Ms. Thelwell, Mr. Fitzgerald,

3    do you all have any questions of Juror No. 48?

4         MS. THELWELL:  Your Honor, I couldn't hear the

5    beginning of the statement so I'm not sure what happened.

6    I mean all I heard was that his father or the law

7    enforcement was able to identify the person and arrest

8    them before his father.

9         THE COURT:  He indicated that he was raped when he

10   was eight years old by a high school student.

11        MS. THELWELL:  No, no questions.

12        THE COURT:  Mr. Fitzgerald?

13        MR. FITZGERALD:  No questions, Your Honor.

14        THE COURT:  Okay.  Thank you so much, sir.

15   (Bench conference concluded.)

16        THE COURT:  Is No. 49 in here?  Okay.  We'll

17   continue.

18        You indicated that you or close family member had

19   been the victim of a crime?

20        PROSPECTIVE JUROR:  Do I need a microphone?

21        THE COURT:  Yes.

22        PROSPECTIVE JUROR:  I've had a vehicle break-in

23   twice.  I've been the victim of identity theft.  I had a

24   brother-in-law who was the victim of an assault.

25        THE COURT:  Okay.  Thank you.

1      Is 51 back?  Here.  Okay.

2           PROSPECTIVE JUROR:  I've had a vehicle break-in on

3      two separate occasions, an apartment broken into, a victim

4      of identity theft and my husband was involved in a

5      convenience store robbery.  He was the victim.  I believe

6      that person is still in jail.  He continues to get

7      notifications of parole.

8           THE COURT:  Your husband was working at the

9      convenience store?

10          PROSPECTIVE JUROR:  No.  He was actually just a

11     customer in the store.

12          THE COURT:  Okay.  And did he testify in any court

13     proceedings?

14          PROSPECTIVE JUROR:  I don't know that for a fact.

15     I know that it was -- there was a gun that was held to him

16     so I would assume probably, but I don't know that for a

17     fact.

18          THE COURT:  Okay.  All right.  Thank you.  I don't

19     see that 60 has returned so I'll wait a few minutes.

20     (Brief pause.)

21          THE COURT:  All right.  No. 60, you indicated that

22     you had been the victim of a crime, you or family member

23     or friend been the victim of a crime?

24          PROSPECTIVE JUROR:  Yes.  September 13, 2019 we

25     bought our house that day, and that night it was

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    burglarized and they stole a speaker.  There was nothing

2    in it because we just bought the house, and he was tried.

3    He did go to jail.  I can't remember if he had other

4    charges or I think he had multiple charges from other

5    situations so we were satisfied with that.

6            THE COURT:  Everyone has returned.  For those of

7    you who have indicated that were the victim of a crime,

8    you, your family member or close friend, is there anything

9    from your close friends or you or your family members'

10   experience which you believe could impact your ability to

11   serve as a fair and impartial juror and render a verdict

12   in this criminal case?  If so, please raise your number

13   card.

14           All right.  All negative responses.

15           How many of you are familiar with cryptocurrency?

16   If you are familiar with cryptocurrency, please raise your

17   number cards.

18           15, 22, 43, 49, 54, 55, 60, 47, 53, 46, 45, and

19   56, 19 and 24.  Okay.  If you are familiar with

20   cryptocurrency, tell me if you used it in the past, how

21   are you familiar with it, what's the source of your

22   familiarity and whether you've used it to purchase goods

23   or services.

24           We'll start with No. 19.

25           PROSPECTIVE JUROR:  I've never owned any, but I

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1  had to learn how it was taxed when people sold it, so I'm

2  familiar with that aspect of it.  That's about it.

3          THE COURT:  Okay.  All right.  Thank you.  No. 24.

4          PROSPECTIVE JUROR:  Just as far as stock goes,

5  some stock trading.

6          THE COURT:  Okay.

7          COURT SECURITY OFFICER:  Your Honor, No. 15 also.

8          THE COURT:  No. 15.

9          PROSPECTIVE JUROR:  Other than owning like the few

10  Dogecoins, you know, not really too much known about how

11  it works.  I know it's used almost in untraceable

12  currency, and that it's a Bitcoin.  That's about it, Your

13  Honor.

14          THE COURT:  Okay.  Thank you.

15          22.

16          PROSPECTIVE JUROR:  I just seen it all over

17  Facebook.  I don't know too much information about it, how

18  it works.  I know there's all different kinds of coins but

19  that's about the extent.

20          THE COURT:  Okay.  Thank you.

21          Then we'll go to 43.

22          PROSPECTIVE JUROR:  I'm familiar with Bitcoin but

23  I've never used it or traded it.

24          THE COURT:  Did you become familiar with it just

25  by hearing about it or learning about it on Facebook or?

1          PROSPECTIVE JUROR:  Yeah, hearing about it,

2     research.  I have a lot of friends in finance.

3          THE COURT:  Okay.  Thank you.

4          49.

5          PROSPECTIVE JUROR:  I'm casually familiar with

6     Bitcoin as an investment opportunity but I have no

7     experience with it.

8          THE COURT:  Okay.  Thank you.

9          54.

10         PROSPECTIVE JUROR:  I've never used it.  I've just

11    read some articles and am familiar with what it is.

12         THE COURT:  Okay.  Thank you.

13         55.

14         PROSPECTIVE JUROR:  I've used cryptocurrency.  I

15    own three different kinds.

16         THE COURT:  You own it.  Okay.  Great.  Thank you.

17         60.

18         PROSPECTIVE JUROR:  Just in relation to stock

19    trading, which I do have but I don't have any

20    cryptocurrency.

21         THE COURT:  Okay.  Thank you.

22         47.

23         PROSPECTIVE JUROR:  Ma'am, I own four-and-a-half

24    Bitcoin and then other crytos as well, but I sold them all

25    after -- well, I did okay.

1          THE COURT:  All right.  Thank you.

2          53.

3          PROSPECTIVE JUROR:  I've heard about it through

4     personal finance media.  I don't trade it or own any of

5     it.

6          THE COURT:  Okay.  Thank you.

7          46.

8          PROSPECTIVE JUROR:  Never owned it or traded it,

9     but I have friends that are in the mining process and in

10    the training process also.

11         THE COURT:  Thank you.

12         45.

13         PROSPECTIVE JUROR:  I have a working knowledge of

14    it.  I've never traded or owned.

15         THE COURT:  Okay.  Thank you.

16         52, did I see you raise your number card?  Okay.

17    52.

18         PROSPECTIVE JUROR:  I only heard it on the news

19    and from friends about the Bitcoin, but I don't own any of

20    it.

21         THE COURT:  Okay.  Thank you.

22         56.

23         PROSPECTIVE JUROR:  Only basic knowledge of it and

24    I have a client who asked to trade through their

25    cryptocurrency.

1            THE COURT:  Does any member of the panel have any

2    strong feelings or opinions concerning the United States

3    Government or more specifically the United States

4    Department of Homeland Security that might in any way

5    affect your ability to be a fair and impartial juror in a

6    case like this?  Any strong feelings or opinions that

7    might affect your ability to serve as a fair and impartial

8    juror with regard to the United States Department of

9    Homeland Security in particular?

10            All right.  All negative responses.

11            Do any among you have any conscientious objection,

12   and by that, I mean religious belief or other mental

13   reservation such that you could not in good faith and in

14   good conscience sit as a juror in this criminal case and

15   return a verdict of guilty if you believed from all the

16   evidence that the United States has proved its case beyond

17   a reasonable doubt?

18            To put it another way, is there anyone here who

19   feels that for any moral or religious reasons that you

20   could not sit in judgment of another human being?  Anyone

21   here have those feelings?

22            If so, please raise your number card.

23            All right.  All negative responses.

24            Do any among you feel that you would be unable to

25   follow the Court's instructions that in reaching your

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    verdict in this case you must not be influenced in any way

2    by either sympathy or prejudice for or against either the

3    Defendant or the United States?  In other words, sympathy

4    or prejudice has no role in reaching a verdict in a case

5    of this nature and I will so instruct the jury before the

6    jury retires to deliberate.

7           So you must not be influenced by either sympathy

8    or prejudice for or against either the Defendant or the

9    United States.

10          Do any of you feel that you could not follow that

11   instruction?  If so, please raise your number card.

12          All right.  All negative responses.

13          I'm going to now switch gears a little bit and

14   just talk with you a little bit about COVID-19.  It's the

15   white elephant in the room we all have to talk about

16   because we're all wearing masks, and I explained to the

17   panel that came in earlier this morning, our Court, the

18   Middle District of Florida, has hired an epidemiologist

19   who makes recommendations to us with regard to the best

20   practices and procedures for conducting jury trials and

21   in-person proceedings as she reviews regularly the

22   coronavirus positivity rates and other data for

23   effecting -- that may affect everything, so based upon

24   that, the first thing that we have been advised is that we

25   should wear masks.  If jurors wants to wear masks and

1    shields, that's fine, but absolutely we should all wear

2    masks.  And so for the most part, you will see all of us

3    in here wearing masks.

4          With that as background, is there anyone in here

5    who suffers from a breathing condition that may be

6    exacerbated or may be worse by having to wear a mask for

7    an extended period of time?  Anyone in here feel that you

8    would have a difficulty or because of a medical condition

9    you should not wear a mask for an extended period of time?

10   Again, we want to keep everyone in here safe to the extent

11   that we're able to do so, and one of the things that we

12   intend to do is to enforce the mask requirement.  So if

13   you feel that you could not follow that requirement,

14   please raise your number card.

15         All right.  All negative responses.

16         Regardless of any other concerns that we've

17   discussed today, does anyone in here feel that concern

18   over COVID-19 will affect your concentration during this

19   trial or otherwise impact your ability to fairly

20   deliberate and reach a decision based on the evidence

21   presented in the courtroom and my instructions to you?

22         Does anyone in here feel that you're going to be

23   so concerned or affected by the coronavirus that you would

24   not be able to focus your attention on the evidence that's

25   presented here so that you can deliberate with the other

1    members of the jury?  Does anyone have that concern?  If

2    so, please raise your number card.

3         Will anyone hold any resentment towards the

4    Government, the United States or the Defendant because you

5    are required to be present in the courtroom today during

6    the pandemic, the coronavirus pandemic that's still

7    persists in Florida and nationwide?  Would anyone hold any

8    resentment towards anyone because of that?

9         THE VENIRE:  (No response.)

10        THE COURT:  I talked just a moment ago about your

11   religious and moral beliefs.  It is also anticipated that

12   during the course of this trial, you will hear evidence

13   that Mr. Dove committed acts of infidelity.

14        Do any of you hold any religious or moral beliefs

15   that would preclude your ability to be fair and impartial

16   to Mr. Dove given that testimony?  If so, please raise

17   your number cards.

18        All right.  All negative responses.

19        Does anyone other than yourself have access to,

20   and if they have access to any of these things other than

21   yourself, please raise your number card, your banking

22   information, your credit card numbers, your computer, your

23   cellphone?  Does anyone else other than you have access to

24   those items, either one or any or all, your banking

25   information, your credit card numbers, your computer, your

1    cellphone.  I see quite a few here.  Looks like everybody.

2         11, 14, 16, 19, 24, 30, 32, 33, 34, 36, 44, 42,

3    43, 50, 54, 60, 37, 39, 40, 47, 46, 45, 52, 53, 57, 56,

4    51.

5         Now, raise your number card, again, if the

6    person -- if the other person who has access is someone

7    other than a family member?  If so, if it's someone other

8    than a family member who has access, raise your cards.

9         I see 43 and 60.  Okay.  43 and 52.

10        No. 43, who else has access to your information

11   other than a family member?

12        PROSPECTIVE JUROR:  My employer has access to my

13   cellphone and computer.

14        THE COURT:  And then No. 52.

15        PROSPECTIVE JUROR:  My partner has access to my

16   bank information and laptop.

17        THE COURT:  Okay.  And then No. 60.

18        PROSPECTIVE JUROR:  My boyfriend has access to my

19   laptop.

20        THE COURT:  Okay.  All right.  Thank you.  I'm

21   going through this quickly, look through some of general

22   questions, and then I'll let the attorneys ask a few

23   questions.  And then I have one or two more that I'd like

24   to follow up with you on it.

25        As background for this question, I'm going to

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    share with you portions of an instruction that I will give

2    at the conclusion of this trial, and part of the

3    instructions are that in criminal cases such as this, the

4    entire burden of proof is upon the Government from the

5    beginning to the end of the trial, and this burden never

6    shifts from the Government to the Defendant.

7          The Defendant in any criminal case is presumed to

8    be innocent until the Government, by competent evidence,

9    has shown his guilt beyond a reasonable doubt.  This

10   presumption of innocence remains with a Defendant as to

11   each and every material allegation in the indictment until

12   it has been met and overcome by the evidence beyond a

13   reasonable doubt.

14         That means that the Defendant has a constitutional

15   right not to testify.  No juror is allowed to hold this

16   against the Defendant or draw any adverse inference if the

17   Defendant exercises his constitutional right not to

18   testify.

19         You, as jurors, will be required to calmly, fairly

20   and dispassionately consider all the evidence of the case

21   and from this evidence and from the law which the Court

22   will give you arrive at your verdict.  You should not be

23   swayed in the performance of your duty by prejudice,

24   sympathy or any other sentiments.

25         With that instruction as background, if you are

1    selected as a juror in this case, can and will each of you

2    render a fair and impartial verdict based upon the

3    evidence presented in the courtroom?  And how I will

4    handle your reply is we'll start up here in the jury box

5    and you can tell me.

6            Some of you have already given me reasons and a

7    bases as to why you could not serve as a fair and

8    impartial juror, so your response we know, but for those

9    of you who believe that you could serve as a fair and

10   impartial juror in this case, your response would be yes.

11           So let me start with juror No. 6.

12           PROSPECTIVE JUROR:  Yes.

13           PROSPECTIVE JUROR:  Yes.

14           THE COURT:  Wait just a minute.  Let me state your

15   number.  No. 10.

16           PROSPECTIVE JUROR:  Yes.

17           THE COURT:  No. 11.

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  No. 14.

20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  No. 15.

22           PROSPECTIVE JUROR:  Yes.

23           THE COURT:  No. 16.

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  No. 19.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  No. 21.

 3              PROSPECTIVE JUROR:  Yes.

 4              THE COURT:  22.

 5              PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  24.

 7              PROSPECTIVE JUROR:  Yes.

 8              THE COURT:  28.

 9              PROSPECTIVE JUROR:  Yes.

10              THE COURT:  30.

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  32.

13              PROSPECTIVE JUROR:  Yes.

14              THE COURT:  33.

15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  34.

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  36.

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  37.

21              PROSPECTIVE JUROR:  Yes.

22              THE COURT:  39.

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:  40.

25              PROSPECTIVE JUROR:  Yes.
```

1        THE COURT:  42 -- I'm sorry.

2        PROSPECTIVE JUROR:  Yes.

3        THE COURT:  43.

4        PROSPECTIVE JUROR:  Yes.

5        THE COURT:  44.

6        PROSPECTIVE JUROR:  Yes.

7        THE COURT:  45.

8        PROSPECTIVE JUROR:  Yes.

9        THE COURT:  46.

10       PROSPECTIVE JUROR:  Yes.

11       THE COURT:  47.

12       PROSPECTIVE JUROR:  Yes.

13       THE COURT:  48.

14       PROSPECTIVE JUROR:  No, ma'am.

15       THE COURT:  No. 49.

16       PROSPECTIVE JUROR:  Yes.

17       THE COURT:  50.

18       PROSPECTIVE JUROR:  Yes.

19       THE COURT:  51.

20       PROSPECTIVE JUROR:  I'll change to yes.

21       THE COURT:  So you said that's a yes?

22       PROSPECTIVE JUROR:  Yes.

23       THE COURT:  52.

24       PROSPECTIVE JUROR:  I'll state yes.

25       THE COURT:  53.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  54.

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  55.

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  56.

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  57.

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  58.

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  59.

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  60.

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  All right.  Thank you.

17         Ms. Thelwell, you may inquire.

18         MS. THELWELL:  Thank you, Your Honor.

19         Good afternoon, everyone.  As we said earlier, my

20     name is Lisa Thelwell, and I'm co-Counsel with

21     Ms. Spergel.  I apologize for having my back to some of

22     you all, but first I have a question for Juror No. 55, if

23     can you pronounce your last name.

24         PROSPECTIVE JUROR:  It's Caliva.

25         MS. THELWELL:  Thank you.  You stated that you own

 1     cryptocurrency.

 2              PROSPECTIVE JUROR:  (Nodding head.)

 3              MS. THELWELL:  You mentioned that you own three

 4     different kinds.  What kinds do you own?

 5              PROSPECTIVE JUROR:  Bitcoin, Ethereum and Litcoin.

 6              MS. THELWELL:  How long have you owned

 7     cryptocurrency?

 8              PROSPECTIVE JUROR:  Six months.

 9              MS. THELWELL:  And do you recall what digital

10     currency exchange you used or what platform you purchased

11     it on?

12              PROSPECTIVE JUROR:  Yes.  To Coinbase and Coinbase

13     Pro.

14              MS. THELWELL:  Did you personally make those

15     purchases?

16              PROSPECTIVE JUROR:  Yes.

17              MS. THELWELL:  You also mentioned that you used to

18     work at a criminal law firm?

19              PROSPECTIVE JUROR:  It wasn't criminal exclusively

20     but they did handle criminal matters.  I didn't work on

21     any of those cases.

22              MS. THELWELL:  So while you were at that firm that

23     also did criminal work, you strictly worked on civil work?

24              PROSPECTIVE JUROR:  Yes.

25              MS. THELWELL:  And how long have you been a

180

1    paralegal?

2           PROSPECTIVE JUROR:  Three years.

3           MS. THELWELL:  Three years.  No further questions,

4    thank you.

5           Besides Mr. Caliva, is there anyone else here who

6    owns cryptocurrency or who has owned cryptocurrency in the

7    past?

8           Juror No. 47?

9           PROSPECTIVE JUROR:  Yes, ma'am.

10          MS. THELWELL:  Mr. Rezac?

11          PROSPECTIVE JUROR:  Yes, ma'am.

12          THE COURT:  What cryptocurrency have you owned

13   before?

14          PROSPECTIVE JUROR:  Bitcoin, Ethereum, Ripple and

15   BSV.

16          MS. THELWELL:  So a similar question as

17   Mr. Caliva, what digital currency exchange platform did

18   you use to make those purchases?

19          PROSPECTIVE JUROR:  OKcoin.

20          MS. THELWELL:  I'm sorry?

21          PROSPECTIVE JUROR:  OKcoin.

22          MS. THELWELL:  OKcoin?

23          PROSPECTIVE JUROR:  Yes, ma'am.

24          MS. THELWELL:  Okay.  Is there anyone else here?

25          THE COURT:  No. 15.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          MS. THELWELL:  I see No. 15.  Thank you.  You

2     raised your hand.

3          PROSPECTIVE JUROR:  Yes.  I own Dogecoin and like

4     one-hundredth of a Bitcoin owned through Robin Hood.

5          MS. THELWELL:  Okay.  For stock trading purposes?

6          PROSPECTIVE JUROR:  Yes.

7          MS. THELWELL:  But do you actually hold -- have

8     you actually exchanged U. S. dollars for Dogecoin in order

9     to make a purchase, cryptocurrency purchase?

10         PROSPECTIVE JUROR:  No.

11         MS. THELWELL:  Are you familiar with Coinbase?

12         PROSPECTIVE JUROR:  I am.

13         MS. THELWELL:  You are?

14         PROSPECTIVE JUROR:  Yes, I don't use it.  I have

15    friends who use it.

16         MS. THELWELL:  Thank you.  Is there anyone else,

17    if you could just hold up your card?  Have you heard of --

18    well, let me rephrase.  Have you used Coinbase besides

19    Mr. Caliva?  Okay.  Has anyone here heard of Coinbase?

20         I see Juror Nos. 15, 45, 47 and 56.  I just spoke

21    with you, Juror No. 16, so I'm going to go to Juror No.

22    45.  Mr. Zimmerman.

23         PROSPECTIVE JUROR:  Yes.

24         MS. THELWELL:  What information do you know about

25    Coinbase?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1      PROSPECTIVE JUROR:  Just the general awareness.

2  It's just one of the little ads that pops up from time to

3  time.  There's a variety of them that will assault your

4  eyeballs as you are surfing and doing other things, so,

5  yes, ma'am, I'm aware of it.

6      MS. THELWELL:  Okay.  Thank you.  I think there

7  was also we spoke with Juror No. 47 already, and there was

8  a hand in the back.  Where did those number --

9      Juror No. 56 in the back.  Thank you.

10      PROSPECTIVE JUROR:  I have a client who is

11  actively trading cryptocurrency and she basically just

12  discussed with me what Coinbase is.

13      MS. THELWELL:  So you learned about it from a

14  client?

15      PROSPECTIVE JUROR:  I know about it from a client

16  of mine.

17      MS. THELWELL:  Okay.  Thank you.

18      THE COURT:  Ms. Sell -- well, I apologize.  Let me

19  stay over here and keep the microphone over here first

20  before we move.

21      Juror No. 51, Ms. Rose.  You indicated that your

22  ex-husband is former law enforcement with Tampa Police

23  Department?

24      PROSPECTIVE JUROR:  Yes.

25      MS. THELWELL:  Based on your relationship with

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    your ex-husband, at the time that he was working law

2    enforcement, do you think that any of the information he

3    may have shared with you over the years would affect your

4    ability to be fair and impartial in this particular case?

5            PROSPECTIVE JUROR:  No.

6            MS. THELWELL:  I saw that you took some time to

7    think about that.  Do you want to express anything

8    further?

9            PROSPECTIVE JUROR:  No.

10           MS. THELWELL:  Okay.  So it's your statement today

11   that you can be fair and impartial despite that

12   relationship with your ex-husband's former job; correct?

13           PROSPECTIVE JUROR:  Yes.

14           MS. THELWELL:  Thank you.  Mr. Rezac, Juror

15   No. 47, you have indicated that you work for DHS, it's

16   Department of Homeland Security from 2002 to 2007?

17           PROSPECTIVE JUROR:  Yes, ma'am.  The DHS had just

18   been formed and I was chosen to be a trainer for the TSA.

19           MS. THELWELL:  Thank you.  And right in front of

20   you, Ms. Snyder, juror No. 40.

21           PROSPECTIVE JUROR:  Yes.

22           MS. THELWELL:  You mentioned that you were a

23   computer lab manager at an elementary school.

24           PROSPECTIVE JUROR:  Yes.

25           MS. THELWELL:  What exactly does that entail?

```
 1            PROSPECTIVE JUROR:  I've been with the school
 2    system for five years now, and prior to Covid we had a
 3    computer lab set up for students to come in and do their
 4    online instruction and I was to make sure they were
 5    updated and running, working, keys put on and minor IT
 6    work and I assist the teachers if they have issues with
 7    their laptops.
 8            THE COURT:  You also mention that you have a
 9    Bachelor's degree?
10            PROSPECTIVE JUROR:  Uh-huh.
11            MS. THELWELL:  What is that in?
12            PROSPECTIVE JUROR:  Social work.
13            MS. THELWELL:  Do you have any specialized
14    computer training or knowledge in order to carry out your
15    current duties?
16            PROSPECTIVE JUROR:  I learned over time.  My
17    husband and I have been self-employed for 30 something
18    years, so I had to learn the computer to operate the
19    computer to take care of the office and that enabled me to
20    get this last job with the school district.
21            MS. THELWELL:  Thank you so much.
22            I'm going to go over to this side of the room.
23    Thank you.  I'm going to start with Ms. Dee, Juror No. 43.
24    I think you told us that you're in medical sales; is that
25    correct?
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          PROSPECTIVE JUROR:  Yes.

2          MS. THELWELL:  What was your Bachelor's degree in?

3          PROSPECTIVE JUROR:  Elementary education.

4          MS. THELWELL:  Did you ever work as a teacher?

5          PROSPECTIVE JUROR:  Yeah.  I was a teacher for six

6     years.

7          MS. THELWELL:  When was your last role as a

8     teacher?

9          PROSPECTIVE JUROR:  Four years ago.

10         MS. THELWELL:  What grade levels did you teach?

11         PROSPECTIVE JUROR:  Kindergarten and first.

12         MS. THELWELL:  Despite having that experience in

13    your background and obviously hearing the judge talk

14    about, you know, what's likely going to being introduced

15    into evidence in this case, are you able to set that aside

16    and make a fair and impartial decision in this case?

17         PROSPECTIVE JUROR:  Yes.

18         MS. THELWELL:  Okay.  I saw you think about it, so

19    this is just for everybody.  As the Court already

20    mentioned to you, there is an indictment, right, but at

21    the same time Mr. Dove is considered innocent.  As he sits

22    here right now, he is innocent.  Do you understand that?

23         PROSPECTIVE JUROR:  Yes.

24         MS. THELWELL:  Do you agree with that?

25         PROSPECTIVE JUROR:  Yes.

1          MS. THELWELL:  Okay.  Up until the time that the

2     Government proves the charges in the indictment beyond a

3     reasonable doubt as the Court will explain, Mr. Dove

4     remains innocent.  Do you agree with that?

5          PROSPECTIVE JUROR:  Yes.

6          MS. THELWELL:  Is there anyone here who disagrees

7     with that based on the simple fact that there is an

8     indictment?  I see no hands.  Thank you.

9          To Mr. Rogers, Juror No. 49.  I may have missed it

10    when we were going on this questionnaire.  Are you

11    currently employed?

12         PROSPECTIVE JUROR:  No, I'm currently unemployed,

13    past six months.

14         MS. THELWELL:  What was your last occupation?

15         PROSPECTIVE JUROR:  I was print fulfillment

16    manager at Feld Entertainment in Palmetto, Florida.

17         MS. THELWELL:  Okay.  What type of work did do

18    you?

19         PROSPECTIVE JUROR:  Print buyer basically.

20         MS. THELWELL:  Okay.  And how long had you that

21    job?

22         PROSPECTIVE JUROR:  Four years.

23         MS. THELWELL:  And did you stay in that general

24    industry through most of your career?

25         PROSPECTIVE JUROR:  Yes.  I've been print related

1    my whole career.

2            MS. THELWELL:  Okay.  And I think that's all I

3    have for you.

4            Right behind you or two rows behind you,

5    Mr. Potter.  You indicated that you are a lead tech

6    technician?

7            PROSPECTIVE JUROR:  Yes, ma'am.

8            MS. THELWELL:  What exactly does that mean?

9            PROSPECTIVE JUROR:  I was field technician for my

10   company for almost six years and they promoted me to a

11   lead technician spot so now I oversee everybody in

12   Florida.

13           MS. THELWELL:  What do they do?  The people that

14   you manage and oversee, what do they do?

15           PROSPECTIVE JUROR:  We work on the cranes, truck

16   mounted cranes and truck mounted forklifts.

17           MS. THELWELL:  Thank you.

18           Juror No. 10, Ms. Sell, I think you indicated that

19   you had a Bachelor's degree, but I didn't know what the

20   underlying degree was in.

21           PROSPECTIVE JUROR:  Political science.

22           MS. THELWELL:  Okay.  Thank you.  And right --

23   well, in the front down here, Juror No. 19, Willyoung, I

24   think you said you had some adult children?

25           PROSPECTIVE JUROR:  Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

188

```
 1              MS. THELWELL:  What do they do?
 2              PROSPECTIVE JUROR:  My son sells insurance.  My
 3      daughter's a school nurse and my other daughter is an
 4      accountant.
 5              MS. THELWELL:  At least one followed your
 6      footsteps; right?
 7              PROSPECTIVE JUROR:  Oh, God.
 8              MS. THELWELL:  Right next door to you, Juror No.
 9      21, Ms. Howell.  You indicated that you're a nurse and
10      that you also have two Associate's degrees?
11              PROSPECTIVE JUROR:  I do.  I have one in liberal
12      arts and my RN degree.
13              MS. THELWELL:  Okay.  Perfect.  And I apologize.
14      There was someone, but I don't see it in my notes right
15      now.  Who is currently in school for crime scene
16      technology?
17              Okay.  Perfect.  Juror No. 32.  32, Ms. Fee.  And
18      so what specifically are you seeking that degree for?
19              PROSPECTIVE JUROR:  To be a crime scene
20      technician.
21              MS. THELWELL:  So theoretically you'd work with
22      law enforcement?
23              PROSPECTIVE JUROR:  Yes.  I believe it would be in
24      a civil position, but you would go to the crime scene and
25      document the scene and collect the evidence and
```

1    potentially give testimony, but I'm only at the beginning

2    of the program.  I've completed four courses and I'm

3    currently enrolled in a forensic science class.

4              MS. THELWELL:  Okay.  Thank you so much.

5              PROSPECTIVE JUROR:  Sure.

6              MS. THELWELL:  If I could have one moment, Your

7    Honor?

8              THE COURT:  You may.

9              MS. THELWELL:  Mr. Nephew, Juror No. 15.  I

10   remember this morning I think you mentioned that you have

11   two young kids, and as of right now your parents, their

12   grandparents were able to watch them today?

13             PROSPECTIVE JUROR:  Yes.

14             MS. THELWELL:  Are you able to find out if they

15   would be available for the rest of the week?

16             PROSPECTIVE JUROR:  I can guarantee Thursday and

17   Friday they wouldn't be able to.  That's all I can say

18   right now, but I don't have my phone all day.

19             MS. THELWELL:  Apart from your parents, do you

20   have anyone else to assist you with child care for

21   Thursday or Friday?

22             PROSPECTIVE JUROR:  Just them unfortunately --

23   just them unfortunately.

24             MS. THELWELL:  Okay.  Thank you.

25             My last question, the Court asked you all, whether

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    or not anyone was familiar with the Dark Web.  A lot of

2    you had heard of it.  Specifically does anyone know how to

3    access the Dark Web?

4            Juror No. 55.  Is there anyone else?  Juror No. 15

5    also.

6            That's okay.  We'll go with Juror No. 55 first.

7    So before you speak, Juror No. 55, is there anyone else

8    here?  And Juror No. 15 who knows how someone is able to

9    access the Dark Web.  I see no hands.

10           Juror No. 55, Mr. Caliva, how does someone access

11   the Dark Web?

12           PROSPECTIVE JUROR:  You can use a Tor web browser.

13           MS. THELWELL:  Stay right there for one second.

14   By a show of hands, has anyone here heard of Tor?

15           I see Juror No. 15.  Your card, I'm sorry.  By a

16   show of cards.  Juror No. 44 has heard of Tor.  Is there

17   anyone else?  I saw Juror No. 15 already.  All right.

18   Juror No. 55, what is Tor?

19           PROSPECTIVE JUROR:  It's The Onion Router

20   basically.  It allows you to hide your IP address to get

21   onto it.

22           MS. THELWELL:  I'm sorry, to do what?

23           PROSPECTIVE JUROR:  Hide your IP address or

24   encrypt your IP address so you can access the website.

25           MS. THELWELL:  Juror No. 44.  Juror No. 44, what

1   is your familiarity or knowledge of Tor?

2          PROSPECTIVE JUROR:  My husband put it on my

3   computer.

4          MS. THELWELL:  Do you use it?

5          PROSPECTIVE JUROR:  Uh-huh.

6          MS. THELWELL:  So you're familiar with how Tor

7   works?

8          PROSPECTIVE JUROR:  All's I know is like when

9   you're browsing that you look up, you Google things to buy

10  and whatever.  I guess Facebook can't track it, you know,

11  like or see it, I guess, you know.

12         MS. THELWELL:  So what Mr. Caliva said, Juror No.

13  55, that it would hide your IP address for your computer?

14         PROSPECTIVE JUROR:  Yes.  Yes.

15         MS. THELWELL:  Juror No. 15, did I see a hand over

16  here in the corner?  No.

17         Juror No. 15, and we'll end here.  What is your

18  understanding of Tor?

19         PROSPECTIVE JUROR:  Other than it's used to

20  basically hide your IP, that's one way to get to the Dark

21  Web.

22         MS. THELWELL:  All right.  Thank you.  No further

23  questions.

24         THE COURT:  All right.  Thank you.

25  Mr. Fitzgerald?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              MR. FITZGERALD:  Thank you, Your Honor.

2              Juror No. 11, Ms. Prause.  I am just checking.

3     You indicated earlier you may have a problem with a

4     medical appointment with diabetes or something?

5              PROSPECTIVE JUROR:  Yeah, with my Covid shot?

6              THE COURT:  I didn't hear you.

7              PROSPECTIVE JUROR:  Next Wednesday I have my

8     second Covid shot scheduled.

9              MR. FITZGERALD:  Okay.  Is that it?  Other than

10    that you have no issues with the timing of the trial?

11             PROSPECTIVE JUROR:  No.

12             MR. FITZGERALD:  Okay, thank you.

13             Mr. William -- I know -- number, sorry.

14             You previously expressed concern that it being tax

15    season that you would be remiss not being at work, but

16    then seemed like you kind of said you could be here?

17             PROSPECTIVE JUROR:  It's an inconvenience is all,

18    really.  Everything is going to get done.  Some people are

19    going to get mad but, you know, I can work through that.

20    I don't want to, but if I have to, I will.

21             MR. FITZGERALD:  You'd be able to devote your

22    complete attention to the trial?

23             PROSPECTIVE JUROR:  I'm going to have to work at

24    night, so I would think so.

25             MR. FITZGERALD:  You think so?

1              PROSPECTIVE JUROR:  I'm going to.  Yes, I will

2       give full attention.

3              MR. FITZGERALD:  Thank you, sir.

4              THE COURT:  Ms. Berger, you previously indicated

5       that the drive was long and difficult for you and then the

6       Judge suggested they could make hotel arrangements for

7       you.  Is that satisfactory?

8              PROSPECTIVE JUROR:  Sure.

9              MR. FITZGERALD:  Okay.  Thank you.

10             THE COURT:  Let me just interrupt, Mr. Fitzgerald.

11      No. 36, did you have an opportunity to speak with jury

12      services regarding that?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Was it discussed in your orientation

15      this morning?

16             PROSPECTIVE JUROR:  No.  Just that there was -- I

17      read it, that if it was over 60 miles then I could, but I

18      don't know anything.

19             THE COURT:  Yours is over 60 miles, isn't it?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  That's fine.  And we do that when the

22      individuals for commuting is greater than 60 miles, we

23      will make hotel arrangements for them, so --

24             PROSPECTIVE JUROR:  Okay.

25             MR. FITZGERALD:  Juror No. 47, Mr. Rezac.

1      PROSPECTIVE JUROR:  Yes, sir.

2      MR. FITZGERALD:  You don't need the mic.

3      PROSPECTIVE JUROR:  My wife agrees, I do not need

4  the mic.

5      MR. FITZGERALD:  But the fact that you worked at

6  the Department of Homeland Security and that there may be

7  witnesses that also worked at the Department of Homeland

8  Security affect your ability to be fair and impartial?

9      PROSPECTIVE JUROR:  No, sir.

10      MR. FITZGERALD:  The fact that you worked there,

11  would you give them more deference than any other witness?

12      PROSPECTIVE JUROR:  No, sir.

13      MR. FITZGERALD:  Thank you.

14      PROSPECTIVE JUROR:  Yes, sir.

15      THE COURT:  Juror No. 56, Mr. Martirez.

16      PROSPECTIVE JUROR:  Martirez, yes, sir.

17      MR. FITZGERALD:  You also expressed concern that

18  participating in the trial as a juror may affect your

19  financial situation?

20      PROSPECTIVE JUROR:  Yes, sir.  Because I only --

21  it's so often I get booked, and if I don't provide service

22  massage, I don't get paid.

23      MR. FITZGERALD:  Would that affect your ability to

24  donate or give 100 percent of your attention to the trial?

25      PROSPECTIVE JUROR:  No, sir.

1    MR. FITZGERALD:  So you would still be able to do

2    that?

3    PROSPECTIVE JUROR:  Yes, sir.

4    MR. FITZGERALD:  Thank you.  If I have no other

5    questions, Your Honor, thank you.

6    THE COURT:  Okay.  Thank you.

7    In looking back over my notes, I have one that I

8    did not ask and I usually ask this, and I just want to ask

9    it before I release you all for a break.

10   Have you or any family member, relative or close

11   friend ever been arrested, charged or convicted of a

12   crime?  Some of you may have discussed that with me

13   through the use of the headsets, but if you, any family

14   member, relative or close friend ever been arrested,

15   charged or convicted of a crime, please raise your number

16   card.

17   Okay.  So I have No. 10, 30, 48, 49, 55, 58 and

18   53.  Okay.  Thank you.

19   We'll start with No. 10.

20   PROSPECTIVE JUROR:  51.

21   THE COURT:  51, thank you.

22   No. 10, if you'll tell me what was the subject of

23   the investigation or the outcome of the crime and who was

24   it.

25   PROSPECTIVE JUROR:  My uncle was.  He was in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    prison for a while for a drug crime.  I don't know the

2    specifics of it, but he was in prison quite a while for

3    that.

4         THE COURT:  All right.  Thank you.  Then we'll go

5    to No. 30.

6         PROSPECTIVE JUROR:  My uncle went to prison in

7    Texas for a drug trafficking.

8         THE COURT:  And for both of you, let me ask, are

9    your relatives still in custody or are they out since you

10   have the mic., No. 30?

11        PROSPECTIVE JUROR:  My uncle is out.

12        THE COURT:  He's out now?

13        And No. 10.

14        PROSPECTIVE JUROR:  He's out.

15        THE COURT:  He's out too.  Okay.  Thank you.  Then

16   we'll go to No. 48.

17        PROSPECTIVE JUROR:  My older brother DUI and

18   assault.

19        THE COURT:  And is he in custody?

20        PROSPECTIVE JUROR:  No.

21        THE COURT:  All right.  Thank you.  No. 49.

22        PROSPECTIVE JUROR:  My younger brother has been

23   charged with possession of methamphetamine.

24        THE COURT:  Is he charged currently?  Is it

25   pending?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1            PROSPECTIVE JUROR:  Pending.

2            THE COURT:  Okay.  And is that in State court or

3       Federal court?

4            PROSPECTIVE JUROR:  I believe that's State of

5       Georgia.

6            THE COURT:  In Georgia?

7            PROSPECTIVE JUROR:  , ma'am.

8            THE COURT:  Okay.  Thank you.

9            No. 55.

10           PROSPECTIVE JUROR:  A close friend of mine has

11      been convicted of DUI.

12           THE COURT:  Convicted of DUI.  Okay.  Thank you.

13           58.

14           PROSPECTIVE JUROR:  My brother was arrested and

15      convicted of drug trafficking, and he spent five years in

16      Marion in Illinois.  He's since been released.

17           THE COURT:  Okay.  Thank you.

18           No. 51.

19           PROSPECTIVE JUROR:  My daughter as a minor was

20      arrested for shoplifting, did community service.  Did you

21      say friends as well?

22           THE COURT:  Yes, close friends.

23           PROSPECTIVE JUROR:  One of my closest friend's

24      daughter is serving time for if I believe it's vehicular

25      manslaughter.

        UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  All right.  Thank you.

2          No. 52.

3          PROSPECTIVE JUROR:  My father for domestic

4     violence.  He was just arrested.

5          THE COURT:  Who was?

6          PROSPECTIVE JUROR:  My father.

7          THE COURT:  Your father.  Okay.  And you said he

8     was just arrested, so is there a charge pending right now

9     then?

10         PROSPECTIVE JUROR:  No.  This is years ago.

11         THE COURT:  It was years ago.  Okay.  Thank you.

12         No. 53.

13         PROSPECTIVE JUROR:  I have an ex-fiancee in 2007

14    DUI arrest, in 2008 I believe it was a sexual assault

15    arrest.  I don't know the outcomes of those charges, but

16    he is not incarcerated.  It was never incarcerated other

17    than an overnight in jail.

18         THE COURT:  Okay.  All right.

19         Now, for those of you who have identified family

20    members or close friends who have been arrested, charged

21    or convicted of crimes, would your relationship with those

22    family members or close friends and their experiences in

23    any way cause you to be unable to evaluate fairly and

24    impartially the evidence and testimony of the witnesses

25    who will be testifying in this case, in general, but

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1   specifically on behalf of the United States.

 2          If any of you think that because of your relatives

 3   or close friends' incarceration, convictions, arrest would

 4   affect your ability to serve as a fair and impartial juror

 5   in this case, please raise your number card.

 6          All right.  All negative responses.

 7          Okay.  We are going to take a break.  I'm going to

 8   excuse you now for about 25 minutes or so to give us an

 9   opportunity to go through finally and evaluate the

10   responses you've given to us so that we can select a jury

11   to listen to the testimony and evidence in this case.

12          You may return to the jury auditorium and we will

13   have you brought back up to the courtroom as soon as we

14   are ready.  Thank you very much.

15   (Venire out at 4:48 p.m.)

16   (Proceedings had with Juror No. 56 outside venire's

17    presence.)

18          THE COURT:  All right.  No. 56, you had some

19   additional information you wanted to share with us, sir.

20          PROSPECTIVE JUROR:  Yes, ma'am.  I thought that

21   the law enforcement and military was only limited to the

22   direct family member.  I just want to disclose that my

23   neighbor is with the custom police in the airport, and I

24   have a close friend that works with Homeland Security in

25   immigration and also my brother-in-law is in the Navy and

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    my nephew of my brother-in-law is also in the Navy.

2         THE COURT:  Okay.  So you have a close family

3    friend that currently works for Homeland Security?

4         PROSPECTIVE JUROR:  Yes, ma'am.

5         THE COURT:  And did you say TSA at the airport?

6         PROSPECTIVE JUROR:  The other one is a custom

7    police in the airport.

8         THE COURT:  Okay.  I didn't hear you.  Customs

9    police.  Okay.  I'm sorry.  I didn't hear that word,

10   customs police.  Okay.

11        Counsel, do you all have any questions of No. 56

12   regarding his additional comments?

13        MS. THELWELL:  Due to your relationship, are you

14   able to set that aside and be fair and impartial during

15   this particular case?

16        PROSPECTIVE JUROR:  Yes.

17        MS. THELWELL:  No questions.  Thank you.

18        THE COURT:  Mr. Fitzgerald?

19        MR. FITZGERALD:  Who works for Homeland Security,

20   your uncle?

21        PROSPECTIVE JUROR:  It's a close family friend.

22        MR. FITZGERALD:  Close family friend.  And you

23   talk to him about his work?

24        PROSPECTIVE JUROR:  Yes, we always got together,

25   you know, with parties and everything, so, you know, but

1    we -- he talks and I talk about it.

2            MR. FITZGERALD:  Has he discussed what he does for

3    Homeland Security?

4            PROSPECTIVE JUROR:  Not in full detail.  He's with

5    the immigration.

6            MR. FITZGERALD:  Thank you.

7            PROSPECTIVE JUROR:  Thank you.

8            THE COURT:  All right.  Thank you.

9    (Juror No. 56 exits courtroom.)

10   (Proceedings had outside venire's presence.)

11           THE COURT:  All right.  Counsel, why don't we try

12   and at least go through the hardship requests and then

13   I'll take a short break, because I know we've been in here

14   too.  That way you'll have an opportunity to discuss

15   further any peremptory challenges that you may want to

16   exercise in this case.

17           All right.  With regard to hardships, I have the

18   following request.  No. 42 indicates that she has her

19   second Covid shot on Wednesday at 3:00 o'clock in

20   Gibsonton.  What is your request with regard to No. 42?

21           MS. THELWELL:  We move to strike her for cause.

22   She does seem very concerned about it.  Even just now she

23   had overheard her asking the Court Security Officer, you

24   know, what's going to happen because I have my shot on

25   Wednesday.  The Judge didn't address it.  So she does

1     appear to be very concerned about that, and she is indeed

2     in a population that would be vulnerable, so I would

3     request that she be stricken for cause at this time.

4              THE COURT:  Mr. Fitzgerald?

5              MR. FITZGERALD:  No objection, Your Honor.

6              THE COURT:  All right.  I will excuse No. 42 for

7     cause.

8              No. 48 indicated that it would constitute a

9     financial hardship and he has since given us additional

10    bases for excusal in this case in that he indicated that

11    he was sexually assaulted or raped at eight years of age

12    and he could not be fair and impartial.  Is there any

13    objection to excusing Juror No. 48?

14             MS. THELWELL:  No, Your Honor.

15             MR. FITZGERALD:  No objection, Your Honor.

16             THE COURT:  No. 48 is also stricken for cause.

17    Next one is No. 52 who works at a nail salon.  She has two

18    daughters and she says it would constitute a financial

19    hardship if she were to serve this week.  She will not be

20    reimbursed by her nail salon.  She already has clients

21    scheduled for the rest of the week.  What is your response

22    to her request?

23             MS. THELWELL:  No objection, Your Honor.

24             MR. FITZGERALD:  No objection, Your Honor.

25             THE COURT:  I'll excuse No. 52 for cause.

1          The next one was No. 56 who was the massage

2     therapist who also requests an excusal based upon a

3     financial hardship saying when he's not there he's not

4     employed, although in his case, his wife is employed and

5     he was the one who was just in the room.

6          What is your request regarding No. 56?

7          MS. THELWELL:  Your Honor, I would request that he

8     would not be excused on the financial hardship basis.  I

9     believe one, Mr. Fitzgerald just asked him, again, if I'm

10    getting this correctly if it would be a burden on him, a

11    financial burden to not work this week or his mind would

12    be elsewhere.  I forget how Mr. Fitzgerald phrased it, and

13    he did follow up about missing work, and the juror did not

14    seem concerned about it and would be able to focus on the

15    trial.

16         THE COURT:  Mr. Fitzgerald?

17         MR. FITZGERALD:  Your Honor, he seemed -- I asked

18    him to make sure he could focus on the trial in case he

19    wasn't excused and he said he could, however, he said it

20    would be an extreme financial burden, that he only makes

21    money when he's actually massaging people and there would

22    be a financial burden.

23         THE COURT:  He did, but in his case at least he

24    did say that his wife is employed.

25         MR. FITZGERALD:  I'm sorry.  I couldn't hear you.

1      THE COURT:  He indicated initially he gave that
2   response but he also indicated that in his case his wife
3   was employed.  In other words, he's not the sole
4   breadwinner for the home, and so I'm not going to excuse
5   him, No. 56, at this time.
6      Let's go back to a couple of the ones that we
7   discussed this morning.
8      No. 11 has requested it.  She's a Type 2 diabetic.
9   She just clarified that her appointment is next Wednesday,
10  not this Wednesday, and she does not have concerns
11  otherwise.
12     Is there any request for me to excuse No. 11?
13     MS. THELWELL:  No, Your Honor.
14     MR. FITZGERALD:  No, Your Honor.
15     THE COURT:  Okay.  No. 15, he is the single father
16  of two, the 6 and 9-year old.  He picks them up after
17  school.  He did state upon clarification that his
18  grandparents would not be available to pick them up all
19  week and so I'm inclined to go ahead and excuse No. 15.
20  Do you wish to be heard further?
21     MS. THELWELL:  No, Your Honor.
22     THE COURT:  Any objection?
23     MR. FITZGERALD:  No, Your Honor.
24     THE COURT:  I'm going to excuse No. 15.
25     No. 19, who's the CPA, clarified that he could be

1    here.  He could remain focused.  Does anybody wish to be

2    heard further as to No. 19?

3              MS. THELWELL:  No, Your Honor.

4              MR. FITZGERALD:  No, Your Honor.

5              THE COURT:  Okay.  I think he's clarified then his

6    does not constitute a hardship, that it would be an

7    inconvenience but he would serve.

8              And then No. 36 is no longer also concerned since

9    she has learned that she would have the ability to stay at

10   a hotel while she's here for jury service given the fact

11   that she is over 60 miles away from the courthouse.  I

12   think those constitute all of our requests for excusals

13   based upon hardship.

14             The next category relates to those who had some

15   concerns regarding the nature of the charges against

16   Mr. Dove.

17             No. 46 indicated that she was questioning her

18   ability to be fair and impartial, as I guess there was

19   some inappropriate touching I believe when she was four

20   years of age.  Does anyone wish to be heard?  Is there an

21   objection or do you request that she be excused for cause?

22             MS. THELWELL:  One moment, Your Honor.  I'm trying

23   to find that notation in my notes.

24             MR. FITZGERALD:  Your Honor, if I may, that was a

25   gentleman, and I think it was his wife is the mother of

1    his children.

2         THE COURT:  Thank you.  That's right.  It is a

3    gentleman and it's the wife of the mother of his children

4    who said that it impacted his relationship with her and

5    his divorce.

6         MR. FITZGERALD:  That's correct.

7         THE COURT:  Thank you.  It was like he was

8    overprotective of the children because of what his former

9    wife endured.

10         MR. FITZGERALD:  I believe he said he couldn't be

11    fair and impartial.

12         THE COURT:  He questioned his ability, so you may

13    be right.  I mean he continually questioned it.  You could

14    look at him and tell he was really struggling with the

15    response to that.  Ms. Thelwell?

16         MS. THELWELL:  Yes, Your Honor.  I do have in my

17    notes that he said something that I meant to follow up

18    with and I just simply forgot because I didn't understand

19    what he meant.  He said, quote, I would think yes in

20    response to some question that the court posed, but his

21    response just wasn't clear, so I don't know if it was I

22    would think, yes, I can be fair and impartial or yes,

23    ma'am, that I can't, but either way because he was not

24    resolute in his response, I would not object to defense

25    counsel's motion to strike for cause.

1          THE COURT:  And I agree.  I think that he did --

2     even when I asked the final question and I told him he

3     could say yes or no, he said yes, but even then he still

4     questioned his ability to be fair and impartial based upon

5     the experience of his former wife, and so I'm going to

6     strike No. 46 for cause.

7          All right.  No. 50 raised an issue but indicated

8     ultimately that she could be fair and impartial.  Does

9     anyone wish to be heard further with regard to No. 50?

10          MS. THELWELL:  No, Your Honor.

11          MR. FITZGERALD:  Your Honor, I understand she said

12     that but she indicated she was a victim of sexual abuse

13     and this -- let me make sure I have the right person.

14     That was -- no.  No. 50.  I'm fine, Your Honor.

15          THE COURT:  Okay.  No. 51 indicated that her

16     sister indicated that she was a victim of sexual abuse but

17     her mother didn't believe it and nothing ever became of it

18     and that she could be fair and impartial.

19          Is there any argument or any concern with regard

20     No. 51?

21          MS. THELWELL:  The only thing, Your Honor, and I

22     don't know if you're going to get to it, but about 10 to

23     15 minutes before you asked her that question, I think it

24     was after you informed them of the nature of the offense,

25     she indicated that she had seven grandchildren and it

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    would be, quote, really hard to be impartial and she

2    would, quote, have a very hard time being impartial.  She

3    never specifically stated she could not be impartial but

4    she did appear to struggle with the nature of the offense.

5            THE COURT:  Mr. Fitzgerald?

6            MR. FITZGERALD:  Yes, Your Honor.  My notes also

7    indicate she said it would be hard to be impartial.

8            THE COURT:  Okay.  I'll grant the question and

9    strike No. 51 for causes.

10           No. 53 indicated that she could be fair and

11   impartial.  Does anyone wish to have any further argument

12   as to 53?

13           MS. THELWELL:  No, Your Honor.

14           MR. FITZGERALD:  No, Your Honor.

15           THE COURT:  Okay.  No. 54 said she has two nieces

16   12 and 13, that she gets kind of emotional, doesn't -- he,

17   I'm sorry.  This is a man.  Michael Bastien.  He doesn't

18   think he could be fair and impartial and, in fact, he said

19   no in response to my question.  And that's No. 54.

20           Is there any further argument or any request

21   regarding 54?

22           MS. THELWELL:  No objection, Your Honor.

23           MR. FITZGERALD:  No objection, Your Honor.

24           THE COURT:  All right.  I'm going to strike No. 54

25   for cause.

1        Then I also have No. 58 who indicated that she

2   could not be impartial, and she actually also said no to

3   my last question, that she could not be fair and

4   impartial.

5        MS. THELWELL:  No objection, Your Honor.

6        MR. FITZGERALD:  No objection for striking for

7   cause, Your Honor.

8        THE COURT:  All right.  I will strike No. 58 for

9   cause.

10       Then we will take a short break and come back and

11  go through your challenges for cause recognizing that you

12  have 10 and 6.

13       I will start first with the Defendant with

14  peremptories.  Once you've announced, I'll go to the

15  Government, and then we'll go back and forth until we get

16  through and get a jury selected.  It's my intent to select

17  14.  Anything else?

18       MR. FITZGERALD:  Are we done with cause?

19       THE COURT:  Did you have some others?  I dealt

20  with the more specific ones, but certainly let's discuss

21  others that you may have.

22       MR. FITZGERALD:  Well, No. 52, 52, she was the

23  beauty salon person.

24       MS. THELWELL:  I think we excused her.

25       THE COURT:  She's already excused.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          MR. FITZGERALD:  Okay.  Never mind.

2          THE COURT:  Were there any other challenges for

3   cause?  All right.  Then we are in recess.

4   (Recess taken.)

5   (Proceedings resumed outside venire's presence.)

6          THE COURT:  We are back in session.  As I

7   indicated, the Government -- well, let just make sure.

8   Are there any other challenges for cause?  Hearing none,

9   then we're at peremptory challenges.  The Government has

10   6, the Defendant has 10.

11          MS. THELWELL:  Your Honor, I apologize.  It's not

12   necessarily for cause prior to the jury being brought in.

13   I recall Mr. Fitzgerald saying that his client may know

14   someone on the panel.  It was Juror No. 16.

15          THE COURT:  It was earlier this morning.  I

16   assumed that once he saw the person that he did not know

17   them.  I will inquire of Mr. Fitzgerald.

18          MS. THELWELL:  I just wanted to confirm.

19          THE COURT:  Mr. Fitzgerald?

20          MR. FITZGERALD:  He doesn't believe he knows him,

21   Your Honor.

22          THE COURT:  Okay.  It was Maritza Ramirez.  Okay.

23   All right.  He doesn't know her.  Thank you.

24          All right.  With regard to the peremptories

25   challenges, does the Defendant wish to exercise one?

1           MR. FITZGERALD:  What order do you go in, Your

2     Honor?

3           THE COURT:  I start with you and I go down --

4     right now, for example, if we were to select -- if we were

5     to -- if a jury were based upon what we currently have in

6     the box, the jury would consist of the following

7     individuals:  No. 6, No. 10, No. 11, No. 14, No. 16,

8     No. 19, No. 21, 22, 24, No. 28, No. 30 and No. 32.  I

9     think that's 12, and then the two alternates which would

10    make it 14.  I do allow back-striking, but I do start with

11    the panel just as they are currently provided on your

12    sheet.

13          MR. FITZGERALD:  We would move to strike Juror No.

14    11.

15          THE COURT:  All right.  Yes?

16          Madam clerk.  Off the record.

17    (Brief pause.)

18          THE COURT:  All right.  Ms. Thelwell, does the

19    Government wish to exercise a peremptory challenge?

20          MS. THELWELL:  Juror No. 16.

21          THE COURT:  Mr. Fitzgerald, does the Defendant

22    wish to exercise another peremptory challenge?

23          MR. FITZGERALD:  Juror No. 24, Your Honor.

24          THE COURT:  Juror No. 24.

25          Does the Government wish to exercise another

1    peremptory challenge?

2            MS. THELWELL:  No, Your Honor.

3            THE COURT:  Okay.  If I were to accept the jury as

4    presently constituted it would consist of the following

5    individuals.  No. 6, No. 10, No. 14, No. 14, No. 19,

6    No. 21, No. 22, No. 28, No. 30, No. 32, No. 33, No. 34,

7    No. 36 and No. 37.

8            Does the Defendant wish to exercise any peremptory

9    challenges there?

10           MR. FITZGERALD:  Just one moment.  We'd move to

11   strike No. 32, Your Honor.

12           THE COURT:  No. 32.

13           Does the Government wish to exercise any

14   peremptory challenges?

15           MS. THELWELL:  One moment, Your Honor.

16           Juror No. 33.

17           THE COURT:  No. 33.  Does the Defendant wish to

18   exercise any peremptory challenges?

19           MR. FITZGERALD:  They struck No. 43, Your Honor?

20           THE COURT:  33.

21           MR. FITZGERALD:  33, I'm sorry.  Thank you.  Your

22   Honor, we'd strike Juror No. 6.

23           THE COURT:  Does the Government wish to exercise

24   any peremptories challenges?

25           MS. THELWELL:  No, Your Honor.

1          THE COURT:  Okay.  If we were to seat the jury as

2     presently constituted, it would consist of the following

3     individuals.  Juror No. 10, No. 14, No. 19, No. 21,

4     No. 22, No. 28, No. 34, No. 36, No. 37, 39, 40, 43.  I

5     think I went too far.

6          Let me count then again.  Okay.  I'm sorry.  It

7     would go through No. 40.

8          So if we were to seat the jury as presently

9     constituted it would consist of the following individuals.

10    No. 10, No. 14, No. 19, No. 21, No. 22, No. 28, No. 30,

11    No. 34, No. 36, No. 37, No. 39, and No. 40 I believe is

12    the 12th one.

13         Does the Defendant accept the jury as presently

14    constituted, or does the Defendant wish to use another

15    peremptory challenge?

16         MR. FITZGERALD:  We would like to strike Juror No.

17    40, Your Honor.

18         THE COURT:  Then that would take us to No. 43,

19    Katherine Dee, would be the 12th person.  Does the

20    Government wish to exercise any peremptory challenges?

21         MS. THELWELL:  No, Your Honor.

22         THE COURT:  Okay.  Does the Defendant wish to

23    exercise any additional peremptory challenges?  We're up

24    through Katherine Dee.

25         MR. FITZGERALD:  We've move to strike Juror No.

1    43, Your Honor.

2          THE COURT:  No. 43.  Okay.  That takes us to No.

3    44, Karen Budd.  Does the Government wish to exercise any

4    peremptory challenges?

5          MS. THELWELL:  I apologize, Your Honor.  What

6    would be the last juror seated at this point?

7          THE COURT:  Karen Budd, No. 44.

8          MS. THELWELL:  No objection, Your Honor.

9          THE COURT:  Does the Defendant wish to exercise

10   any additional peremptories?  The Defendant has exercised

11   six peremptories.

12         MR. FITZGERALD:  Your Honor, we'd move to strike

13   Juror No. 37.

14         THE COURT:  No. 37, Lisa Barrett.

15         Then that takes us to No. 45, Mark Zimmerman.

16   Does the Government wish to exercise any peremptories?

17         MS. THELWELL:  No, Your Honor.

18         THE COURT:  Does the Defendant wish to exercise

19   any additional peremptories?

20         MR. FITZGERALD:  Just one moment, Your Honor.

21   Your Honor, we'd move to strike -- Juror No. 14, Ms. Six.

22         THE COURT:  No. 14.  That takes us to No. 47, Paul

23   Rezac.  Does the Government wish to exercise any

24   peremptories?

25         MS. THELWELL:  No, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Does the Defendant wish to exercise
2    any additional peremptories?
3          MR. FITZGERALD:  One moment.
4          We'll accept, Your Honor.
5          THE COURT:  I'm sorry.  You'll accept?
6          MR. FITZGERALD:  Yes.
7          THE COURT:  All right.  Then let me announce the
8    individuals that would constitute the jury.
9          MR. FITZGERALD:  I'm sorry, Your Honor.  That was
10   14 or 12?
11         THE COURT:  That was 12.  That's not the
12   alternates yet.  That was 12.  So the jury would consist
13   of No. 10, Amy Elizabeth Sell.  No. 19, John Willyoung.
14   No. 21 is Nicole Howell.  No. 22, Keely Taylor.  No. 28,
15   Therese Bernich.  No 30. Ashley Caal.  No. 34, Robin
16   Stevens.  No. 36, Cheryl Berger.  No. 37, Lisa Barrett.
17   No. 39, Jennifer Parkinson.
18         MS. THELWELL:  Your Honor, the defense exercised a
19   peremptory on Ms. Barrett, Juror No. 37.
20         THE COURT:  Yes, they did.  I'm sorry, they did.
21   I have it on one sheet but not on this one.  You're right.
22   The Defendant did.  Thank you.
23         Okay.  Then now for the 12.  Let me announce what
24   my records reflect.  No. 10, Amy Sell.  No. 19, John
25   Willyoung.  No. 21, Nicole Howell.  No. 22, Keely Taylor,

1    No. 28, Therese Bernich.  No. 30, Ashley Caal.  No. 34,

2    Robin Stevens.  No. 36, Cheryl Berger.  No. 39, Jennifer

3    Parkinson.  No. 44, Karen Budd.  No. 45, Mark Zimmerman

4    and No. 47, Paul Rezac.

5          I have 12.  Does the Defendant accept the jury as

6    presently constituted?

7          MR. FITZGERALD:  Yes, Your Honor.

8          THE COURT:  Does the Government accept the jury as

9    presently constituted?

10         MS. THELWELL:  Yes, Your Honor.

11         THE COURT:  Okay.  We have our jury.

12         Now, with regard to alternates, the next two

13    individuals, 49, Thomas Christopher Rogers, and 50, Leah

14    James.

15         Does the Defendant wish to exercise any peremptory

16    as to the alternates?

17         MR. FITZGERALD:  No, Your Honor.

18         THE COURT:  Does the Government wish to exercise a

19    peremptory as to the alternates.

20         MS. THELWELL:  Yes, Your Honor.  Juror No. 49,

21    Mr. Rogers.  That would leave us with No. 50, Leah James

22    and No. 53, Jennifer Geigan.

23         Does the Defendant wish to exercise a peremptory

24    as to Leah James or Jennifer Geigan?

25         MR. FITZGERALD:  Yes, Your Honor.  We'd move to

1    strike No. 53 Jennifer Geigan.

2           THE COURT:  That takes us to No. 55, Justin

3    Caliva.  So the alternates would then be Leah James, No.

4    50, and -- No. 55, Justin Caliva.

5           Does the Government wish to exercise a peremptory

6    as to either one of them?

7           MS. THELWELL:  No, Your Honor.

8           THE COURT:  Does the Defendant wish to exercise a

9    peremptory as to either one of them?

10          MR. FITZGERALD:  I'd like to strike Juror No. 50,

11   Leah James, Your Honor.

12          THE COURT:  Let me see how many you've used now.

13   The alternates would then be Justin Caliva and Marbon

14   Martirez, No. 56.  Let me just see the count here.

15          Okay.  I think the Defendant has used ten

16   peremptories.

17          Does the Government wish to exercise a peremptory

18   as to the alternates.

19          MS. THELWELL:  We move to strike Juror No. 56.

20          THE COURT:  No. 56, okay.  And so the next one

21   would be Shelly Smith, No. 57.  And the Defendant has used

22   ten alternates -- I mean ten peremptories plus one which I

23   will allow an extra one for an alternate which they've

24   used.

25          Does the Government wish to exercise any

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   additional peremptories as to the alternates?

2           MS. THELWELL:  No, Your Honor.  Thank you.

3           THE COURT:  The alternates would then be No. 55,

4   Justin Caliva, and 57, Shelly Smith.

5           All right.  So that everyone is clear, I'm going

6   to go through them one final time.

7           Madam Clerk, we'll send a CSO down to bring them

8   up, please.  Let jury services know our jury will consist

9   of the following.  No. 10, Amy Sell.  No. 19, John

10  Willyoung.  No. 21, Nicole Howell.  No. 22, Keely Taylor.

11  No. 28, Therese Bernich.  No. 30, Ashley Caal.  No. 34,

12  Robin Stevens.  No. 36, Cheryl Berger.  No. 39, Jennifer

13  Parkinson.  No. 44, Karen Budd.  No. 45, Mark Zimmerman.

14  No. 47, Paul Rezac.

15          The alternates would then be No. 55, Justin

16  Caliva, and No. 57, Shelly Smith.  That is our jury.

17          Any questions or further objections with regard to

18  the jury?

19          MS. THELWELL:  No, Your Honor.

20          MR. FITZGERALD:  None from the defense, Your

21  Honor.

22          THE COURT:  Okay.  Then as soon as they get in

23  here, my intent is basically to have the clerk swear them

24  in.  I'm not even going to read all of the instructions

25  since it's already pretty late and they have some

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    concerns.  It's 5:42.  I will give them the preliminary

2    instructions tomorrow morning, and you will come in and

3    give your opening statements and we will begin with

4    testimony.

5         I will just make them aware of the fact that

6    they're not to have any discussions -- you know, they're

7    not to view the Internet or do any research, just basic

8    things, but I'm not going to read the entire preliminary

9    instructions tonight.  I'll do that tomorrow morning.

10   (Proceedings in the presence of the venire.)

11        THE COURT:  All right.  Ladies and Gentlemen,

12   thank you very much.  It's been a very long day for you, I

13   understand that, but the good news is that we have been

14   able to select a jury from your numbers, and we were so

15   close I didn't want to have individuals have to come back

16   tomorrow to conclude this process which is why we ran a

17   little later than we normally would today, but we have

18   selected the jury.

19        I'm going to identify the individuals who will

20   serve on the jury in just a few moments.  Others of you

21   will be excused, and then I'm going to keep those of you

22   who are on the jury for about five minutes longer.

23        The following individuals have been selected as

24   the jury in this case:  Juror No. 10, Amy Elizabeth Sells.

25   Juror No. 19, John Willyoung.  Juror No. 21, Nicole

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Howell.  Juror No. 22, Keely Marie Taylor.  Juror No. 28,

2    Therese Bernich.  Juror No. 30, Ashley Caal.  Juror No.

3    34, Robin Stevens.  Juror No. 36, Cheryl Berger.  Juror

4    No. 39, Jennifer Parkinson.  Juror No. 44, Karen Budd.

5    Juror No. 45, Mark David Zimmerman.  Juror No. 47, Paul

6    Christian Rezac.  Juror No. 55, Justin Michael Caliva.

7    Juror No. 57, Shelly Ann Smith.

8         The others of you, thank you very much for your

9    participation in this process.  You are excused.  If you

10   have anything else downstairs, you can go back by there,

11   otherwise you do not need to.  You are excused.

12        For the others of you, those of you that are out

13   in our gallery area, if you'd come forward, we're going to

14   seat everybody in the jury box.  The clerk is going to let

15   you know where you should sit.  I'm going to then have you

16   sworn in as our jury, and you will be excused for the day.

17        If you like, the Court Security Officer will show

18   you where the break rooms are, where you can store your

19   purses and cellphones, et cetera.  Madam Clerk.

20        COURTROOM DEPUTY CLERK:  The first chair all the

21   way over is Ms. Sell.  All the way.  Yes, ma'am.  Next is

22   Mr. Willyoung, top row, second seat.  Nicole Howell, top

23   row, third seat.  Nicole Howell.  And then Ms. Taylor next

24   to her.  Then Ms. Therese Bernich.  All the way.

25   Ms. Ashley Caal.  Ms. Robin Stevens.  Ms. Cheryl Berger.

1            THE COURT:  Second row, second seat.

2            COURTROOM DEPUTY CLERK:  Ms. Parkinson, Jennifer

3    Parkinson.  Ms. Karen Budd, Mr. Mark Zimmerman.  Okay.

4    First row, second seat there.  Mr. Paul Rezac, Mr. Justin

5    Caliva and Shelly Smith.

6            Please rise and raise your right hands.

7    (Jurors sworn to try the issues.)

8            COURTROOM DEPUTY CLERK:  Thank you.  Be seated.

9            THE COURT:  All right.  Thank you.  As you will

10   notice in the jury box, it's not large enough to keep a

11   seat between each of you, but we have the Plexiglas

12   dividers, and you will not be talking which is the

13   difference between what we just did, the jury selection

14   process and the trial.  During the trial you will be

15   listening, so we have the Plexiglas there.  You will have

16   your masks on.  You're also welcome to wear your shield if

17   you choose to do so.

18           But you have now been sworn in as our jury.  I'm

19   just going to give you some preliminary instructions, and

20   I'll give you more instructions tomorrow with regard to

21   the role and the conduct of the jury, but please know that

22   you are not to discuss anything that you have learned at

23   this point regarding this case.  And, of course, no

24   testimony has started yet, so you haven't really had a

25   chance to learn any evidence or view any evidence.

1          But you are not to read, watch or listen to any

2     accounts or discussions related to the case.  This may be

3     reported by newspapers, television, radio, the Internet or

4     any other news matter.  You're not to conduct any

5     research, any facts or issue or law related to the case,

6     whether by discussions with others, the library or the

7     Internet and, of course, as you know, we've talked about

8     the Internet and this age of electronic communication.

9          Again, I want to remind you that you must not

10     communicate with anyone about the case by any means

11     including telephone, text messages, emails, Internet chat,

12     chat rooms, blogs, social networking websites, you know,

13     Facebook, Twitter, Instragram, any of the others.

14          You're not to provide any information about the

15     case by any means whatsoever.  Obviously you may tell your

16     employers you have been selected to serve on a jury and

17     this is expected that you will be here all week performing

18     jury duty.

19          You're not to use, as I say, any other platforms

20     for research.  Your decision will be based only on the

21     evidence that you hear here in this courtroom.  And you're

22     not to talk about the case with anyone, including other

23     members of the jury at this point, because you have not

24     yet begun your deliberations.

25          With that having been said, then you are now

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   excused for the evening.  report back here tomorrow

2   morning by 9:30 a.m.  We'll start promptly at 9:30 a.m.

3   The Court Security Officers will show you where the break

4   rooms are.

5           We will provide lunch for you throughout the

6   course of the trial, and unless you have any questions of

7   me, then you are excused.  And get a good night's sleep,

8   drive safely and we'll see you tomorrow.  Yes.

9           PROSPECTIVE JUROR:  Saturday and Sunday we --

10   we're good; right?

11          THE COURT:  You're good.  We don't bring you down

12   here.  As much as I'd like to sometimes finish it up, we

13   do not require you.  That's going above and beyond your

14   duty, so absolutely no, you will not be required to be

15   here.  Okay.  Thank you, all.  You're excused.

16   (Jury out at 6:00 p.m.)

17          THE COURT:  All right.  Counsel, are there any

18   matters we need to take up at this time?

19          MS. THELWELL:  No, Your Honor.

20          MR. FITZGERALD:  No, Your Honor.

21          THE COURT:  Okay.  I'll see you all tomorrow

22   morning at 9:15.

23          MS. THELWELL:  Thank you.

24          THE COURT:  We are adjourned.

25   (Court adjourned at 6:00 p.m.)

1   UNITED STATES DISTRICT COURT  )

2                                 )

3   MIDDLE DISTRICT OF FLORIDA    )

4

5          I, SHARON A. MILLER, Official Court Reporter for

6   the United States District Court, Middle District of

7   Florida, do hereby certify that pursuant to Section 753,

8   Title 28, United States Code that the foregoing is a true

9   and correct transcript of the stenographic notes taken by

10   computer-aided transcription taken in the above-entitled

11   cause by the undersigned and that the transcript format is

12   in conformance with the regulations of the Judicial

13   conference of the United States.

14   /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION