1

2                    UNITED STATES OF AMERICA
              UNITED STATES DISTRICT COURT
3                  MIDDLE DISTRICT OF FLORIDA

4                        -   -   -

5          HONORABLE CHARLENE EDWARDS HONEYWELL
            UNITED STATES DISTRICT JUDGE PRESIDING

6

7   UNITED STATES OF AMERICA,           )
                                        )
8                    PLAINTIFF,         )
                                        )
9                    VS.                )8:19-cr-33-T-36CPT
                                        )
10  JACK R. DOVE, III,                  )
                                        )
11                                      )
                    DEFENDANT.          )
12  _____

13
                   **JURY TRIAL - DAY FOUR**
14          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                     MARCH 25, 2021
15                    TAMPA, FLORIDA

16

17

18

19

20

21  SHARON A. MILLER, CSR, RPR, CRR, FCRR
    IL CSR 084-2617
22  FEDERAL OFFICIAL COURT REPORTER
    801 N. FLORIDA AVENUE, SUITE 13A
23  TAMPA, FLORIDA 33602

24  Proceeding recorded by stenography,
    transcript produced by computer-aided transcription
25

    UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   APPEARANCES OF COUNSEL:

2   ON BEHALF OF PLAINTIFF:

3           UNITED STATES ATTORNEY'S OFFICE
            MS. LISA THELWELL
4           MS. ILYSSA SPERGEL
            400 N. Tampa Street
5           Tampa, FL  33602
            (813)274-6000
6           Lisa.Thelwell@usdoj.gov
            Ilyssa.Spergel@usdoj.gov
7

8   ON BEHALF OF DEFENDANT:

9           FAMRER & FITZGERALD, P.A.
            MR. TIMOTHY JAMES FITZGERALD
10          800 West DeLeon Street
            Tampa, Florida 33606
11          (813) 224-0269
            fflawpafedtjf @aolcom
12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

I  N  D  E  X

WITNESSES                                              PAGES

JUSTIN GAERTNER

Direct examination (resumed) by Ms. Thelwell          8
Cross-examination by Mr. Fitzgerald                  40
Redirect examination by Ms. Thelwel                  77


TAVECY GARCIA

Direct examination by Ms. Thelwell                   91
Cross-examination by Mr. Fitzgerald                  97
Redirect examination by Ms. Thelwell               114


MELISSA DOVE

Direct examination by Mr. Fitzgerald               142
Voir Dire by Mr. Fitzgerald                        169
Voir Dire by Ms. Thelwell                          176

INDEX (Continued)

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1                  E  X  H  I  B  I  T  S
 2    Government's Exhibits
 3    No. 36A                                        12
 4    No. 35                                         17
 5    No. 38                                         20
 6    No. 38A                                        21
 7    No. 39                                         22
 8    No. 29                                         30
 9
10    Defendant's Exhibits
11    Exhibit F                                      104
12    Exhibit A                                      150
13    Exhibit B                                      152
14
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   (Court in session at 9:18 a.m.)

2   (Proceedings held outside jurors' presence.)

3            THE COURT:  All right.  Good morning.

4            COURTROOM DEPUTY CLERK:  Good morning.

5            THE COURT:  You may all be seated.  We are here

6   for continuation of the trial in the case of United States

7   of America versus Jack Dove, case 8:19-cr-33.  All Counsel

8   are present as is the case agent and the Defendant.

9   Counsel, are we ready to proceed?

10           MS. THELWELL:  Yes, Your Honor.

11           MR. FITZGERALD:  Yes, Your Honor, but for the

12  record, Gus Dimitrelos is in the courtroom this morning,

13  our expert even though the rule has been invoked.

14           THE COURT:  Is there any objection?

15           MS. THELWELL:  No, Your Honor.  And actually my

16  colleague just reminded me she does have something that

17  she'd like to disclose to the Court.

18           MS. SPERGEL:  Your Honor, this morning when I

19  arrived, I was standing in the hallway and saying hello to

20  Agent Gaertner and one of the jurors, I believe it was

21  Mr. Zimmerman, he's in a light blue shirt today, he

22  approached me and said that he had a question, and so I

23  just informed him that I am not able to speak with him and

24  that if he had a question I would inform the Court of

25  that.  And then he said that he was sorry and that he did

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   not have a question for the Court, but I thought since he

2   approached me and spoke to me, that is something that I

3   did need to share with everyone.

4        THE COURT:  Okay.  All right.  I will inquire of

5   him if he has a question.  Thank you.

6        MS. SPERGEL:  Thank you, Your Honor.  And I

7   believe it was Mr. Zimmerman.  He's in the light blue

8   shirt today.  Then if it's not, then obviously we'll

9   figure that out.

10       THE COURT:  All right.  I will inquire of him

11  during our break this morning outside the presence of the

12  other jurors, just want to make sure.  Any issues with

13  that procedure?

14       MR. FITZGERALD:  No, Your Honor.  One other thing.

15  At some point I'd request the Court, because of the search

16  warrant in this case and to preserve the record, I had to

17  stand up on virtually every piece of evidence and lose my

18  objection.  Could the Court give a general instruction

19  that lawyers have to make objections to certain pieces of

20  evidence and it's entirely appropriate?

21       THE COURT:  Sure.  It's part of the instructions

22  at the close of the case.

23       MR. FITZGERALD:  Yes.

24       THE COURT:  Absolutely.

25       MR. FITZGERALD:  Virtually every piece of evidence

1    I'm objecting to and losing.

2            THE COURT:  Right.  And, you know, I know you

3    wanted some -- asked for a standing objection.  My only

4    concern is that unless you all identify for me

5    specifically, I don't know which exhibits that objection

6    goes to, which is why I think it's better to make it

7    contemporaneously and then there may be an additional

8    basis as there were yesterday for a couple of them, you

9    had an additional bases for objecting, so that's why I

10   thought the way you're doing is better, but I certainly

11   will make them aware of that.  We can include that as an

12   instruction at the end just to make sure that you all

13   remind me and then that we -- did we resolve whatever

14   issues there were regarding discovery when we closed

15   yesterday?

16           MS. THELWELL:  I did provide Mr. Fitzgerald with

17   the items that he requested.

18           THE COURT:  Had they previously been provided?

19           MS. THELWELL:  So as it relates to Dropbox, and I

20   do plan to clarify this with Agent Garcia when she

21   testifies later today.  She misspoke.  When she went back

22   and looked at her file, it appeared that this she had --

23   well, I don't want -- what happened, she served a

24   preservation letter on Dropbox but never actually sent a

25   subpoena, so a subpoena in this case to Dropbox and there

DIRECT EXAMINATION OF JUSTIN GAERTNER

1   was no search warrant to Dropbox.

2          THE COURT:  Okay.  All right.  Thank you.

3   Anything else?

4          MR. FITZGERALD:  Judge, just for the record, they

5   gave me last night a custody receipt of the seized

6   property in evidence.

7          THE COURT:  Okay.  What are those cords?  Is that

8   because the Elmo is on?  There's some cords on the

9   monitor.

10         Okay.  All right.  The jury may come in.

11  (Jury in at 9:22 a.m.)

12         THE COURT:  Members of the jury, good morning.

13         THE JURY:  Good morning.

14         THE COURT:  We are ready to resume with testimony

15  in this case.  SFA Gaertner, you may return to the witness

16  stand.

17         All right.  Ms. Thelwell, you may inquire.

18              **DIRECT EXAMINATION** (RESUMED)

19  BY MS. THELWELL:

20     Q    Good morning.

21     A    Good morning.

22     Q    Yesterday when we left off we had just finished

23  discussing the Sandboxie that you found on the Alienware

24  laptop?

25     A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    At any point did you have an opportunity to

2    analyze the Toshiba's external hard drive that was found

3    at the residence?

4    A    Yes.

5    Q    If you could locate Exhibit 36 in your binder.

6    What is Exhibit 36?

7    A    Exhibit 36 is three images that I took of the

8    Toshiba external hard drive.

9    Q    And this does -- how do you know that Exhibit 36

10   is the Toshiba hard drive that was seized from the

11   residence?

12   A    This Toshiba is the same serial number of the

13   external hard drive which I imaged it, serial number of 5,

14   Papa, Zero, November, Whiskey, Papa, Sierra, Whiskey.

15   Q    Does the photo of that Toshiba fairly and

16   accurately depict the way that it appeared on the day that

17   you -- it was seized from the residence?

18   A    Yes.

19   Q    If you could also locate up there with you some

20   physical items, you should see the physical Toshiba hard

21   drive.

22   A    Yes.

23   Q    All right.  And is the hard drive in your hand the

24   same Toshiba hard drive that was seized from the

25   residence?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    How do you know that?

3    A    It's the same serial number.

4    Q    I'm sorry?

5    A    It is the same serial number.

6    Q    And that's the same serial number that's depicted

7    in Government's Exhibit 36 throughout?

8    A    Yes.

9         MS. THELWELL:  At this time United States seeks to

10   admit Government 36 which is the Toshiba external hard

11   drive but the substitute image as well.

12        THE COURT:  Is there any objection?

13        MR. FITZGERALD:  We'd object, same basis as

14   Exhibit 31, Your Honor.

15        THE COURT:  Okay.  Then the Court will overrule

16   the Defendant's objection as to Exhibit 36.  Government's

17   Exhibit 36 is admitted.

18   (Government's Exhibit No. 36 was admitted.)

19   BY MS. THELWELL:

20   Q    Based on your review of the Toshiba external hard

21   drive, what did it appear to contain?

22   A    This external hard drive appeared to contain

23   multiple backups of computers.

24   Q    What is a computer backup?

25   A    Computer backup is similar to when you back up an

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    iPhone to your computer, back up to an Android, back up

2    with like a Samsung cellphone.  You're pretty much keeping

3    the integrity of that computer so that you don't lose any

4    data.

5        Q    Okay.  And you said it was multiple backups of a

6    computer.  Were you able to determine what information or

7    what computer it belonged to?

8        A    Yes.  Some backups were of the Alienware computer.

9        Q    And what user name was that associated with?

10       A    J. Dove.

11       Q    Do you recall the file path associated with those

12   backups?

13       A    Yes.

14       Q    What was it?

15       A    For the complete system backup underscore C or

16   Charlie, underscore 3, dot MP, the root folder of that

17   backup was images Jack Dove.

18       Q    What, if anything, did you find relating to the

19   Internet history associated or found on the Toshiba hard

20   drive?

21       A    There was Internet history such as Google

22   searches.

23       Q    If you could locate Government's Exhibit 36A.  Do

24   you recognize it?

25       A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    What is it?

2    A    This is a report that I created of a Toshiba

3    external hard drive pertaining to the Google search terms.

4    Q    And how do you know that Exhibit 36A contains the

5    information that was extracted from the Toshiba hard

6    drive?

7    A    My name is on the report.  I created this report

8    and it is the forensic image or copy of the Toshiba hard

9    disk drive .E01.

10   Q    Does the forensic report fairly and accurately

11   depict the information that was extracted from the Toshiba

12   hard drive?

13   A    Yes.

14   MS. THELWELL:  At this time the United States

15   seeks to admit Government's Exhibit 36A.

16   THE COURT:  Same objection?

17   MR. FITZGERALD:  As Exhibit 31, Your Honor.

18   THE COURT:  All right.  The Defendant's objection

19   as to Exhibit 36A is overruled.  Government's Exhibit 36A

20   is admitted.

21   (Government's Exhibit No. 36A was admitted.)

22   MS. THELWELL:  Permission to publish.

23   THE COURT:  You may.

24   BY MS. THELWELL:

25   Q    While it's coming up, can you tell generally what

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    stood out to you in your review of the Google searches?

2        A    The Google searches appeared to be searches

3    seeking this child exploitation material.

4        Q    If we could look at record number one.  Similar to

5    yesterday in the line that says, "search term," would that

6    be information that was specifically typed in by the user?

7        A    Yes.

8        Q    What was the search term entered here?

9        A    "Fingered daughter while she sleeps."

10       Q    If we could look at record number 36, what was the

11   search term for record number 36?

12       A    "Young daughters being fucked by daddy."

13       Q    Is there a data associated with this particular

14   search?

15       A    Yes.

16       Q    What is it?

17       A    April 10th, 2014.

18            MR. FITZGERALD:  Objection, Your Honor.

19   (Bench conference begins.)

20            THE COURT:  All right.  Can everyone hear me?

21   Testing.

22            MS. THELWELL:  Hello.  Can you hear me?

23            MR. FITZGERALD:  Barely.

24            THE COURT:  Mr. Fitzgerald, say something.

25            MR. FITZGERALD:  I can hear you, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    THE COURT:  Are you speaking?  I don't hear you.

2    MR. FITZGERALD:  Yes, I'm speaking.  I'm speaking.

3    THE COURT:  I'm not hearing Mr. Fitzgerald.

4    MS. THELWELL:  I can hear Mr. Fitzgerald.

5    MR. FITZGERALD:  You can't hear me, Your Honor?

6    THE COURT:  Okay.  Testing.

7    MS. THELWELL:  Yes, Your Honor.

8    THE COURT:  Are you all ready?  Mr. Fitzgerald.

9    MR. FITZGERALD:  Your Honor, to the extent the

10   witness is -- this appears to be child pornography, it was

11   outside the date of indictment and, therefore, we haven't

12   been noticed of 404(b) of other prior conduct that would

13   be introduced.  This is I think the indictment is 2016 on.

14   The current image is 2014 and he's apparently going to

15   identify it as what appears to be child pornography.

16   THE COURT:  Response.

17   MS. THELWELL:  Your Honor, the witness has

18   testified that the search terms are consistent with or are

19   indicative of child pornography as it relates to the date

20   range.  The Government's position that this information

21   that was found on the Defendant's laptop or, excuse me,

22   his external hard drive is inextricably intertwined with

23   the contents of the case.

24   When we look at his Internet history, it shows not

25   only on this device but other devices that he was seeking

DIRECT EXAMINATION OF JUSTIN GAERTNER

1   out child pornography knowingly which we are required to

2   prove as far as his receipt from the child pornography

3   from the Welcome to Video website, so him, you know,

4   continually seeking out child pornography on multiple

5   venues goes to establish the knowledge which is knowledge

6   and intent which is at issue.

7            THE COURT:  Okay.  So your argument is two-fold.

8   It sounds like your argument, number one, that it's

9   inextricably intertwined, although it was at least three

10  years before the date of the Count One which was

11  March 7th, 2017.  And then your second argument is with

12  regard to the 404(b) that offered to show intent or

13  knowledge, but was any notice of 404(b) given in this

14  case?

15           MS. THELWELL:  No, Your Honor.

16           THE COURT:  Response, Mr. Fitzgerald.

17           MR. FITZGERALD:  Nothing further, Your Honor.

18           THE COURT:  Okay.  I'm going to sustain the

19  objection.

20           MS. THELWELL:  Your Honor, I do have a question

21  about this exhibit.  The exhibit has already been

22  admitted, so not only the date ranges associated with

23  every record.  Before it goes in the record, should I just

24  redact the date ranges?  How should I handle this or

25  redact the records of that date?

DIRECT EXAMINATION OF JUSTIN GAERTNER

1          THE COURT:  Let's talk about that during one of

2     your breaks.

3          MS. THELWELL:  Okay.

4     (Bench conference concluded.)

5     BY MS. THELWELL:

6          Q    All right.  You also mentioned yesterday that one

7     of the devices that you reviewed was a PNY thumb drive;

8     correct?

9          A    Yes.

10         Q    Do you see up there in front of you, the physical

11    PNY thumb drive?

12         A    Yes.

13         Q    All right.  And how do you know -- well, before we

14    move on, can you also locate in your exhibit book Exhibit

15    35?  What is Exhibit 35?

16         A    These are two images I took of this PNY thumb

17    drive connected to a write blocker which also displays a

18    serial number.

19         Q    And how do you know that Government's Exhibit 35

20    is a picture of the PNY thumb drive that was seized from

21    the residence?

22         A    Because this is my handwriting on the bag.  I

23    sealed this bag.  I imaged this thumb drive and I took

24    pictures of it.

25         Q    And so is the thumb drive that's depicted in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Government's Exhibit 35 the same thumb drive that's in the

2    bag that's in front of you that you just held?

3        A    Yes.

4        Q    And do the photos fairly and accurately depict the

5    way that the thumb drive appeared at the time that you

6    handled it?

7        A    Yes.

8            MS. THELWELL:  At this time, United States seeks

9    to admit Government's Exhibit 35.

10           THE COURT:  Is there any objection?

11           MR. FITZGERALD:  Same objection, Your Honor.

12           THE COURT:  All right.  The Defendant's objection

13   as to Exhibit 35 is overruled.  Government Exhibit 35 is

14   admitted.

15   (Government's Exhibit No. 35 was admitted.)

16   BY MS. THELWELL:

17       Q    What, if anything, did you find relevant to the

18   investigation on the PNY thumb drive?

19       A    I discovered approximately 10 deleted videos which

20   did not play but were indicative of child exploitation

21   material.

22       Q    What about them did you find indicative of child

23   pornographic material?

24       A    The file names.

25       Q    What specifically?  Are you able to provide a file

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    name?

2       A    Yes.   "11YO pussy makes dad cum fast.   Best is

3    11/17 year old lesbian suck and fuck.   Cream pie cumming

4    inside 7YO pussy.   Raped little girl pussy anal.   PTHC

5    girl blow job anal ass" --

6       Q    Slow down.

7       A    Sorry.

8       Q    And you can stop at that last -- if you could read

9    the last one and stop there.

10      A    Yes.   "PTHC girl blow job anal ass finger cum in

11   mouth."

12      Q    And yesterday you testified that you knew what

13   PTHC meant?

14      A    Yes.

15      Q    What is PTHC?

16      A    Preteen hard core.

17      Q    You also mentioned yesterday that at some point

18   during the search warrant the MISC thumb drive was located

19   in the house?

20      A    Yes.

21      Q    Which thumb drive was the MISC thumb drive?

22      A    The SanDisk.

23      Q    And did you have an opportunity to conduct a full

24   analysis of the SanDisk thumb drive?

25      A    Yes.

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    If you can locate Government's Exhibit 37.  I'm

2    sorry.  38.  Once you locate Exhibit 38, if you could also

3    locate the physical SanDisk thumb drive.

4         All right.  What is Government's Exhibit 38?

5    A    Exhibit 38 is two pictures that I took off the

6    SanDisk thumb drive.

7    Q    And are they of the same SanDisk thumb drive that

8    is in the back right next to it?

9    A    Yes.

10   Q    How do you know that Exhibit 38 is a picture of

11   the same exact thumb drive?

12   A    All the markings match up from the pictures to the

13   actual SanDisk thumb drive.  I also took these pictures

14   and it's my handwriting on the bag and I sealed the bag.

15   Q    And is this the SanDisk thumb drive that was

16   seized from the residence?

17   A    Yes.

18   Q    And do the photos fairly and accurately depict the

19   way that the thumb drive appeared on the day that it was

20   seized?

21   A    Yes.

22        MS. THELWELL:  At this time, the United States

23   seeks to admit Government's Exhibit 38.

24        MR. FITZGERALD:  Same objection as to Exhibit 31,

25   Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1            THE COURT:  All right.  Defendant's objection as

2    to Exhibit 38 is overruled.  The Government's Exhibit 38

3    is admitted.

4    (Government's Exhibit No. 38 was admitted.)

5    BY MS. THELWELL:

6        Q    After you conducted your analysis on the SanDisk

7    thumb drive, what did you observe?

8        A    I discovered approximately 39 pornographic videos

9    including one child erotica video.

10       Q    Including one what?

11       A    Child erotica video.

12       Q    What does that mean?

13       A    Child erotica is not lewd and lascivious.  It

14   could still mean that the child is nude in the video, just

15   not in a lewd and lascivious manner.

16       Q    If you could locate in front of you Government's

17   Exhibit 38A.  Have you located 38A?

18       A    Yes.

19       Q    And what is 38A?

20       A    This is a report I generated.

21       Q    What is it a report of?

22       A    It's a report of all the child pornographic videos

23   that were discovered on the SanDisk thumb drive.

24       Q    And how do you know that this particular report is

25   a report of the videos found on the SanDisk thumb drive?

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    If you look under the column file path, you will

2    see that it says SanDisk underscore TD, for thumb drive,

3    underscore 32 gigabytes .EO1 which is the forensic image

4    or copy that I took of the SanDisk thumb drive.

5    Q    And so does Government 38A fairly and accurately

6    depict the extraction of the videos that were found on

7    Government 38 which is the SanDisk thumb drive?

8    A    Yes.

9         MS. THELWELL:  At this time the United States

10   seeks to admit 38A.

11        THE COURT:  Same objection?

12        MR. FITZGERALD:  Same objection as Exhibit 31,

13   Your Honor.

14        THE COURT:  All right.  Defendant's objection as

15   to Exhibit 38A is overruled.  Government's Exhibit 38A is

16   admitted.

17   (Government's Exhibit No. 38A was admitted.)

18        MS. THELWELL:  May I approach the witness.

19        THE COURT:  You may.

20   BY MS. THELWELL:

21   Q    I just handed you Government's Exhibit 39.  Do you

22   recognize that?

23   A    Yes.

24   Q    What is it?

25   A    It is a thumb drive that I created of child

DIRECT EXAMINATION OF JUSTIN GAERTNER

1   pornography which has my signature and date that I created

2   the thumb drive.

3       Q    And where did the videos that are contained on

4   Government 39A come from?

5       A    It came from the SanDisk thumb drive Exhibit 38.

6       Q    And prior to today, had you had an opportunity to

7   review the content of the -- of Government's Exhibit 39?

8       A    Yes.

9       Q    And do they fairly and accurately depict the

10  videos that were extracted from Government's Exhibit 38?

11      A    Yes.

12          MS. THELWELL:  At this time, United States seeks

13  to admit Government's Exhibit 39.

14          THE COURT:  Same objection?

15          MR. FITZGERALD:  Same objection.

16          THE COURT:  Defendant's objection as to Exhibit 39

17  is overruled.  Government's Exhibit 39 is admitted.

18  (Government's Exhibit No. 39 was admitted.)

19  BY MS. THELWELL:

20      Q    Of the 39 or so -- of the 39 videos that you

21  observed, are any of them classified as sadomasochistic or

22  violent?

23      A    Yes.

24      Q    What does sadomasochistic mean or involve, I

25  should say?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    It could involve the bondage, restraint by

2    multiple devices of a prepubescent underage male or

3    female.  It could also mean the defecation of a

4    prepubescent or underage male or female including the

5    sexual penetration of a minor.

6    Q    What would be considered violent?

7    A    Violent would be restraining the underage child

8    while performing sexual acts on them.

9    Q    Does it also -- is it also considered violent when

10   the child was under a particular age?

11   A    Yes.

12   Q    And what age would that be?

13   A    When the child is considered a baby or a toddler.

14   Q    Did any of the 39 videos that you reviewed that

15   were found on Government's Exhibit 38 appear to be

16   sadomasochistic?

17   A    Yes.

18   Q    Did any of the 39 videos appear to be violent?

19   A    Yes.

20   Q    If you could locate in front of you Government's

21   Exhibit 39A.  The printout, it's not in the binder, it's

22   behind the binder.  Do you recognize Government 39A?

23   A    Yes.

24   Q    And is Government 39A contained on the thumb drive

25   that's now been admitted as Government's Exhibit 39?

DIRECT EXAMINATION OF JUSTIN GAERTNER

1      A    Yes.

2      Q    So in reviewing this report, what is -- what is it

3   a report of?

4      A    This is a report that I generated of the SanDisk

5   thumb drive which contains approximately 39 child

6   pornographic videos.

7           MS. THELWELL:  If I could have a moment, Your

8   Honor.

9           THE COURT:  Yes.

10          MS. THELWELL:  Your Honor, could we have a

11  sidebar?

12          THE COURT:  Yes.

13  (Bench conference begins.)

14          MS. THELWELL:  Your Honor --

15          THE COURT:  Okay.

16          MS. THELWELL:  Okay.  Sorry about that, Your

17  Honor.  So Government's Exhibit 39 which is the thumb

18  drive contains Government's Exhibit 39A, 39B, 39B-1,

19  39B-2, 39B-3, 39B-4, 39C and 39C-1.  I'm wondering for the

20  purpose of the record, do I need to go through and

21  specifically have him identify each of those, even though

22  they're already contained on Government 39?

23          THE COURT:  I think 39 is admitted.  I don't know

24  why there would be a need to do that unless Mr. Fitzgerald

25  has a specific request.  He's objecting to 39 in its

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    entirety, is that correct, Mr. Fitzgerald?

2          MR. FITZGERALD:  That's correct.  And so if

3    they're contained in 39, I'm objecting to them.  I think

4    I've already objected to them.  She just is individually

5    publishing them; is that correct?

6          MS. THELWELL:  Correct.  I just wanted to make

7    sure because I had not specifically identified 39A when we

8    were going through the identification process of the thumb

9    drive.  I wanted the Court to be aware that it's already

10   in evidence.

11         THE COURT:  Okay.  No.  If it's already in

12   evidence, you have broken them out into subsections.  Are

13   the subsections based upon the specific video?

14         MS. THELWELL:  So 39A is the extraction report of

15   all 39 CP videos that he just testified were found upon

16   the SanDisk.  39B is a report of the videos that matched

17   based on the hash values to the Welcome to Video website,

18   and 39B-1 is one of those videos which would be the basis

19   of Count One, the receipt, because it's a video that came

20   from the website.  The same as to B-2 and B-3.  Those also

21   would be videos that came from the website.  As it -- I'm

22   sorry, so it's B-4.  As it relates to 39C that's an

23   extraction report of the CP videos on the thumb drive with

24   hash values that were different from the Welcome to Video

25   website so they serve as the basis of Count Two for

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    possession, and 39C-1 is a specific video for that.

2         THE COURT:  Okay.  Mr. Fitzgerald?

3         MR. FITZGERALD:  Your Honor, just for the record I

4    would object to all the exhibits she just read off.  Same

5    basis as Exhibit 31.

6         THE COURT:  Okay.  To the extent that the

7    objection is based upon the denial of the motion to

8    suppress, the objection is overruled, and the Court will

9    admit the Government's exhibits.  My understanding is that

10   39 is already in evidence, and you have broken them out

11   into more discrete videos, and so you may proceed in that

12   fashion.

13        MS. THELWELL:  Yes, Your Honor.

14  (Bench conference concluded.)

15        MS. THELWELL:  If we could publish Government 39A.

16        THE COURT:  Okay.  Why don't you restate your

17   question.  I shut the system back because we were getting

18   so much feedback.

19        MS. THELWELL:  Can we publish Government's Exhibit

20   39A?

21  BY MS. THELWELL:

22        Q    All right.  What is Government 39A?

23        A    This exhibit is a report that I generated of the

24   SanDisk thumb drive and it displays approximately 39 child

25   pornographic videos.

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    If we could scroll down to page four.  All right.

2    And so within here -- if we could stop.  Thank you.  Focus

3    on record number one.

4          So within this extraction report, are these the

5    videos that were found on the SanDisk thumb drive?

6    A    Yes.

7    Q    And what is the file name associated with record

8    number one?

9    A    "2-5-8-9-0-6-9, Delta, 9, Delta, 3, 4, Alpha, 6,

10   Bravo, Alpha, 8-5-8-4-8, Charlie, 2-2-6, Delta, 1-5,

11   Bravo, Foxtrot, 6-9, dash, bath, falko, girl, lesbian,

12   man, oral, petting, PTHC, sound wom..."

13   Q    Does it carry over to the next line?

14   A    Yes, dot a-v-i.

15   Q    When was this file created according to the

16   report?

17   A    March 7th, 2017.

18   Q    What does that creation date indicate to you based

19   on your training and experience as it relates to computer

20   forensics?

21   A    This would have been the date that it was created

22   on the volume or the SanDisk thumb drive itself.

23   Q    If we could scroll down just a little bit.  Stop

24   right there.  So here in the section that says this MBI

25   hash and SHA-1 hash, what information is provided there?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    These are the hash values.  As I previously

2    explained, it's like DNA of the video, two different hash

3    values confirming that this is a fair and accurate value

4    of the video.

5    Q    All right.  And below where it says "source," what

6    information is contained there?

7    A    The source would be where this video came from

8    such as the file path displaced, that it came from the

9    SanDisk thumb drive, 34 gigabyte .EO1, which is the

10   forensic image or copy that I created.

11        Next to that it says, "entire disk Microsoft

12   factory 2" which is what the file system was on the thumb

13   drive, and then it continues on to the volume name which

14   was MISC.  Next would be the folder "already watched" and

15   then following with the file name.

16   Q    And so the "MISC already watched," would that be

17   consistent with the information that you saw on scene at

18   the residence during the preview of the Alienware laptop?

19   A    Yes.

20   Q    If we could take this off the screen.  Is that

21   what indicated to you while you were on scene that there

22   was a -- possibly a thumb drive in the house that

23   contained child pornography?

24   A    Yes.

25   Q    We just talked about the hash values that were

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    associated with all of the files.  Did all of the files

2    have a hash value?

3        A    Yes.

4        Q    What, if anything, did you do with those hash

5    values in the course of your investigation?

6        A    So I guess it's better to explain where hash value

7    comes from.  So not every file just initially just comes

8    with a hash value.  It's a forensic process that we take

9    to ensure the continuity and integrity of that file.

10            Through the forensic analysis with the

11   applications that I use, all the files on the computer are

12   hashed.  With that I run those hash values through a

13   database in an application called Griffeye which has known

14   child pornographic series, and then I compare those hash

15   values to known child pornography.

16       Q    At any point, did you compare those hash values

17   with the hash values that the child pornographic images

18   that had been found on the website server?

19       A    Yes.

20       Q    And could you explain how that process happened?

21       A    You're speaking of the Welcome to Video server;

22   correct?

23       Q    Correct.

24       A    So the hash values that I have from -- as you saw

25   all the videos from 39A, if I ran all of those hash

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    values, the MD5 and SHA-1 hash values to the spread sheet

2    that I received from the Welcome to Video server, and of

3    those, the videos matched were an exact match to the same

4    videos on the server.

5        Q    All right.  And I want to show you, or if you can

6    locate in your book Government's Exhibit 29.  Have you had

7    an opportunity to review Government's Exhibit 29?

8        A    Yes.

9        Q    What is it?

10       A    This is a spread sheet that I received from the

11   Welcome to Video server.

12       Q    And does it fairly and accurately depict the

13   information or the spread sheet that you received at the

14   time that you received it regarding the Welcome to Video

15   website?

16       A    Yes.

17            MS. THELWELL:  At this time United States seeks to

18   admit Government's Exhibit 29.

19            MR. FITZGERALD:  Same objection as Exhibit 31,

20   Your Honor.

21            THE COURT:  All right.  Defendant's objection as

22   to Exhibit 29 is overruled.  Government's Exhibit 29 is

23   admitted.

24   (Government's Exhibit No. 29 was admitted.)

25            MS. THELWELL:  Thank you, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1  BY MS. THELWELL:

2      Q    Before we publish Government's Exhibit 29, you

3  indicated that you took the hash values from the SanDisk

4  thumb drive and you compared it to the one on Government's

5  Exhibit 29.  And what happened when you compared them?

6      A    It displayed that there were exact matches, not

7  only the hash values but as well as the file names.

8      Q    How many of the 39 videos were an exact match?

9      A    I think approximately 25, 27.

10     Q    Is there something that would refresh your

11  recollection?

12     A    Could look at the hash values.

13     Q    Is it contained in your report?  Actually, let me

14  ask you this.  If you locate Government's Exhibit 39B,

15  what is Government's Exhibit 39B?

16     A    39B are the matches that I confirmed with the

17  Welcome to Video server.

18     Q    So 39B, is it an extraction report that contains

19  all of the matches from the SanDisk thumb drive to the

20  Welcome to Video website?

21     A    Yes.

22     Q    And is it a report that you generated?

23     A    Yes.

24     Q    All right.  So in reviewing 39B, if you're able to

25  count how many of those were exact matches to the website?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    33.

2    Q    These were all matched based on what?

3    A    The hash values, the MD5 and SHA-1 hash values.

4    Q    When the hash values match, what does that mean to

5    you as a forensic analyst?

6    A    That, I mean, when the hash values match, it means

7    that it's an exact copy of a specific file.  In this case,

8    if I compared one video to another, it would be mean that

9    it's the exact same video.

10   Q    If I could, we are going to publish this, a

11   snippet of one of the videos that you found on the SanDisk

12   thumb drive.  It is a video named -- excuse me.  It's

13   Exhibit 39B-1.  It's a video file named "10YO fuck and cum

14   .MP4." So it should -- yes, the 39B-1.1 is the snippet.

15       What was -- did you have an opportunity to review

16   that file in the process of your investigation?

17   A    Yes.

18   Q    And can you generally describe what was contained

19   in that video?

20   A    In the video "10YO fuck and cum MP4" was a video

21   of an underage female being sexually penetrated by an

22   erect adult male penis.

23   Q    If we could publish 39B-2, the snippet, it's a

24   video file named "pedo mom and 6Y .MP4."  Had you had an

25   opportunity to review this particular video?

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    Can you generally describe the contents of that

3    video?

4    A    "Pedo mom and 6Y MP4" is a video file of an adult

5    female performing oral and penetration of foreign objects

6    on a prepubescent female.

7    Q    If we could look at 39B-3, the snippet.  Had you

8    had an opportunity to watch this in its entirety?

9    A    Yes.

10   Q    And is the video file "PTHC 2YO, 5YO toddler

11   fucking compilation"?

12   A    Yes.

13   Q    Could you generally describe the contents of that

14   video?

15   A    It's approximately a 46-minute video of infants

16   and toddlers being sexually assaulted and penetrated by

17   adult males including what you saw on the video was an

18   adult forcing a toddler to give oral sex on his erect

19   penis.

20        There's also penetration of that exact same

21   toddler being penetrated by the erect male penis.

22   Q    Based on our discussion earlier about

23   sadomasochistic and violent, does this video 39B-3 meet

24   that definition?

25   A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1      Q     Regarding the video -- or actually let's go ahead

2     and display Exhibit 29.  It's an Excel spread sheet.  It's

3     on the screen for you as well.

4           Is this the list that you said that you had

5     received from the website server?

6      A     Yes.

7      Q     Describe what we're looking at here.

8      A     What you can see is a file name starting from the

9     left, the user name which would have possibly uploaded the

10    video, video IDs and I can't confirm what exact the video

11    ID would be because I didn't create the spread sheet that

12    says whether it's an uploaded video.  And then it displays

13    the file name, and if you continue moving over, it will

14    also display the size, the play time and the MD5 and SHA-1

15    hash values.

16     Q     So looking at column number M.  Scroll over to

17    column M.  Is that the hash value that you would have used

18    to compare it to the hash values of the videos found on

19    Government's Exhibit 39, or, excuse me, 38?

20     A     Can you repeat that question?

21     Q     In Column M where it says, "video MD5," is that

22    the hash value that you would have used to compare it to

23    the hash values for the videos found on the SanDisk thumb

24    drive?

25     A     Yes.

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    All right.  And if we look at the tab at the --

2    below that says MD5 on the other sheet, what information

3    is presented here?

4    A    This is starting from the left-hand column.  It

5    provides the MD5 hash values as well as the user name, how

6    the video got there, which is uploaded videos and a file

7    name.

8    Q    All right.  If we could see Government's Exhibit

9    39B, and you said earlier that 39B is an extraction report

10   that you created of the videos that were found on the

11   SanDisk thumb drive that matched hash values to the videos

12   on the website; is that correct?

13   A    Yes.

14   Q    Starting at Page 4, if we could look at record

15   number four.  All right.  So here what is the created

16   date?

17   A    March 7th, 2017.

18   Q    And what is the file name for this?

19   A    "PTHC Pedoland, Frfam Series-dad-and-mom fuck 7YO

20   girl, very hot, .avi."

21   Q    All right.  We can take this off the screen.  In

22   reviewing 39B which you have a physical copy in front of

23   you, so if you need to take a look at it, please do.

24        But in reviewing the videos that were exact

25   matches, what is the date and time associated with these

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    videos, the created date and time?  Let me -- strike that

2    question.  I will just rephrase it.  What is the created

3    date associated with those videos?

4              MR. FITZGERALD:  Object, Your Honor.  Could we

5    clarify whether the date the video was created or the file

6    was created?

7              THE COURT:  Rephrase the question, Ms. Thelwell.

8    BY MS. THELWELL:

9         Q    In your extraction report, there's a created time.

10   What is the created time as it relates to those videos?

11        A    The created time would have been the time that

12   would have been put on to the SanDisk thumb drive.

13   Created time is a volume time, and it's March 7th, 2017,

14   and that time is consistent throughout the 33 videos.

15        Q    So you indicated that you found approximately 39

16   videos on the SanDisk, one of which was I think you called

17   it child erotica; is that correct?

18        A    Yes.

19        Q    Of those 39, 33 were exact matches of child

20   pornographic videos from the website.  How many were

21   non-matches from the website?

22        A    That would have been six videos.

23        Q    All right.  Well, six, plus the one child erotica?

24        A    Yes.

25        Q    So a total of seven videos; is that correct?

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    And did you generate a report to reflect the

3    videos that were non-matches to the website?

4    A    Yes.

5    Q    And if you look at Exhibit 39C in front of you, is

6    that a report of the non-matches?  We can pull up 39C as

7    well.  Go to page four.

8    A    Yes.

9    Q    Then looking at record number one, what is the

10   title of record number one?

11   A    "Parking the car_X264.MP4," which is a video file.

12   Q    What is the created time or, excuse me, the date

13   associated with this?

14   A    March 7th, 2017.

15   Q    All right.  And without us moving the screen, can

16   you read the file name for record number two?

17   A    Yes.  "PTHC-Gracel Series-Little Rona-8YO

18   girl-preteen tourist attraction-Bj Hj, Assfuck and Cum-DVD

19   quality 04, Mike, 1, 7, Sierra, (HQ version) .avi," which

20   is the video file.

21   Q    And taking a look at the report that you have in

22   front of you, if you could flip through the pages for 39C

23   and tell us what is the created date associated with each

24   of those videos?

25   A    The created date is March 7th, 2017.

DIRECT EXAMINATION OF JUSTIN GAERTNER

1      Q    And what is the last access date associated with

2    those videos?

3      A    November 18th, 2018.

4           MS. THELWELL:  If I could have one moment, Your

5    Honor.

6    (Brief pause.)

7    BY MS. THELWELL:

8      Q    If we could publish Exhibit 39C-1, this is a

9    snippet of one of the videos that were of a non-match.

10   And what's the file name?  If we could just close out of

11   this real quick.

12          And what's the file name associated with this

13   particular video?

14     A    "123040_notus52911.avi," which is a video file.

15     Q    All right.  And this video was found on the

16   SanDisk thumb drive; is that correct?

17     A    Yes.

18          MS. THELWELL:  All right.  No further questions at

19   this time, Your Honor.

20          THE COURT:  All right.  Thank you.

21          Mr. Fitzgerald, cross-examination.

22          MR. FITZGERALD:  Could we go sidebar for one

23   second, Your Honor?

24   (Bench conference begins.)

25          MR. FITZGERALD:  Your Honor, based on my earlier

DIRECT EXAMINATION OF JUSTIN GAERTNER

1    objection to 36A, I would like to move to exclude it from

2    evidence because I didn't know he was going to indicate

3    that this was, and so I'm trying --

4         THE COURT:  Pull your mic. down closer to your

5    mouth.

6         MR. FITZGERALD:  I'm just trying to get an idea

7    whether this will remain in evidence or not before I begin

8    questioning.

9         THE COURT:  Okay.  36A, that's the one that had

10   the date for 2014?

11        MR. FITZGERALD:  That's correct.

12        THE COURT:  Response.

13        MS. THELWELL:  Your Honor, I'd like to review

14   every record contained within that exhibit to determine

15   which ones should be excluded based on the Court's ruling.

16   I think any of the ones that have a date of 2014 or a date

17   outside of our indictment range could be redacted, but

18   there are some that do not have date links, and I don't

19   think it's proper to remove them based on the Defendant's

20   objection.

21        THE COURT:  Okay.  Then, Mr. Fitzgerald, why don't

22   you stay away from that exhibit.  Obviously I'll give you

23   an opportunity to review that after Ms. Thelwell

24   questioned the witness about it, after Ms. Thelwell has

25   concluded her review of it, and which she will be directed

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    to do during our morning break.

2           MR. FITZGERALD:  That's fine, Your Honor.

3           THE COURT:  Thank you.

4    (Bench conference concluded.)

5                    **CROSS-EXAMINATION**

6    BY MR. FITZGERALD:

7        Q    Good morning, Special Agent Gaertner; right?

8        A    Yes.  Good morning.

9        Q    So on the search warrant, your participation was

10   to do the forensic examination of devices seized at the

11   residence?

12       A    Correct.

13       Q    That was on November 30th of 2018?

14       A    Correct.

15       Q    What were your preliminary instructions to search

16   for when you were searching devices?

17       A    My instructions?

18       Q    Yes.  What was the basis of your understanding of

19   what you were looking for in searching these devices that

20   were seized?

21       A    I was instructed by the case agent to conduct

22   previews on scene of the electronic devices looking for

23   child exploitation material.

24           MS. THELWELL:  Your Honor, I'm having difficulty

25   hearing.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1          THE COURT:  Okay.  Mr. Fitzgerald, speak into the
2     microphone --
3          MS. THELWELL:  The witness --
4          THE COURT:  -- and CFA Gaertner, speak into the
5     microphone.
6          MS. THELWELL:  You're fine.  It's the witness was
7     having difficulty.
8   BY MR. FITZGERALD:
9     Q    Anything else other than child exploitative
10    images?
11    A    No.
12    Q    How many devices did you forensically examine at
13    721 Powder Horn Row on November 30th, 2018?
14    A    I previewed an HP desktop computer, an Alienware
15    laptop computer, a Toshiba computer, a generic thumb
16    drive, a DataTraveler thumb drive, a SanDisk SD card, an
17    additional SanDisk SD card, a SD thumb drive, an HC micro
18    SD card, an HP desktop, Infiniti thumb drive, and that's
19    it.
20    Q    Were there other forensic analysts at the scene
21    examining other digital devices?
22    A    Yes.
23    Q    Did you have occasion to examine an iPhone?
24    A    No.
25    Q    When you examined the items you examined, if you

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   did not find any child exploitative images or materials,

2   what did you do with the item that you had examined?

3       A    I would notify the case agent and the seized

4   property custodian and they would determine whether that

5   device was going to be seized or not.

6       Q    And was that your decision or the case agent's

7   decision of what would be seized?

8       A    The case agent's decision.

9       Q    Do you know now how many items were examined by

10  your search team on November 30th, 2018 at 721 Powder Horn

11  Row?

12      A    All together?

13      Q    Yes.

14      A    No.

15      Q    You indicated that you examined what's been

16  identified as Government's Exhibit 38, a SanDisk --

17      A    Yes.

18      Q    -- thumb drive?

19      A    Yes.

20      Q    And were you were present when that was located?

21      A    Yes.

22      Q    And that was located in the master bedroom?

23      A    Yes.

24           MR. FITZGERALD:  May I use the Elmo?

25

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   BY MR. FITZGERALD:

2       Q    I believe you said that's from that you saw this

3   located?

4       A    Yes.

5       Q    And you identified up here, was it in the back

6   corner, the front corner of that shelf?  Do you recall or

7   were you able to tell?

8       A    I don't recall.

9       Q    When the search was conducted, was that black bag

10   there?  When you saw the search being conducted?

11       A    I'm a little short, so I can't see that high, so

12   I'm not sure.

13       Q    Okay.  So when there's a ledge up there and you're

14   not able to tell us whether this device was found at the

15   front of the ledge, the back of the ledge, whether it was

16   behind a bag or behind a box or anything else; correct?

17       A    No.  I'm in a wheelchair.  I can't see that high.

18       Q    So that's why you're not able to tell us what was

19   in front of it or behind it and where exactly it was

20   located on that shelf?

21       A    Correct.

22       Q    Do you know if that Exhibit 38 was processed for

23   fingerprints?

24       A    No.

25       Q    And I believe you testified earlier the last time

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   that thumb drive was accessed was November 18th, 2018;
2   correct?
3        A    Yes.
4        Q    It was accessed about 12 days before the search
5   warrant?
6        A    Yes.
7        Q    You previously identified this photograph as well
8   from Exhibit 31, search warrant photos and you indicated
9   that is your arm?
10       A    Yes.
11       Q    And this was -- what was this, an HP --
12       A    I believe so.
13       Q    -- tower computer?
14       A    What computer?
15       Q    A tower?
16       A    Yes.
17       Q    I'm sorry.
18       A    Yes.
19       Q    I couldn't hear you, I'm sorry.
20       A    Yes.
21       Q    And was this in an office location?  Is that
22   apparently a scanner there?
23       A    I believe that's the right side of the master bed.
24       Q    That's in the bedroom itself?
25       A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1      Q     And did you find any child exploitative materials
2   on that computer on November 30th, 2018?
3      A     No.
4      Q     Did you seize that computer on November 30th,
5   2018?
6      A     Yes.
7      Q     So items were seized or forensic items, digital
8   items were seized that didn't necessarily return a finding
9   of child exploitative material at the time of your initial
10  search on November 30th, 2018; correct?
11     A     Correct.
12     Q     Going back to Exhibit 38, the SanDisk thumb drive.
13     A     Yes.
14     Q     Do you know when that drive was created, when the
15  first time that drive was used?
16     A     I don't recall.
17     Q     Do you know if it had any ghost files or ghost
18  information on it?
19     A     I'm not quite sure what a ghost file is.
20     Q     Did it have any deleted files?
21     A     Yes.
22     Q     Have you previously examined an iPhone and done --
23  if you go to a location -- let me ask a better question.
24           If you go to a location and you found an iPhone
25  that you want to examine, how do you go about examining

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   it?

2        A    An iPhone?

3        Q    Yes.

4        A    During a preview?

5        Q    In a preview when you go to execute a search

6   warrant and you find an iPhone and decide whether you want

7   to seize it or not.

8        A    We would extract the phone, whether it was a

9   logical or file system extraction.

10       Q    I'm sorry.  Can you speak up?

11       A    We would extract the phone, whether it was a

12  logical or a file system extraction using a Cellebrite

13  which is a mobile forensic tool.

14       Q    And if you don't seize the phone, do you save that

15  extraction?

16       A    Typically not.  It's up to the case agent.

17       Q    And an extraction of that nature are the passwords

18  that are associated with that phone which would be

19  passwords for other locations, for other websites or

20  things like that?  Are those extracted in that extraction?

21       A    To be clear, you're asking me about a phone I

22  didn't do; correct?

23       Q    I'm sorry?

24       A    You're asking me about a phone I didn't touch,

25  just a random iPhone.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    Q    I understand you didn't examine the iPhone?

2    A    No.

3    Q    So I'm clear on that, I'm just asking generally

4    under your forensic expertise if you did it.  Do you

5    also -- does that extraction let you look at passcodes

6    located, I guess it's called keychain in an iPhone?

7    A    It's possible, yes.

8    Q    Do you know -- I know you didn't do it -- if

9    anyone else on your team extracted any key chains from an

10   iPhone on September 30th, November 30th, 2018 at 721

11   Powder Horn Row?

12   A    Not that I recall.

13   Q    And I'll show you what has been previously

14   admitted as Government's Exhibit 37.  Do you recognize

15   that?

16   A    Yes.

17   Q    And that is the thumb drive you testified about

18   earlier?

19   A    Yes.

20   Q    And it has -- was it Infiniti on it?

21   A    Yes.

22   Q    And you testified that was located in the master

23   bedroom?

24   A    Yes.

25   Q    Were you present when that was located?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1      A    I don't recall.  There was multiple thumb drives

2    being found in that bedroom.

3      Q    So you don't recall?

4      A    No.

5      Q    Now, when the search team goes in, they write a

6    report; correct?

7      A    I'm not sure.  I do forensics.

8      Q    Part of the duties when they go in to write a

9    report about what items they found, where they found it;

10   correct?

11     A    I'm not sure.

12     Q    Does Homeland Security Investigations have

13   standard forms they use in executing search warrants that

14   agents are required to fill out when they find evidence?

15     A    Yes.  They're call half sheets.

16     Q    Can I approach?

17     A    Yes.

18          MR. FITZGERALD:  May I approach?

19          THE COURT:  Yes, you may.

20   BY MR. FITZGERALD:

21     Q    Do you recognize that as half sheets?

22     A    Yes.

23     Q    Okay.  Do you recognize that as a document that

24   Homeland Security created in the execution of the search

25   warrant at 721 Powder Horn Row --

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    -- on November 30th, 2018?

3    A    Yes.

4    Q    And what is that document?

5    A    These are multiple pages put together starting

6    with the 60851 which is the seized property from the

7    residence, and then these are scanned half sheets.  The

8    reason I call them half sheets is because they typically

9    don't come on a full page like this, so it would be this

10   cut in half, and as they find an electronic device, they

11   would put this half sheet to make sure it goes with that

12   device.

13   Q    Okay.  And on those half sheets, they have spaces

14   for you to write what you found, who found it, where they

15   found it, a description of it and the date and time they

16   found it; correct?

17   A    Yes.

18   Q    Would this drive -- and I know you weren't present

19   when it was found, but for this drive, Exhibit 37, based

20   on that HSI document, where was that drive found?

21   A    It was found in room B.

22   Q    I'm sorry.  Where was it found?

23   A    Room B, B as in Bravo.

24   Q    Room B?

25   A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1     Q     What is Room B?

2     A     Room B is the master bedroom.

3     Q     And how do you know that is the drive, that is --

4  what about that that makes this you're sure it's Exhibit

5  37?

6     A     What makes it sure that it's Exhibit 37?

7     Q     Yes.  So the attribute, you're looking at the half

8  sheet that you're looking at merely says thumb drive at

9  the top; correct?

10    A     Yes.

11    Q     It doesn't identify an Infiniti thumb drive;

12 correct?

13    A     No.

14    Q     And does it indicate who found it?

15    A     Yes.

16    Q     Who found that?

17    A     These actually in -- it just says master bedroom

18 or M/room.

19    Q     It doesn't say who found them?

20    A     No.

21    Q     There's a line there for whoever found it to write

22 where they found it; correct?

23    A     Yes.

24    Q     And there's a line for them to write the date they

25 found it?

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   A   Yes.

2   Q   And the time they found it?

3   A   Yes.

4   Q   And does it say Infiniti thumb drive or does it

5   say anything other than thumb drive to identify this?

6   A   No.  It just says thumb drive.

7   Q   Now, there's three -- there's another hash value

8   that just says thumb drive; correct?

9   A   From half sheet.

10   Q   Half sheet, I'm sorry.

11   A   Yes.  It -- actually there's one that says Room B

12   thumb drive.  Another one that says Room B thumb drives,

13   two each, and then there's another one that says Room B

14   thumb drive, and it has a location.  It says on plant

15   shelf.

16   Q   So you were present for that thumb drive and

17   you've identified that as Exhibit 38; correct?

18   A   The SanDisk, yes.

19   Q   Yes.  Now, there's three other thumb drives

20   located on those half sheets that aren't identified;

21   correct?

22   A   Correct.

23   Q   And what it does indicate, they are all found

24   somewhere in the master bedroom?

25   A   Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    Q    But it doesn't say by whom?

2    A    No.

3    Q    And it doesn't say where in the master bedroom?

4    A    No.

5    Q    It doesn't say if it's found in Mr. Dove's pants

6    or in Mrs. Dove's purse; correct?

7    A    Correct.

8         MR. FITZGERALD:  May I approach and get that back?

9         THE COURT:  You may.

10   BY MR. FITZGERALD:

11   Q    I'd like to talk to you a little bit about this

12   Alienware computer to see if you can help me understand.

13        When I in go and buy a computer from the Best Buy

14   and I go to turn it on, it asks me to create a user name;

15   is that right?

16   A    Yes.

17   Q    And I guess the computer lets you either just make

18   a user name and always be a guest or you can put your name

19   in there; correct?

20   A    Correct.

21   Q    And if I decide I want to put the name Tom Brady

22   in my computer when I sit down, it allows me to; correct?

23   A    Yes.

24   Q    And if I'm in college and my roommates don't have

25   any money, they need to share my computer, there's only

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    one user name of Tom Brady assigned to that computer.

2    When each of my three roommates use my computer or use

3    this computer, it's still going to come up with -- most

4    all of the data is going to come up under Tom Brady;

5    correct?

6        A    Yes.

7        Q    That doesn't mean that Tom Brady himself did this

8    or that the person that bought the computer did this.  It

9    just means that everybody went in through the same port;

10   correct?

11       A    Yes.

12       Q    And on the Alienware, how many user names were on

13   that computer?

14       A    There is the system created ones, as I explained

15   before which are the default account, Wdagutilityaccount

16   and home group users.  Those can't be modified.  And then

17   the computer also comes with an administrator account and

18   a guest account.

19       Q    And how many were on that account on that

20   Alienware?

21       A    It would be the main three which is the

22   administrator, the guest and the J. Dove.

23       Q    And the guest is just somebody can log in under

24   the guest; correct?

25       A    Yes.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1      Q    And did you find any evidence of anyone ever
2  logging in the Alienware under guest?
3      A    No.
4      Q    I'm looking at Exhibit 33A.  Do you have that in
5  front of you?
6      A    Yes.
7      Q    I'm going to show you what's page four of that
8  document.  And this is a file you created, correct, the
9  document you created?
10     A    Yes.
11     Q    The term "tags," does that mean that's what you
12  put in there?
13     A    Yes, it's a bookmark.
14     Q    All these documents that you have admitted, all
15  these -- show you page one where it says, "forensic
16  examination report," when we see "tagged," are we to
17  assume that's not from the computer, not from the search
18  but that's something that you personally put in there?
19     A    Yes.
20     Q    Okay.  And because you're looking for something or
21  documenting something; is that correct?
22     A    Yes.
23     Q    And 33A-1 is what you found on that computer;
24  correct?
25     A    Yes.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    Q    And you found notus52911@gmail.com?

2    A    Yes.

3    Q    And where was this on that computer?

4    A    This was on the HGST hard disk drive in a folder

5    named "top stuff."

6    Q    So between Government's Exhibit 33A-1 and your

7    report which is Government's Exhibit 33, can you tell me

8    who was sitting behind that computer screen when that

9    document was created?

10    A    No.

11    Q    And do you have Government's Exhibit 34A in front

12    of you?

13    A    Yes.

14    Q    If you could turn to page four, record three.  And

15    this is the date, November 18th, 2018.  That is the date

16    that this file "pedo mom" was last accessed?

17    A    Yes.

18    Q    And that date is the date you've indicated that

19    that SanDisk Government's Exhibit 38 was last accessed;

20    correct?

21    A    Yes.

22    Q    And can you tell from your forensic search here

23    who was sitting at that computer screen when that was

24    viewed?

25    A    Specifically looking at record three?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1      Q    Specifically looking at record three which is the
2  attribute of when that was put in.
3      A    Well, that specific file is coming from the master
4  file table.
5      Q    Okay.  So this is just a record of it being put
6  into the Alienware; correct?
7      A    Not putting in to.  Being accessed, yes.
8      Q    Being accessed.  Which means that the SanDisk
9  drive had to be plugged in to the Alienware --
10     A    Yes.
11     Q    -- on that date and time.
12          But this attribute doesn't show who was behind the
13  computer screen; correct?
14     A    Not that specific record but there are attributes,
15  yes.
16     Q    There are what?
17     A    There are attributes, yes.
18     Q    Let's go on to page five, record five.  This is
19  another "already watched video" in your tag, and 11 year
20  old.  If you go down here, it says user J. Dove; correct?
21     A    Yes.
22     Q    That's the source.  And that is identifying the
23  Alienware computer that we went into like my Tom Brady
24  example; correct?
25     A    Yes.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   Q    In Government's Exhibit 34B, do you have that in
2   front of you?

3   A    Yes.

4   Q    If you turn to page four, record one.  This
5   computer had -- looks like Office software on it?

6   A    Yes.

7   Q    Microsoft Office?

8   A    Yes.

9   Q    Were you able to tell when the last time an Excel
10  document was created?

11  A    Yes.

12  Q    When was that?

13  A    Well, this is just a user account for an Excel, so
14  if I was -- if I was to be able to pull the Excel
15  documents, they would have associated dates and times.

16  Q    But from your examination, can you tell us the
17  last time the Excel spread sheet was created on this
18  computer?

19  A    I don't recall.  I'd have to have my forensic
20  application up and running in front of me.

21  Q    Would that be the same for all the office files
22  that you found in Exhibit 34B?

23  A    These are just user accounts.  They're not actual
24  documents such as an Excel PDF or Microsoft Word.

25  Q    So 34B just indicates that there was a user

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    account that that computer had for Microsoft Office?

2    A    Yes.

3    Q    Showing you what's been previously marked as

4    Government's Exhibit 34C, do you recognize that?

5    A    Yes.

6    Q    What is that?

7    A    This is a report I generated from the Alienware

8    solid state drive, and it contains recently opened files

9    and folders.

10   Q    It contains, I'm sorry, what?

11   A    Recently opened files and folders.

12   Q    And, again, I'm turning for the record page seven.

13   I'll look at record 18 for one.  Do you see that?

14   A    Yes.

15   Q    At the top of that it says, "bookmark evidence."

16   Again, that's a tag, that's what you put in?

17   A    Yes.

18   Q    And you're searching for what at that point in

19   time, just any recently opened file?

20   A    Yes.

21   Q    Okay.  So is it fair to say that Exhibit 34C, it

22   shows the most recent open files on that Alienware

23   computer?

24   A    Yes.

25   Q    And going down to record 20, there's a file folder

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    "NEB SKIN Girl."  Do you see that?

2        A    Yes.

3        Q    What is that?

4        A    The NEB SKIN Girl.docx, which is a Microsoft Word

5    document, was a CD, DVD created label or cover which was

6    circular which would fit on to a CD and it was an Nma

7    image of a female on her knees with D's on the side, and

8    the words double D written out.

9        Q    And was that image created on the computer?

10       A    It's a document.

11       Q    Was that document created on this computer?

12       A    It may have been.  I can't confirm from looking at

13   record 21.

14       Q    And record 21 is also a NEB SKIN document;

15   correct?

16       A    Yes.

17       Q    As is record 22?

18       A    22 is DD logo girl.

19       Q    Okay.  Let's take that back.

20            Was that a document as well?  Was that a --

21       A    Yes.

22       Q    And in document 19, the item previously opened

23   before the NEB SKIN girl was "pedo mom licks 4 year old

24   Augustina"?

25       A    Those aren't in order of when they were previously

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    opened.  It's just a record layout.

2        Q    Okay.  Record 100 indicates nebskin.txt.  What is

3    that?

4        A    That would appear to be a file, a text document

5    named nebskins.

6        Q    Were you able to identify that document?

7        A    I don't recall opening that specific file.

8        Q    Did you search the Alienware computer for activity

9    on a website called Chaturbate?

10       A    Yes.

11       Q    What is Chaturbate?

12       A    Chaturbate is a website known to law enforcement

13   to contain child exploitation material.  It is a

14   video-to-video viewing.

15       Q    And did you find evidence that the Alienware had

16   gone on to Chaturbate?

17       A    Yes.

18       Q    And on how many occasions?

19       A    Multiple.

20       Q    300?

21       A    Yes.

22       Q    And did you do a forensic printout of the times

23   the Alienware computer went on to Chaturbate?

24            MS. THELWELL:  Objection, Your Honor, may we have

25   a sidebar?

CROSS-EXAMINATION OF JUSTIN GAERTNER

1          THE COURT:  Yes.

2   (Bench conference begins.)

3          THE COURT:  Basis of your objection?

4          MS. THELWELL:  Yes, Your Honor.  Based on defense

5    counsel's prior objection to admitting evidence outside of

6    the date range as it relates to the Toshiba external hard

7    drive Internet history, it appears to me that

8    Mr. Fitzgerald is attempting to admit similar evidence

9    that is outside of the date range as it relates to

10   Government's Exhibit 34E which the Government specifically

11   chose not to introduce.  It contains information outside

12   of the charged date range in the indictment.

13          THE COURT:  Okay.  I'm going to go ahead and take

14   our morning break and then we can talk about this.  I

15   agree with that question is rather broad.  I'm not certain

16   of what time period because Mr. Fitzgerald didn't give a

17   time period regarding that, so let me just take our

18   morning break, and we'll come back.

19          Members of the jury, we're going to take our

20   morning recess.  We'll be in recess for 15 minutes.

21   (Jury out at 11:01 a.m.)

22          THE COURT:  All right.  Any objection with regard

23   to Mr. in Fitzgerald's question as it relates to

24   Chaturbate?  The question didn't include any time

25   parameters, and so the objection is that the Court

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    sustained Mr. Fitzgerald's objection regarding utilization

2    or reference to child exploitation materials that

3    pre-dated the time period of the indictment given the fact

4    that no notice of proof was provided in this case.

5          Mr. Fitzgerald, response?

6          MR. FITZGERALD:  Your Honor, the records indicate

7    that the computer is accessed in October of 2016 which is

8    right around the time of the creation of the -- it's

9    within 30 days of the creation of the Coinbase account.

10   It's entirely relevant.  They've introduced prior searches

11   prior to the creation of the Coinbase account for child

12   pornography already because it's a pattern of where

13   they're going.

14         This is the first attempt we think the person who

15   did this.  It then moves into getting Coinbase and going

16   to Welcome to Video.  This is within 15 days or 23 days of

17   the creation of the Coinbase account, and within 20 days

18   of the Googling of, it's already been introduced, of some

19   inappropriate materials, Your Honor.

20         THE COURT:  So the time periods for the question

21   you just asked are before the date of the indictment but

22   within 23 days of the Coinbase account's establishment?

23         MR. FITZGERALD:  The indictment.  Let me grab the

24   indictment.

25         MS. THELWELL:  Count One alleges March 7th, 2017.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1  Count Two alleges the unknown date but beginning at least

2  November 30th, 2018.  Count Two is a possession, so it's

3  based on the search warrant date.

4          THE COURT:  Okay.  You may continue.

5          MR. FITZGERALD:  So the entirety of the Bitcoin

6  search, the Onion router search, the Onion router, all the

7  evidence that's been entered is from November of 2016.

8          THE COURT:  Okay.  But you still haven't answered

9  my question about chatterbox though.  I mean I don't know

10  what is the time period that you're asking with regard to

11  chatterbox?

12          MR. FITZGERALD:  Chaturbate for the record.

13          THE COURT:  Chaturbate.  Thank you.

14          MR. FITZGERALD:  The time period is -- I was

15  asking generally on the computer, but I can limit it to

16  October of 2016.

17          MS. THELWELL:  Your Honor, we'll withdraw our

18  objection.  That's fine.

19          THE COURT:  All right.  So the objection is

20  withdrawn.

21          MS. THELWELL:  Yes, Your Honor.

22          THE COURT:  Then, Ms. Thelwell, how much time will

23  you need to look at that exhibit to determine which

24  matters in the exhibit?  What is it, 37A?  You can look at

25  it and tell us when we come back.  When we return, you

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   will have had a chance to look at that, and I'm going to

2   bring in Juror Rezac, Paul Christian Rezac in early before

3   I bring in the rest of them so I can question him to see

4   if he has any questions or issues for the Court.

5           Anything else?

6           MS. THELWELL:  No, Your Honor.

7           THE COURT:  All right.  Then we are in recess.

8   CFA Gaertner, you are free to also step down, and take a

9   break if you'd like to, sir.

10          THE WITNESS:  Thank you.

11          THE COURT:  We're in recess.

12  (Recess taken.)

13  (Proceedings had outside jury's presence.)

14          THE COURT:  Ms. Thelwell, did you have an

15  opportunity to look at that exhibit?

16          MS. THELWELL:  I did, Your Honor.

17          THE COURT:  Does Mr. Fitzgerald know which ones

18  have been removed for purposes of his cross-examination?

19          MS. THELWELL:  No, Your Honor.  I had not spoken

20  with Mr. Fitzgerald but I can tell the Court now.  It

21  would just be up to page seven, and then the rest we can

22  remove because the rest of them -- the majority of the

23  rest, I should say, do have a date associated with it, so

24  it's just cleaner for redaction purposes if we were just

25  to stop at page eight.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1      THE COURT:  Okay.  Any questions, Mr. Fitzgerald?

2      MR. FITZGERALD:  Your Honor, is there any evidence

3  of those up to Page 8 are more recent than 2014, or is it

4  just because they're undated that we're going to admit

5  them?

6      MS. THELWELL:  They're undated, and it would be up

7  to record No. 22.  We'd redact that No. 23 and 24.

8      MR. FITZGERALD:  Under 403, we can't prove they're

9  within the time period.

10     THE COURT:  That's a different objection.  I mean

11 that's not the issue that was before me, and so I'm not

12 inclined to grant the request to those that are

13 specifically undated.

14     MR. FITZGERALD:  Okay.

15     THE COURT:  Without some information that they

16 fall outside of that time period.  I mean, the indictment

17 for Count Two does state beginning on an unknown date and

18 continuing until on or about November 30th, 2018, and the

19 indictment for Count One says from on or about March 7,

20 2017.  I think 2014 is a bit stretch -- is a bit of a

21 stretch when you argue inextricably intertwined, although

22 I understand the argument raised by the Government.  And

23 given the fact that no 404(b) notice was filed, I sustain

24 your objection.  There's no information before the Court

25 at this time, however, regarding others that show a

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   similar time period.  And there's clearly evidence in this

2   case that precedes the 2017 date in Count One when you

3   look at the Coinbase account and other things, so I just

4   wanted to further explain my ruling.  And to the extent

5   there's some information provided regarding the undated

6   ones, then I'm certainly willing to look at that, but at

7   this point the Government has removed what was requested

8   based upon your objection.

9           MR. FITZGERALD:  So it's up to page record 20; is

10   that correct?

11           MS. THELWELL:  Record 22 on page eight, so page

12   eight also contains records 23 and 24, but we will redact

13   those out.

14           MR. FITZGERALD:  Thank you, Your Honor.

15           THE COURT:  Okay.  And would you have them send in

16   Mr. Rezac.

17  (Proceedings had with Juror Rezac outside presence of the

18  jury.

19           THE COURT:  Mr. Rezac, good morning.  I just have

20   a question of you.

21           JUROR REZAC:  Yes, ma'am.

22           THE COURT:  I understand that you had a question

23   for Ms. Spergel, one of the Assistant United States

24   Attorneys this morning.

25           THE WITNESS:  No, I don't.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1     THE COURT:  And so I just wanted to bring you in

2  and see if you have a question of me, or if there's

3  anything that I can assist you with.

4     JUROR REZAC:  No, ma'am.  It's my first time being

5  a juror, so I didn't kind of know what the parameters are

6  and she set me straight.  She said we can't talk.  I'm

7  like no sweat.

8     THE COURT:  Okay.  All right.

9     JUROR REZAC:  No, I'm good.

10    THE COURT:  And she did exactly what she is

11 directed to do by me.  So I want you to understand that

12 you are to have no interaction with any of the attorneys

13 in this case, the case agent, the Defendant, or any of the

14 witnesses.  And so if you have any questions, though, ask

15 our court security officers.  We have two of them in here

16 and they will get your questions to me.  And I'm available

17 to answer any questions you have or just make sure that

18 you have no interaction with them because then, you know,

19 even though your question as one this morning may be

20 completely innocent, it's the appearance of impropriety

21 that causes concern for others, so I just wanted you to

22 understand that.

23    JUROR REZAC:  I apologize.  Apologize.

24    THE COURT:  All right.  Thank you, sir.

25    JUROR REZAC:  All right.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1          THE COURT:  You may bring the jury in.
2     (Jury in at 11:29 a.m.)
3          THE COURT:  Mr. Fitzgerald, you may resume your
4     cross-examination.
5          MR. FITZGERALD:  Thank you, Your Honor.
6     BY MR. FITZGERALD:
7          Q    Special Agent, when last we spoke we were speaking
8     about Chaturbate and you indicated that's an Internet
9     account where people look at pornographic material and law
10    enforcement believes it's also child pornographic
11    material?
12         A    Yes.
13         Q    Is that a paid site?
14         A    Is that a what?
15         Q    A paid, do you pay to go on that?
16         A    Not that I'm aware.
17         Q    Not that you are aware?
18         A    I've never been on it, so.
19         Q    Were any subpoenas issued to Chaturbate to see if
20    anybody involved in the case had a Chaturbate account?
21         A    I do forensics, so I don't know.
22         Q    So not to your knowledge?
23         A    No.
24         Q    On November 30th, 2018 when you were doing
25    forensic searches of the devices that were present at the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   scene, was any -- did anyone instruct any of the forensic

2   people to your knowledge to look for Chaturbate to see if

3   that -- because that also contains potentially child

4   pornography material?

5        A    Specifically, no.

6        Q    Or to look for keychains or keys to Chaturbate or

7   accounts, no?

8        A    No.

9        Q    And in your forensic search of the Alienware

10   computer, you found that Chaturbate was engaged or

11   accessed at least as recently as October 26th, 2016;

12   correct?

13       A    Do you have something to show me that date?

14       Q    Excuse me?

15       A    Do you have something to show me that date?

16            MR. FITZGERALD:  Sure.  May I approach the

17   witness, Your Honor?

18            THE COURT:  You may.

19   BY MR. FITZGERALD:

20       Q    I'm going to show you a forensic exam report.  See

21   if it refreshes your recollection.

22       A    Can you repeat the date?  Okay.  Can you repeat

23   the question, please?

24       Q    Yes.  In your examination of the Alienware

25   computer, you found that the website Chaturbate, that law

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    enforcement suspects contains or may contains child

2    pornographic material was accessed as recently as

3    October 26th, 2016?

4        A    Yes.

5            MR. FITZGERALD:  And may we approach to get that

6    document?

7            THE COURT:  You may.

8    BY MR. FITZGERALD:

9        Q    Looking at Government's Exhibit 36A that's already

10   been admitted into evidence, this was the scan or the

11   search of the Toshiba router, Toshiba backup hard drive?

12       A    Yes.

13       Q    And if you turn to page five of that document,

14   we'll start with record number six.  It says, "finger

15   daughter while."  Do you see that?

16       A    Yes.

17       Q    Okay.  And this is stuff -- these are sites in

18   terms you previously had mentioned might be child

19   pornographic?

20       A    Yes.

21       Q    When I look down here, and it says artifact,

22   "Safari history," what does that mean?

23       A    The artifact would appear that it came from Safari

24   history.  Safari is a website.

25       Q    Okay.  So higher than that, the URL, it uses the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1  term Google?

2      A    Yes.

3      Q    Through Safari I can use Google?

4      A    No.

5      Q    Okay.  Where is Safari located, what kind of

6  computers?

7      A    Safari is typically on Apple computers.

8      Q    Safari is not on any other computer other than

9  Apple devices; correct?

10      A    Unless you install it on a different computer, but

11  yes.

12      Q    Did you find Safari on any devices that you

13  searched as a result of the November 30th, 2018 search

14  warrant?

15      A    Not that I recall.

16      Q    Did you search an Apple MacBook Air; correct?

17      A    Yes.

18      Q    Did that have Safari on it?

19      A    I believe so.  Most Apples come pre-installed with

20  Safari.

21      Q    Most or all?

22      A    I would say all.

23      Q    Safari is part of the Apple Operating System;

24  correct?

25      A    Yeah.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    Q    They call it IOS, Internet Operating System, is

2    the Apple brand for their operating system?

3    A    Yes.

4    Q    And if we go to page four, record one, artifact

5    Safari history; correct?

6    A    Yes.

7    Q    Record two, artifact Safari history; correct?

8    A    Yes.

9    Q    Record three, artifact Safari history; correct?

10   A    Yes.

11   Q    Record four, artifact Safari history; correct?

12   A    Yes.

13   Q    Record five, artifact Safari history; correct?

14   A    Yes.

15   Q    If you could turn to Government's Exhibit 42, do

16   you have it available?

17   A    42, yes.

18   Q    42.  Okay.  Could you turn to Page 5, please, and

19   particularly record four?

20   A    Okay.

21   Q    Record four is, first of all, Exhibit 42 is the

22   Google response; correct?

23   A    Yes.

24   Q    And Government response for notus52911@gmail.com

25   account; correct?

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    And what record four shows is that the notus52911

3    Gmail account is affiliated with a Dropbox account;

4    correct?

5    A    Yes.

6    Q    And to your knowledge, was that Dropbox account,

7    the records of that Dropbox account subpoenaed to see if

8    anyone related to the case was in charge of that Dropbox

9    account?

10   A    Not that I'm aware.

11   Q    To your knowledge, at the time of the search

12   warrant when it was executed at 11/30/2018 at 721 Powder

13   Horn Row, were any of the forensic analysts instructed to

14   look for Dropbox to see if it could possibly be linked to

15   notus52911@gmail.com?

16   A    No.

17   Q    Do you have Exhibit 34D in front of you?

18   A    D as in Delta?

19   Q    D as in Delta, I'm sorry, yes.

20   A    Yes.

21   Q    And is it correct that the exhibit is 19 pages?

22   A    What was that?

23   Q    I'm sorry.  That exhibit is 19 pages long; is that

24   correct?

25   A    Yes.

CROSS-EXAMINATION OF JUSTIN GAERTNER

1   Q    Now, when you're doing your forensic report, this

2   is related to the Dark Web and The Onion Router; is that

3   correct?

4   A    Google searches, yes.

5   Q    And is part of your training and technique you do,

6   and it's, for lack of a better word, a little bit of

7   redundancy; correct?

8   A    Yes.

9   Q    So that in this report, the searches that came up,

10  but if we look for instance page one at the top of record

11  one is Google searches; correct?

12  A    Yes.

13  Q    That's the parameters for the return of records on

14  that page; correct?

15  A    Yes.

16  Q    And Page 5?

17       THE COURT:  Wait.  Wait.

18  BY MR. FITZGERALD:

19  Q    Social media and URLs.

20       THE COURT:  Wait a minute, Mr. Fitzgerald.  The

21  monitor is out.

22  (Brief pause.)

23       THE COURT:  Okay.  It's back on.

24  BY MR. FITZGERALD:

25  Q    Page five is social media URLs?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    So is that a different search than the one up here

3    that says Google?

4    A    Yes.

5    Q    Would that return potentially the same searches?

6    A    Potentially, but it's two different areas of the

7    computer.

8    Q    Okay.  What about social media URLs -- well,

9    that's still the same one.  This one, Firefox web history.

10   Is that another search?  I'm sorry.  That is on page

11   seven.

12   A    Yes.

13   Q    And turning to page 13, you have Firefox web

14   visits?

15   A    Yes.

16   Q    Correct.  So the Firefox web history record one is

17   a Onion, Onion router 9/26/2016, 23:32 --

18   A    Yes.

19   Q    -- record, and the Firefox web visits -- web date

20   is the same Onion, Onion DW, 9/26/2016, 23:32.  That's the

21   same attribution; correct?

22   A    Compared to what?

23   Q    Excuse me?

24   A    You said same attribution.  Compared to what?

25   Q    Well, this is one search that may have come up in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF JUSTIN GAERTNER

1    two different places.  I'm not trying to suggest you're

2    trying to mislead anybody.  I'm saying your job, your

3    training, you search for evidence and you do it thoroughly

4    and you might do it across five parameters, and the fact

5    that they each give you a return is totally appropriate

6    and it's necessary for you to put it in a report, but

7    sometimes the returns overlap; correct?

8        A    Yes.

9        Q    And that's all I'm pointing out.  The return

10   overlapped in that case; correct?

11       A    Sure.

12       Q    And it overlaps a lot in the Firefox web visits

13   and the Firefox web history; correct?

14       A    Yes.

15       Q    So while this report is 19 pages long, a lot of

16   these are the same search but found four or five different

17   ways pursuant to your criteria that you need to work

18   under; correct?

19       A    Yes, sir.

20       Q    And Government 34H which is already admitted, do

21   you have that?

22       A    Yes.

23       Q    That is similar where you're doing searches

24   regarding notus and under different parameters and you are

25   generating entire report under in multiple parameters that

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    you're looking under; correct?

2        A    Correct.

3        Q    Some of these attributions may, in fact, be

4    somewhat redundant.  I'm not suggesting you're doing

5    anything wrong.  You're doing it exactly the way you're

6    supposed to do it; correct?

7        A    Yes.

8        Q    Thank you.

9            MR. FITZGERALD:  May I have one moment, Your

10    Honor?

11            THE COURT:  Yes.

12    (Brief pause.)

13            MR. FITZGERALD:  Nothing further, Your Honor.

14            THE COURT:  All right.  Thank you.  Ms. Thelwell,

15    redirect?

16            MR. FITZGERALD:  Yes, Your Honor.  One moment.

17                    **REDIRECT EXAMINATION**

18    BY MS. THELWELL:

19        Q    If we could see Exhibit 30 and focus on the

20    right-hand corner at the bottom.  CFA Gaertner, the items

21    that are depicted in Government's Exhibit 30, are these

22    three of the items that were seized from the residence on

23    Powder Horn Row and ultimately analyzed forensically by

24    you?

25        A    Yes.

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    Regarding the Alienware laptop, you testified

2    earlier that you found a .txt that contained a list of

3    various Onion addresses as well as the

4    notus52911@gmail.com email address; is that correct?

5    A    Yes.

6    Q    And I believe it's up there.  Maybe we could do a

7    side-by-side of Government's Exhibit 33A-1.  And so on the

8    left-hand side where we see 33A-1, is that the deleted

9    notes, we could also blow up the box on Government's

10   Exhibit 30 again?  Thank you.

11        Is that the --  Let me rephrase, not deleted

12   notes.  Is that the note, the .txt that you found on the

13   Alienware laptop?

14   A    Yes.

15   Q    All right.  And the last Onion address listed

16   there, what -- do you know where that belongs?

17   A    Yes.

18   Q    What website is that for?

19   A    The Welcome to Video Tor website.

20   Q    And did -- you also testified that you had found

21   this same note elsewhere; correct?

22   A    Yes, a similar note.

23   Q    A similar note, yes.  What other device was that

24   found on?

25   A    The Infiniti thumb drive.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    Is that depicted in Government's Exhibit 30?

2    A    Yes.

3    Q    If we could do the side-by-side of Exhibit 30 with

4    Exhibit 37A-1.  While we're looking at 37A-1, on the

5    left-hand side, where did you find this note, 37 -- I'm

6    sorry.  It just disappeared from the screen.  Okay.

7    Perfect.  So 37A-1, where did you find this?

8    A    That was a deleted text file on the Infiniti thumb

9    drive.

10   Q    It's almost identical to 33A-1; correct?

11   A    Yes.

12   Q    What is the difference between the two?

13   A    Well, one is deleted, one is not.  37A-1 has an

14   additional Welcome to Video link, and then a password

15   that's on the Alienware document is not on the Infiniti

16   document.

17   Q    All right.  You were explaining that at the time

18   of the search warrant, there were multiple thumb drives

19   found in the residence, specifically in the master

20   bedroom?

21   A    Yes.

22   Q    Do you recall where some of those thumb drives

23   were found outside -- setting aside the SanDisk which we

24   already know from your testimony was found in the

25   planter's ledge approximately seven, eight feet high,

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1   where were the other -- where were some of the other thumb

2   drives found within the master bedroom to your knowledge?

3       A   I don't recall where all of them were found.  I

4   remember one being found tucked in a bed frame.

5       Q   You said tucked in the bed frame?

6       A   The headboard.

7       Q   So based on your recollection, is it fair to say

8   that the thumb drives were all over the place within the

9   master bedroom?

10      A   Yes.

11          MR. FITZGERALD:  Objection.

12          THE COURT:  Legal basis?

13          MR. FITZGERALD:  He's already testified he didn't

14  know where they were found, and now he's speculating that

15  they were hidden all over the bedroom.

16          THE COURT:  Response.

17          MS. THELWELL:  Your Honor, the witness' testimony

18  was that he cannot recall where every single one was

19  found.  He did specifically recall that one was found

20  within the bedframe.

21          THE COURT:  The objection is overruled.

22          MR. FITZGERALD:  Also objection on hearsay, Your

23  Honor.  Since he wasn't present when it was found he

24  doesn't have personal knowledge, so it's hearsay and 602.

25          THE COURT:  Response.

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1       MS. THELWELL:  Your Honor, the witness does have

2   knowledge.  I can ask a follow-up question.

3       THE COURT:  Why don't you ask the predicate

4   question.

5   BY MS. THELWELL:

6       Q    How do you know that a thumb drive was found

7   within the headboard?

8       A    Because I watched them pull it out of the

9   headboard.

10      THE COURT:  The objection is overruled with regard

11  to his testimony.

12  BY MS. THELWELL:

13      Q    If we could look at -- well, I'm going to ask you

14  about the Alienware laptop computers.  Based on your

15  training and experience in the field of computer forensic,

16  is there any forensic tool available for you to be able to

17  determine who was the person who sat behind the computer

18  and typed key stroke by key stroke?

19      A    No.

20      Q    So how is it that you were able to analyze an

21  electronic device and also make a determination based on

22  your forensic analysis as to who the ultimate user of that

23  device was?

24      A    I would go off the registered owner of the

25  computer, the user account, account name and the user's

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1   full name associated to the files that I'm discovering.

2       Q      Apart from the specific user attribution

3   information, for example, the information contained in

4   Government's 34B, when you're conducting an analysis of an

5   electronic device, do you also look at the device as a

6   whole to see if there's other indication that it was the

7   same user?

8       A      Yes.

9       Q      What might be some other things you might look

10  for?

11      A      As far as the same user goes, in the user account

12  I would look for documents associated such as the Excel,

13  the PDF, the Word documents, user accounts for social

14  media such as Skype, Facebook, user pictures, user's

15  videos, personal photos, driver's licenses.

16      Q      So essentially it sounds as if you're claiming to

17  the jury that you look at the computer or the device as a

18  whole in order to make a determination as to who the

19  ultimate user of the device was; is that correct?

20      A      Yes.

21      Q      If we could look at Government's Exhibit 34B.

22             Now, on cross-examination Mr. Fitzgerald asked you

23  about the different, I guess, user names or accounts.  You

24  described three.  You said there was a system/default

25  account, an admin account and a guest account; is that

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    correct?

2        A     Yes.

3        Q     When we're talking about the system default

4    account, what does that mean?

5        A     The system account that comes with the computer

6    that can't be modified by users such as a default account

7    Wdagutility account --

8        Q     You have to slow down and speak up.

9        A     They're system generated user accounts that come

10   with the computer.

11       Q     Okay.  So they're system generated accounts, you

12   said that they cannot be modified?

13       A     No.

14       Q     So what information did you observe on the

15   Alienware laptop related to the system generated default

16   account?

17             If you could tell us what record you're looking

18   at, I can pull it up on the big screen.

19       A     Those three specific accounts were never used on

20   the computer.

21       Q     I'm sorry?

22       A     They were never used on the computer.

23       Q     What do you mean?

24       A     In the registry hive, specifically the SAM

25   registry hive, there were the guest account, default

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    account, home group users account, and the

2    Wdagutilityaccounts had never been used.  The

3    administrator account had been used nine times.

4        Q    Is there a name associated with the administrator

5    account or is it just called administrator?

6        A    It's just called administrator.  The only one that

7    had a name associated was the J. Dove account.

8        Q    And that account -- what exactly is that account?

9        A    The J. Dove account was a Windows Live account

10   which does not store registry information pertaining to

11   log-in times.

12       Q    It does not?

13       A    Does not.

14       Q    Okay.

15       A    It did store a full name for the account and the

16   full name of the J. Dove user was Jack Dove.

17       Q    Does it indicate when that user name or user

18   account was created?

19       A    Not that I recall.  Because it's Windows Live

20   account, it doesn't store information in the registry.

21   It's actually logging on through the Internet.

22       Q    So when -- I may have been confused, so when you

23   were talking about the system/default account, is that the

24   overarching category for admin account, guest account and

25   whatever other user names someone may want to type in and

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    create or am I mixing that up?

2        A    So as I explained previously, so there's registry

3    hives within a computer operating system.  Three of those

4    primary registry hives were the SAM system software.  SAM

5    specifically contains information pertaining to accounts

6    on the computer, whether those are system-generated

7    accounts or user-generated accounts.

8        Q    So stop there.  What information -- what

9    information, if any, was contained within the SAM account?

10       A    Well, the SAM registry hive.

11       Q    Registry hive.

12       A    Yeah, has users, the administrator, the default

13   account, the Wdag, home group users, guest and J. Dove.

14       Q    So that's all grouped under the SAM?

15       A    Registry hive, yes.

16       Q    Hive?

17       A    Yes.

18       Q    And what's the other -- you're going on to

19   describe a couple other type of system generated default

20   accounts.

21       A    Those are the six that appeared in the SAM

22   registry.

23       Q    Regarding the Toshiba external hard drive, that

24   report that Mr. Fitzgerald is walking through with a

25   moment ago, that showed the Safari artifacts?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    What device did that come from, that report?

3    A    Do you have a report number or exhibit number?

4    Q    It would be 36A.

5    A    Can you reask the question?

6    Q    What device did this extraction report come from?

7    A    The Toshiba external hard disk drive.

8    Q    So hearing the name Toshiba external hard drive,

9    how would you describe that particular device?

10   A    It's an external hard drive, just like a thumb

11   drive, which can be plugged into multiple different

12   devices.

13   Q    Okay.  So the information that -- well, what was

14   the information generally contained on that hard drive?

15   A    It was mainly multiple computer backups.

16   Q    And, again, so what does that mean?  If you find

17   this external hard drive that has computer backups, what

18   does that indicate to you?

19   A    It would indicate that there's backups of a

20   computer.  Whether it's an Alienware laptop computer or

21   Apple computer, there could be multiple backups on the

22   hard drive.

23   Q    So looking at 36A, which we know contains Safari

24   artifacts, which you've testified that Safari is part of

25   the Mac's IOS operating system?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    A    Yes.

2    Q    Based on your experience and training with

3    forensic -- computer forensics, would you agree with the

4    statement that the Toshiba external hard drive contained a

5    backup of most likely an Apple device?

6    A    Yes.

7    Q    Okay.  And so the information contained in 36A is

8    not information that was extracted from the Alienware

9    laptop; is that correct?

10   A    No.

11        MS. THELWELL:  If I could have a moment.

12        THE COURT:  You may.

13   (Brief pause.)

14   BY MS. THELWELL:

15   Q    Looking at Government's Exhibit 34B, if we could

16   go to page four.  If you could blow up the first three

17   records.  What are we observing in the first three

18   records?

19   A    The first three records contains a tag or bookmark

20   that I created.  It says Dove underscore user accounts.

21   The identifier for each one of those records is Jack Dove,

22   and the author of those documents is the Jack Dove account

23   which is for an Excel documents, PDF documents and Word

24   documents.

25   Q    As it relates to these Microsoft Office products,

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1  in your forensic analysis, did you observe any other

2  authors present other than Jack Dove?

3      A    No.

4      Q    If we could look at the following records, record

5  number four and five.  What is record number four?

6      A    Record number four is from the SAM registry hive.

7  You can see the source window system 32 config SAM, and it

8  explains that the full name for this user account is Jack

9  Dove.

10     Q    And what are we observing in record number five?

11     A    Record number five is coming from Outlook emails

12  and it states that the sender name and user account

13  associated with the Outlook emails is Jack Dove with an

14  email of jdove@totalonguardprotection.com.

15     Q    Did you observe any other user identified with the

16  Outlook emails associated with the Alienware laptop?

17     A    Any other emails associated with Outlook?

18     Q    Yeah.  So any -- because you say that record

19  number five is the identifier is

20  jdove@totalonguardprotection.com and that email is

21  associated with Outlook; correct?

22     A    Yes.

23     Q    So is there any other email that you found on the

24  Alienware laptop associated with the Outlook program?

25     A    It's just that one right there in record five.

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    If we could look at record number six on page five

2    of 34B.  Record six and seven, we'll take them both.  What

3    are we observing in record number six and seven?

4    A    This is also coming from Outlook emails.  It is a

5    receipt emails and c.c. emails for J. Dove for

6    jdove@totalonguardprotection.com and there's also an

7    association to billing at totalonguardprotection.com.

8    Q    If we could look at the record on number eight.

9    Look at the -- so record number eight appears to be for

10   PowerPoints which is also part of the Microsoft Office

11   package; correct?

12   A    Yes.

13   Q    And who is the listed author there?

14   A    The identifier for this author of PowerPoint is

15   Jack Dove.

16   Q    To be clear, the only information in this report

17   as far as the reported pages are concerned that you would

18   have typed in would be the tagged line?

19   A    Correct.

20   Q    And what is the purpose for you typing in and

21   declaring a specific tag name?

22   A    So that I can separate different bookmarks when

23   I'm doing my analysis.

24   Q    Okay.  So it's like a filtering process for you?

25   A    Yes.

REDIRECT EXAMINATION OF JUSTIN GAERTNER

1    Q    When did you create or when you were looking

2    through the device to do your analysis to try and figure

3    out the user attribution information that you could

4    locate, did you specifically target the name Jack Dove?

5    A    I mean, not specifically, but pertaining to this

6    report, yes.

7    Q    Right.  So obviously in the creation of 34B, for

8    the purposes of trial, you were asked to put together some

9    extraction reports; correct?

10   A    Yes.

11   Q    But while you were conducting your analysis, the

12   question is were you looking at the computer as a whole

13   and sifting through the information as you found it or

14   were you eliminating other potential user names that you

15   may have come across because it was not Jack Dove?

16   A    I look at the computer as a whole.  I don't focus

17   on one specific account.

18   Q    Okay.  So had you found evidence of another

19   individual other than Jack Dove as a listed user account,

20   would that information have been provided?

21   A    Of course.

22   Q    Did you find any evidence when conducting the

23   forensic analysis of the Alienware laptop of any other

24   user other than Jack Dove?

25   A    No.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF TAVEY GARCIA

1        MS. THELWELL:  No further questions, Your Honor.

2        THE COURT:  All right.  Thank you.  CFA Gaertner,

3   excuse me, that concludes your testimony.  You may -- you

4   are excused.  And the Government -- let's see.  Madam

5   Clerk, do we have lunch here yet?  Is lunch here yet?

6        COURTROOM DEPUTY CLERK:  Not yet.

7        THE COURT:  Ms. Thelwell, the Government may call

8   its next witness.

9        MS. THELWELL:  United States calls Tavey Garcia,

10  Special Agent Tavey Garcia.

11  (Witness sworn.)

12        COURTROOM DEPUTY CLERK:  Please state your name

13  and spell your last name.

14        THE WITNESS:  Special Agent Tavey Garcia,

15  G-A-R-C-I-A.

16        COURTROOM DEPUTY CLERK:  Thank you.  Be seated.

17                  TAVEY GARCIA,

18  having been first duly sworn under oath, was examined and

19  testified as follows:

20                DIRECT EXAMINATION

21  BY MS. THELWELL:

22     Q    Agent Garcia, yesterday when you testified I

23  believe on cross-examination you were asked a question

24  about whether or not you subpoenaed Dropbox for

25  information.  And do you recall your response?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF TAVEY GARCIA

1    A    Yes.

2    Q    What did you say at that time?

3    A    I indicated that I believed I served a subpoena

4    for subscriber information.

5    Q    Since yesterday, have you reviewed your case

6    file --

7    A    I have.

8    Q    -- again?

9         And what did you observe when you reviewed your

10   case file?

11   A    I identified that I did not actually serve a

12   subpoena.  I served a different process called a

13   Preservation Request.

14   Q    What is the difference between a Preservation

15   Letter and a subpoena?

16   A    A preservation is something we do typically at the

17   beginning prior to a subpoena to preserve an account at

18   that moment in time.  So when an account is identified, we

19   intend to serve a preservation request to the entity to

20   preserve the document or the account as it stands at that

21   time in anticipation of either a subpoena or a search

22   warrant.

23   Q    So in this case, you served a preservation letter.

24   Did you ever serve a subpoena?

25   A    I did not.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF TAVEY GARCIA

1    Q    Did you ever serve a search warrant?

2    A    I did not.

3    Q    Why was that?

4    A    As I mentioned yesterday, there didn't appear to

5    be evidentiary value for Dropbox, so I serve the

6    preservation at the onset when we first identified that

7    there was a Dropbox account.  But based on the forensic

8    analysis, there didn't appear to be any linkage between

9    the Dropbox child exploitative material, so at that point

10   there was just no need to pursue that.

11   Q    All right.

12   A    As I mentioned yesterday, if I can add, having a

13   Dropbox in and of itself as I said yesterday does not

14   indicate illegal activity.  It's just a file storage

15   place.

16   Q    Right.  It's a function or a platform that

17   individuals can share files; right?

18   A    Correct.

19   Q    And store files; correct?

20   A    Correct.

21   Q    Yesterday we also reviewed the Google records,

22   Government's Exhibit 42.  Do you recall that?

23   A    I do.

24   Q    What else do you recall about the information that

25   you received from Google in response to your search

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF TAVEY GARCIA

1  warrant?

2      A    What I recall from the responsive information is

3  the subscriber name was not indicative -- it did not

4  contain any name of a household member at that residence.

5  It appeared to be just a random name.

6      Q    What was that name?

7      A    I don't recall.

8      Q    Is there anything that might refresh your

9  recollection?

10      A    My report on that.

11      Q    When you say it was a generic name, what did that

12  indicate to you when you reviewed it?

13      A    So, the account was created with a generic name,

14  and a lot of times, Gmail, they don't have an account

15  verification method so you can make a Gmail or a Yahoo

16  account using any name you want.  It will be your display

17  name outside of your email name.

18      Q    And do you recall the date it was created?

19      A    I believe it was November 16th of 2016.

20      Q    Drawing your attention to the screen.  On the

21  right-hand side or, excuse me, the left-hand side, we have

22  33A-1, and on the right-hand side it's 37A-1.  33A-1, you

23  testified -- well, let me rephrase.

24          At some point in the investigation did you receive

25  a copy of both 33A-1 and 37A-1?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF TAVEY GARCIA

1    A    I did.

2    Q    And what, if anything, did you do when you

3    observed the contents of these two exhibits?

4    A    So I went through this document, and in my

5    undercover capacity on an undercover device, I attempted

6    to access each of those .onion URLS to identify what, if

7    anything, was available to me as an agent to review for

8    potential evidentiary value.

9    Q    What did you notice when you attempted to access

10   them?

11   A    So, the very first URL, the -- you want me to

12   spell that out U-N-D-E-R-D-J-5-Z-I-O-V, URL, I copied -- I

13   typed that exactly as it appeared on this document

14   including the category/hard core/page/9.  What that did

15   was that took me to a pornographic URL within the Onion

16   Tor browser that contained child pornography.  Page 9

17   specifically had, if you will, thumbnails of where you

18   could click and play each one of those videos.  There were

19   6 to 8.  There was, you know, two rows, one row on each

20   side of the page, and there were thumbnails of videos, so

21   you can select whatever you wanted to watch based on that

22   hard core Page 9.

23        I don't recall how many pages were up through that

24   but specifically Page 9 depicted several child

25   pornographic videos.

DIRECT EXAMINATION OF TAVEY GARCIA

1    Q    And was that something you were able to access

2    without paying for membership?

3    A    That is correct.

4    Q    What about the other Onion addresses listed here?

5    A    The other Onion addresses were either taken down

6    or not valid.  There was no content on any of the other

7    addresses.

8    Q    What about the one all the way at the bottom, that

9    starts with M-T-3-P and ends in a .Onion, and it's

10   contained on both 33A-1 and 37A-1.

11   A    Right.  So that is the URL for the Welcome to

12   Video as you went through, and all three of those are the

13   same URL.  They just depict different points on that URL,

14   so the .Onion ends in URL.  If I recall Agent Franklin's

15   testimony, "best" is actually where he went on his

16   undercover capacity.  The "best" file, that he observed

17   that, and the same with the video, so the URL continues on

18   depending on where you are within that URL.

19        MS. THELWELL:  One moment, Your Honor.

20   (Brief pause.)

21   BY MS. THELWELL:

22   Q    Agent Garcia, when you executed the search warrant

23   at the 721 Powder Horn Row residence, did you come into

24   contact with Jack Dove at that time?

25   A    I did.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF TAVEY GARCIA

1    Q    And did you have an opportunity to observe him?

2    A    I did.

3    Q    And do you see Jack Dove present in the courtroom

4    today?

5    A    I do.

6    Q    Where is he sitting?

7    A    He is the Defendant.

8    Q    Can you point him out by an article of clothing

9    for the record?

10   A    Sure.  He is the Defendant sitting next to the

11   attorney.  He's wearing a gray suit with a lavender

12   appearing colored shirt and a lavender and gray tie.

13        MS. THELWELL:  Let the record reflect that the

14   witness has positively identified the Defendant.

15        THE COURT:  The record will so reflect.

16        MS. THELWELL:  No further questions.

17        THE COURT:  Mr. Fitzgerald.

18        MR. FITZGERALD:  Thank you, Your Honor.

19                    **CROSS-EXAMINATION**

20   BY MR. FITZGERALD:

21   Q    Good afternoon, Agent Garcia.

22   A    Good afternoon.

23   Q    So yesterday you spoke, and there wasn't a

24   subpoena issued for the Dropbox account?

25   A    That is correct.

CROSS-EXAMINATION OF TAVEY GARCIA

1    Q    But you issued what you call a preservation

2    letter?

3    A    Correct.

4    Q    Which is at the time you thought it would be very

5    important to make sure that Dropbox didn't delete their

6    files and their records concerning that Dropbox account,

7    correct?

8    A    Correct.

9    Q    Because what happens, if they don't get their

10   preservation record, every company at some point purges

11   that; correct?

12   A    Correct.

13   Q    And so when you think it might be part of your

14   investigation, you send them a letter and say hold on to

15   this; correct?

16   A    Yes.

17   Q    So at least at some point you thought the Dropbox

18   was born; correct?

19   A    Yes.

20   Q    Now, at that point, you testified what Dropbox

21   does.  You said it involves sharing files and holding

22   files?

23   A    Yes.

24   Q    And people put it up in the cloud?

25   A    Yes.

CROSS-EXAMINATION OF TAVEY GARCIA

1    Q    And as part of your investigation with the child
2    exploitative team, you know that people that engage in
3    looking at child pornography often share files; correct?
4    A    A lot of times, yes.
5    Q    They often stored shared files in the cloud;
6    correct?
7    A    Yes.
8    Q    And so this Dropbox account may, in fact, contain
9    child pornography; correct?
10   A    Correct.
11   Q    You also knew that Dropbox account was tied to
12   notus52911@gmail.com; correct?
13   A    Correct.
14   Q    And you knew that the user name or at least one of
15   the user names for the person that went into the Welcome
16   to Video website was notus52911?
17   A    Correct.
18   Q    So 52911 is tied to the Welcome to Video server.
19   529911@Gmail.com was examined and tied to Dropbox;
20   correct?
21   A    Correct.
22   Q    And also appeared on the Alienware computer;
23   correct?
24   A    Correct.
25   Q    And Dropbox might hold child pornography?

CROSS-EXAMINATION OF TAVEY GARCIA

1    A    It could.

2    Q    And Dropbox might put in somebody's name; correct?

3    A    Yes.

4    Q    Yet you didn't feel the need to subpoena the

5    Dropbox account?

6    A    The evidence didn't lead us that direction, so

7    there was no indication that any child pornographic files

8    had that Dropbox in a file path, so no.

9    Q    But whoever is using notus52911@gmail.com may have

10   opened a Dropbox account in their name; correct?

11   A    It's possible.

12   Q    And maybe storing child pornography in that name,

13   in that Dropbox?

14   A    The evidence in this case didn't indicate that

15   child pornography was stored, which is why I didn't

16   proceed with the subpoena.

17   Q    But you know things can be moved in the Onion

18   router; correct?  So there could be files moved into that

19   Dropbox account that you can't trace, but you already know

20   52911 is related to child pornography; correct?

21   A    Files can be uploaded into Dropbox from anywhere

22   in the world by anyone in the world, so without the

23   evidence telling me that there is criminal activity going

24   into that Dropbox account, I wouldn't necessarily go there

25   for -- I didn't have a reason in this case to look at that

1  Dropbox account.  There was no indication that files were

2  uploaded to that account.

3      Q    But if they can be uploaded secretly, you wouldn't

4  know, correct, through Tor?

5      A    They could be uploaded from anywhere in the

6  world to -- from anyone in the world and from anywhere in

7  the world.

8      Q    And in getting the Dropbox account would let you

9  know whose name it's in; correct?

10     A    Correct.

11     Q    And Dropbox also allows you to attach other

12 devices; correct?

13     A    Dropbox is a storage device.  So any device could

14 access a Dropbox account, so it would be like a Dropbox,

15 if you look at it, it's -- it would be kind of like email.

16 So if you had anybody with an email address, you can

17 access it from your phone, from your computer, from your

18 tablet, from whatever device, so any device can access

19 Dropbox.

20     Q    So if that Dropbox account is in my name, we'll

21 see, and I want to hook up my phone to it, I make it so my

22 phone can access that Dropbox account; correct?

23     A    You don't make it so the phone can access it.  You

24 access it by account, so if you gave me your account or

25 any member in this room your account, any person can

1    access it based on the account, not based on the device.

2        Q    But it would be linked.  Because if I want to

3    share things up to that Dropbox, there's a link; right?

4        A    There's a Dropbox link, yes.

5        Q    So if I want to link my phone to the Dropbox

6    account so I can share things, there's a link preserved in

7    Dropbox; correct?

8        A    You don't link a device.  It would be like a link

9    for a URL, so if you gave me the URL for your Dropbox,

10   then I could access it on any device.  You're not linking

11   any particular device.  You're using a device to access

12   the link.

13       Q    It would be a record that my phone was shared to

14   the Dropbox, in contact with the Dropbox; correct?

15       A    There would be a record that the IP connected with

16   that Dropbox, not your device.

17       Q    You didn't get the name of the user for the

18   Dropbox?

19       A    I did not.

20       Q    Did you look at Mrs. Dove's phone on the day of

21   the search warrant to see if she had a link to the Dropbox

22   account?

23       A    I did not.

24       Q    Do you know who did?

25       A    I do not.

CROSS-EXAMINATION OF TAVEY GARCIA

1    Q    And her phone wasn't seized on November 30th,

2    2018; correct?

3    A    Again, as I stated yesterday, there was some

4    phones seized and there was some phones returned.  I don't

5    know right now whose and what were seized and returned,

6    ultimately returned.

7         MR. FITZGERALD:  May I approach the witness.

8         THE COURT:  You may.

9    BY MR. FITZGERALD:

10   Q    I hand you what's been marked as Defendant's

11   Exhibit F for identification, if you could review that.

12   Do you recognize that?

13   A    I do.

14   Q    What is that?

15   A    That is a copy of our seized -- the items that we

16   seized from the residence.

17   Q    Okay.  And is that kept in the normal course of

18   your business?

19   A    Yes.

20        MR. FITZGERALD:  Your Honor, I'd like to move

21   Defendant's Exhibit F into evidence.

22        THE COURT:  Is there any objection?

23        MS. THELWELL:  Defendant's Exhibit F?  No, Your

24   Honor.

25        THE COURT:  All right.  Defendant's Exhibit F is

CROSS-EXAMINATION OF TAVEY GARCIA

1    admitted.

2   (Defendant's Exhibit F was admitted.)

3         MR. FITZGERALD:  May I approach the witness, Your

4    Honor?

5         THE COURT:  You may.

6   BY MR. FITZGERALD:

7     Q    Ms. Garcia, I'm going to review it with you from

8    here.  I'm going to review it with you.

9     A    Please.

10    Q    If at any time, you can't see it, please tell me.

11        So this is from the U. S. Department of Homeland

12   Security standard form for a search warrant?

13    A    Not for a search warrant.  It's a standard form

14   for a seizure.

15    Q    For a seizure.  I'm sorry.

16        And in this form, you have the address 721 Powder

17   Horn Row, and there's a list of items that were seized;

18   correct.

19    A    Yes.

20    Q    The first is a two terabyte hard drive from Room

21   J?

22    A    Yes.

23    Q    The second is laptops Toshiba?

24    A    Yes.

25    Q    Apparently two?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF TAVEY GARCIA

1    A    Yes.

2    Q    Is that what that means when it says two there?

3    A    Quantity two.

4    Q    A Hitachi HD, is that hard drive?

5    A    Yes.

6    Q    A W/D storage device.  What does that mean?

7    A    I believe that would be a Western Digital storage

8    device, but I could be mistaken.

9    Q    A Samsung tablet, and an Apple laptop; correct?

10   A    Yes.

11   Q    CDs, those are like CDs?

12   A    Yes.

13   Q    HP desktop computer?

14   A    Yes.

15   Q    A laptop and card.  Do you know what kind of

16   laptop that was?

17   A    I do not.

18   Q    Thumb drives and bag.  Thumb drives, and it says

19   bag.  Is that bag?

20   A    It's one bag containing two thumb drives.

21   Q    And then a Samsung phone; is that correct?

22   A    Yes.

23   Q    Is that everything that was seized?

24   A    On this seizure.  There was several items that

25   were seized on consent and they're not indicated on here

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF TAVEY GARCIA

1   because they were seized on consent from the party.

2       Q   Okay.  Do you recall what was seized on consent?

3       A   There was some phones and I believe a tablet.

4       Q   Was Melissa Dove's phone seized on consent?

5       A   I don't recall.

6       Q   Moving forward in this document, on the third page

7   they're not numbered, but then it says Homeland Security

8   Investigations, it says Room B; correct?

9       A   Yes.

10      Q   And it says description, "CDs, location found on

11  desk in dresser."  What does that mean, M Room?

12      A   It would be the master bedroom.

13      Q   And dresser?

14      A   Dresser somewhere in, on or within the dresser.

15      Q   That's where some CDs were found; correct?

16      A   Yes.

17      Q   And then it says found by, date and time, and that

18  wasn't filled out?

19      A   No.

20      Q   Are these little slips, is this like -- does a

21  person doing the search go in with a half a slip and when

22  they find something they fill it out?

23      A   Yes.  Our seized property specialist is on scene.

24  They're the ones -- she is the one who handles all the

25  evidence when it comes in.  She actually fills these forms

CROSS-EXAMINATION OF TAVEY GARCIA

1    out from the person who is handing her whatever device
2    after it's been found, so this way she keeps a record, and
3    if it's maintained in our custody, the sheet stays with
4    the device as it goes through the process.  If it's not
5    maintained in our custody, then the sheet is disposed of.
6    It's a working document.
7        Q    And who was your property specialist on
8    November 30th of 2018?
9        A    I believe it was SPS, Seized Property Specialist
10   Lorraine Zizzo.
11       Q    Zucco?
12       A    Zizzo.
13       Q    Zizzo, thank you.  And moving forward to Exhibit
14   B.  Now, would you agree this is the first place we see
15   the word thumb drive in any of these -- I should have
16   asked you beforehand.  Let me start again.  I apologize.
17       A    Thank you.
18       Q    We've got CDs, HP desktop; correct?
19       A    Correct.
20       Q    And a desktop Mr. Chakwin said he found it;
21   correct?
22       A    The seized property specialist writes on these
23   forms, so Mr. Chakwin wouldn't have wrote that SPS cert.
24       Q    He finds it and he brings it to her and she writes
25   down his name?

CROSS-EXAMINATION OF TAVEY GARCIA

1      A    Correct.

2      Q    Then the next one is a Samsung tablet.  There's no

3  record of who found it.  It says, "top cabinet" in the

4  record of what cabinet; correct?

5      A    Correct.

6      Q    And the next one is an Apple laptop, main bedroom.

7  No record of who found it; correct?

8      A    I'm sorry.  I can't see below.

9      Q    Excuse me?

10     A    My screen doesn't allow me to see that there's no

11  person.

12     Q    I'm sorry?

13     A    That is correct.  Thank you.

14     Q    It's not your screen.  It's me.  The next is a

15  Toshiba laptop found by Jose.  Doesn't say where; correct?

16     A    Correct.  It says Room J.  It doesn't say where.

17     Q    Excuse me?

18     A    It does indicate what room it was found, but not

19  the location.

20     Q    Room J.  Okay.  Let me go to that.

21          When you do a search warrant, you guys slap or

22  place a piece of tape and a paper on every door and you

23  label them A, B, C, D; right?

24     A    Correct.

25     Q    When it says a room number, that's been identified

CROSS-EXAMINATION OF TAVEY GARCIA

1    as J?

2        A    J.

3        Q    And you make a matching hand drawn sketch of the

4    layout of the place you're searching and make a label you

5    can cross-reference; correct?

6        A    Correct.

7        Q    So within J, though, when it says found by Jose,

8    Jose should at least tell the tech, the specialist, and

9    she should indicate where in J it was found; correct?

10       A    Correct.

11       Q    Same thing, the Hitachi hard drive in J by Jose,

12   but it doesn't say where; correct?

13       A    Correct.

14       Q    A laptop card from -- is that B?

15       A    B, yes.

16       Q    M bedroom, doesn't say where; correct?

17       A    Correct.

18       Q    Again, in Room J, there's a two terabyte hard

19   drive by Jose.  Doesn't say where, but it does have the S

20   number.  Is that like a serial number?

21       A    I would believe that would be the serial number.

22       Q    Room F, they found a storage device, a W/D storage

23   device with a serial number.  Chakwin apparently found it

24   and he claims he found it on the entertainment center;

25   correct?

CROSS-EXAMINATION OF TAVEY GARCIA

1    A    Correct.

2    Q    Now, moving down, Room B, they found a thumb

3   drive.  M Room, I assume that's master bedroom?

4    A    I believe so, yes.

5    Q    And B.  So it doesn't say who it was found by nor

6   does it say where it's found; correct?

7    A    Correct.

8    Q    But it doesn't also say what thumb drive was

9   found?

10    A    It does not.

11    Q    There's no description.  The next is a Galaxy Note

12   8 was found, and it's found on top of the bed, I guess in

13   Room B; correct?

14    A    Correct.

15    Q    And doesn't say who, but it does say it was found

16   on top of the bed.

17         Next goes another thumb drive, Room B, the master

18   bedroom, right, thumb drive, two each.  2EA, does that

19   mean there's two of them?

20    A    There's two of them.

21    Q    Master bedroom?

22    A    Correct.

23    Q    Found by doesn't say.  Doesn't say a location in

24   the master bedroom.  He already told us it's the master

25   bedroom, so this location doesn't help; correct?

CROSS-EXAMINATION OF TAVEY GARCIA

1      A    Correct.

2      Q    And it doesn't have a date.  So that we're up to

3    three thumb drives now; right --

4      A    Yes.

5      Q    -- on these half sheets?

6      A    Yes.

7      Q    Room B, again, the master bedroom, a thumb drive.

8    This one doesn't say who found it or the date, but this

9    says, "on plant shelf."

10         And you're the case agent, just so we're clear.

11   You get to sit in the trial because you're the case agent;

12   correct?

13     A    Correct.

14     Q    So you heard Special Agent, I always say his name

15   wrong, Gaertner?

16     A    He's a CFA, computer forensics analyst.

17     Q    Forensic Analyst, I'm sorry.  Gaertner?

18     A    Yes.

19     Q    You heard him testify that he actually observed

20   this being retrieved somewhere on the plant shelf;

21   correct?

22     A    Yes.

23     Q    And you actually previously testified in front of

24   a grand jury; correct?

25     A    Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

CROSS-EXAMINATION OF TAVEY GARCIA

1    Q    You testified that this was found in the back of

2    the plant shelf and you testified to the grand jury;

3    correct?

4    A    Correct.

5    Q    And do you know whether those bags that were shown

6    in that picture under Exhibit 31 were present when you --

7    let me strike that.  Moving on.

8         So it doesn't identify what thumb drive was found.

9    It just said a thumb drive was found there?

10   A    Correct.  However, in this particular case, the

11   bag number that the thumb drive was put into is indicated

12   on that sheet.

13   Q    Okay.  So that would be indicated, the bag number?

14   A    Yes.

15   Q    Okay.  And, again, so we're clear, Forensic

16   Analyst Gaertner testified he was looking for a last thumb

17   drive?

18   A    Yes.

19   Q    He's saying he found that.  He's saying that's up

20   on that shelf, so we get that one right, but that's four

21   thumb drives; correct?

22   A    Correct.

23   Q    On the return they say thumb drive.  It is one

24   bag, quantity two.  Samsung phone.  So there's two thumb

25   drives; correct?

CROSS-EXAMINATION OF TAVEY GARCIA

1      A     Yes.

2      Q     No. 10.  A laptop, that's not a thumb drive.  HP

3    desktop.  That's not a thumb drive.  CD, that's not a

4    thumb drive.  Apple laptop, that's not a thumb drive.

5    Samsung tablet, that's not a thumb drive.  Western Digital

6    storage device isn't a thumb drive.  Hitachi HD isn't a

7    thumb drive.  Laptop Toshiba is not a thumb drive, and two

8    terabyte hard drive is not a thumb drive; correct?

9      A     Correct.

10     Q     So we have one less thumb drive on the receipt

11   than we do in the halfs; correct?

12     A     Correct.

13     Q     And of these two -- so we have this thumb drive

14   with two, and it's somewhere in the bedroom; and this

15   thumb drive with one, and it's somewhere in the bedroom.

16           Now, none of them identify them as the Infiniti

17   drive; correct?

18     A     Correct.

19     Q     Infiniti drive which is Exhibit 37; correct?  So

20   is there any way to tell which one of those three thumb

21   drives that the half sheets say were found where they were

22   found?

23     A     Not on the half sheets, no.

24     Q     Okay.  Do you know where those three thumb drives

25   were found?

REDIRECT EXAMINATION OF TAVEY GARCIA

1    A    Other than the master bedroom, the specific

2    location, no.

3    Q    And you heard testimony that Forensic Analyst

4    Gaertner believes that one was found in the bed frame?

5    A    That is correct.

6    Q    But that's one of the three, and we're not able to

7    identify which one of the three was found in the bed

8    frame; correct?

9    A    If I may, I actually found the one that was

10   stuffed in the headboard, but when we previewed it, it was

11   an empty thumb drive, so it was not one of the ones that

12   was seized.

13   Q    That one wasn't even seized?

14   A    Correct.

15       MR. FITZGERALD:  I have no other questions.  Thank

16   you.

17       THE COURT:  Thank you.  Ms. Thelwell, is there any

18   redirect?

19       MS. THELWELL:  One moment, Your Honor.

20                    **REDIRECT EXAMINATION**

21   BY MS. THELWELL:

22   Q    Yes.  Agent Garcia, you testified on

23   cross-examination just now that the SanDisk thumb drive

24   was found in the back of the shelf?

25   A    That was my understanding, yes.

REDIRECT EXAMINATION OF TAVEY GARCIA

1     Q     If we could pull up Government's Exhibit 31D.  If

2  you could indicate, and you have a touch screen, where on

3  this shelf where was it found, the SanDisk thumb drive?

4  It is a little sensitive or non-sensitive, but basically

5  it looks based on the marks that you are indicating it is

6  tucked away in the corner closest to the room entrance; is

7  that correct?

8     A     That is correct.

9     Q     On the right side of what appears to be a black

10 bag?

11    A     Yes.

12    Q     And when you say it was in the back, where exactly

13 was it in that area that you just have drawn a circle

14 around?

15    A     My understanding is that in that room there was --

16 it's a shelf wall, so it does have an endpoint.  It was in

17 the back corner of that shelf wall on the side.  You can't

18 really see it, but it rested against the back of the wall

19 towards the back of the shelf.

20         MS. THELWELL:  No further questions.  Thank you.

21         THE COURT:  All right.  Thank you.  You may return

22 to your seat.

23         THE WITNESS:  Thank you.

24         THE COURT:  Members of the jury, we are going to

25 break now for lunch.  It is 12:44.  We'll be in recess

REDIRECT EXAMINATION OF TAVEY GARCIA

1    until 1:45.  Your lunches have arrived.

2    (Jury out at 12:44 p.m.)

3              THE COURT:  All right.  Ms. Thelwell, is the

4    Government getting ready to rest its case?

5              MS. THELWELL:  Yes, Your Honor.

6              THE COURT:  And have you looked at the exhibits to

7    make sure that the clerk has all of the exhibits?

8              MS. THELWELL:  I will do that during the break.

9    We have been doing it throughout, but I haven't done it

10   since we started this morning.

11             THE COURT:  Okay.  And so then when we come back,

12   I will give Counsel an opportunity to make any arguments

13   to extent that you have any to make, and then,

14   Mr. Fitzgerald, will you be making an opening statement?

15             MR. FITZGERALD:  I'm sorry, Your Honor, may I

16   approach?

17             THE COURT:  Will you be making an opening

18   statement then?

19             MR. FITZGERALD:  Can I let you know when you came

20   back?

21             THE COURT:  You waived originally, so I wanted to

22   see if you plan to make one.

23             MR. FITZGERALD:  Can I let you know when I come

24   back?

25             THE COURT:  Yes.  And then your witnesses that you

1    will be calling?

2            MR. FITZGERALD:  Melissa Dove perhaps.  I need to

3    speak to him after what he observed and perhaps the

4    Defendant.

5            THE COURT:  Okay.  When will you let me know about

6    Mr. Dove?  Can you let me know when you come back from

7    lunch, so that if I need to -- because I conduct a

8    colloquy regardless of what they decide.

9            MR. FITZGERALD:  Good.

10           THE COURT:  So I'll need to do that in this case.

11   And so, again, the jury is coming back at 1:45.  We

12   will -- as I said, we will stop a little early today and

13   what we don't finish today, we'll finish tomorrow.  Okay?

14           MR. FITZGERALD:  Okay.

15           THE COURT:  Why don't you all plan to be back in

16   the courtroom by 1:30.

17           MR. FITZGERALD:  Okay.

18           THE COURT:  We're in recess.

19           MR. FITZGERALD:  Thank you.

20   (Lunch recess had 12:45.)

21   (Proceedings resumed outside the jurors' presence.)

22           THE COURT:  All right.  Counsel, are we ready to

23   resume?

24           MS. THELWELL:  Yes, Your Honor.

25           THE COURT:  And, Ms. Thelwell, does the Government

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   rest at this time?

2           MS. THELWELL:  We do, Your Honor.

3           THE COURT:  I'll let you rest again when I bring

4   the jury in, but I'm doing it now to the extent that Mr.

5   Fitzgerald has any motions, you can make them before I

6   bring the jury back.

7           MR. FITZGERALD:  Your Honor, I have a motion for a

8   Rule 29 judgment of acquittal.  We'd ask the Court to find

9   that no reasonable jury could find Mr. Dove committed the

10  offense as charged in Count One and Count Two based on the

11  evidence presented.

12          THE COURT:  Okay.  Thank you.  Response.

13          MS. THELWELL:  Yes, Your Honor.  The United

14  States' position is that the Government has made a prima

15  facie case, that a reasonable juror could find for the

16  United States as to Counts One and Two of the indictment,

17  Count One being receipt of child pornography in which the

18  United States has to prove beyond a reasonable doubt that

19  the Defendant knowingly received a visual depiction that

20  had been shipped or transported in interstate or foreign

21  commercial by any means including a computer.  The

22  production of the visual depiction involved the use of a

23  minor engaged in sexually explicit conduct.  The depiction

24  of a minor engaged in -- I'm sorry -- the depiction is of

25  a minor engaged in sexually explicit conduct, and the

1    Defendant knew that at least one of those performers in
2    the visual depiction was of a minor and knew that the
3    depiction showed the minor engaged in sexually explicit
4    conduct.
5              As the evidence has been introduced in this case
6    as well as witness testimony as well as physical evidence,
7    it has shown each and every element of this offense
8    beginning element number one, that the Defendant knowingly
9    received the visual depiction.  There's evidence that Mr.
10   Dove -- and I'll start there because that is the
11   contention.  The contention by Defense Counsel is that the
12   Government needs to be able to prove that Mr. Dove was the
13   user and operator of the notus and notus52911 accounts
14   found on the Welcome to Video website.
15             In reviewing the evidence in its totality, it is
16   clear that Mr. Dove was such user.
17             When we look at the Alienware laptop which is the
18   primary source of information in this case, it shows there
19   was a user history all related to Jack Dove.  There's no
20   indication that anyone else used that particular device.
21             What was interesting is CFA Gaertner testified on
22   here about was on scene during the forensic preview of
23   that device.  He was alerted that there may be an
24   additional thumb drives somewhere within the residence
25   containing child pornography based on the information that

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    he was seeing in the forensic preview that indicated there

2    were potential, quote unquote, link files, .LNK files,

3    located on a thumb drive labeled MISC.

4           Agent or CFA Gaertner's insistence they continued

5    to look, located that thumb drive on the upper ledge of

6    Mr. Dove's master bedroom.  When they did do a forensic

7    analysis of that device, lo and behold they found 39 child

8    pornographic videos, one of which was age difficult.

9           When those videos were compared to the videos --

10           THE COURT:  One of which was what?

11           MS. THELWELL:  I'm sorry?

12           THE COURT:  You said one of which was?

13           MS. THELWELL:  Age difficult I believe is the word

14    I used.

15           THE COURT:  Uh-huh.

16           MS. THELWELL:  When they compared the hash values

17    to those videos, 33 of them were an exact match from the

18    website, meaning they would have been received onto that

19    thumb drive on or about March 7th, 2017 as testified to by

20    the forensic analyst as being received from that website

21    and on to the thumb drive.

22           Now, when we look at the information that points

23    to Mr. Dove as being the user of that account, we saw and

24    heard from Agent Franklin who went undercover to discover

25    how this particular website operated.  You have to create

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    a user account.  At first it's free, but if you want to

2    download and keep any of the videos that are child

3    pornographic, you have to pay for membership, and in order

4    to do so you have to do it with Bitcoin.

5         Well, the evidence shows that on Mr. Dove's

6    Alienware laptop beginning on or about 11, so

7    November 15th of 2016, he's researching about Coinbase.

8    He's researching about The Onion Router, which we know is

9    the Dark Web, and it's the only browser or the primary

10   browser I should say used to gain access to the Dark Web

11   where the Welcome to Video was located.

12        And on that the very next day, November 16th is

13   the day that he created a couple of things.  It's the day

14   that he created his Coinbase account.  It's the day that

15   he created his Gmail account in the name of

16   notus52911@gmail.com which has the same prefix as all of

17   the four counts found on the Welcome to Video website.

18        Now, how do we know that all of this is connected

19   to Jack Dove?  Well, when you look at the Coinbase

20   records, we heard testimony from multiple witnesses, but

21   primarily the expert witness in this case, James Daniels,

22   who testified Coinbase is a money service bank.  It's a

23   money service business, meaning that they have to follow

24   Federal regulations requirements as it relates to getting

25   to Know Your Customer.

1          They are required just like any other financial

2     institution to maintain certain records, specifically

3     demographics like your name, date of birth, your address,

4     your phone number, and they need to verify it.  It's not

5     just one thing to ask for, but they have to verify it.

6     And when we looked at the Coinbase record, it shows that

7     Mr. Dove's account was verified not once, but twice.  It

8     was first verified on the date that he created it when he

9     supplied them with a copy of his driver's license, and it

10    was subsequently verified on August -- on or about

11    August 7th of 2017.  And at that time, Your Honor, he

12    attempted to verify his account on multiple occasions.

13    The first time it failed.  The second time it was

14    successful because there was a face match.

15          Your Honor has seen the evidence or, sorry,

16    Exhibit 41B.  It's a picture of Mr. Dove sitting behind

17    his computer, presumably the Alienware laptop computer,

18    snapping a photo of himself to submit alongside his

19    driver's license which you can also clearly see him

20    holding and it's his hand.  And so that was then used to

21    verify his account.

22          When we looked at the financial records and

23    Mr. Daniels showed this jury and showed the court the very

24    first transaction where money was sent out of that

25    Coinbase account went directly to the Welcome to Video

1    website showing that it is Mr. Dove and Mr. Dove alone who

2    had access and was utilizing that Coinbase account for the

3    purpose of -- for one purpose, I should say, of accessing

4    that website with the intent to download and receive child

5    pornography.

6          As it relates to element number two, the depiction

7    was shipped or transferred in interstate or foreign

8    commerce.  This whole case is about the Internet, involved

9    the use of a computer.  We've seen pictures of the

10   computer and the hard drives associated and all of the

11   electronic storage devices all manufactured outside of the

12   state, outside of the United States.

13         As it relates to elements three, four and five,

14   it's apparent by looking at not only the titles of these

15   videos that are extremely graphic and described in most

16   instances the age range of the children involved and the

17   type of sex act that they're involved in, but the Court

18   had the opportunity to view small clips of some videos

19   that were retrieved from the SanDisk thumb drive found in

20   the Defendant's bedroom.  And in those clips you clearly

21   see prepubescent children, and in one instant a baby, a

22   toddler no more than two years old being forcibly

23   penetrated by an adult male.  And so it's clear that

24   elements three, four and five have been met.

25         As it relates to Count Two, possession, we also

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   heard testimony from CFA Gaertner, so in total there were

2   39 videos.  One was age difficult.  Three were exact

3   matches to the Welcome to Video website, so that means

4   there were six other videos on that thumb drive that he

5   reviewed and identified as being child pornographic based

6   on his training and experience.  We published to the Court

7   and the jury one of those exhibits which, again, was

8   graphic in nature, and just by looking at it, it is clear

9   that is a visual depiction of a lascivious exhibition of

10  the genitalia of minors engaged in sexual activity.  So

11  it's the Government's position that we have met -- we have

12  put on substantial evidence to submit this case to the

13  jury and that a reasonable juror could find in favor of

14  the Government for both of the counts.

15          THE COURT:  Okay.  Thank you.  Final comments from

16  the moving party.

17          MR. FITZGERALD:  Yes, Your Honor.  The bottom line

18  is the Government presented no evidence that this

19  individual downloaded child pornography or possessed child

20  pornography.  It's in a home.  There's no showing he had

21  any knowledge.  It was in a home, and there's no showing

22  of who was behind the computer at the time the child

23  pornography was downloaded, and despite the fact the

24  computer having the name J. Dove, it doesn't mean that

25  Jack Dove was sitting behind the computer at the time.

1          THE COURT:  Okay.  Thank you.  With regard to the

2    Defendant's motion under Rule 29 of the Federal Rules of

3    Criminal Procedure, the Court is going to deny the motion

4    for judgment of acquittal as to both counts, Count One,

5    the receipt of child pornography, and Count Two, the

6    possession of child pornography as the evidence before the

7    Court indicates that it is sufficient for the jury to

8    sustain a conviction in this case of the charged offenses.

9    And the Court has considered the evidence in the light

10   most favorable to the Government, and in looking at the

11   elements of each count, Count One, the receipt of child

12   pornography, the Defendant knowingly received a visual

13   depiction.  The depiction was shipped or transported in

14   interstate or foreign commerce by any means including

15   computer; three, producing the visual depiction involved

16   using a minor engaged in sexually explicit conduct; four,

17   the depiction is of a minor engaged in sexually explicit

18   conduct; and, five, the Defendant knew that at least one

19   performer in the visual depiction was a minor and knew

20   that the depiction showed the minor engaged in sexually

21   explicit conduct.

22          Again, while there's no, I guess, evidence as

23   Mr. Fitzgerald contends that would be direct, in other

24   words, no one came in and actually saw Mr. Dove sitting

25   watching these child pornographic videos or receiving them

1   or possessing them, clearly the Government has established

2   by circumstantial evidence a line of evidence that

3   indicates that J. Dove was the individual who received and

4   possessed the child pornographic videos.

5          And so as you all know, circumstantial evidence is

6   just as sufficient to convict as is direct evidence, and

7   because the Government has met its burden and there is

8   sufficient evidence from which the jury could convict

9   Mr. Dove of these charged offenses, the Court must deny

10  the motion for summary judgment, and likewise with regard

11  to Count Two, the elements of which are that, number one,

12  the Defendant knowingly possessed the visual depiction;

13  two, the depiction had been shipped or transported using

14  any means or facility of interstate or foreign commerce

15  including by computer; three, producing the visual

16  depiction involved using a minor engaged in sexually

17  explicit conduct; four, the depiction is of a minor

18  engaged in sexually explicit conduct; and, five, the

19  Defendant knew that at least one performer in the visual

20  depiction was a minor and knew that the depiction showed

21  the minor engaged in sexually explicit conduct, so the

22  elements for the most part are pretty much identical

23  except for the first count.  It's received the visual

24  depiction.  As to Count Two, it's possessed the visual

25  depiction, and the same evidence is sufficient for both

1    counts in this case and so the motion is denied.

2         All right.  So, Mr. Fitzgerald, have you made a

3    decision with regard to opening statement?

4         MR. FITZGERALD:  Yes, Your Honor.  We're just

5    going to call a witness after the Government rests.

6         THE COURT:  Okay.  And it's Ms. Dove, and then

7    your expert or Ms. Dove?

8         MR. FITZGERALD:  We're going to call Melissa Dove.

9         THE COURT:  All right.  Then we are ready for the

10   jury to be brought in.

11        MS. THELWELL:  Wait, Your Honor, I'm sorry.  I do

12   think that -- I don't know what Ms. Dove is going to

13   testify to.  I can only surmise, and I think that she

14   probably should be colloquied.  Number one, she maybe

15   making otherwise privileged statements based on the

16   marital privilege.  And, number two, she may make

17   statements that may perjure herself.

18        Again, I have no proffer what her testimony is

19   going to be.  My assumption is her statements may be

20   perjure herself.

21        THE COURT:  Response, Mr. Fitzgerald?

22        MR. FITZGERALD:  Can we do sidebar, Your Honor?

23   (Bench conference begins.)

24

25        MR. FITZGERALD:  Your Honor, I don't know what

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    she's going to say either.  I have an idea what she's

2    going to say.  I haven't interviewed her.  I have some

3    documents I want her to identify that I think were part of

4    her email chain that contain information that's relevant

5    to the case including email addresses that are similar to

6    the one that went to the server.

7         I also have her phone in my understanding the

8    agents left at the scene.  My understanding in looking at

9    the passwords on the phone is that she had a password for

10   the Dropbox account, and I want to have her look at that.

11        I also have on her phone passwords for Chaturbate.

12   I believe she is the individual that was going on

13   Chaturbate that we heard about earlier from Forensic Agent

14   Gaertner.  But I haven't spoken to her.  I'm not sure

15   exactly what she's going to say by any stretch.  I'm just

16   issuing a subpoena and part of the reason is no opening

17   statement.

18        THE COURT:  Ms. Thelwell, you said she may perjure

19   herself.  I take it from your statement then she was

20   interviewed at the time of the search warrant, so is it

21   your concern that she may provide testimony that's

22   inconsistent with any previous statement she's already

23   given to the United States?

24        MS. THELWELL:  Yes, Your Honor.  Additionally, I'm

25   trying to understand the relevance of her testimony.

1    Right?  Is this because Dropbox, it's incidental to the

2    evidence found in the Alienware laptop?  The primary

3    evidence in this case is coming from the SanDisk thumb

4    drive as well as the Alienware laptop, so her statements

5    about Dropbox, you know, I think they are more in the

6    outskirts of the case, but if she's going to testify to

7    try and insinuate that or at least put forth testimony to

8    insinuate that she's the user of the notus52911 account,

9    yeah, she'd be committing perjury.

10         She told Agent Garcia she doesn't use the Dark

11   Web.  She's told Agent Garcia she's never used -- well,

12   let me correct that.  I don't think she said never, but

13   that she does not use Mr. Dove's Alienware laptop.  She's

14   told Agent Garcia that she doesn't have access to his

15   passwords.  He on the other hand has access to all of her

16   passwords.  She's made numerous statements, and so I just

17   don't --

18         THE COURT:  Why is there any need for me to advise

19   her as to perjury any more so than any other witness?  I

20   mean she should be aware of her interview with law

21   enforcement, and I don't typically advise any witness

22   before they take the stand that they're subject to

23   perjury.  I think the marital privilege may be a more

24   important concern if she is not aware of that.

25   Mr. Fitzgerald, is she aware that she may have a privilege

1    in this case?

2         MR. FITZGERALD:  Again, Your Honor, I haven't

3    discussed it with her.  I haven't discussed -- I don't

4    know.  I know she carries the privilege, but I don't know

5    if she's aware of the privilege or not.  I haven't

6    interviewed her.

7         THE COURT:  Okay.  So let's get back to the

8    perjury.  I mean, I don't know why there's any need to

9    treat her differently from any other witness coming in to

10   testify as it relates to perjury.

11        MS. THELWELL:  Okay.

12        THE COURT:  Because many people that testify have

13   given a statement to law enforcement and I don't tell them

14   if you come in here and say something contrary to what you

15   told law enforcement you may be committing perjury.  That

16   should be understood because she's going to take an oath

17   and she's going to swear to tell the truth.

18        Now, I am a little bit more concerned with regard

19   to the marital privilege issue, and quite honestly, I need

20   to probably get some research on that because it's a

21   little different in Federal court, so let me get my cases

22   brought up.

23        Were you going to say something, Mr. Fitzgerald?

24        MR. FITZGERALD:  I was just going to find some

25   cases that I already pulled.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Okay.  Well, if you have them, great.

2     Given me the cite for them.  I had a trial recently and

3     the wife testified and I had to -- we had to do some

4     research with regard to that, but if you have them, that

5     will help with that issue, to the extent she testifies

6     with regard to what may be privileged matters.  So we

7     could go back, take off our headsets and I will end the

8     sidebar and then, Mr. Fitzgerald will give me the cites

9     that he has.

10  (Bench conference concluded.)

11          MR. FITZGERALD:  One which is probably a great

12    jumping off point is 260 F.3d Page 1295, it's Donna

13    Singleton versus United States.

14          THE COURT:  260 F.3d 1295.  Okay.

15          MR. FITZGERALD:  Yes, Your Honor.

16          MS. THELWELL:  260 F.3d what?

17          MR. FITZGERALD:  1295.

18          THE COURT:  Mr. Fitzgerald, so my assumption is

19    that Mr. Dove and his wife are still living together?

20          MR. FITZGERALD:  They are still a couple, Your

21    Honor.  Because he's on conditions of release with regards

22    to the children, he lived in -- his mother and him are

23    living together in the house that the search warrant was

24    conducted with his wife and family.  He moved into his

25    mother's old house where he still remains and the family

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   sold the house because he hasn't been able to work for the

2   case has been going on for two years.  His wife moved back

3   to Jacksonville for family support financially, however,

4   they are still a couple.

5           THE COURT:  So they are not then separated?

6           MR. FITZGERALD:  They're not separated.  They just

7   don't live together in part because of the conditions of

8   release and in part because of financial for her.

9           THE COURT:  So they're not living physically

10  together.

11          MR. FITZGERALD:  That's just the most recent

12  Eleventh Circuit case I found, Your Honor.

13          THE COURT:  Right.  This is one of the ones that I

14  found in my other -- when I was looking at the issue for

15  my civil trial.  And, Mr. Dove, because he is calling her

16  it clearly cannot be said to object to her testimony; is

17  that correct?

18          MR. FITZGERALD:  Yes, Your Honor, at the beginning

19  I had the Court inquire on the record.

20          THE COURT:  Okay.  Of your client?

21          MR. FITZGERALD:  Yes.

22          THE COURT:  Okay.  I will.

23          Madam Clerk, please place Mr. Dove under oath.

24          COURTROOM DEPUTY CLERK:  Sir, please rise and

25  raise your right hand.

1  (Defendant sworn.)

2      THE DEFENDANT:  I do.

3      COURTROOM DEPUTY CLERK:  Please state your name

4  for the record and spell your last name for the record.

5      THE DEFENDANT:  Jack R. Dove, III.

6      COURTROOM DEPUTY CLERK:  Spell your last name.

7      THE DEFENDANT:  D-O-V-E.

8      COURTROOM DEPUTY CLERK:  Thank you.

9      THE COURT:  All right.  Mr. Dove, we have been

10  talking about a privilege that is enjoyed by married

11  couples and so I want to make sure before your wife takes

12  the stand, and I'm going to inquire of her too outside the

13  presence of the jury.  First, I want to make sure that it

14  is your request or your desire that she provide testimony

15  to the Court this afternoon and to the jury.  Do you

16  wish -- do you desire for your wife to testify in this

17  proceeding?

18      THE DEFENDANT:  Yes, Your Honor.

19      THE COURT:  Then -- and I ask that because you can

20  object and assert the privilege if that's your preference.

21  It's your privilege, and then I'll also inquire of her.

22  But a Defendant can assert the privilege to prevent his or

23  her spouse from testifying.

24      THE DEFENDANT:  She'll be warned, Your Honor.

25      THE COURT:  I will let her know as well.

1        THE DEFENDANT:  Okay.  Thank you.

2        THE COURT:  But right now I want to just focus on

3    you and make sure that you are not asserting a privilege

4    that you indeed want her to testify.

5        THE DEFENDANT:  Yes, I do, Your Honor.

6        THE COURT:  Okay.  And have you had an opportunity

7    to discuss this issue with your attorney?

8        THE DEFENDANT:  I'm sorry?

9        THE COURT:  Have you had an opportunity to discuss

10   this subject matter, this area with your attorney?

11       THE DEFENDANT:  I have, Your Honor.

12       THE COURT:  Counsel, anything else of Mr. Dove?

13   Mr. Fitzgerald?

14       MR. FITZGERALD:  Your Honor, can you inquire just

15   for the record that I don't know what this witness is

16   going to say, and as an attorney in a criminal matter, I'm

17   not comfortable at all in calling somebody when I don't

18   know what they're going to say.  Because with every

19   witness you make that cost benefit analysis in calling

20   them, so can you inquire on that, just so he's clear?

21       THE COURT:  Inquire of Mr. Dove about what she's

22   going to say, though?

23       MR. FITZGERALD:  That he understands that I have

24   not interviewed her.  I am not saying this is good or bad.

25   I don't know.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1              THE COURT:  All right.  Mr. Dove, you've heard
 2    Mr. Fitzgerald has indicated to the Court that he has not
 3    had an opportunity to interview your wife regarding her
 4    testimony as he normally would before a witness is called
 5    to the stand.  Given the fact that he hasn't interviewed
 6    her, are you still -- is it still your request that she be
 7    allowed to testify?
 8              THE DEFENDANT:  Yes, Your Honor.  She refused me
 9    as well.  Mr. Fitzgerald advised me not to.
10              THE COURT:  Okay.  I didn't understand.  She
11    refused what?
12              THE DEFENDANT:  To tell me any information either.
13    I don't --
14              THE COURT:  Okay.  She didn't --
15              THE DEFENDANT:  It's her decision.  She needs to
16    make it.
17              THE COURT:  She didn't tell you what she was going
18    to talk about?
19              THE DEFENDANT:  No.  She just said that she wanted
20    to come up here.  I told her that it was probably a bad
21    idea.  I want to leave the decision up to her.  I just
22    would ask that she be notified of her rights.  I'm okay
23    with it.
24              THE COURT:  Okay.  All right.  And so you
25    understand, as I said, that Mr. Fitzgerald is
```

1    uncomfortable with calling her as a witness because he has

2    not spoken to her before today, before her testimony

3    today.

4            THE DEFENDANT:  Yes.  I mean he's seen her in the

5    passing and he might have said hi, but he's never spoken

6    to her about the case.

7            THE COURT:  Can somebody bring Ms. Dove in,

8    please?

9    (Proceedings had outside the presence of the jury.)

10           MR. FITZGERALD:  Have her approach, Your Honor.

11           THE COURT:  Ms. Dove, come forward.  You can come

12   to the lectern.  All right raise your right hand.  The

13   clerk is going to put you under oath clerk.

14   (Ms. Melissa Dove sworn.)

15           COURTROOM DEPUTY CLERK:  Please state your name

16   for the record and spell your last name for the record.

17           MS. DOVE:  It's Melissa Dove, and it's D-O-V-E.

18           COURTROOM DEPUTY CLERK:  Thank you.

19           THE COURT:  All right.  Ms. Dove, I have asked to

20   have you come in before I bring the jury back in to the

21   courtroom because I need to ask some questions of you.  My

22   first question is are you still married to Mr. Dove, the

23   Defendant?

24           MS. DOVE:  Yes.

25           THE COURT:  And are there -- is this case where

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    your marriage is still intact?  Are there plans for

2    divorce, in other words, or are you all still cohabiting

3    as a married couple?

4            MS. DOVE:  We are still a married couple, yes.

5            THE COURT:  No divorce papers have been filed at

6    this point?

7            MS. DOVE:  No.

8            THE COURT:  I understand that you all may be

9    physically living in separate residences.  Is that the

10   case?

11           MS. DOVE:  Yes.

12           THE COURT:  Where are you living?

13           MS. DOVE:  I'm living with my parents.

14           THE COURT:  Is that in Tampa?

15           MS. DOVE:  No, it's in Palm Coast.

16           THE COURT:  Okay.  Where is Mr. Dove living?

17           MS. DOVE:  In Lakeland.

18           THE COURT:  In Lakeland.  Okay.  And before you

19   provide testimony, I want to make sure that you are aware

20   that we do recognize, and by we, I mean we the courts, the

21   Federal courts recognize marital privileges, marital

22   communications privilege.

23           There are two privileges that the Federal courts

24   recognize, and so I want to make sure that you understand

25   that if you don't want to testify in this proceeding you

1    do not have to testify with regard to this case, and I

2    tell you that because I know that Mr. Fitzgerald has not

3    had an opportunity to discuss this with you and he doesn't

4    represent you, and so the Court has an obligation to make

5    you aware of the fact that because of the marital

6    privilege, you do not have to testify in this proceeding.

7    Do you understand that?

8            MS. DOVE:  I understand.

9            THE COURT:  Do you still wish to testify in this

10   case?

11           MS. DOVE:  I do.

12           THE COURT:  Has anybody forced or threatened you,

13   pressured you to get you to testify in this case?

14           MS. DOVE:  No, ma'am.

15           THE COURT:  Are you testifying because it's your

16   desire to do so?

17           MS. DOVE:  Yes.

18           THE COURT:  And do you understand that by

19   testifying then, and I don't know what the nature of your

20   testimony is, but questions may be asked of you regarding

21   communications between you and your husband.  Do you

22   understand that?

23           MS. DOVE:  I understand.

24           THE COURT:  Okay.  And that if you testify an

25   argument can be made that you're waiving the privilege to

1    withhold that testimony.  Do you understand that?

2            MS. DOVE:  Yes.

3            THE COURT:  Okay.  All right.  Counsel, do you all

4    have any questions of Ms. Dove regarding this issue?

5            MS. THELWELL:  No, Your Honor.

6            MR. FITZGERALD:  I have a question regarding the

7    marital privilege, Your Honor.

8            THE COURT:  Okay.

9            MR. FITZGERALD:  I believe Federally there's two.

10           THE COURT:  There are two.

11           MR. FITZGERALD:  One is she can refuse to testify

12   on the first privilege but there's a still confidential

13   communications privilege between the two of them that

14   exists.

15           THE COURT:  Talk into the microphone.

16           MR. FITZGERALD:  I'm sorry.  There's still a

17   confidential communication privilege between the two of

18   them that exists for just their conversations between one

19   another.

20           THE COURT:  Right.  There's a testimonial

21   privilege and there's a communications privilege.

22           MR. FITZGERALD:  Correct.  So she's not

23   necessarily waiving that.

24           THE COURT:  Waiving which one?

25           MR. FITZGERALD:  The second one, of the

 1    communication privilege between the spouses.

 2           THE COURT:  I don't know that because I don't know

 3    what her testimony is going to be.

 4           MR. FITZGERALD:  Yes, Your Honor.

 5           THE COURT:  So I mean I can't make that

 6    determination at this point.

 7           MR. FITZGERALD:  But getting on the stand doesn't

 8    simply waive it.

 9           THE COURT:  No, I agree.  Did you have any

10    questions of Ms. Dove?

11           MR. FITZGERALD:  No, I don't.

12           THE COURT:  Okay.  Then thank you, Ms. Dove.  You

13    may have a seat.

14           All right.  Counsel, is there anything before I

15    bring the jury in?

16           MS. THELWELL:  No, Your Honor.

17           MR. FITZGERALD:  No, Your Honor, just Ms. Thelwell

18    will rest and then I'll call a witness.

19           THE COURT:  Ms. Thelwell will rest, yes.  All

20    right.  And you said you're not going to make an opening

21    statement as I recall?

22           MR. FITZGERALD:  That's correct.  I'll just call a

23    witness.

24           THE COURT:  All right.  You may bring the jury in.

25    (Jury in at 2:15 p.m.)

1          THE COURT:  Ms. Thelwell, the Government may call

2     its next witness.

3          MS. THELWELL:  At this time, the United States

4     rests.

5          THE COURT:  Thank you.  Mr. Fitzgerald.

6          MR. FITZGERALD:  Your Honor --

7          THE COURT:  Does the Defendant wish to present any

8     witnesses?

9          MR. FITZGERALD:  Yes.  We would like to call

10    Melissa Dove.

11         THE COURT:  Okay.  Ms. Dove.  Members of the jury,

12    the United States has rested its case, and the Defendant

13    is now going to call Ms. Dove in this proceeding.

14         COURTROOM DEPUTY CLERK:  Please raise your right

15    hand, ma'am.

16  (Witness sworn.)

17         THE WITNESS:  Yes.

18         COURTROOM DEPUTY CLERK:  Please state your name

19    for the record and spell your last name for the record.

20         THE WITNESS:  It's Melissa Dove, and it's D-O-V-E.

21         THE COURT:  Thank you.  Be seated.

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1                      MELISSA DOVE,

2   having been first duly sworn under oath, was examined and

3   testified as follows:

4                   DIRECT EXAMINATION

5   BY MR. FITZGERALD:

6       Q    Good afternoon, Ms. Dove.

7            THE COURT:  Ms. Dove, you may remove your mask if

8    you would like or you can keep it on.

9            THE WITNESS:  Okay.  Thank you.

10  BY MR. FITZGERALD:

11      Q    Ms. Dove, do you know Jack R. Dove, III?

12      A    Yes.

13      Q    How do you know him?

14      A    He's my husband.

15      Q    And how long have you been married?

16      A    We've been married since 2011, so.

17      Q    And how long before you got married?  When did you

18   meet him?

19      A    I met him in 2008.

20      Q    And you dated from 2008 to 2011 when you got

21   married?

22      A    Yes.

23      Q    And you've been married ever since?

24      A    Yes.

25      Q    And you're currently married?

DIRECT EXAMINATION OF MELISSA DOVE

1  A    Yes.

2  Q    And on November 30th, 2018, were you living with

3  him at 721 Powder Horn Row?

4  A    Yes.

5  Q    And who else was living there?

6  A    My children and my mother-in-law and my husband.

7  Q    And what was your mother-in-law's name?

8  A    Her name was Sandra Guimond.

9  Q    And during the course of your relationship, did

10 you all have marital issues?

11 A    Yes.

12 Q    Did Mr. Dove have an affair that you became aware

13 of in 2016?

14      MS. THELWELL:  Objection, relevance.

15      THE COURT:  Relevancy, Mr. Fitzgerald.

16      MR. FITZGERALD:  Can I go sidebar, Your Honor?

17      THE COURT:  Yes.

18 (Bench conference begins.)

19      THE COURT:  Okay.

20      MR. FITZGERALD:  Your Honor, I anticipate that the

21 testimony will be that he had an affair in 2016 in

22 September, August, October, exactly when I'm not sure, and

23 that they had usual problems from that but that she had a

24 saying that "other people get divorced but not us," and

25 throughout this case the term "not us" notus is

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    everywhere.  The term will come from her or Mr. Dove, but

2    I don't know that other people get divorced but not us, I

3    anticipate will come from somebody, and notus52911 is not

4    us and their wedding date.

5              THE COURT:  Okay.  Anything further, Ms. Thelwell?

6              MS. THELWELL:  No, Your Honor.

7              THE COURT:  Okay.  The objection -- can you all

8    hear me?  The objection is overruled.

9    (Bench conference concluded.)

10   BY MR. FITZGERALD:

11       Q    Ms. Dove, did there come a time when you found out

12   that your husband had an affair?

13       A    Yes.

14       Q    Approximately when was that?

15       A    I believe it was 2016.

16       Q    Is that the summer or the fall of 2016?

17       A    It was at the end of 2016, yeah, October.

18       Q    And did it cause significant strain on your

19   marriage?

20       A    It did.

21       Q    Were the discussions all about getting divorced?

22       A    Yes, there were.

23       Q    Excuse me?

24       A    Yes, there were.

25       Q    All right.  You two stayed together; correct?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    A    I'm sorry?

2    Q    You stayed together?

3    A    Yes.

4    Q    And you are still currently married; correct?

5    A    Yes.

6    Q    On November 30th, 2018, were you at your home at

7    721 Powder Horn Row when a search warrant was executed?

8    A    I was not home when it was executed but I did

9    arrive home while it was happening.

10   Q    And you saw law enforcement at your home?

11   A    I did.

12   Q    And did you have contact with law enforcement?

13   A    Yes.

14   Q    Did they take or examine any electronic devices

15   that you had in your possession?

16   A    Yes, my phone.

17   Q    And what kind of phone was it?

18   A    An iPhone.

19   Q    After they took it, did they give it back to you?

20   A    No -- well, yes, they did eventually.

21   Q    When did they give it back to you?

22   A    They gave it back to me when I arrived back at my

23   house.  They left it on top of the search warrant on my

24   kitchen table.

25   Q    So you got it back the same day?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    A    I did.

2    Q    So how many hours did law enforcement have your

3    iPhone?

4    A    I would say maybe four, four-and-a-half hours.

5    Q    Do you have any games on your iPhone?

6    A    Yeah, a bunch.

7    Q    Do you have a game called Nebulous?

8    A    Yes.

9    Q    What is that?

10   A    It's a game -- it's a game where your -- I don't

11   know how to describe it.  You have a dot and you have to

12   eat other dots and get bigger, pretty much.

13   Q    Can you make your own dot?

14   A    Yes, you can.

15   Q    And design your own dot to play the game?

16   A    Yeah.

17   Q    And are there a name for those dots?

18   A    They're called skins.

19   Q    Skins, and the name of the game is Nebulous?

20   A    Yes.

21   Q    Referred to Neb Skins?

22   A    I believe so, yes.

23   Q    Have you created your own Neb Skins in the past?

24   A    Yes, I have.

25   Q    Are you familiar with a website called Chaturbate?

DIRECT EXAMINATION OF MELISSA DOVE

1    A    Yes.

2    Q    What is Chaturbate?

3    A    It's an on-line cam site where you can view other

4  People's webcams.

5    Q    Is it a paid site?  Is it a free site?

6    A    You can sign up for free but you could also pay.

7    Q    Did you have an account?

8    A    I did.

9    Q    Was yours a free account or a pay account?

10    A    I paid.

11    Q    How long were you on that account, on that

12  website?

13    A    I don't.  I couldn't give you an exact time.  I

14  don't remember, a while.

15    Q    Weeks, months, years?

16    A    I couldn't give you exact.  I mean the account --

17  I've had the account for I would say years.  I mean, can

18  you rephrase it?

19    Q    Do you know how long when you first started the

20  Chaturbate account?

21    A    I do not.  I cannot give you an exact date.

22    Q    Did you have it prior to 2015?

23    A    I don't remember.

24    Q    Did you have it in 2016?

25    A    Yeah.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    Q    Did you have it in 2017?

2    A    Yeah.

3    Q    And is there nudity involved in that site?

4    A    Yes.

5    Q    And when you pay, do you pay to see nudity or

6    to --

7    A    No.  You pay to just to tip and then there's games

8    and whatnot and they'll do things if you send them tokens.

9    Q    Have you used the logged in Chaturbate account at

10   your home?

11   A    Yes.

12   Q    Would you say you've done that between 2016 and

13   2017 numerous times?

14   A    Yes.

15   Q    Hundreds of times?

16   A    I can't give you an exact amount, but could be,

17   yeah.

18   Q    Do you know if Jack R. Dove had a Chaturbate

19   account?

20   A    He did not.

21   Q    I left some exhibits up at your witness stand.

22   Can you look at Defendant's Exhibit A for identification

23   and see if you recognize that?

24   A    Exhibit No. A.  Are these all the same thing?

25   Q    The left-hand corner is a yellow tab, it should

DIRECT EXAMINATION OF MELISSA DOVE

1    have an A on it.

2        A    Okay.

3            MR. FITZGERALD:  May I approach, Your Honor?

4            THE COURT:  You may.

5            THE WITNESS:  Okay.

6    BY MR. FITZGERALD:

7        Q    Do you recognize that?

8        A    Yeah.  This is a water bill.

9        Q    And is that a water bill that you received?

10       A    Yes.

11       Q    From Polk County?

12       A    Yep.  Yes.

13       Q    Is that where Powder Horn Row is located?

14       A    Yes.

15       Q    And do you keep that in your normal course of

16   affairs, bills that come in through your emails?

17       A    Yes.

18           MR. FITZGERALD:  Your Honor, at this time I move

19   Defendant's Exhibit A into evidence.

20           THE COURT:  Is there any objection?

21           MS. THELWELL:  Your Honor, if there could be

22   additional foundational basis as to Government's Exhibit

23   A, it appears to be a screen shot of someone's email

24   account, but there's no email address associated with this

25   exhibit.

DIRECT EXAMINATION OF MELISSA DOVE

1      THE COURT:  Defendant's Exhibit A.

2      MR. FITZGERALD:  Defendant's Exhibit A.

3      THE COURT:  Okay.  Why don't you lay the

4  predicate, ask the predicate question, Mr. Fitzgerald.

5  BY MR. FITZGERALD:

6      Q    Do you recognize that as a bill that you received

7  from Polk County utilities?

8      A    Yes.

9      Q    And does it have an email address affiliated with

10  you in the body of the bill?

11      A    Yes.

12      MR. FITZGERALD:  I move in Defendant's Exhibit A

13  into evidence, Your Honor.

14      THE COURT:  Is there any objection?

15      MS. THELWELL:  No, Your Honor.

16      THE COURT:  Defendant's exhibit A is admitted.

17  (Defendant's Exhibit A was admitted.)

18      MR. FITZGERALD:  May I approach and publish the

19  exhibit?

20      THE COURT:  Yes.

21  BY MR. FITZGERALD:

22      Q    Now, Ms. Dove, this is the utility bill and the

23  date is December 22nd, 2017?

24      A    Yes.

25      Q    And the payment I guess is $63.70?

DIRECT EXAMINATION OF MELISSA DOVE

1      A    Yes.

2      Q    The contact information has an email address

3    Mel.Dove@me.com?

4      A    Yes.

5      Q    Is that one of the email addresses that you have?

6      A    Yes.

7      Q    And this says issued for utility billing as an

8    account number, a credit card payment and card, but it has

9    the credit card holder as Jack R. Dove?

10     A    Yes.

11     Q    So this bill goes to under the name Jack R. Dove

12   although the email to you is from the utility company --

13     A    Yes.

14     Q    -- is that correct?

15     A    (Nodding head.)

16     Q    And the credit card is in the name Jack R. Dove?

17     A    Yes.

18          MR. FITZGERALD:  May I approach witness, Your

19   Honor?

20          THE COURT:  You may.

21   BY MR. FITZGERALD:

22     Q    I've handed you what's been marked as Defendant's

23   Exhibit B for identification which is -- do you recognize

24   that?

25     A    Yeah.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    Q    And is that a screen shot of an email you

2    received?

3    A    Yes, it is.

4    Q    And what is that email from?

5    A    Who is the email from?

6    Q    Yes, who is the email from?

7    A    It's a skin care.

8    Q    Do you keep those emails when you receive them in

9    your normal course of business?

10   A    I'm sorry.  Rephrase.  I didn't understand.

11   Q    Do you keep emails like that when you receive them

12   as part of your normal course of business?

13   A    Yeah.  They stay in the "inbox."

14        MR. FITZGERALD:  Your Honor, I've move Defendant's

15   Exhibit B into evidence.

16        THE COURT:  Is there any objection?

17        MS. THELWELL:  No, Your Honor.

18        THE COURT:  Defendant's Exhibit B is admitted.

19   (Defendant's Exhibit B was admitted.)

20        MR. FITZGERALD:  Move to approach the witness,

21   Your Honor.

22        THE COURT:  Yes.

23   BY MR. FITZGERALD:

24   Q    Defendant's Exhibit B, it appears to be that the

25   date is February 12th, 2015, Melissa Dove; correct?

DIRECT EXAMINATION OF MELISSA DOVE

1    A    Yes.

2    Q    And the work email address is

3    JandM52911@hotmail.com?

4    A    Yes.

5    Q    And it's for some type of Badescue Skin Care

6    Consulting; correct?

7    A    Yes.

8    Q    Is that an email that you often use

9    JandM52911@hotmail.com?

10    A    Yes.

11         MR. FITZGERALD:  May I approach the witness again,

12    Your Honor?

13         THE COURT:  Yes.

14    BY MR. FITZGERALD:

15    Q    Showing you what's been marked as Defendant's

16    Exhibit C, do you recognize that?

17    A    I don't remember it.

18    Q    Don't remember it?

19    A    No.  But I don't remember this, no.

20         MR. FITZGERALD:  Can I approach the witness, Your

21    Honor?

22         THE COURT:  Yes.

23    BY MR. FITZGERALD:

24    Q    I'm going to hand you what's been marked as

25    Defendant's Exhibit E.  Do you recognize that?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    A    Yes.

2    Q    What is that?

3    A    This is my iPhone.

4    Q    Is that the phone that was in your possession on

5    November 30th, 2018?

6    A    Yes.

7    Q    When the agents came to your home?

8    A    Yes.

9    Q    And I believe you said that law enforcement took

10   your phone for four to five hours that day; is that

11   correct?

12   A    Yes.

13   Q    Is that the phone they took?

14   A    Yes.

15   Q    On that phone are there -- is there a setting

16   section that allows for passwords and lead-up links to

17   certain websites and user pages?

18        MS. THELWELL:  Objection, Your Honor.

19        THE COURT:  Sidebar?

20        MS. THELWELL:  Yes, please.

21        THE COURT:  Ms. Thelwell.

22        MS. THELWELL:  Yes, Your Honor.

23   (Bench conference begins.)

24        MS. THELWELL:  Late last week Mr. Fitzgerald

25   advised me that he had some reciprocal discovery which

DIRECT EXAMINATION OF MELISSA DOVE

1   were in the form of these defense exhibits.  I did not

2   previously file any sort of objection to them.  After

3   reviewing the screenshots of them to wait to see what

4   would happen at trial, he was going to authenticate these.

5   As you can see, I have not objected to the screenshots as

6   the witness has been able to sufficiently identify them,

7   however, as it relates to the physical iPhone, that is not

8   something that the United States has had an opportunity to

9   review.  I mean the search warrant in this case was two

10  years ago.  I don't know what information has been added

11  to that phone between now and then.  The information that

12  this witness will be testifying to, there's no -- at this

13  point we don't have a way to forensically analyze the

14  information she's about to testify to to verify that that

15  information would have been there at the same time that

16  the agents had an opportunity to view that phone.

17       I think that the admission of this phone is

18  completely improper, not only is it late discovery and I

19  think it should be excluded.

20       THE COURT:  Response.

21       MR. FITZGERALD:  Yes, Your Honor.  First of all,

22  overriding all of this is the Fifth Amendment due process

23  clause.  There would be no chain of custody issue, no

24  authentication issue if they just seized every device when

25  they executed the search warrant.

DIRECT EXAMINATION OF MELISSA DOVE

1       The reason that this is going the way it is is

2   because the agents didn't seize every device.  They

3   decided which devices they would take and left other

4   information which one year, two years other people may

5   find pertinent information on if they had them, but they

6   didn't seize it.  Under Chambers versus Mississippi, I'm

7   at a severe disadvantage.  Secondly, I only became aware

8   of this in early March, and upon becoming aware of it, I

9   told Ms. Thelwell.

10       MS. THELWELL:  Apparently we can hear

11  Mr. Fitzgerald.

12       THE COURT:  Lower your voice, Mr. Fitzgerald.

13       MR. FITZGERALD:  I'm sorry.  Only became aware of

14  this in early March, and I told Ms. Thelwell, but I also

15  sent her a letter saying her expert can contact my expert

16  as they worked closely in the past and go onto the iCloud

17  account and we had the passwords and they could have

18  everything associated with this.

19       I understand there's an authenticity issue, but

20  it's not of my making.  It's of the Government's making,

21  because if they had just seized this, it would be in

22  evidence and there would be no authentication issue, and

23  as we have admitted a server from Korea which we didn't

24  see brought out of a house and the argument the Government

25  kept making it goes to weight, not admissibility.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

 1      THE COURT:  Well, the agent did see the server

 2   brought out of the house.  You didn't see it.  The

 3   testimony was that he did see it, but you saw a server

 4   brought out of the house.

 5      MR. FITZGERALD:  He saw something he could tell.

 6   It was dark I believe is what he said, and the issue that

 7   I had was that it all went to weight, not admissibility.

 8   I couldn't cross-examine any of the agents that the

 9   Koreans had done that, however, here if she is upset about

10   the -- or concerned about the chain of custody, she can

11   ask Ms. Dove if any of these passwords have been changed

12   but they can't leave evidence at the scene and then say I

13   can't authenticate it two years later because they left

14   it.

15      THE COURT:  Where are you going with this line of

16   questioning?

17      MR. FITZGERALD:  Where I'm going is there's --

18   there are three things on here that I would like to call

19   to the jury's attention.

20      THE COURT:  Three things on what?

21      MR. FITZGERALD:  On her phone under the settings

22   and password, that this phone has a password for

23   Chaturbate JandM52911 on the phone.

24      THE COURT:  Okay.

25      MR. FITZGERALD:  The Alienware computer that

DIRECT EXAMINATION OF MELISSA DOVE

1    Forensic Agent Gaertner testified to had somebody

2    searching Chaturbate and he said Chaturbate contains,

3    according to law enforcement, child pornography material.

4    This phone has a shortcut password for that in its

5    password settings for that website.

6         Since the computer, the Alienware was used to

7    access that website, which may or may not contain child

8    pornography, I think it's entirely relevant that another

9    individual in the home has a password for that website on

10   her phone.

11        THE COURT:  Anything else, Ms. Thelwell?

12        MS. THELWELL:  Your Honor, I just want to advise

13   the Court I received a letter dated March 16th, 2021 which

14   is four business days before the start of trial.  In that

15   letter Mr. Fitzgerald indicated that he was intending to

16   introduce four documents which were four emails -- well,

17   let me rephrase.  Four emails in a Twitter exchange.  He

18   indicated that his expert witness Mr. Dimitrelos located

19   documents on a Twitter account and on an iCloud account

20   that he had recently been given authorization to access.

21   He did ask or at least state that he can assist Justin,

22   who is Mr. Gaertner, in confirming these items if we

23   request; however, he goes on to say we do not view

24   Mr. Dimitrelos' testimony in locating these items as

25   expert testimony.

DIRECT EXAMINATION OF MELISSA DOVE

1        This letter all has to deal with Exhibits A

2   through D, not E.  There was no indication apart from the

3   exhibit list that I received that an iPhone would be

4   introduced in evidence.  He has an expert witness who has

5   the ability to perform extractions.  There could have been

6   an extraction done on the cellphone.  The Government could

7   have been provided with information containing whatever it

8   is that he is seeking to admit through this witness.

9        It's the Government's position, again, that it's

10   untimely and it should be excluded from the evidence.  It

11   should not be allowed to be brought in, and we asked for

12   reciprocal discovery at the initial arraignment two years

13   ago.  And so I understand Mr. Fitzgerald's argument in

14   that, you know, the Government left this behind at the

15   time of the search, but as Analyst Gaertner testified, the

16   electronic devices were previewed and this witness also or

17   this witness has already testified that at some point her

18   phone was seized by HSI consistent with what Analyst

19   Gaertner said for at least four hours before it was given

20   back to her, so that indicates that at the time that they

21   looked at her phone on scene there was nothing of

22   evidentiary value on that phone and they gave it back.

23        Now she has been sitting with this phone for two

24   years and it is just now being brought to the Government's

25   attention that it may contain some alleged exculpatory

DIRECT EXAMINATION OF MELISSA DOVE

1    information that we don't have an opportunity to verify

2    with forensic analysts.

3          THE COURT:  Well, I don't think he's offering --

4    you're not offering the phone in evidence, are you?

5    You're asking her questions about the settings on the

6    phone.

7          MR. FITZGERALD:  I'm asking her questions about

8    the settings and I want her to read in the settings are --

9    there's a Chaturbate account, and there's also a Dropbox

10   account, and the Dropbox is tied to notus52911.  That is a

11   Dropbox that the Government chose not to subpoena and she

12   had that on her phone.  I don't know what she's going to

13   say, but I assume she's going to say she had it on her

14   phone and on deck as far as November of 2018 when the

15   search warrant was executed, and I didn't have this phone

16   all this time.  You know, they left the phone in the hands

17   of a third-party, not my client, not me, and they didn't

18   seize it, so the two years isn't my fault or Mr. Dove's

19   fault.

20         THE COURT:  Okay.  Why don't you provide the

21   letter that Ms. Thelwell just read into evidence.  It

22   doesn't mention anything about a cellphone and I do

23   require reciprocal discovery.

24         MR. FITZGERALD:  Yes, Your Honor.  The exhibit

25   lists that it was a cellphone.  It's on my exhibit list.

DIRECT EXAMINATION OF MELISSA DOVE

1    I handed that exhibit list to Ms. Thelwell last week and I

2    told her I was going to try to introduce the iPhone.  This

3    information is available through iCloud.  It's both, so

4    because everything in the phone backs up into the Cloud,

5    my expert was going to be able to share with Justin if

6    they had called their expert all the information on the

7    iCloud account, so.

8         THE COURT:  But that still doesn't mean -- last

9    week does not comply with the reciprocal discovery

10   requirements.

11        MR. FITZGERALD:  The reciprocal discovery

12   requirements starts the day the case starts when we get

13   the discovery order and I have 14 days after they do it,

14   but I didn't have it in my possession.  If they seized it

15   it wouldn't have been a problem, but I didn't have it.  I

16   can't produce something that I don't have.

17        THE COURT:  When did you get it, Mr. Fitzgerald?

18        MR. FITZGERALD:  I have to check my notes.  I got

19   it in March.  I have to check my notes.  I got it, but I

20   hadn't -- when I got it, I had no access for a while

21   because you have to have a password.

22        THE COURT:  And you didn't provide any -- you

23   didn't give any advance notice to Ms. Thelwell other than

24   your exhibit list which was filed a couple days before

25   trial?

DIRECT EXAMINATION OF MELISSA DOVE

1    MR. FITZGERALD:  No.

2  (Bench conference concluded.)

3    THE COURT:  Members of the Jury, I'm trying to

4  resolve the issue between you and the attorneys.  We have

5  this loud noise in the headphones.  I'm going to ask the

6  CSO to take you into the jury room so I can resolve this

7  legal issue outside your presence.

8  (Jury out at 2:49 p.m.)

9    THE COURT:  Okay.  Mr. Fitzgerald, you were

10  advising the Court as to when you first learned that you

11  would be using this information related to Mrs. Dove's

12  cellphone.

13    MR. FITZGERALD:  Could I have one moment to check

14  my notes, Your Honor?

15    THE COURT:  Okay.

16    MR. FITZGERALD:  I don't know when I got the

17  phone, however, I needed a second device.  I couldn't get

18  into the phone when I got it.  I needed a second device to

19  provide me access.  I got the second device on March 5.  I

20  still couldn't get into it and I contacted Mr. Dimitrelos

21  to try to assist me to get into it.  I attempted to get

22  into it, locate what I thought would be on the phone, what

23  evidence I hoped to find.  I couldn't find it because I

24  didn't know how to operate it correctly.

25    THE COURT:  Give me just a moment.  Ms. Dove, I'm

DIRECT EXAMINATION OF MELISSA DOVE

1   going to ask you to just step out for a moment, please.

2           THE WITNESS:  Okay.

3           THE COURT:  I wasn't sure whether I needed that,

4   but I do need that now.  Thank you.

5   (Proceedings had outside the presence of the witness.)

6           THE COURT:  Okay.  You may continue.

7           MR. FITZGERALD:  Yes, Your Honor.  The phone --

8   and I have one of those phones, but I'm not that good with

9   them.  It has a way for you to drop it down and put in the

10  search and everything comes up, and I kept doing that and

11  nothing would return.  And after contacting the expert, he

12  explained to me, much like my understanding is, when they

13  do an EnCase seizure of an iPhone it doesn't pick up the

14  passwords, so even that internal thing wouldn't pick up

15  the passwords section, so he showed me on the phone how to

16  get through the password section but I needed a second

17  device to authenticate -- I still don't get in there

18  without permission from another device, so I got the other

19  device to get in on the 10th and talked to Mr. Dimitrelos

20  after that, and then made decisions about what was going

21  to proceed at trial.

22           As you know, even up until a few minutes ago it

23  wasn't necessarily clear that Ms. Dove was testifying, and

24  I had other concerns involving turning over things that

25  were not necessarily going to be used in evidence, but I

DIRECT EXAMINATION OF MELISSA DOVE

1    nevertheless told them about the iPhone and offered to

2    go -- all of this stuff is available in the iCloud

3    account.  The whole phone backs under into the iCloud

4    account which -- including I guess the passwords, but it

5    doesn't back up when you do a search.

6         THE COURT:  Okay.  You filed an exhibit list on

7    March 22nd.  Is that the first time you made the

8    Government aware of this iPhone?

9         MR. FITZGERALD:  No, Your Honor.  Ms. Thelwell and

10   I -- we can probably find it by text.  I actually might

11   have a date.  It was before trial started.

12        MS. THELWELL:  We met on Friday to exchange trial

13   exhibits I will say, so the letter that I read, it came in

14   a package that was hand delivered to my office on

15   March 16th and it contained a copy of the exhibit list,

16   but I don't recall if the iPhone was on that exhibit list.

17        I don't know, because frankly I didn't look at it

18   closely.  I looked at the actual exhibits that were

19   contained in the folder as well which are the one -- which

20   are Exhibits A through B, but then -- so that was on -- it

21   was hand delivered Tuesday.

22        By the time I got it, it was Thursday because I

23   was at HSI all day Wednesday, and so on Friday when we met

24   to exchange exhibits, that's when I personally learned

25   from Mr. Fitzgerald about the iPhone and he indicated to

DIRECT EXAMINATION OF MELISSA DOVE

1   me something about passwords, similar to what he's telling
2   the Court now, that they are only visible in a certain
3   part of the phone or something like that.
4        I'm not understanding the full context of how this
5   fits in to our case, what the witness is testifying to.
6   At the time that Mr. Fitzgerald and I spoke, he even said
7   he didn't know for sure if she was going to be testifying
8   as he had just stated as well, so I think both of us are
9   in an uncomfortable position because nothing -- the
10  information that's supposed to be proffered to this Court
11  by testimony of this witness has been unclear this entire
12  time and, again, I don't know when you just put an iPhone,
13  an exhibit list without any further information, I don't
14  know what to do with that.
15       MR. FITZGERALD:  Again, Your Honor, I don't know
16  what the witness is going to say.  I'm -- I'm at a
17  disadvantage and I just got this material.  Bear in mind
18  that some of this stuff as the Government indicated when
19  she's walking in before she testified could, in fact, be
20  incriminating, could, in fact, cause her prosecution, and
21  I'm currently representing her husband, so we are giving
22  them access to the entire iCloud account which would have
23  this.
24       They certainly can cross on the authenticity and
25  whether these existed at any time.  Their knowledge of

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1   whether they existed, the same things in November of 2018

2   are as good as mine in that I got this March 5th and was

3   able to open it probably the 10th or later.

4          I don't know exactly when I talked to Dimitrelos,

5   but not -- within two weeks of trial I was able to open

6   this device.

7          MS. THELWELL:  Respectfully, Your Honor, this is

8   not a situation where the Government has been given true

9   access.  We were notified at the last minute in the midst

10  of trial preparation.  There's no way that -- first of

11  all, CFA Gaertner wasn't even available.  He was off on

12  Thursday and Friday.  You know, we -- as Your Honor knows,

13  there's significant preparations that go in for trial.  We

14  speak with all the witnesses multiple times, go through

15  all the exhibits.  All day Friday I'm running around

16  trying to make sure that the exhibit list is fine so I can

17  get it to Mr. Fitzgerald before the close of business and

18  give him the opportunity to spend the weekend looking at

19  it, discussing it with his client, letting me know in

20  advance, if possible, if there's something else that he

21  has an objection to so that we can try and resolve as many

22  issues before Monday.

23          Telling me on Friday or even by letter if we were

24  to go by the March 16th date is not such time for the

25  Government to then take these additional follow-up steps

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

DIRECT EXAMINATION OF MELISSA DOVE

1    by either speaking with Mr. Dimitrelos or actually

2    physically examining either the phone or the iCloud which

3    I don't know whether or not examining the iCloud would

4    even make any sense because Mr. Fitzgerald has just said

5    that the passwords aren't even stored in the iCloud,

6    they're only on the phone.

7         MR. FITZGERALD:  Your Honor, she learned about it

8    earlier than that if she looked at the letter but in the

9    iCloud -- I learned about a server that was introduced

10   this -- today this week in trial.  I learned about that on

11   Thursday or Friday.  I filed a motion to exclude it.

12        At a minimum Friday she knew there was an iPhone.

13   They didn't file a motion to exclude.  They didn't ask me

14   to see it.  They had two experts sitting here the whole

15   trial.  They never asked to look at the phone even though

16   it's been on the exhibit list.  I litigated whether that

17   server should come in because that was a brand new server

18   that we haven't had.  The Court ruled and the trial

19   proceeded, but I learned about that the same time probably

20   she is saying she learned about the iPhone, and I filed

21   the appropriate motion.  They took no action.  They've had

22   experts all day all week in here.  One is still sitting

23   here.  They could have easily looked at the iPhone.

24        THE COURT:  Okay.  Bring the witness back in.  I'm

25   sorry.  Ms. Williams, would you bring her in?  I'm going

DIRECT EXAMINATION OF MELISSA DOVE

1    to have you proffer her testimony and let the Government

2    ask her some questions outside of the presence of the

3    jury.  I need to find out what the harm is from her

4    testimony.

5         I have to tell you all, I am just really not

6    pleased with the way this trial has progressed as it

7    relates to these issues.  Okay?  Absolutely not pleased

8    with this.  We should not be in the middle of a trial

9    dealing with these kinds of issues, particularly for a

10   case that was filed in 2019.

11        I've had 10 status conferences maybe on this case

12   at which we're ready for trial, we're ready for trial, so

13   the first opportunity I get post -- I shouldn't say post

14   pandemic, because we're still in it, but the first

15   opportunity I get after we have reopened the court for

16   jury trials, this is the first case I scheduled because

17   it's old, and I have been hearing that Mr. Dove wanted to

18   go to trial.  I said okay, let's see what we can do to

19   accommodate him and then we get to trial and you all

20   aren't ready.

21        Bring Ms. Dove in, please.

22        All right.  Mr. Fitzgerald, you may inquire

23   outside the presence of the jury.  I'm going to allow

24   Ms. Thelwell to inquire.

25

1                  VOIR DIRE EXAMINATION
2    BY MR. FITZGERALD:
3         Q    Ms. Dove, is Defendant's Exhibit E your iPhone?
4         A    Yes.
5         Q    Is it the same iPhone that law enforcement
6    periodically took for four-and-a-half hours on
7    November 30th, 2018?
8         A    Yes.
9         Q    Are you able to go into the settings portion of
10   that iPhone?
11        A    Yes.
12        Q    Are you able to go into the passwords portion of
13   that iPhone?
14        A    Yes.
15        Q    Do you have a password in that iPhone for -- under
16   C for the website Chaturbate?
17        A    Yes.
18        Q    And what is the password for the website
19   Chaturbate on that iPhone?
20        A    Kyle2Aiden.
21        Q    And do you have a password for a Dropbox account?
22        A    I'm going to plead the Fifth on that one.
23             THE COURT:  Okay.  The witness has invoked her
24   Fifth Amendment privilege not to testify regarding that
25   question.  Next question.

1   BY MR. FITZGERALD:

2       Q    Have you changed any of the settings in the

3   iPhone?

4       A    No.

5       Q    Let me restate that.  Since -- since November 30th

6   of 2018, have you change any settings on the iPhone?

7       A    No.

8       Q    Have you put the Chaturbate account on the iPhone?

9       A    I don't remember.

10      Q    Did you put the Dropbox account on the iPhone?

11      A    I'm going to plead the Fifth.

12           THE COURT:  Again the witness has invoked her

13  Fifth Amendment privilege not to testify with regard to

14  matters that may be incriminating.

15  BY MR. FITZGERALD:

16      Q    Is there a Neb Skins file on that phone or a

17  Nebulous game on that phone?

18      A    Yes.

19           MR. FITZGERALD:  Could I have a moment, Your

20  Honor?

21           THE COURT:  Yes.

22  BY MR. FITZGERALD:

23      Q    Did you send emails to the developers of Neb

24  Skins?

25      A    Yes, I did.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     Q    To try to get skins approved for your game?

2     A    Yes, I did.

3     Q    Do you know if that's on your phone?

4     A    I don't know.  I can check.  The phone has no

5  service, so I can't look.

6     Q    I'm sorry?

7     A    The phone has no service.

8     Q    The phone, I'm sorry, I couldn't hear you.

9     A    It doesn't have service, I can't look.

10    Q    Did you place the Dropbox account on that phone?

11    A    I plead the Fifth.

12         THE COURT:  The witness has invoked her Fifth

13  Amendment privilege not to testify regarding matters that

14  might incriminate her.

15 BY MR. FITZGERALD:

16    Q    Do you have a Dropbox account?

17    A    I plead the Fifth.

18         THE COURT:  Again the witness has invoked her

19  Fifth Amendment privilege not to testify regarding matters

20  that may incriminate her.

21         MR. FITZGERALD:  Want me to go through my whole

22  testimony because I think --

23         THE COURT:  The areas -- what are the other areas,

24  Mr. Fitzgerald?

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   BY MR. FITZGERALD:

2       Q    How did you learn about that your husband was

3   having an affair?

4       A    Well, he was acting a little strange, so I decided

5   that one day while he was at work that I would go through

6   his office work emails and my suspicions were correct and

7   I found the emails with him and another woman.

8       Q    Is that Rachel Lovelace?

9       A    Yes.

10      Q    And do you know if she's been married after that?

11      A    I don't know.

12           THE COURT:  What I'm most interested in is

13   testimony with regard to the iPhone.

14           MR. FITZGERALD:  Sorry, Your Honor?

15           THE COURT:  So what I'm most interested in is with

16   testimony with regard to the iPhone.  That's the subject

17   matter of the objection.

18           MR. FITZGERALD:  Yes.

19   BY MR. FITZGERALD:

20      Q    Has the iPhone, did you have it in your possession

21   after November 30th, 2018?

22      A    Yes.

23      Q    And did you use it as your phone after that time?

24      A    Yes.

25      Q    And how long did you use it for?

1      A    I don't remember.

2      Q    Did there come a time when you stopped using it?

3      A    Yes.

4      Q    What did you do with it?

5      A    Nothing.  I just got a new phone, just put it

6   away.

7      Q    You threw it away?

8      A    No, put it away.

9      Q    After you put it away, did you ever take it out?

10     A    I'm going to plead the Fifth.

11          THE COURT:  The witness has invoked the Fifth

12   Amendment privilege not to testify based upon

13   self-incrimination.

14          MR. FITZGERALD:  Your Honor, I'm not sure if I can

15   continue questioning someone when they have pled the Fifth

16   or not.

17          THE COURT:  Did you have more questions regarding

18   that topic?

19   BY MR. FITZGERALD:

20     Q    When did the phone get out of your care, custody

21   or control?

22     A    I'm going to plead the Fifth.

23     Q    Does your phone back up to the iCloud?

24     A    I'm going to plead the Fifth.

25     Q    Does your phone have access to a Bitcoin account?

1        A     I'm going to plead the Fifth.

2        Q     Has your phone ever had access to a Bitcoin

3    account?

4        A     I'm pleading the Fifth.

5        Q     Does your phone have access to Welcome to Video

6    website?

7        A     I'm pleading the Fifth.

8        Q     Have you changed any of the passwords on your

9    phone after November 30th, 2018?

10       A     I'm pleading the Fifth.

11             MR. FITZGERALD:  I think that's all the phone

12   questions I think I have.

13             THE COURT:  Okay.  That's all the questions you

14   have regarding the phone?

15             MR. FITZGERALD:  I have one more question, yes,

16   now that I think about it.

17             THE COURT:  Okay.

18   BY MR. FITZGERALD:

19       Q     Did you have a MacBook Air?

20       A     Yes.

21       Q     Was that MacBook Air seized?

22       A     Yeah.

23       Q     By the Government, by the Government on

24   November 30th, 2018?

25       A     Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     Q    Was it ever returned to you?

2     A    Yes.

3     Q    When was it returned to you?

4     A    I don't remember the exact date but I know my

5     mother-in-law went and picked it up.

6     Q    Do you still have that MacBook Air?

7     A    Yes.

8     Q    Do you know where it is?

9     A    Yeah.

10    Q    Does that MacBook Air have access to Dropbox?

11    A    I plead the Fifth.

12    Q    Does that MacBook Air have access to Chaturbate?

13    A    I plead the Fifth.  Wait.  Can I take that back?

14         MR. FITZGERALD:  Talk to the Judge.

15         THE COURT:  Ask the question again.

16    BY MR. FITZGERALD:

17    Q    Does that MacBook Air have access to Chaturbate?

18    A    Yes.

19    Q    And was that MacBook Air used in the home to go on

20    to Chaturbate?

21    A    Yes.

22    Q    With your home IP address?

23    A    I'm sorry?

24    Q    With the home IP address?

25    A    I would assume so.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        Q     Through the Internet?

2        A     Yeah.

3        Q     Did the phone bridge the Internet from your

4    MacBook Air to use your iPhone as an Internet connection

5    or hot spot?

6        A     I plead the Fifth.

7        Q     Did you sign an affidavit giving me access to your

8    iCloud account?

9        A     Yeah.

10       Q     In March of this year?

11       A     I don't remember.  I don't know the exact

12   date.

13            MR. FITZGERALD:  Your Honor, that's all I have

14   regarding the phone at this time.

15            THE COURT:  Okay.  Thank you.  Ms. Thelwell.

16                  VOIR DIRE EXAMINATION

17   BY MS. THELWELL:

18       Q     Ms. Dove, when did you get that phone?

19       A     I don't remember.

20       Q     2016?

21       A     I don't remember.

22       Q     Was it before the search warrant in 2018?

23       A     Yes.

24       Q     Was it shortly before the search warrant in 2018?

25       A     I don't remember.  I really don't.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Q    At the time of the search warrant, how long would

2    you say you've had that phone?  Was it brand new?

3    A    No.

4    Q    Was it at least a year old?

5    A    I'm going to plead the Fifth.

6    Q    When did you stop using the phone?

7    A    I don't remember.

8    Q    Why did you stop using that phone?

9    A    I got a new one.

10   Q    When did you get your new phone?

11   A    I couldn't tell you the exact date.

12   Q    Is it the phone that you're currently using?

13   A    No.

14   Q    So you've gotten another phone since then too?

15   A    Yes.

16   Q    The phone that you're currently using, is this now

17   phone number three, since we'll call the iPhone at the

18   time of the search warrant phone number one?  You then got

19   another phone, phone number two and now the phone you're

20   currently using is phone number three; is that correct?

21   A    Number four.

22   Q    So -- okay.  So you have had -- this is now the

23   fourth phone since that iPhone; is that correct?

24   A    Yeah.  But -- yes.

25   Q    On the phone that Mr. Fitzgerald gave you, Defense

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Exhibit E, does it have the Gmail App device on it so you

2    can check Gmail account?

3        A     I'm going to plead the Fifth.

4             MS. THELWELL:  I don't have any questions, Your

5    Honor.

6             THE COURT:  Okay.  So, I have a question.  The

7    phone that you have there in front of you, Ms. Dove, is

8    that the phone that you had when the search warrant was

9    executed at your residence?

10            THE WITNESS:  Yes, ma'am.

11            THE COURT:  Counsel, let's see if the headsets

12   work.

13  (Bench conference begins.)

14            THE COURT:  Mr. Fitzgerald.

15            MR. FITZGERALD:  Yes, Your Honor.

16            THE COURT:  Other than Ms. Dove, do you expect

17   there will be any other testimony on behalf of the

18   Defendant in this case?

19            MR. FITZGERALD:  One moment.

20            THE COURT:  Yes.

21            MR. FITZGERALD:  Your Honor, I'd say with the

22   headsets if I could just speak to you privately with

23   Ms. Thelwell, but those don't seem to work.  Normally I'd

24   say sidebar.

25            THE COURT:  All right.  Come on over here.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   (Sidebar had outside witness hearing.)

2        MR. FITZGERALD:  Regarding whether he will testify

3   or not, I know in most cases it's a 50/50 call for the

4   Defendant, so presently he's leaning towards not, but he's

5   hoping to see how this evidence, this testimony resolved.

6   I'm not sure, and I can't even give him a clear indication

7   of what's going to happen from this moment on.

8        THE COURT:  I'm not going to resolve this issue.

9   I'm going to do some research on it.  I'm going to ask her

10  a few more questions and I'm going to have her come back

11  tomorrow and do some research on it because I don't recall

12  a witness since I've been on the Federal bench invoking

13  her Fifth Amendment privilege, and I need to know more

14  about why she's invoking it.  I mean there are other

15  questions I have of her, and then I'll make a decision and

16  then also make a decision regarding the phone, so you

17  won't get an answer to that until tomorrow.

18       MR. FITZGERALD:  Okay.  So he doesn't know if he

19  wants to testify until he figures out -- you know, he's

20  making the decision based on what evidence, what is in

21  evidence which is usually why you call the Defendant last

22  so that they can have a picture.

23       THE COURT:  Okay.  I was just asking.  I'm going

24  to let the jury go ahead and go on home.

25       MR. FITZGERALD:  Okay.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    (Bench conference concluded.)

2              THE COURT:  Mr. Fitzgerald, based upon our

3    conversation, your expert will not be testifying; is that

4    correct?

5              MR. FITZGERALD:  That's correct, Your Honor.

6              THE COURT:  Okay.  So, Ms. Dove, I have a few

7    questions of you.  You have indicated several times during

8    your examination that you were pleading the Fifth.  What

9    do you mean by pleading the Fifth?

10             THE WITNESS:  I am waiving my right to answer

11   because I feel that it may be -- I don't want to

12   incriminate myself.

13             THE COURT:  All right.  You're not waiving, you

14   are refusing to answer?  Is that what you're doing,

15   refusing to answer the questions?

16             THE WITNESS:  Yes.

17             THE COURT:  You're refusing to answer the

18   questions because you believe that your answer may

19   incriminate yourself --

20             THE WITNESS:  Yes.

21             THE COURT:  -- is that right?

22             Okay.  All right.  Then I am going to let you go

23   home today and return tomorrow morning.  You need to be

24   back here tomorrow morning at 9:00 a.m. and we will resume

25   with these proceedings.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE WITNESS:  Okay.

2          THE COURT:  You're free to go.  Please bring the

3     jury in.

4     (Jury in at 3:23 p.m.)

5          THE COURT:  All right.  Members of the Jury, we

6     are going to go on and recess these proceedings for today.

7     In my conference with the attorneys we are still confident

8     that you will get the case tomorrow at some point to begin

9     your deliberations, but there are some matters that have

10    arisen that require determination by the Court outside

11    your presence.  And rather than have you remain in there,

12    we are fairly close to concluding the proceedings, I

13    decided to just let you go home early today.  I've never

14    had a jury be unhappy about the decision to leave a little

15    early, so you can leave early today and I'll see you

16    tomorrow morning at 9:30 a.m.

17         Again, get a good night's sleep and enjoy your

18    evening and be careful.  We'll see you tomorrow morning at

19    9:30.

20    (Jury out at 3:27 p.m.)

21    (Proceedings held outside the presence of the jury.)

22         THE COURT:  All right.  A couple of other matters

23    that we need to take up.  As it relates to the jury

24    instructions, my understanding from Mr. Fitzgerald is that

25    there was an objection to only one.  If you all have those

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    would you pull them out please and go ahead and do that?

2         Mr. Fitzgerald, you also wanted an instruction

3    with regard to one of the objections.  You are free to

4    prepare something, email it to Ms. Thelwell, and bring it

5    to the court tomorrow morning.

6         Given the witness' refusal to testify invoking the

7    Fifth Amendment right against self-incrimination, to the

8    extent anybody's requesting an inference, then I think

9    there's an instruction that relates to that.  I'm not sure

10   that it applies in this case, but, again, I'm just

11   brainstorming here as we prepare for jury instructions

12   tomorrow.  You all have the jury instructions up.

13        MS. THELWELL:  Yes, Your Honor.

14        MR. FITZGERALD:  I'm still grabbing them, Your

15   Honor.  Okay.

16        THE COURT:  You there?

17        MR. FITZGERALD:  I'm here.

18        THE COURT:  All right.  Looking at -- and these

19   are the closing instructions that were filed at Docket

20   184.  The first one aside from the Court's instructions to

21   the jury that the title page, the first one is B2.1, the

22   duty to follow instructions and the presumption of

23   innocence.  Is there any objection?

24        MS. THELWELL:  No, Your Honor.

25        MR. FITZGERALD:  No, Your Honor.

1         THE COURT:  And, again, it's B2.1 and B2.2.  One

2    is for use if the Defendant testifies.  The other is for

3    use if the Defendant does not testify.

4         Any objection as to B2.2 if Mr. Dove does not

5    testify?

6         MR. FITZGERALD:  No objection.

7         MS. THELWELL:  No.

8         THE COURT:  That was a no from both parties.

9         Next one is B3, definition of reasonable doubt.

10   Is there an objection?

11        MS. THELWELL:  No, Your Honor.

12        MR. FITZGERALD:  No, Your Honor.

13        THE COURT:  The next one is B4, consideration of

14   direct and circumstantial evidence, argument of Counsel,

15   comments by the Court.  Is there any objection?

16        MS. THELWELL:  No, Your Honor.

17        THE COURT:  The next one is B5, credibility --

18        MR. FITZGERALD:  No, Your Honor.

19        THE COURT:  I'm sorry.  Mr. Fitzgerald, was that a

20   no.  Was that a no?

21        MR. FITZGERALD:  That's no objection, Your Honor.

22        THE COURT:  Okay.  The next one is B5, credibility

23   of witnesses.

24        MS. THELWELL:  No objection.

25        MR. FITZGERALD:  No objection, Your Honor, I'm

1    sorry.

2         THE COURT:  The next one is Middle District of

3    Florida, basic witnesses.  Is there any objection?

4         MS. THELWELL:  No objection.

5         MR. FITZGERALD:  Yes, Your Honor.

6         THE COURT:  All right.  What's the basis of your

7    objection?

8         MR. FITZGERALD:  Your Honor, one, it's not a

9    pattern Eleventh Circuit instruction.  Two, I think it

10   minimizes the burden of proof.

11        THE COURT:  Pull the microphone closer or come to

12   the lectern so I can hear you.

13        MR. FITZGERALD:  Sorry.  One, it is not an

14   Eleventh Circuit pattern instruction and I think we should

15   stick to the Eleventh Circuit pattern instructions.

16   Number two, I think it minimizes the burden of proof by

17   giving the instruction that the Government doesn't have to

18   call every person that was present in an event or time and

19   I think particularly harmful here when they can't say

20   where evidence was even found in the search warrant and I

21   don't think that's appropriate.

22        THE COURT:  Okay.  Response.

23        MS. THELWELL:  Your Honor, it is consistent

24   with -- let me rephrase.  It does not minimize the

25   Government's burden and it is consistent with the general

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   practice of Middle District of Florida in giving this

2   particular instruction.  As indicated in the annotation

3   that I provided, this instruction dates back at least to

4   1989 as being given in the Middle District of Florida.

5        THE COURT:  And is there a reason that this

6   instruction is requested in this case?  In other words, I

7   know that it's routinely given.  I've given it many of

8   times in the Middle District of Florida, but that doesn't

9   mean that it applies to every case.  As you know, we have

10  to give jury instructions based upon the facts of a

11  particular case, and so I've heard the basis for

12  Mr. Fitzgerald's objection.  I agree that this does not at

13  all minimize the Government's burden of proof and, in

14  fact, there's another instruction which lets the jury know

15  what the burden of proof is.

16       MS. THELWELL:  Yes, Your Honor.  In this

17  particular case, there are additional witnesses that the

18  Government did not call in this case, not only because --

19  well, mainly in an effort to streamline the evidence in

20  this case to try and limit the number of days that the

21  case is prolonged and the fact that we are in a pandemic

22  and, you know, as many witnesses being located out of

23  state we did condense our witness list.  And as I think

24  it's come out through the testimony, there are at least 10

25  different people at the search warrant at the scene of the

1    residence and the search warrant.  All of those

2    individuals were not called to testify, and the only

3    witnesses who did testify were those who were necessary to

4    establish the chain of custody for the items that were

5    ultimately admitted into evidence.

6         THE COURT:  All right.  The Court will overrule

7    the objection with regard to the Middle District of

8    Florida instruction with regard to witnesses.  It is an

9    accurate statement of the law in this respect.  There's

10   nothing about it that is an erroneous standard with regard

11   to the law nor does it minimize the Government's burden of

12   proof, and, in fact, there is an additional instruction

13   here which reminds the jury of the burden of proof.

14        All right.  The next one is B6.1, impeachment of

15   witnesses because of inconsistent statements.  Is there

16   any objection?

17        MS. THELWELL:  No, Your Honor.

18        MR. FITZGERALD:  No objection, Your Honor.

19        THE COURT:  And, again, this is one that we give

20   only if indeed there are inconsistent statements.  Would

21   you agree?

22        MS. THELWELL:  Yes, Your Honor.

23        THE COURT:  And have we had any thus far in the

24   case?

25        MS. THELWELL:  No, Your Honor.  It would -- only

1    depending on what may happen with defense witnesses.

2            THE COURT:  Mr. Fitzgerald?

3            MR. FITZGERALD:  Your Honor, we haven't had any

4    impeachment with inconsistent statements.  It seems to me

5    some of the witnesses have said certain things at one time

6    either to myself and certain things to Ms. Thelwell which

7    wasn't like an impeachment but it seems like they've said

8    things differently.  A lot of it is technical and a lot of

9    it is flying fast, but I would ask that it be left in just

10   in case a juror feels that way.

11           THE COURT:  All right. There's no objection so I

12   will allow B6.1 to remain in the case.  The next one is

13   B7, expert witness, is there any objection?

14           MS. THELWELL:  No objection.

15           MR. FITZGERALD:  No objection.

16           THE COURT:  The next one is B8, introduction to

17   offense instructions.  Is there any objection?

18           MS. THELWELL:  No, Your Honor.

19           MR. FITZGERALD:  No objection, Your Honor.

20           THE COURT:  The next one is B10.2, punishment,

21   single Defendant, multiple counts.  Is there any

22   objection?

23           MS. THELWELL:  No, Your Honor.

24           MR. FITZGERALD:  No, Your Honor.

25           THE COURT:  The next one is the offense

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    instruction O83.2, receiving and distributing material

2    involving sexual exploitation of minors.  Is there any

3    objection?

4              MS. THELWELL:  No, Your Honor.

5              MR. FITZGERALD:  No, Your Honor.

6              THE COURT:  The next one is possession of child

7    pornography.  Is there any objection?

8              MS. THELWELL:  No, Your Honor.

9              MR. FITZGERALD:  No, Your Honor.

10             THE COURT:  The next one is S6, possession.  Is

11   there any objection?

12             MS. THELWELL:  No, Your Honor.

13             MR. FITZGERALD:  No, Your Honor.

14             THE COURT:  The next one is B9.2, on or about a

15   particular date, knowingly.  Is there any objection?

16             MS. THELWELL:  No, Your Honor.

17             MR. FITZGERALD:  No, Your Honor.

18             THE COURT:  The next one is S5, note-taking.  Is

19   there any objection?

20             MS. THELWELL:  No, Your Honor.

21             MR. FITZGERALD:  No, Your Honor.

22             THE COURT:  The next one is B11, duty to

23   deliberate.  Is there any objection?

24             MS. THELWELL:  No, Your Honor.

25             MR. FITZGERALD:  No, Your Honor.

1         THE COURT:  The next one is B12, verdict, is there

2    any objection?

3         MS. THELWELL:  No, Your Honor.

4         MR. FITZGERALD:  No, Your Honor.

5         THE COURT:  All right.  Let's now turn to the

6    verdict form.  Let me know when you all have it.

7         MS. THELWELL:  I have it, Your Honor.

8         THE COURT:  Do you have it, Mr. Fitzgerald?

9         MR. FITZGERALD:  I'm looking for it, Your Honor.

10   I previously reviewed it with Ms. Thelwell on the phone.

11   Here we go.  I've got it, Your Honor.

12        THE COURT:  All right.  The verdict Count One of

13   the indictment as to the offense of receipt of child

14   pornography in violation of 18 U.S.C. Sections 2252(a)(2)

15   and (b0(1), we, the jury, find the Defendant Jack R. Dove,

16   III, and then a space, guilty and not guilty.

17        Count Two of the indictment, as to the offense of

18   possession of child pornography in violation of 18 U.S.C.

19   Section 2252(a)(4)(B) and (b)(1), we, the jury, find the

20   Defendant Jack R. Dove, III guilty and not guilty.  And

21   then there's a statement, "if you answered not guilty to

22   question two, you need not consider the question below."

23   Typically, we have an explanatory statement that goes

24   either way, so I would suggest adding if you answered

25   guilty to question two, you must consider the question

1    below.

2           So one of them tells them if you find him not

3    guilty, you need not consider it, but if you find him

4    guilty then you need to consider it.  Is there any

5    objection to that?

6           MS. THELWELL:  No, Your Honor.

7           MR. FITZGERALD:  I don't know if the first

8    sentence then makes sense, Your Honor.  We, the jury,

9    having found the Defendant, Jack R. Dove, III, guilty, so

10   I think we have to change the first sentence after that.

11          THE COURT:  You think adding that sentence causes

12   that first sentence to be changed?

13          MR. FITZGERALD:  Yes.

14          THE COURT:  So you prefer that it remain as it is?

15          MR. FITZGERALD:  Yes.  Because the alternative not

16   guilty, if having found him guilty, we believe, and move

17   to count -- they can make additional determination in

18   Count Two.

19          THE COURT:  All right.  So your request then is

20   that the verdict form remain just as it is?

21          MR. FITZGERALD:  Yes, Your Honor.  Well, I'll go

22   with your method, Your Honor.

23          THE COURT:  I'm sorry, I don't want it to be

24   duplicative.  Let's see.

25          MR. FITZGERALD:  I think probably the language we,

1   the jury, having found the Defendant guilty is suggestive.

2   It should be more if you find the Defendant guilty, you

3   must next consider.  It should be, if you read -- if you

4   answer guilty to question two...

5         THE COURT:  Okay.  So what sentence are you

6   requesting be inserted after the sentence that says if you

7   answered not guilty to question two, you need not consider

8   the question below.

9         MR. FITZGERALD:  Could we add if you answered

10  guilty to question two, you must answer the following

11  question.

12        THE COURT:  Which is what I said, if you answered

13  guilty to question two, you must consider, and I'll say I

14  can change it to you must answer the question below or you

15  must answer the following question.

16        MR. FITZGERALD:  Yes.

17        THE COURT:  You must answer the following

18  question.  Then do you want the following question to be

19  changed, edited or are you requesting that?

20        MR. FITZGERALD:  The offense charged in Count Two

21  further finds that at least one of the visual depictions

22  involved a prepubescent minor.

23        MS. THELWELL:  Your Honor, if I may?

24        THE COURT:  Yes.

25        MS. THELWELL:  The language for this verdict form,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    I gathered it from another case that had similar charges

2    that was just tried before Judge Moody, United States

3    versus Travis Vance which is 8:19-cr-476-JSM-AAS.  That

4    verdict form was filed on March 10th, 2021 and that's the

5    one that the jury returned their verdict on.  The language

6    is exactly consistent with the possession count there

7    which is why I wrote it this way.

8         I don't have a disagreement with the Court's added

9    language.  I think the if you answer the guilty to

10   question two, you must answer the following question.  I

11   do think that that adds some additional clarity, but I

12   don't see a need to further modify the verdict form after

13   that point.

14        THE COURT:  What was the case, 8:19 what?

15        MS. THELWELL:  476, and it's docket No. 118.

16        THE COURT:  Okay.  Then, Counsel, how much time

17   are you requesting for your closing arguments?

18        MS. THELWELL:  Your Honor, because the evidence in

19   this case is highly technical and substantial, I would

20   request a total of 60 minutes.  Most likely I would do 45

21   minutes and 15 for rebuttal.

22        THE COURT:  Okay.  Mr. Fitzgerald?

23        MR. FITZGERALD:  Your Honor, if I was asked first

24   I would have requested 15 to 20 minutes.  I would like

25   equal time with the Government.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  All right.  So 60 minutes.  The
2     Government, of course, will go first and last so the
3     Government will split its time 45 and 15.  Would you like
4     the clerk to give you a warning when you have five minutes
5     remaining in your 45 minutes and five minutes remaining in
6     your 15-minute time slot?
7          MS. THELWELL:  Yes, please.
8          THE COURT:  And, Mr. Fitzgerald, would you like a
9     warning when you have five minutes remaining?
10          MR. FITZGERALD:  Yes, please, Your Honor.
11          THE COURT:  Okay.  Are there any other matters
12     that I need to take up other than the issues relating to
13     Ms. Dove's testimony and the iPhone?
14          MS. THELWELL:  No, Your Honor.
15          MR. FITZGERALD:  Your Honor, could I just for
16     proffer what a forensic search of the evidence I'm trying
17     to introduce would show for the Court?
18          THE COURT:  Sure.  Ms. Thelwell, is your expert or
19     the CFA available to look at the phone this evening?
20          MS. THELWELL:  I can ask.  We can ask.
21          THE COURT:  Okay.
22          MR. FITZGERALD:  Should I wait for him, Your
23     Honor?
24          THE COURT:  The other agent should be right back.
25          MS. THELWELL:  Could I have a minute, Your Honor?

1    Could I bring him in, Your Honor?

2              THE COURT:  Yes.

3              COURT SECURITY OFFICER:  Would you like him just

4    to come here?

5              THE COURT:  CFA Gaertner, I asked if you were

6    available to look at this iPhone.  This apparently -- at

7    least Ms. Dove says this is the iPhone that was in her

8    possession when the search warrant was executed at the

9    residence a couple years ago, and one of the objections

10   raised by the Government today is that the Government has

11   not had an opportunity to review it since that time.  Are

12   you available to review that this evening?

13             THE WITNESS:  Yes, ma'am.

14             THE COURT:  Okay.  Why don't you give the phone to

15   the --

16             MR. FITZGERALD:  May I just proffer for you and

17   then I will give it to him to show him where he's going?

18   I'll do it on the Elmo.

19             AGENT GAERTNER:  Are you asking to do a forensic

20   extraction at the office or just look at it here?

21             THE COURT:  Ms. Thelwell, when were you requesting

22   a forensic extract back in the office, what are you

23   requesting from --

24             MS. THELWELL:  I think if we can see what

25   Mr. Fitzgerald is attempting to show, we can --

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   Mr. Gaertner can tell us what we need.

2           THE COURT:  Okay.  No.  He's fine right there.

3   He's fine.

4           MR. FITZGERALD:  So, Your Honor, this is the

5   phone, Defendant's Exhibit E, and then you hit settings

6   and --

7           MS. THELWELL:  Your Honor, he can't see that.

8           THE COURT:  That's right.  He doesn't have a

9   monitor.  I'm sorry.  Yes, you can't see.

10          MS. THELWELL:  Start over, please.

11          MR. FITZGERALD:  Yes, let me get out of here.

12  Okay.  You hit -- you go into settings and then down to

13  passwords and then the passwords are listed alphabetically

14  and the two passwords we were concerned about are this one

15  to Chaturbate, which is a link, and it has the user name

16  and the password to the Chaturbate Corp and the next one

17  is to Dropbox which has the user name notus52911@gmail.com

18  and JandM52911!  That's all I was asking her about.

19          THE COURT:  And my concern, I'll tell you with

20  regard to anything about Dropbox is that she has invoked

21  her Fifth Amendment privilege.

22          MR. FITZGERALD:  Well --

23          THE COURT:  Let me finish.  So if I am going to

24  allow that to stand, her invocation, then none of the

25  things about Dropbox is coming in.  Nothing about this

1      password or anything is coming in.  It wouldn't be fair if

2      the Government isn't allowed to examine her about it

3      because she invokes her Fifth Amendment privilege, so you

4      should know that, if that's where we're going to go with

5      the Dropbox issue.

6              MS. THELWELL:  Your Honor, just so the Court is

7      aware, right under the password it says this password was

8      last modified on March 19th, 2021.

9              THE COURT:  So that was just changed.

10             MR. FITZGERALD:  That was a quick forensic

11     analysis.

12             THE COURT:  Right.  So you see my concern, though,

13     so the Dropbox issue may be moot, but right now I may have

14     some additional questions of her regarding her invocation

15     of the Fifth Amendment privilege.  This is the kind of

16     stuff you get because people watch too many TV shows about

17     the courtroom.  I'm sorry.  I shouldn't have said that,

18     but you know, you too.

19             MR. FITZGERALD:  It's true.

20             THE COURT:  It is true.  I've had jurors ask me

21     about after the trial, we talk to them about the

22     excitement or lack of excitement.  I say, well, the shows

23     that you watch on TV are for entertainment.  This is real

24     life.  This is a courtroom.  It's not for entertainment,

25     you know, so nobody in here thinks that this is for

1    entertainment but, yeah, it does say that.  So I just

2    wanted you to know that if she is going to invoke her

3    privilege regarding the Dropbox, then nothing about the

4    Dropbox is coming into evidence.

5            Okay.  Anything else?  So that's where you were

6    going to go, just Dropbox and then Chaturbate?

7            Given that information, then you will tender the

8    phone to Ms. Thelwell who will have Mr. Gaertner review

9    it, and, Ms. Thelwell, you can let Mr. Gaertner know what

10   type of review you're requesting.

11           MS. THELWELL:  Well, I guess that's part of my

12   question because -- and you can probably speak better to

13   this but many -- well, what kind of review would it be?

14           THE WITNESS:  Well --

15           THE COURT:  We can't hear him.

16           MS. THELWELL:  He's asking what's the basis for

17   our authority to look?  Is there a signed consent that we

18   have authorization to look through the whole phone or are

19   we only authorized to forensically examine this one

20   password section of the device?

21           THE COURT:  That's a good point.  Mr. Fitzgerald,

22   what type of authority did she give you with regard to the

23   case?  Is she offering it into evidence?  Then she must

24   not have any concern about the Court reviewing it.

25           MR. FITZGERALD:  Your Honor, can I pull it up to

1    make sure I got two separate ones, and I made the second

2    one, I made sure because we made, for the Government to be

3    able to do it, it said like "my assigns" or the

4    "Government assigns it," I included Mr. Dimitrelos.  Let

5    me find it.

6              THE COURT:  Okay.

7              MR. FITZGERALD:  Because it relates to the

8    MacBook, Your Honor.

9              THE COURT:  You should know that clearly if

10   opposing Counsel doesn't have an opportunity to review the

11   evidence, it will not be coming into evidence.

12             MS. THELWELL:  Your Honor, I guess the other

13   question I have with the Chaturbate, I had not observed, I

14   wasn't looking for that.

15             THE COURT:  Pull the microphone up.

16             MS. THELWELL:  Sorry.  I was wondering with the

17   Chaturbate account, if there was any indication that

18   password had also recently been changed, because if that's

19   the case, then the only purpose is to talk about the

20   Chaturbate and the Dropbox passwords, you know, I think

21   that's clear indication that there's been some tampering

22   with that information since the November 30th, 2018 search

23   warrant.

24             THE COURT:  Well, at least since Dropbox because

25   you just stated that it says the password was changed in

1    March of 2021.  You didn't make that same statement

2    regarding Chaturbate.  I don't know what the phone shows

3    regarding Chaturbate.

4         MS. THELWELL:  That's what I'm saying.  I didn't

5    have an opportunity to look because it moves so quickly.

6         MR. FITZGERALD:  Why don't we put it back up just

7    to make sure we're on the same page.

8         MS. THELWELL:  It says the same exact date March,

9    March 19th, 2021.

10        THE COURT:  Okay.  So what is the authority that

11   has been given with regard to the iPhone?

12        MR. FITZGERALD:  I'm sorry, Your Honor.  I'm still

13   getting it.

14        THE COURT:  The authority that's been given

15   regarding the iPhone.

16        AGENT GAERTNER:  I need to look at the IMEF.

17        MR. FITZGERALD:  At the what?

18        AGENT GAERTNER:  The IMEF.

19        MR. FITZGERALD:  The phone?  I want you to see the

20   consent first, so you don't make a --

21        AGENT GAERTNER:  If you can just find the IMEF.

22        MR. FITZGERALD:  I don't know what that is.

23        THE WITNESS:  It's like the serial number, the ID

24   for the phone.

25        MR. FITZGERALD:  Judge, for the record, can I put

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    this on Elmo?  This is dated February 22nd, 2021 and it's

2    giving me consent to a Twitter account, me as well as my

3    designees and experts, Twitter, iCloud, and Hotmail, and

4    this is March 5th.  I think what happened is I got access

5    to the iCloud and they couldn't do it because they didn't

6    have a device.  It sent a signal, and then whatever device

7    I next had wouldn't work, which is why I got a second

8    device and I needed both devices somehow.  This is dated

9    March 5th, 2021, and so.

10        THE COURT:  Well, that was the MacBook serial

11   number, so that one would not apply to the iPhone.  That's

12   the one that you just put up there, the most recent one.

13        MR. FITZGERALD:  Correct.

14        THE COURT:  And the first one you put up there was

15   only with regard to accounts that aren't at issue, right?

16   Twitter, and what was the other one?

17        MR. FITZGERALD:  It was with regards to Twitter,

18   iCloud and a Hotmail, but the iCloud account is what

19   everything on the phone is backed up to so you get access

20   to the phone through the iCloud because it's all -- it's

21   the iCloud user account.

22        MS. THELWELL:  Your Honor, if we could, if

23   Mr. Fitzgerald can at least let Analyst Gaertner access

24   the settings to get the IMEI number, because in this case,

25   we did a search warrant for one of Melissa Dove's iPhones.

1    I don't know if it's this iPhone, and that may clear up

2    some issues we are having.

3            MR. FITZGERALD:  Since I've been doing it, so can

4    he tell me how to do it so he's not the one doing it?

5            AGENT GAERTNER:  Want me to show you?

6            MR. FITZGERALD:  Yes.

7            MS. THELWELL:  It's a different phone?

8            THE COURT:  This is a different phone.

9            MS. THELWELL:  Yes.

10           MR. FITZGERALD:  I think they mean it's a

11   different phone from the one they got the search warrant

12   for.

13           MS. THELWELL:  Correct.

14           MR. FITZGERALD:  There may have been a few iPhones

15   involved.

16           THE COURT:  She said it was the same one when I

17   asked her.

18           MS. THELWELL:  She may have had a -- there were a

19   lot of devices at that house, so she may have had more

20   than one iPhone at the time, and based on my questioning

21   it appears that she changes her phone frequently, so in

22   that search warrant is for an iPhone that she owned at the

23   time of search warrant but it's not this one.  She may

24   have also had that one at the same time.

25           THE COURT:  Okay.  Because I've not asked her

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    about that.  She said she had that one at the same time so

2    I'm not clear.  And if so, if she didn't have this one at

3    the time of the execution of the search warrant, is this

4    one at all relevant to this case?  I would think not.

5         MS. THELWELL:  No.  If it was not one of the

6    phones on scene -- no, she didn't own it at the time,

7    then, no, it would not be relevant.

8         THE COURT:  So is that the one that you intend to

9    offer and -- I guess I still have -- let me go back.  My

10   mind is all over everywhere, so let me go back.

11        First of all, is there consent for the Government

12   to review that phone?  And if the Government doesn't

13   review the phone, then it's not coming into evidence

14   because that's discovery.  That's part of our discovery

15   rules.

16        MR. FITZGERALD:  Your Honor, the consent, I have

17   two consents, and one gives me permission as well as my

18   designees and experts to the Twitter account, iCloud

19   account and appears to be a Hotmail account.  I believe I

20   used the iCloud information to get into the -- actually

21   the phone came to me without a password protection, just

22   can go on it.  It's not password protected.  So I have got

23   that consent.

24        And then I have a consent for a MacBook computer,

25   but the phone came at a different time without a password

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     protection, so I've just been going on like I did here in

2     Court.  It's just opens.

3            THE COURT:  Okay.  I understand that, but my

4     question is -- and perhaps, has she left?  I don't know if

5     she's still out there.  My question is -- Madam CSO, would

6     you see if Ms. Dove is still out there -- is whether she

7     gives permission for the Government to access that iPhone,

8     the one that you would like to offer into evidence.  And

9     more importantly, I'd like to know whether it's even

10    relevant, if that's the phone that she did not have at the

11    time the search warrant was executed.

12           MR. FITZGERALD:  I think she said that's the phone

13    she had.  The iPhone they're talking about could be his

14    mother's phone.  I think they are -- you know, I think

15    they took more than one phone.

16           THE COURT:  Okay.  Well, let's see if she's still

17    out there.

18           COURT SECURITY OFFICER:  No, Your Honor, she's not

19    in the hallway or the bathroom.

20           THE COURT:  Okay.  So in order for the Government

21    to get the phone, Mr. Fitzgerald, you would have to

22    designate them.  I think she gave you the authority, you,

23    your designees and experts.

24           MR. FITZGERALD:  I can designate it to Forensic

25    Analyst Gaertner.

 1              THE COURT:  Ms. Thelwell?

 2              MS. THELWELL:  Yes, Your Honor.

 3              THE COURT:  Mr. Fitzgerald said based upon the

 4      consent that he was given he can designate the phone to

 5      Computer Analyst Gaertner.  Is that acceptable?

 6              MS. THELWELL:  That's fine.  That's fine.  I just

 7      think that the consent form that he just displayed did not

 8      say that we have access to look at all of the stuff on the

 9      phone.  That's my only concern.

10              THE COURT:  No, it doesn't.  It identified two

11      accounts I believe.  It was Twitter, and what was the

12      other one?

13              MR. FITZGERALD:  It identified three, Your Honor.

14      Twitter, Hotmail, but most importantly the iCloud --

15              THE COURT:  ICloud.

16              MR. FITZGERALD:  -- where the phone is backed up

17      to.  This came to me un-password protected.  That's why I

18      maybe don't have an authorization because it's not

19      protected.  It just came to me.

20              THE COURT:  Would that aid the Court and the

21      Government in its review of the phone then, particularly

22      the iCloud account?

23              MS. THELWELL:  We're doublechecking because the

24      case agent believes she invoked regarding the question

25      about the iCloud account.  She invoked.

1          THE COURT:  Madam Court Reporter, would you scroll

2    back and let me know if she also invoked the Fifth

3    Amendment privilege regarding the iCloud?  I know she did

4    regarding the Dropbox.

5          MS. THELWELL:  The question that we believe was

6    asked was does the iPhone back up to the iCloud and at

7    that point she pleaded the Fifth.

8          THE COURT:  Okay.  The court reporter is going to

9    check.  She can scroll back and check.

10   (Record read as follows:

11          *"Q    Does your phone back up to the*

12   *iCloud?*

13          *"A    I'm going to plead the Fifth."*

14          THE COURT:  The question was, "does your phone

15   back up to the iCloud," and she said, "I'm going to plead

16   the Fifth."

17          MR. FITZGERALD:  I still have a consent to let

18   anybody I want into the iCloud account I guess.  I don't

19   know if that revokes it or not.

20          THE COURT:  Well, if she's pleading the Fifth in

21   court about it and I allow that to stand, then she's not

22   going to be able to testify about the iCloud account

23   either.

24          MR. FITZGERALD:  Right.

25          THE COURT:  Which means the Government need not

1    review it.

2         MR. FITZGERALD:  Well, they can review -- the

3    question originally was whether they can review the phone

4    for, and whether -- I guess if we can't get the Dropbox I

5    can at least get the Chaturbate she answered to.

6         THE COURT:  But she didn't give you consent to

7    look at Chaturbate, did she, except to the extent that it

8    may be backed up in the cloud?

9         MR. FITZGERALD:  She gave me consent to go to the

10   iCloud and if there is a password.  I'm not going on to

11   the Chaturbate account.  I'm just going to see the

12   passwords in the iCloud.

13        MS. THELWELL:  But, again, Your Honor, this goes

14   back to what I brought the Court's attention to before.

15   Both Chaturbate and Dropbox, those passwords were changed

16   two days before trial on March 19th, 2021.  So there's

17   no -- at this point we have a chain of custody issue when

18   she was asked where has this phone been since the date of

19   the search warrant.  She doesn't know.  She can't remember

20   how many phones she's had.  She doesn't know when she got

21   this, when she stopped using this.

22        She is invoking regarding a lot of the questions

23   that Mr. Fitzgerald is trying to ask her which means the

24   Government can't effectively cross-examine her on these

25   issues, and now there's evidence of tampering with alleged

1    evidence, so, again, the Government would renew its motion

2    to have this piece of evidence excluded because it's not

3    reliable and frankly we're dealing with these issues as

4    far as Mrs. Dove's invoking of her Fifth Amendment

5    privileges, and at this point there's no way that the

6    Government can effectively cross-examine her on these

7    issues.

8            THE COURT:  Okay.  Anything else?

9            MS. THELWELL:  Not from the Government, your

10   Honor.

11           THE COURT:  All right.  The phone, it sounds to me

12   like the Government doesn't really have any further

13   interest in looking at this particular phone.  Is that

14   what I'm hearing from you, Ms. Thelwell?

15           MS. THELWELL:  Not based on what Mr. Fitzgerald

16   has said the purpose of the phone is for two things,

17   Chaturbate and Dropbox.  She's invoked as to Dropbox, and

18   the Chaturbate account password was just changed a few

19   days ago.

20           THE COURT:  Okay.  Anything else this evening?

21           MR. FITZGERALD:  Just my letter for the record, my

22   letter to Ms. Thelwell dated March 16th.  It included an

23   exhibit list with the iPhone on it.

24           THE COURT:  March 16th, okay.

25           MR. FITZGERALD:  March 16th.

1          THE COURT:  Okay.  All right.  Counsel, then we

2     are in recess.  You all should be back here tomorrow

3     morning at 8:45.  The jury has been instructed to return

4     at 9:30 and we will proceed at that point.

5          I will give you some further -- my rulings with

6     regard to the request to exclude the iPhone.  I'm going to

7     talk with you a little bit further about Ms. Dove's

8     invocation of her Fifth Amendment privilege against

9     self-incrimination and we will then proceed with the rest

10    of the trial.

11         We are in recess until tomorrow morning.  I'll see

12    you all back here at 8:45, and the jury will be back at

13    9:30.

14         MR. FITZGERALD:  Your Honor, this isn't in

15    evidence.  I should take the Exhibit E with me,

16    Defendant's Exhibit E.

17         THE COURT:  It's not in evidence yet.

18    (Court adjourned at 4:11 p.m.)

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT  )

2                                )

3  MIDDLE DISTRICT OF FLORIDA    )

4

5          I, SHARON A. MILLER, Official Court Reporter for

6   the United States District Court, Middle District of

7   Florida, do hereby certify that pursuant to Section 753,

8   Title 28, United States Code that the foregoing is a true

9   and correct transcript of the stenographic notes taken by

10  computer-aided transcription taken in the above-entitled

11  cause by the undersigned and that the transcript format is

12  in conformance with the regulations of the Judicial

13  conference of the United States.

14  /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25

    UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION