1

2                         UNITED STATES OF AMERICA
                     UNITED STATES DISTRICT COURT
3                       MIDDLE DISTRICT OF FLORIDA

4                             -   -   -

5                 HONORABLE CHARLENE EDWARDS HONEYWELL
                 UNITED STATES DISTRICT JUDGE PRESIDING
6

7    UNITED STATES OF AMERICA,           )
                                         )
8                       PLAINTIFF,       )
                                         )
9                   VS.                  )8:19-cr-33-CEH-CPT
                                         )
10   JACK R. DOVE, III,                  )
                                         )
11                                       )
                        DEFENDANT.       )
12   _____)

13                         **SENTENCING HEARING**
14              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                          JUNE 29, 2021
15                        TAMPA, FLORIDA

16

17

18

19

20

21   SHARON A. MILLER, CSR, RPR, CRR, FCRR
     IL CSR 084-2617
22   FEDERAL OFFICIAL COURT REPORTER
     801 N. FLORIDA AVENUE, SUITE 13A
23   TAMPA, FLORIDA 33602

24   Proceeding recorded by stenography,
     transcript produced by computer-aided transcription
25


     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFF:

3           UNITED STATES ATTORNEY'S OFFICE
            MS. LISA THELWELL
4           MS. ILYSSA SPERGEL
            400 N. Tampa Street
5           Tampa, FL  33602
            (813)274-6000
6           Lisa.Thelwell@usdoj.gov

7

8    ON BEHALF OF DEFENDANT:

9           FARMER & FITZGERALD, P.A.
            MR. TIMOTHY JAMES FITZGERALD
10          800 West DeLeon Street
            Tampa, Florida 33606
11          (813) 224-0269
            fflawpafedtjf @aolcom
12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   (Court in session at 10:02 a.m.)

2          THE COURT:  Good morning.  We are here in the matter

3   of United States of America versus Jack Dove, 8:19-cr-33.

4   Counsel, please identify yourselves for the Court.

5          MS. THELWELL:  Good morning, Your Honor.  Lisa

6   Thelwell and Ilyssa Spergel on behalf of the United States.

7          MR. FITZGERALD:  Timothy Fitzgerald on behalf of

8   Jack R. Dove, III, and he's present seated to my left.

9          THE COURT:  Thank you.  Madam Clerk, please place

10  Mr. Dove under oath.

11         COURTROOM DEPUTY CLERK:  Sir, please rise and raise

12  your right hand.

13  (Defendant sworn.)

14         THE DEFENDANT:  I do.

15         COURTROOM DEPUTY CLERK:  Please state your name for

16  the record and spell your last name for the record.

17         THE DEFENDANT:  Jack R. Dove, III.  Last name is

18  D-O-V-E.

19         DEPUTY COURTROOM CLERK:  Thank you.  Be seated.

20         THE COURT:  All right.  Mr. Dove, you are before the

21  Court this morning, sir, based upon a plea of guilty you

22  entered on March 26th, 2021 at the conclusion of a four- or

23  five-day trial.  On that Friday you decided to enter a change

24  of plea and you entered a plea of guilty to Count One of an

25  indictment which charged you with receipt of child

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    pornography.  This is a violation of Title 18, United States
2    Code, Sections 2252(a)(2) and (b)(1).  And you also entered a
3    plea of guilty to Count Two which charged you with possession
4    of child pornography.  Again, a violation of Title 18, United
5    States Code, Sections 2252(a)(4)(B) and (b)(2).
6              The Court has previously accepted your guilty plea,
7    Mr. Dove, and adjudicated you guilty of these offenses.  As
8    I've indicated, you're here for sentencing; however, before
9    I impose sentence today, I'm going to ask you a few
10   questions.  I'm going to ask questions of your Counsel and
11   questions of Counsel for the United States.  I'm also going
12   to give you an opportunity to make a statement to the Court
13   if you choose to do so.
14             The first question for you, Mr. Dove, is have you
15   had an opportunity to review and discuss the presentence
16   investigation report with your attorney?
17             THE DEFENDANT:  Yes, ma'am.
18             THE COURT:  Do you have any questions of me
19   regarding that report?
20             THE DEFENDANT:  No, ma'am.
21             THE COURT:  Now, that report contains a lot of
22   factual information, information designed to assist the Court
23   in imposing a sentence that is sufficient but not greater than
24   necessary to comply with the statutory purposes of sentencing.
25             For example, there's information in the report

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    regarding your upbringing, regarding your family, regarding

2    your employment history, your education, your health, the

3    fact that you have no prior criminal history and, of course,

4    the facts that pertain to the charges for which you are here

5    today for sentencing.  Having presided over the trial, of

6    course, I am very familiar with the facts that came out

7    during testimony at that trial.

8         Other than any objections that your attorney may

9    have raised, do you wish to make any objections as to the

10   facts contained in the presentence investigation report?

11        THE DEFENDANT:  One second, Your Honor.  I'm sorry,

12   but, no, Your Honor, I don't have anything.

13        THE COURT:  Okay.  The report also contains a

14   calculation performed by the Probation Office as to the

15   advisory guidelines sentencing range.

16        Again, other than the objection filed by your

17   attorney, do you wish to make any objections as to that

18   calculation?

19        THE DEFENDANT:  No, Your Honor.

20        THE COURT:  Thank you.  Mr. Fitzgerald, have you had

21   an opportunity to review and discuss the presentence

22   investigation report with your client?

23        MR. FITZGERALD:  Yes, Your Honor.

24        THE COURT:  And do you wish to make any objections

25   as to the facts contained in the report?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1          MR. FITZGERALD:  A little factual correction and
 2   argument on an application.
 3          THE COURT:  Right.  We're going to get to the
 4   application.  What's the factual issue?
 5          MR. FITZGERALD:  It's within the argument of the
 6   application.
 7          THE COURT:  Then my next question is do you wish to
 8   make any objections as to the Probation Officer's calculation
 9   of the advisory sentencing guidelines range?
10          MR. FITZGERALD:  The only objection outstanding is
11   to paragraph 36, Your Honor, of the presentence report.
12          THE COURT:  You may come to the lectern and make
13   your argument.  Is this the acceptance of responsibility
14   objection?
15          MR. FITZGERALD:  Yes, Your Honor.
16          THE COURT:  I think it's paragraph 34.  Now it's
17   paragraph 36, you're right.
18          You may proceed.
19          MR. FITZGERALD:  Your Honor, we would request the
20   Court apply the two level downward adjustment pursuant to the
21   Federal Sentencing Guidelines for acceptance of
22   responsibility.  Mr. Dove although did proceed to trial, but
23   while he withdrew his guilty plea and entered a plea --
24   withdrew his not guilty plea and entered a plea of guilty and
25   accepted responsibility.  Since that time we've written
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    probation accepting responsibility for what happened.  You'll

2    hear in allocution today that he's accepting responsibility.

3          The Government has given us restitution numbers that

4    they have gotten from the victims.  He's agreeing to those

5    without contesting the restitution figures that the

6    Government has, which she'll address with you later, and in

7    paragraph 36 it indicates that he spent two hours deciding

8    whether to plea, and we take issue with that.

9          He was downstairs in front of Judge Tuite.  It

10   wasn't deciding whether to plea.  The Government wrote a

11   factual basis of the plea and he was attempting in front of

12   Judge Tuite to expand the factual basis to other things that

13   occurred at the home, and the Judge took several recesses

14   because Mr. Dove kept insisting on doing that.

15         He wanted to take full responsibility so that no

16   other family members or anybody would get in trouble for

17   what happened in that house, and ultimately we pled to the

18   facts as listed by the Government and weren't allowed to

19   make additions to it, but that's what took two hours.

20         It wasn't deciding whether to plead guilty or not.

21   It was trying to expand the scope of what was in the factual

22   basis that the Government had provided the Court, so based

23   on his conduct of pleading guilty, accepting responsibility,

24   providing, agreeing to the restitution figures, we

25   respectfully request the Court find that he has accepted

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    responsibility and apply the two level downward adjustment

2    to the applicable guideline range.

3             THE COURT:  Okay.  Thank you.

4             Ms. Thelwell, have you had an opportunity to review

5    the presentence investigation report?

6             MS. THELWELL:  Yes, Your Honor.

7             THE COURT:  Do you have any objections as to the

8    facts contained in the report?

9             MS. THELWELL:  No, Your Honor.

10            THE COURT:  Do you wish to make any objections as to

11   the Probation Officer's calculation of the guidelines?

12            MS. THELWELL:  No, Your Honor.

13            THE COURT:  You may come to the lectern and respond

14   to the Defendant's objection as to the failure to give the two

15   level deduction for acceptance of responsibility.

16            MS. THELWELL:  Yes, Your Honor.  Mr. Dove was

17   originally arrested on this case back in November of 2018.

18   Ultimately we proceeded to trial in March of 2021.  Nowhere in

19   that time had Mr. Dove expressed an interest to resolve his

20   case short of a trial unless the Government were to involve or

21   engage in certain plea bargaining which it refused to do so.

22            The case proceeded to trial and Your Honor and I and

23   everyone, opposing Counsel as well as the case agent who was

24   present at counsel's table and co-Counsel sat through five

25   days' worth of trial testimony where we had -- the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Government had to provide and secure witnesses who were

2    located out of state in the middle of the pandemic.

3    Additionally there was extensive litigation, pretrial

4    litigation that would also require additional witnesses that

5    the Government had not initially intended to call in trial

6    because the Defendant objected to the authenticity of the

7    website server that's at issue in this case where the

8    evidence was subsequently found of his criminal activity.

9         Acceptance of responsibility is reserved for people

10   who clearly demonstrate that they have accepted

11   responsibility for their criminal conduct.  Mr. Dove is not

12   that Defendant.  Throughout the entirety of the case and

13   even showing that, you know, it wasn't until after the

14   Government rested its case and was preparing for closing

15   arguments that Mr. Dove expressed an interest in resolving

16   his case with a plea.

17        Now, I will comment briefly on Defense Counsel's

18   characterization of how that plea was essentially entered.

19   There was disagreement with Mr. Dove over the facts of which

20   he was pleading guilty to which resulted in not only the

21   magistrate judge having to take multiple recesses in order

22   to allow Mr. Dove to communicate with his attorney over the

23   facts.  Mr. Fitzgerald on behalf of his client approached me

24   multiple times in an effort to amend the factual basis so

25   that his client would feel comfortable admitting guilt to

1    the facts as indicated in the notice of maximum penalties,

2    and the Court as well as the jurors who had sat through the

3    five-day trial were waiting while all of that occurred

4    downstairs in Judge Tuite's courtroom, again, delaying the

5    entire process, you know, not being able to release the jury

6    because not knowing for certain whether or not Mr. Dove was

7    truly going to accept responsibility for his acts.

8         When you look at U. S. Sentencing Guidelines

9    3E1.1(a), it states that if the Defendant clearly

10   demonstrates acceptance of responsibility for his offense to

11   decrease his offense level by two levels, and that's what

12   the issue is here.  But the application notes are very

13   instructive.  Specifically Application Note 3, it talks

14   about when a Defendant enters a guilty plea, but here in

15   that very first sentence, it's talking about when that

16   guilty plea is entered prior to the commencement of a trial

17   which is not what we have here.

18        The application notes talks about when a Defendant

19   pleads guilty prior to beginning trial combined with

20   truthfully admitting the conduct comprising of the offense.

21        Later in that application note, it clarifies that

22   just because a Defendant enters a guilty plea does not mean

23   that he is entitled to an adjustment under this section as a

24   matter of right.

25        Furthermore, in Application Note 6, it does talk

1    about the differences in Subsection A and Subsection B with

2    the level, the two level reduction and the one level

3    reduction, but it indicates that timeliness of the

4    Defendant's acceptance of responsibility is a consideration

5    under both of the subsections and is context specific.

6            And I think that when we look at this particular

7    case, Mr. Dove's conduct from indictment through his

8    eleventh hour guilty plea shows that he has not clearly

9    accepted or clearly demonstrated his acceptance of

10   responsibility.

11           It wasn't until after his wife took the stand in

12   front of Your Honor and appeared to be providing

13   questionable testimony, it wasn't until that moment when the

14   Court had to recess.  We came back on that Friday and

15   instead of moving forward with whatever defense he was

16   seeking to put forth through his wife, he then decided he

17   would plead guilty, and when we were dealing with the

18   factual basis trying to include facts that are completely

19   irrelevant to his particular crimes that he's been charged

20   with, apparently in some sort of effort to protect his wife,

21   the only other adult in the house who could have potentially

22   been charged with any criminal conduct related to this

23   incident.

24           So, based on the context and the facts and

25   circumstances surrounding Mr. Dove's ultimate guilty plea,

1    it's the Government's position that he has not clearly

2    demonstrated acceptance of responsibility as required by

3    Section 3E1.1 and we'd ask that the Defendant's request be

4    denied and probation's calculations sustained.  Thank you.

5            THE COURT:  Thank you.  Mr. Dove, I have reviewed

6    the presentence investigation report, but more importantly

7    with regard to this objection, I am uniquely familiar with

8    everything that occurred having presided over the trial.  I'm

9    also familiar with the sentencing guidelines Section 3E1.1 and

10   the commentary, the notes that accompany that provision as it

11   relates to acceptance of responsibility.

12           In this case and under these circumstances, you have

13   not established entitlement to the reduction for acceptance

14   of responsibility.  The evidence in this case clearly

15   indicates that you did not plead guilty prior to the

16   commencement of trial combined with truthfully admitting the

17   conduct comprising the offense of conviction and truthfully

18   admitting or not falsely denying any additional relevant

19   conduct.  And while that's not the only factor, in looking

20   at the other factors in this case, we were at the last day

21   of trial.

22           Ms. Thelwell is correct, that it was only after your

23   wife took the stand, invoked her Fifth Amendment privilege a

24   number of times, issues came up.  We recessed the trial for

25   that day.  You came back the next day, and I was advised on

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    the last day of trial, which would have been an opportunity

2    for closing arguments, that you were going to enter a guilty

3    plea.

4            At that point the parties, your attorney,

5    Ms. Thelwell have already prepared for trial.  They had

6    cross-examined and put on direct evidence with regard to a

7    number of witnesses, so all of the trial preparation had

8    occurred.  It was simply a matter of finishing your wife's

9    testimony.  I don't know whether a decision had been made

10   yet regarding whether you were going to testify and then

11   going into close arguments and jury instructions.

12           And given that, when I compare that, I look at the

13   timeliness of your guilty plea with someone who does indeed

14   admit guilt before trial and then is truthful in their

15   admission, the Court is of the opinion that you are not

16   entitled to the acceptance of responsibility deduction in

17   this case, and so I am going to overrule your objection with

18   regarding to paragraph 34 of the sentencing guidelines based

19   upon the evidence in this case because the fact that the

20   plea was entered on what would have been the last day of

21   trial and the fact that the Government had already prepared

22   for trial, witnesses had been subpoenaed, witnesses had

23   testified, examination had occurred, argument on legal

24   issues had occurred, the resources and effort that served by

25   accepting responsibility did not occur in this case, and so

1    I am not going to grant that request.  And, in fact, I think

2    that the evidence clearly indicates that you are not

3    entitled to acceptance of responsibility.

4         The Court having ruled on the Defendant's objection

5    with regard to the calculation of the guidelines, there

6    being no further objections, the Court adopts the facts as

7    in the presentence investigation report as its findings of

8    fact and based upon them determines that the advisory

9    guidelines are as follows:  The Total Offense Level is 33.

10   The Criminal History Category is I.  The advisory guidelines

11   range for incarceration is 135 to 168 months imprisonment

12   with five years to life supervised release.

13        With regard to the restitution, Counsel, have you

14   all been able to come up with the amounts?  I know that

15   amounts had been requested, however, there have been

16   suggestions that those amounts clearly are in excess of what

17   those individuals are entitled to.

18        Ms. Thelwell, what is the Government's position with

19   regard to the restitution?

20        MS. THELWELL:  Yes, Your Honor.  I have contacted

21   and spoken with either the victim or the victim's attorneys

22   and have negotiated lower requests.  I've provided that

23   information to Mr. Fitzgerald.  I just don't know whether or

24   not his client has agreed to the numbers.

25        THE COURT:  What amount have you provided?

1              MS. THELWELL:  As to victim Tara, $3,000.  As to

2    victim Vicky, $5,000, and as to victim Violet $5,000.

3              THE COURT:  Those were the only individuals that

4    requested restitution?

5              MS. THELWELL:  Yes, Your Honor.

6              THE COURT:  All right.  Mr. Fitzgerald, what is the

7    Defendant's position with regard to the restitution?

8              MR. FITZGERALD:  Your Honor, Ms. Thelwell gave me

9    those figures and Mr. Dove has agreed to accept those figures

10   for the victims.

11             THE COURT:  Okay.  So then the amount of restitution

12   in this case would be $13,000; is that correct?

13             MR. FITZGERALD:  That's correct, Your Honor.

14             THE COURT:  Is there any objection to that amount?

15             MS. THELWELL:  No, Your Honor.

16             THE COURT:  All right.  Then with regard to

17   restitution, the amount is $13,000 to be provided to victims

18   in some of the videos that were downloaded in this case.

19   Victim Tara 3,000, victim Vicky, 5000, victim Violet, 5,000.

20             The range for a fine in this case is 35,000 to

21   $250,000 and there's a $200 special assessment.  That's $100

22   for each count.

23             Ms. Thelwell, are any victims present in the

24   courtroom?

25             MS. THELWELL:  No, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Do you have a statement that you would

2    like to make on behalf of any of the victims?

3          MS. THELWELL:  No, Your Honor.  The victim impact

4    statements were provided and attached to the addendum of the

5    PSR.

6          THE COURT:  All right.

7          MS. THELWELL:  I apologize, Your Honor.  There

8    should also be a $5,000 special assessment per count.  I think

9    I only heard the Court mention a $200 special assessment.

10         THE COURT:  I did only mention a 200, but you're

11   correct.  Based upon the act -- I can't remember the name of

12   the act now.  It escapes me.  But I will read that when I get

13   to the other portion of the order.  It's the special

14   assessment, actually the 5,000 under 18 U.S.C. Sections 3014

15   is not imposed because I think he's indigent.

16         PROBATION OFFICER:  Yes, Your Honor.  It's further

17   in the statement.

18         THE COURT:  Yes.  Yes.  So if he's indigent, then

19   that 5,000 special assessment is not imposed.

20         PROBATION OFFICER:  Yes, Your Honor, correct.  It's

21   further along.

22         THE COURT:  So the assessment that I talked about

23   was just the usual special assessment.  Ms. Thelwell, were you

24   referring to the Act that applies on these cases other than

25   that assessment or is that the one that you were referring to?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          MS. THELWELL:  No, Your Honor.  It's just the

2    statutory $5,000.

3          THE COURT:  All right.  Mr. Dove, do you know of any

4    reason why you should not be sentenced today, sir?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Would you like to make a statement to

7    the Court before I impose sentence?  If so, you may stand and

8    make your statement at this time.  I know I have received some

9    letters in support.  You may stand and make your statement.

10         THE DEFENDANT:  "Your Honor, I have some major back

11   issues and I asked my attorney if he wouldn't mind if you

12   would either provide you read the letter just because it's

13   difficult for me.

14         THE COURT:  Mr. Fitzgerald may read the letter on

15   your behalf.

16         MR. FITZGERALD:  Would you like for me to read from

17   the podium, Your Honor?

18         THE COURT:  Yes.

19         MR. FITZGERALD:  Your Honor, please excuse my

20   handwriting as I am unable to sit at the desk or table due to

21   my sciatic nerve being pinched.  I want Your Honor to know

22   that I take full responsibility in the charges that I am

23   facing.  I am also aware of how horrible in nature the charges

24   are.  In no way is this a victimless crime.  I've had almost

25   three years on house arrest for self-reflection who I truly

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    am.   I have also read the contents of the treatment and

2    problems the victims in this case have endured and I was

3    horrified and it sickened me.

4              Every time someone views them or attempts to

5     re-victimization occurs.  I cannot imagine how that feels.

6     I've no intention of challenging the restitution requested

7     by the victims and will find a way to pay the whole

8     requested amount.  I do not want to make this letter about

9     me, but without including information about me.

10             I've lost everything since my arrest.  I'm aware

11    that my losses may very well be deserved.  I have, however,

12    learned some valuable lessons.  My life has been devoted

13    towards making money and having possessions and I now see

14    that my family is far more valuable than any possession I

15    could ever obtain.

16             My mother was my best friend and she died while

17    supporting me.  She was driving a truck which she should

18    have been retired to pay the bills that I was unable to pay

19    until a cow ran in front of her and she lost control and

20    died on the scene.  I will never forgive myself for not

21    being the one at work.

22             My goal, if I am ever able to is teach my children

23    how to live and survive in this world without choosing

24    possession over family.  My mother, biological father,

25     step-father and niece have died in the past few years.  I

have a grandmother who has raised me whose health is
failing.  I will probably never get to see her again as she
lives in Michigan and I have not seen her in years.

I have taught my kids the wrong lessons in life.
Among mistakes, I want to fix everything I can in my
lifetime.  If one of my children were hurt in any way, I
would be facing an entirely different matter.  I understand
the Court needs to evaluate if I am a danger.  I have no
problems not accessing the internet for the remainder of my
life.  I have learned over the last few years to live
without it.  I do not need it.  I've taught myself how to
build furniture and I believe I can sell it with my wife's
help and pay any restitution owed and provide a modest
living for my family.

I am truly sorry for any harm I have caused anyone.
That is not the person I am or want to be.  I make sure I
will continue to comply with any order I receive from the
Court.  I humbly request that if allowed to self report if
Your Honor allows the physical pain I'm experiencing on top
of my size and the small transportation vans, I'm scared of
what will happen."

He also included some pictures he wanted me to show
Your Honor, which I shared with the Government.  They don't
need to be put into evidence.  Can I approach?

THE COURT:  Yes.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1           MR. FITZGERALD:  As the Court knows he's been on
 2    home confinement for 30 months and he's taught himself to
 3    build furniture and those are pictures of some furniture that
 4    he's built and that's what he's referencing in the letter for
 5    the build and sell furniture to pay the restitution in the
 6    matter.
 7           THE COURT:  Okay.  Thank you.
 8           MR. FITZGERALD:  That's his statement, Your Honor.
 9    Thank you.
10           THE COURT:  All right.  Mr. Fitzgerald, do you know
11    of any reason why the Court should not impose sentence today?
12           MR. FITZGERALD:  No, Your Honor.
13           THE COURT:  You may come to the lectern and make
14    your argument as to the sentence to be imposed.  I have
15    reviewed your sentencing memorandum.
16           MR. FITZGERALD:  First, Your Honor, I have three
17    documents I request the Court allow me to add to the pretrial
18    services report.  They are medical records that came after the
19    report went out seven days ago and couldn't be included.
20           As we've discussed, he's been in terrible back pain,
21     and it's the doctor ordering an MRI for his back, so one of
22     the records is an MRI.  Another is an updated list of the
23     medications he's been prescribed, and the final document is
24     a document from Lakeland Regional Health where he went into
25     the emergency room with severe chest pains on June 11th and
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    they didn't diagnose a heart issue.  They diagnosed an

2    illness called costal chondritis which is an inflammation of

3    the cartilage in the ribs, in the breast bone.  These aren't

4    part of his current presentence report and so he'd like if

5    we could to provide them to probation to amend the

6    presentence report so that Bureau of Prisons is aware of

7    these health issues.

8            THE COURT:  All right.  You may provide them to

9    probation and we will then publish a final presentence

10   investigation report so that the Bureau of Prisons will have

11   access to that information.

12           Mr. Fitzgerald, direct the microphone up towards

13   your mouth.

14           MR. FITZGERALD:  I apologize.

15           THE COURT:  That's better.  Thank you.

16           MR. FITZGERALD:  And I've shown those documents to

17   the Government as well, Your Honor, for the record.

18           Your Honor, we would like the Court to consider a

19   variance from the otherwise applicable guideline range under

20   18, United States Code Sections 3553.  I won't belabor the

21   Court's power because I'm sure the Court is well aware of

22   what your power is under the statute in relation to the

23   advisory guideline range.  We would like the Court to

24   consider that, again, he has no criminal history, and while

25   a lot of people may come in with no criminal history, he's

1    40 years old.  So it's not the same as a 22-year old with no
2    criminal history.  He's gone a long time in his life with no
3    record.

4          He had by all accounts a very bad upbringing with a
5    very bad father, left school early, but he's worked his
6    entire life in both, namely, the security industry and later
7    in the trucking industry, and he's always been employed and
8    a tax paying citizen providing for his family.

9          Unfortunately the records differ, but he has either
10   a eighth or ninth grade education because he had to leave
11   the school to provide for his family.  He currently has a
12   strong family support as the Court has received letters from
13   his family members, and I won't belabor them.  The Court's
14   read them I'm sure, but they all talk about what a good
15   person he is and how well he treats his family and his
16   children.

17         He does have significant health issues as the report
18   indicates.  He has hypertension, diabetes.  He is in severe
19   back pain now.  He periodically has it.  He had it about a
20   year-and-a-half ago while on supervised release -- pretrial
21   release and had to address the issues and got an MRI then.
22   It's flared up again for some time.  He's in constant pain.
23   He can't sleep.  He walks around with this sciatica thing,
24   with a pinched nerve, and it's incredibly painful and
25   incredibly discomforting.

1          All of the combined conditions that he has will make

2     his time in prison a little more difficult than the average

3     person, especially his size, he's six foot eight, or six

4     foot nine, which will make it more difficult to accommodate

5     any transportation or probably even the beds in the Bureau

6     of Prisons.

7          The Court also can consider policy statements in

8     fashioning what is a reasonable sentence.  And I know the

9     Court's aware of the United States Sentencing Commission's

10    report in 2013 basically finding that the possession or the

11    non-production of child pornography guidelines were flawed.

12    They weren't based on empirical data like most of the

13    guidelines are.  They often resulted in possession, people

14    that possess getting too high a sentence and some production

15    people getting, in their minds, too low a sentence.  And as

16    the Court knows, the Court can vary from the applicable

17    guideline range due to a disagreement with the legitimacy of

18    the guideline applications.

19          And all the law for that is cited in the memorandum

20    which I'm sure the Court read, but the guidelines they

21    found -- and among other things that -- it's old based on

22    the technology.  In basically every case that comes in this

23    courthouse involving child pornography involves the use of a

24    computer of some sort or the internet, and yet there's an

25    enhancement for that which the sentencing commission in

1    their report found that the way they apply technology to the

2    guidelines or non-production of child pornography is flawed.

3            Any sentence the Court gives Mr. Dove is a five year

4    minimum mandatory will protect the public for five years

5    because it's one of the criteria the Court needs to look at.

6    But also the Court can look at the fact that for 30 months

7    he's been on release with pretrial services and he's been

8    under court orders to remain in his home except for limited

9    reasons, medical appointments and/or seeing Counsel for

10   court dates.  And the report from pretrial services

11   indicates he's done extremely well.

12           One day he forgot to call in and another day he was

13   out of the house I guess briefly without permission and they

14   admonished him, but short of that, in 30 months that

15   followed every court order.  So, on top of the protecting

16   the public for the mandatory minimum 5 years, the fact that

17   Mr. Dove follows the Court's orders will further protect the

18   public because he'll be on supervised release and under

19   strict guidelines he'll be required to follow, and he's

20   shown unlike probably everyone had, he's been out 30 months

21   for a variety of reasons that he will follow court orders.

22           The Court can also consider a disparity in

23   sentencing.  We provided our sentencing memo some examples

24   of downward variances that were upheld as reasonable by the

25   Eleventh Circuit.  As the Court knows, it's in all these

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    cases and in almost every case that comes before the Court,

2    it's very hard to show disparity because it's hard to see

3    what's going on with every single case that goes before

4    another court; however, the cases were provided to show that

5    when the Court finds it reasonable, the Eleventh Circuit has

6    upheld variances downward for significant periods of time

7    first as reasonable.

8         We also cited in our memo the status of

9    Son-Jong-Woo, and candidly my knowledge of what's going on

10   with Mr. Woo is only through newspapers article.  Mr. Woo is

11   the one that operated and owned the Welcome to Video server

12   in Korea, and apparently he was prosecuted in Korea for 18

13   months, got out and the Government attempted to extradite

14   him and the Korean officials denied it.

15        And then Mr. Woo, with Korea's denying it is kind of

16   on a double jeopardy standard because they prosecuted him

17   there.  The gentleman then looks like the Government

18   attempted to find new ways to charge him including money

19   laundering or things like that, and other charges were made

20   by family members, so he is now being prosecuted in Korea

21   for the identical charges that the Government is now trying

22   to get Mr. Woo for over in this country, so that, again,

23   he's going to attempt to claim whatever the equivalent of

24   double jeopardy is through Korea and that he shouldn't be

25   extradited, and obviously this is just from newspaper

1    articles.  I don't have any knowledge, but bottom line is

2    that he's currently served 18 months as the gentleman that

3    ran the server, and that's just something for the Court to

4    consider.

5         We would like the Court to consider sentencing

6    Mr. Dove to the statutory minimum mandatory of five years

7    given all these factors, given the strong family support,

8    given how well he's done on pretrial release.  And we

9    understand that's about a seven level variance from the

10   otherwise applicable guideline range downward, but we think

11   that his outstanding performance on pretrial release shows

12   that he'll follow the Court's order when he gets out and we

13   think five years is sufficient without being greater than

14   necessary to punish Mr. Dove for this offense.

15        THE COURT:  Okay.  Thank you.

16        MR. FITZGERALD:  Thank you.

17        THE COURT:  Ms. Thelwell, do you know of any reason

18   why the Court should not impose sentence today?

19        MS. THELWELL:  No, Your Honor.

20        THE COURT:  You may come to the lectern and make

21   your argument as to the sentence to be imposed.

22        MS. THELWELL:  Your Honor, Defense Counsel is

23   correct in that the Court has the discretion as to whether or

24   not to impose a guideline sentence in this case.  The Court

25   can evaluate Section 3553(a) factors to see whether or not a

1    variance is appropriate in this case.  However, the Court

2    should deny the Defendant's request for a variance.

3           In looking at the 3553(a) factors, there's

4    absolutely no reason at all for the Court to vary downward

5    from the guideline range in this case.  As the Court has

6    already stated, it's 135 to 168 months.

7           First, when we look at the nature and circumstances

8    of the offense, ordinarily charges like these receipt of

9    child pornography and possession of child pornography might

10   involve a Defendant, you know, trading one on one with an

11   individual on an online social media platform and it

12   eventually leads to a search warrant at their house and we

13   find them in possession of child pornography.  That's not

14   the case we have here.

15          The case before Your Honor is extremely unique as

16   you know by reviewing the evidence as it came in at trial.

17   Welcome to Video was the largest child pornography

18   enterprise available on the dark web.  As testimony panned

19   out in Court, it contained approximately eight terabytes

20   worth of child sex abuse material and essentially functioned

21   as some sort of YouTube for individuals who were seeking out

22   this type of material for their own sexual gratification,

23   individuals like the Defendant Mr. Jack Dove.

24          The evidence showed at trial that Mr. Dove created

25   multiple accounts on this dark web website which included

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    purchasing memberships, so as the witness had explained, the

2    undercover agent in this case had explained a user can

3    create a free account on the Welcome to Video website and

4    simply browse through the content or they can do like what

5    Mr. Dove did and pay for membership so that they could

6    download and access and search the child sex abuse material

7    directly from the website.

8         Here, that's exactly what Mr. Dove did.  It led to a

9    search warrant at his house which found him in possession of

10   not only videos that had been downloaded from the Welcome to

11   Video website but they also found him in possession of a few

12   videos that had not been attributed to the website.

13        Now, Mr. Fitzgerald highlighted to the Court the

14   fact that the Defendant has no prior criminal history, but I

15   submit to the Court that Mr. Dove has been leading a double

16   life for quite some time.

17        As the evidence showed at trial, at least in 2016,

18   the Defendant began the onset of the criminal activity

19   associated with this case.  At that time, Mr. Dove

20   unsophisticated with technology was searching the open

21   internet on Google for, quote, "teen porn," and other

22   terminology and other phrases indicative of child sex abuse

23   material.

24        After some time passed, in reviewing his website as

25   his web history, his browser history, it appears that

```
 1      Mr. Dove attempted to take steps to cover his criminal
 2      activity.  He started using VPN which is a Virtual Private
 3      Network, and we know from the testimony at trial that this
 4      attempt to mask one's IP address.  He also attempted -- not
 5      attempted.  He did use.  He downloaded TOR, The Onion
 6      Router, which we know is a way to access the dark web.  He
 7      set up a Coinbase account so that he could use Bitcoins to
 8      fund his activity on the website.  He also created a
 9      fictitious email in an attempt to distance himself from the
10      criminal activity, and he even used a sophisticated virtual
11      machine which, if you recall the forensic analyst in this
12      case testified, that any activity that occurred in that
13      virtual machine, any online dark web activity would have
14      been erased at the close of every session.
15            And also looking at his website history, I saw that
16      at least in 2016 Mr. Dove had began searching for child
17      pornography websites that were hidden on The Onion Router,
18      on TOR.  It's from that activity that Mr. Dove found his way
19      onto the Welcome to Video website.
20            Now, I know that the Court generally in these types
21      of cases where there's the receipt of child pornography and
22      possession count tends to vary downward two levels because
23      of a computer enhancement.
24            THE COURT:  You've had too many of these cases in
25      front of me, haven't you?
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1            MS. THELWELL:  Yes, Your Honor.  But I understand

 2     that that's your practice, and I've come --

 3            THE COURT:  It is my practice, and I can just save

 4     you the effort.  I'm going to do that too here.  I do it in

 5     every one of these cases.  As you do know, I don't believe

 6     that the guidelines should use two level enhancement for use

 7     of a computer as do many of my colleagues across the country.

 8            As you all know, the Sentencing Commission has

 9     not, Congress nor the Guidelines Sentencing Commission has

10     taken any action with regard to that, but that is because

11     everybody uses computers now, so there shouldn't be any

12     enhancement.  We don't get pornography in brown paper bags

13     like you used to do to your home years ago, so it's the way

14     I address my disagreement, as Kimbrough says I can do, with

15     regard to the guidelines, and so that's what I'll do until

16     they fix it.

17            So you've heard this speech before.  I don't know

18     whether Mr. Fitzgerald has.  I know Mr. Dove has not, so I

19     was going to state that, but since you brought it up, I'll

20     just let you know, I do intend to vary the two levels based

21     upon the use of a computer.  That's already been calculated

22     in, so while I agree that the guidelines are accurately

23     calculated and determined including that, case law suggests

24     that the way the Court deals with that is to vary based upon

25     it and then express disagreement with the guidelines.

1        MS. THELWELL:  I understand, Your Honor.  I still

2   would like to make my argument.

3        THE COURT:  You may.

4        MS. THELWELL:  Your Honor, ordinarily I could

5   understand, as I stated in the other types of cases that might

6   come before Your Honor, where an individual is on KIK or some

7   other social media application using their phone.  That is how

8   they get child pornography.  This case, if the computer

9   enhancement was ever appropriate, it would be appropriate in a

10  case like this.

11       Here, the Defendant went through great lengths to

12  use technology in a way to access child pornography, not

13  just access but commercial -- engage in commercial activity

14  for his own sexual gratification.  It's not as simple as

15  whipping out his cellphone.

16       Your Honor heard the extensive testimony as to the

17  complexity of the dark web as to the steps that he would

18  have had to take in order to conceal his activity, setting

19  up his Bitcoin account and ultimately accessing the website

20  to receive that child sex abuse material.  And so it's the

21  Government's position that in this particular case the

22  enhancement is appropriate and is not a reason to downward

23  vary.

24       Additionally, when looking at the other 3553(a)

25  factors, to reflect the seriousness of the offenses, promote

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1    respect for the law, I think that none those factors weigh

 2    in favor of the Defendant's request for variance,

 3    specifically talking about the need to avoid unwarranted

 4    sentencing disparities among Defendants with similar records

 5    who have been found guilty of similar conduct.

 6          As Mr. Fitzgerald highlighted, the website

 7    administrator who has been indicted by the United States in

 8    August of 2018 with a multitude of charges including ones

 9    that carry mandatory minimums.

10          Now, the United States Government is sovereign, as

11    the Court knows, from any other country, so it's irrelevant

12    frankly what the website administrator has been sentenced to

13    in Korea.  The fact remains that before Your Honor is the

14    Defendant who was charged with using the website to receive

15    and -- receive child pornography and ultimately possess

16    child pornography.  So considering whether or not Mr. Dove's

17    sentence is disparate to any other Defendant's sentence here

18    within the Middle District of Florida for similar charges, I

19    think that's what the Court has to focus on, not what

20    charges or what potential sentence the website administrator

21    who is being charged or has been charged out of the District

22    of Colombia is facing.

23          And I think when the Court does its own inventory of

24    the cases that you've had, this case stands out and for

25    reasons that I've already stated.  His conduct is egregious.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1        There is no reason respectfully, Your Honor, to vary
 2   downward in this case, and we'd ask that he be sentenced to
 3   a guideline -- excuse me -- to a term of imprisonment within
 4   his guideline range and that that sentence would be
 5   sufficient and not greater than necessary to meet the
 6   statutory purposes of punishment.  Thank you.
 7             THE COURT:  All right.  Thank you.
 8             Mr. Dove, sentencing Defendants charged with the
 9   crimes for which you are before the Court today is
10   particularly tough, because as in your case, most of the
11   Defendants have no prior criminal history.  Many of them
12   have, you know, worked hard and provided for their families.
13   Many of them have been active in community service, but
14   somehow they develop this attraction or addiction to child
15   pornography.  You fall in that same category to the extent
16   that you have no prior criminal history.  I did receive
17   letters.  I read a letter from your cousin Mary Dove, your
18   Aunt Janice Dove and, of course, read the statements in the
19   presentence investigation report.
20             I agree with Ms. Thelwell that your case is
21   different however from many of those Defendants.  First of
22   all, you went to trial.  Although you ultimately entered a
23   guilty plea, most of the Defendants don't go to trial, but
24   that is no reason for me to not impose the same type of
25   variance that I impose in these other cases.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1         While I considered the fact that the use of the

2    computer in this case was egregious and the steps that you

3    took to hide your involvement and your viewing, your

4    possession and your receipt of the child pornography, I

5    consider the actions you took as part of the nature and

6    circumstances of the offense, and after some considerable

7    thought decided that you too should receive the same two

8    level variance that I give to Defendants with these types of

9    charges for the use of the computer enhancement.  And I've

10   done it, and I will do it here because the Eleventh Circuit

11   has noted that in Kimbrough, courts are empowered with

12   discretion to impose a variance based upon a policy

13   disagreement with the sentencing guidelines, and the policy

14   disagreement is with regard to the use of the computer given

15   the fact that every case that I have presided over that

16   involves these charges or similar child pornography charges

17   involving the use of a computer, and as I said, a lot of

18   them in Orlando when I was there for two-and-a-half years,

19   and so half of my criminal docket consisted of child

20   pornography cases.

21        And so I'm going to do the same thing here and that

22   is the only reason I am varying from the recommended

23   guidelines range in this case.

24        All of the other 3553(a)(1)-(7) factors I think have

25   been considered and don't warrant any further or additional

1    variance.  So while I'm granting the motion to vary, I'm not

2    granting it to the level requested by your attorney which is

3    a sentence of 60 months which is the mandatory minimum.

4         I am going to impose a sentence in this case of 110

5    months' incarceration.  I do believe that sentence is

6    sufficient but not greater than necessary to comply with the

7    statutory purposes of sentencing.  Considering again the

8    history, your personal history, and I have taken into

9    consideration the things that you have done in the community

10   and for your family, I'm aware of your health and the issues

11   you've had.  Mr. Fitzgerald has laid them out in his

12   sentencing memorandum.  I have considered, of course, the

13   nature and circumstances of the offense having presided over

14   the trial almost to conclusion basically as we were on the

15   fifth day of trial, and given those factors the sentence I'm

16   going to impose is 110 months.

17        There being no reason for the Court to withhold the

18   imposition of sentence, pursuant to Title 18, United States

19   Code, Sections 3551 and 3553, it is the judgment of the

20   Court that the Defendant Jack Dove is hereby committed to

21   the custody of the Bureau of Prisons to be imprisoned for a

22   term of 110 months.

23        This term consists of a 110-month term as to Count

24   One and 110-month term as to Count Two, both terms to run

25   concurrently.  So it's two counts, 110 on each count, but

1    they're running concurrently.

2            Upon release from imprisonment, Mr. Dove, you shall

3    serve a 12-year term of supervised release.  This term

4    consists of a 12-year term as to Counts One and Two, again,

5    both such terms to run concurrently.

6            While on supervised release, you shall comply with

7    the mandatory and standard conditions adopted by the Court

8    in the Middle District of Florida.  In addition, you shall

9    comply with the following special conditions.  One, you

10   shall participate in a substance abuse program outpatient

11   and/or inpatient and follow the probation officer's

12   instructions regarding the implementation of this court

13   directive.

14           Further, you shall contribute to the cost of these

15   services not to exceed an amount determined reasonable by

16   the probation officer's sliding scale for substance abuse

17   treatment services.

18           During and upon the completion of this program, you

19   are directed to submit to random drug testing.  Two, you

20   shall participate in a mental health program specializing in

21   sexual offender treatment and submit to polygraph testing

22   for treatment and monitoring purposes.

23           You shall follow the probation officer's

24   instructions regarding the implementation of this Court

25   directive.

1          Further, you shall contribute to the cost of such

2    treatment and/or polygraph not to exceed an amount

3    determined reasonable by the probation officer based on your

4    ability to pay or the availability of third-party payment

5    and in conformance with the Probation Office's sliding scale

6    for treatment services.

7          Three, you shall register with the state sexual

8    offender registration agency in any state where you reside,

9    visit, are employed, carry on a vocation or are a student as

10   directed by the probation officer.

11         Four, the probation officer shall provide state

12   officials with all information required under Florida Sexual

13   Predator and Sexual Offender Notification and Registration

14   statutes and/or the Sex Offender Registration and

15   Notification Act and may direct you to report to these

16   agencies personally for required additional processing such

17   as photographing, fingerprinting and DNA collection.

18         Five, you shall have no direct contact with minors,

19   that is, those under the age of 18 without the written

20   approval of the probation officer and you shall refrain from

21   entering into any area where children frequently congregate

22   including schools, daycare centers, theme parks, playgrounds

23   and the like.

24         Six, you are prohibited from possessing, subscribing

25   to or viewing any images, videos, magazines, literature or

1     other materials depicting children in the nude and/or in

2     sexually explicit positions.

3            Seven, without the prior written approval of the

4     probation officer, you are prohibited from either possessing

5     or using a computer including a smart phone, a handheld

6     computer device, a gaming console, or an electronic device

7     capable of connecting to an online service or an internet

8     service provider.

9            This prohibition includes a computer at a public

10    library and an internet cafe, your place of employment or an

11    educational facility.

12           Also, you are prohibited from possessing any

13    electronic data storage median including a flash drive, a

14    compact disk, and a floppy disk or using any data encryption

15    technique or program.

16           If approved to use a device -- if approved to

17    possess or use a device, let me clarify that, you must

18    permit routine inspection of the device including the hard

19    drive and any other electronic data storage median to

20    confirm adherence to this condition.

21           The United States Probation Office must conduct the

22    inspection in a manner no more intrusive than necessary to

23    ensure compliance with this condition.  If this condition

24    might affect a third-party including your employer, you must

25    inform the third-party of this restriction including the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1      computer inspection provision.

2           Eight, you shall submit to a search of your person,

3      residence, place of business, any storage units under your

4      control, computer or vehicle conducted by the United States

5      probation officer at a reasonable time and in a reasonable

6      manner based upon reasonable suspicion of contraband or

7      evidence of a violation of a condition of release.

8           You shall inform any other residence that the

9      premises may be subject to a search pursuant to this

10     condition.  Failure to submit to a search may be grounds for

11     revocation.

12          Nine, you shall be prohibited from incurring new

13     credit charges, opening additional lines of credit or

14     obligating yourself for any major purchases without approval

15     of the probation officer.

16          Ten, you shall provide the probation officer access

17     to any requested financial information.

18          Having been convicted of a qualifying felony, you

19     must cooperate in the collection of DNA as directed by the

20     probation officer.  The mandatory drug testing requirements

21     of the Violent Crime Control Act are suspended, however, you

22     must submit to random drug testing not to exceed 104 tests

23     per year.

24          As discussed earlier in this sentencing hearing, you

25     are required to pay restitution.  You shall pay restitution

 1     in the amount of $137,000 and the restitution is to Tara

 2     3,000; Vicky 5,000; and Violet, 5,000.

 3            The restitution obligation shall be payable to the

 4     clerk United States District Court for distribution to the

 5     victims.

 6            While in the Bureau of Prisons' custody, you shall

 7     either, one, pay at least $25 quarterly if you have a

 8     non-UNICOR job, or, two, pay at least 50 percent of your

 9     monthly earnings if you have a UNICOR job.

10            Upon release from custody, you shall pay restitution

11     at the rate of 10 percent of your net monthly income per

12     month.  Okay?  That's 10 percent of your net monthly income

13     per month.  At any time during the course of your

14     post-release supervision, the victims, the Government, or

15     you, the Defendant, may notify the Court of a material

16     change in your ability to pay and the Court may adjust the

17     payment schedule accordingly.

18            The Court finds that you do not have the ability to

19     pay interest and, therefore, the Court waives the interest

20     requirement for the restitution.  Based upon your financial

21     status, the Court waives the imposition of a fine.

22            With regard to forfeiture, the Court issued a

23     preliminary order of forfeiture forfeiting the SanDisk thumb

24     drive and that is at Doc. 231.  It was entered yesterday

25     June 28th, 2021.  It will be incorporated into the final

1    judgment.

2            In addition, Mr. Dove, you shall pay to the United

3    States a special assessment totaling $200.  Those special

4    assessments are due immediately and, again, it's $100 per

5    count.

6            Because the Court finds that you are indigent, the

7    5,000 special assessment -- $5,000 special assessment

8    pursuant to 18 U.S.C. Section 1314 is not imposed.

9            After considering the advisory sentencing guidelines

10   and all of the factors identified in Title 18, United States

11   Code, Sections 3553(a)(1)-(7), the Court finds that the

12   sentence imposed is sufficient but not greater than

13   necessary to comply with the statutory purposes of

14   sentencing.  I've already stated now a couple of times my

15   reasons for varying downward two levels.

16           Is there a plea agreement in this case?  I don't

17   believe there was; right?

18           MS. THELWELL:  No, Your Honor.

19           PROBATION OFFICER:  That was an error, Your Honor.

20   I'm sorry.

21           THE COURT:  The Court having pronounced sentence,

22   does Counsel for the Defendant or Government have any

23   objections?

24           MS. THELWELL:  No, Your Honor.

25           MR. FITZGERALD:  No, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1            THE COURT:  Finally, Mr. Dove, to the extent

2    permitted by your plea agreement, you have a right to appeal

3    from the judgment and sentence within 14 days from the entry

4    of the judgment.  Failure to appeal within the 14-day period

5    shall be a waiver of your right to appeal.  The Government may

6    file an appeal in this sentence.  You are also advised that

7    you are entitled to assistance of counsel in taking an appeal,

8    and if you are unable to afford a lawyer one will be provided

9    for you.  If you are unable to afford the filing fee, the

10   Clerk of the Court will be directed to accept the notice of

11   appeal without such fee.

12           Are there any requests, Mr. Fitzgerald?

13           MR. FITZGERALD:  Yes, Your Honor.  First we'd

14   request that -- want me to do it from here?

15           THE COURT:  From the lectern.

16           MR. FITZGERALD:  Thank you.  We're aware it's not

17   binding, but we ask the Court to recommend the Coleman

18   facility within his placement within the Bureau of Prisons.

19           THE COURT:  Okay.

20           MR. FITZGERALD:  He also wants me to request the

21   Court allow him to self-report.  He has done excellent on

22   being monitored by pretrial services for 30 months.  He's in

23   incredible back pain right now, and the transportation can be

24   brutal when they ship you around.  I recently had a client

25   that got taken into custody, went down to Glades County and he

 1   was sent to Oklahoma for four weeks only to end up in a
 2   Florida prison.
 3          Mr. Dove is in excruciating pain, can't stand up.
 4   He's six foot nine.  They transport you in small vans and
 5   he's followed every order while on pretrial release.  We
 6   don't believe he's a risk of flight.
 7          He can also show up the morning he's supposed to
 8   report to pretrial services, and should it be Coleman, he'll
 9   be at Coleman.  They can take off the bracelet that morning.
10   He'd be in Coleman within an hour, hour and fifteen minutes,
11   which similar when he gets authorization to get an MRI and
12   they cut off the bracelet at the MRI facility and then he
13   goes to pretrial services after and gets it reinstalled, so
14   we think the community would be safe.
15          He would also ask if you could recommend the RDAP
16   program while he's in the facility, and I'm not sure if he
17   would qualify for all its benefits, but I'd like him to
18   avail himself of the opportunity to get some treatment if he
19   desires.
20          THE COURT:  What about a GED or vocational training?
21          MR. FITZGERALD:  That would be great, your Honor,
22   vocational training, especially since given the circumstances
23   of the offense and the restrictions I think he would be eager
24   to learn more crafts to support himself.
25          THE COURT:  Carpentry?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              MR. FITZGERALD:  Carpentry?  Yes, Your Honor.

2              THE COURT:  All right.  Thank you.

3              MR. FITZGERALD:  Thank you.

4              THE COURT:  Ms. Thelwell, do you have an objection

5     with regard to the recommendations and/or the request for

6     voluntary surrender?

7              MS. THELWELL:  Not to the recommendations.  We would

8     request that the Court -- that Mr. Dove be taken into custody

9     today.  Based on the change in circumstances now, he's

10    actually been sentenced to 110 months by the Court and so we

11    would ask that Mr. Dove be taken at this time.

12             THE COURT:  All right.  With regard to the request

13    by the Defendant, the Court is going to deny the request for

14    voluntary surrender and require that Mr. Dove be taken into

15    custody today.

16             I understand that he is in pain.  I know that he

17     will receive treatment.  He has been wearing an ankle

18     bracelet, but even if I were to allow him to voluntarily

19     surrender, he would still have to come to the courthouse and

20     report to the marshals and then still be transported to

21     wherever the facility is, so it's six on one hand, half a

22     dozen on the other.  He will not be going directly to the

23     facility regardless of whether it's a voluntary surrender or

24     whether he goes into custody today.  And so given the

25     circumstances of this case, the length of the sentence

1   imposed, I am going to have the Defendant taken into custody

2   today.

3          With regard to the other requests, Mr. Dove, I will

4   include on the judgment, sir, a request that you be housed

5   at Coleman, that you be allowed to study for and obtain your

6   GED, that you be allowed to participate in the RDAP program

7   and for vocational training, that you receive training in

8   the area of carpentry.  And I think that was all of the

9   requests.

10         You should know that these are merely

11  recommendations.  The final decision with regard to your

12  placement and any activities in which you participate during

13  your period of incarceration is with the Bureau of Prisons.

14  Is there anything else, Counsel?

15         MS. THELWELL:  No, Your Honor.  Thank you.

16         MR. FITZGERALD:  Thank you, Your Honor.

17         THE COURT:  There being nothing further, that

18  concludes this proceeding.  We are adjourned.

19  (Court adjourned.)

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
1    UNITED STATES DISTRICT COURT  )

2                                  )

3    MIDDLE DISTRICT OF FLORIDA    )

4

5          I, SHARON A. MILLER, Official Court Reporter for the

6    United States District Court, Middle District of Florida, do

7    hereby certify that pursuant to Section 753, Title 28, United

8    States Code that the foregoing is a true and correct

9    transcript of the stenographic notes taken by computer-aided

10   transcription taken in the above-entitled cause by the

11   undersigned and that the transcript format is in conformance

12   with the regulations of the Judicial conference of the United

13   States.

14   /S/Sharon A. Miller, CSR, RPR, CRR, RMR

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25

     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION
```